IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

RECEIVED
MAY - 3 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

ALFRED ABRAMSON, individually and as
Executor of the Estate of JOSEPH
ABRAMSON, deceased, AARON ABRAMSON
and CAROL SCHUDMAK, individually

    PLAINTIFFS,

v.                                            CIVIL ACTION NO. : 3:04-0489

DAVID BRUCE SMALL; LANEKO
MANUFACTURING COMPANY;
RBL LEASING CORPORATION,
DAVID BRUCE SMALL,
 UNITED SERVICES AUTOMOBILE ASSOCIATION,

    DEFENDANTS

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DETERMINE QUANTUM MERUIT FEES OF R. EDISON HILL AND THE LAW FIRM OF HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

    **NOW INTO COURT**, through undersigned counsel, comes plaintiff, Alfred Abramson as executor of the estate of Joseph Abramson, deceased, who respectfully request that this Honorable Court determine reasonable legal fees, under a quantum meruit analysis, to be afforded to previous counsel, R. Edison Hill and The Law Firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.

**I.    FACTS**

    On March 18, 2005, plaintiffs, represented by their current attorney, David V. Batt, of Lobman, Carnahan, Batt, Angelle and Nader engaged in a mediation and settled the above captioned wrongful death suit for $2,156,000.00. (Ex. A., Petition to Approve Settlement). Mr. Batt and his firm have represented the plaintiffs since March 5, 2004 when Alfred Abramson,

individually and as executor for the estate of the decedent, Joseph Abramson, Carol Schudmak and Aaron Abramson entered into a valid contingency fee agreement to retain Mr. Batt and his firm with regards to representation in the above captioned matter. (Ex. B, Contract). Said contingency agreement is still valid, and Mr. Batt continues to represent the Abramson's in the above captioned matter.

Prior to the engagement of Mr. Batt and his firm, Mr. Alfred Abramson, as executor of the estate of Joseph Abramson, entered into a contingency fee agreement with R. Edison Hill of the Law Firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C (hereinafter "the Hill Firm") on August 11, 2003. On February 6, 2004, a little less than six months after initially retaining the Hill Firm, Sam Schudmak, an attorney, representing the Estate of Joseph Abramson, Carol Schudmak, Alfred Abramson, and Aaron Abramson corresponded with Mr. Hill and discharged his firm, in writing, from representation of the Abramson Estate. (Ex. C, Letter to Edison Hill).

During the course of his representation, Mr. R. Edison Hill and the Hill firm never filed a complaint, never researched the applicability of appropriate quantum for survival damages in West Virginia and failed to research or allege punitive damages. In addition, a review of the hourly accounting of time spent in representing the Estate, submitted with the settlement demand, forwarded to undersigned counsel, at their request, indicates that many of the Hill Firm's hours are inflated. For instance, just one, extremely blatant example of fee exaggeration is the fact that the Hill Firm is seeking remuneration for 20 hours allegedly spent drafting a standard complaint which was never completed or filed with the court.[1] (Ex. D, Hill Time Chart)

---

[1] In addition, the time chart, page one, entries # 2 and # 7 include the notation "review accident report and file material": # 2 billed at 1.5 hours and entry # 7 billed at 5.00 hours and includes the same review along with 5 phone calls and a letter. It appears that entry # 7 is inflated and, under standard legal accounting practices would be more appropriately billed at 2.00 hours. On Page 2, entries # 2, 5 and 8 also appear inflated. Entry # 2 bills 3.75 hours for 2 calls, a conference, and an e-mail. This, when typical phone calls last no more than five to ten minutes. Entries 13 through 16 total 2.0 hours for paralegal chat with economic expert Michael Brookshire. This should be

2

On November 24, 2004, R. Edison Hill filed a Notice of Charging Lien with this Honorable Court. Mr. Hill did not forward a settlement demand of any kind to either his former clients, or their current counsel, even after such a demand was requested by Mr. Schudmak in correspondence dated February 6, 2004 (Ex. E) and by Mr. Batt via correspondence dated February 23, 2005. (Ex. F). On March 14, 2005, via correspondence, plaintiffs' present attorney, Mr. Batt, again requested a settlement demand and accounting of the costs expended by the Hill Firm and the hours spent in representation. (Exhibit G, Letter of March 14.) On March 30, 2005, Mr. Hill corresponded with Mr. Batt and yet again refused to present documentation regarding his representation of the Abramson Estate, and instead, demanded information regarding Mr. Batt's representation of his clients. (Ex. H). As is explained in detail below, Mr. Batt responded in a letter of April 11, 2005, that Mr. Hill and his firm are not entitled to such information, as Mr. Batt has a valid contingency fee agreement and his fees are not at issue. In the same correspondence, Mr. Batt explained, once again, the applicable West Virginia law, the

---

stricken from the bill altogether, as Mr. Brookshire, upon being contacted by subsequent counsel, refused to issue a written report pursuant to Rule 26 and refused to testify in the above captioned matter, despite retention by the Hill Firm. Accordingly, these two hours should be struck as the phone call, as well as the retention of Mr. Brookshire, produced no worthwhile result. On Page 8, entry # 4 appears quite inflated at 3.5 hours for a single telephone call about case strategy, considering the nature of the case, and would appear to be more appropriately billed at 1.0 hour.

The last two pages of the packet are the bill of Mr. Hill's other law firm, Winter, Johnson and Hill. The majority of the entries appear over inflated and in many cases duplicative of the work done by Mr. Hill's other law firm. For instance, entry # 1 at 6.0 hours for legal research on highway safety, auto accidents, vehicle safety, and review of documents in the case file is high and appears more appropriately billed at 3.0 hours, particularly in light of the fact that an expert in highway and vehicle safety, Mr. David Stopper, had already been retained in the case. Entry # 4 at 5.0 hours for "research regarding local defendants and assist in drafting of Complaint" appears more appropriately billed at 3.0 hours. In entry # 6, the same timekeeper, JWH, again billed for assistance in drafting the complaint at 2.25 hours, and this entry should be completely struck as duplicative. Entry # 8 again has the same timekeeper billing 5.75 hours for research and continued drafting of the complaint and should be cut by 3.0 hours. Entry # 9 has timekeeper Nancy Hill billing 5.0 hours for file review and working on drafting the complaint, which would be more appropriately billed at 2.0 hours. Entry # 12 has JWH and REH conferring about an upcoming meeting with safety expert David Stopper for 1.0 hour where .5 hours should have been sufficient. Entry # 7 by Nancy Hill has her billing another 2.0 hours on the drafting of the Complaint, which is duplicative and should be struck in its entirety. Entry # 7 by Nancy Hill bills for "draft demand letter, revisions to draft complaint" at 3.0 hours which is quite high and should be cut to 1.5 hours. Entry # 10 is a 5.75 hour meeting by JWH with attorneys involved in the contemporaneous *Mullins* death case, the length of this meeting being absurd on its face, and entry # 10 is Nancy Hill doing the same for 2.0 hours on the same date, probably the same meeting, for a total of 7.75 hours for both entries which should be cut to 1.0 hours.

3

concept of quantum meruit, and again requested a settlement demand from Mr. Hill. (Exhibit I, Letter of April 11)

On April 12, 2005 Mr. Hill finally forwarded documentation of his costs and hours allegedly expended by his firm in representing the Abramson Estate along with a settlement demand of $573,651.70 for his six month representation of the Estate. (Ex. J, Letter of April 12, 2005). In his correspondence, Mr. Hill unilaterally demanded a "contingency fee" of 25% as quantum meruit for the services he rendered while representing the Estate, this despite the fact that Mr. Hill no longer has any valid contingency fee agreement as West Virginia law clearly establishes that a lawyer's right to a contingency fee is extinguished when the lawyer is discharged. The documentation Mr. Hill provided, discussed above in detail in Footnote 1, indicates that his firm claims to have expended 146.25 hours for legal representation in the six months his firm represented the estate. ***Mr. Hill's settlement demand, which is clearly unreasonable under a quantum meruit analysis, as discussed below, equates to a legal fee of $3685.47 per hour worked by the Hill Firm.***

Current counsel for the Abramson Estate, Mr. Batt, responded to Mr. Hill's demand agreeing, upon review of the documentation, to settle the matter for the costs incurred by Mr. Hill's firm, plus legal fees for the hours expended by the Hill Firm at the competitive hourly rate of $125.00 per hour of legal representation. Current counsel rejected Mr. Hill's demand to be compensated at a rate of $3685 per hour as frivolous and insulting. The Estate, through their attorney, Mr. Batt, has offered to settle the entire matter for $18,281.25 plus reimbursement of all documented and necessary costs of litigation expended by the Hill Firm.

Despite the best efforts of current counsel to negotiate a reasonable quantum meruit fee with Mr. Hill for his previous representation of the Abramson Estate, Mr. Hill has continued to

4

maintain an obstructionist attitude and is unwilling to engage in reasonable settlement negotiations. Accordingly, the plaintiffs, through their attorney, David V. Batt, respectfully move this Honorable Court to determine a reasonable quantum meruit fee, under the applicable West Virginia law as outlined below, to be afforded to Mr. R. Edison Hill and the Hill Firm for their previous, six month representation of the Abramson Estate and to allocate the corpus of the settlement as suggested in defendant's Petition for Court Approval of the Settlement and Distribution of Proceeds Thereof filed in the above captioned matter.

## II. LAW AND ARGUMENT

### A. The Hill Firm does not have a valid or executable contingency fee agreement.

West Virginia's Rules of Professional Conduct, Rule 1.16(a)(3), specifically allows a client to discharge an attorney in a civil case at any time, with, or without cause. See also ABA Rules of Professional Conduct 1.16. The advisory notes to the rule indicate that a client has a right to discharge a lawyer at any time, subject only to liability for payment for the lawyer's services. The Supreme Court of Appeals in Hardman v. Snyder, 393 S.E. 2d 672 (W.Va. 1990) clearly stated the well-established rule that, "Where an attorney has been discharged, without fault on his part, from further services in a suit begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered." Again, in The Committee on Legal Ethics v. Cometti, 430 S.E.2d 320, 327 (W.V. 1993), the Supreme Court clearly opined that the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered. As stated succinctly by the Supreme Court in this case:

> A client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties . . . Moreover, we have held that since the client has the absolute right of public policy grounds

5

to terminate the attorney-client relationship at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and *the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered.*

Id. at 269 (emphasis added); see also Statler v. Dodson, 466 S.E.2d 497 (Court determined that because client terminated attorney's services, he can not recover based on the contingency fee but can recover only in quantum meruit); Clayton v. Martin, 151 S.E. 855 (1930)(where attorney discharged without fault from further services begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered).

Moreover, the previously executed contingency fee agreement is no longer a valid contract. Discharge of an attorney, under the law of West Virginia, simply does not constitute a breach of contract. As explicitly stated in the case of Hardman v. Snyder, 393 S.E.2d. 672 (W.V. 1990),

> An attorney under a contingent fee contract discharged without fault could only recover the value of his services . . . It is a settled rule that because of the special relationship of trust and confidence between attorney and client the client may terminate the relationship at any time, with or without cause . . . The courts which follow the modern trend base their holdings on the view that *a client's discharge of his attorney is not a breach of contract.* 'Such a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate the contract at will.'"(internal citations omitted)(emphasis added).

See e.g. Kopelman v. Collins, 473 S.E.2d 910, ftn. 7 (W.Va. 1996 (Supreme Court, comments that the majority of jurisdictions, including West Virginia, reason that allowing recovery on a contingency fee contract impinges on a client's absolute right to select the lawyer of his or her choice by forcing the client to pay double fees, one to the discharged lawyer and one to the new lawyer, "these jurisdictions typically imply a term into the contingency contract allowing

6

discharge of the lawyer at will so that the discharge is not considered a breach and does not give rise to contract damages."). Consequently, both the ethical rules of the State of West Virginia and the jurisprudence repeatedly outlined by the Supreme Court of West Virginia allowed Mr. Abramson, as executor of the Estate of Joseph Abramson, to discharge Mr. Hill and his law firm at will. Moreover, following said discharge, the previously entered into contingency fee contract was vitiated. Despite Mr. Hill's contention to the contrary, he is entitled to recover only a reasonable value of the services he rendered. Thus, Mr. Hill's demand of 25% of the plaintiff's recovery in the instant case, as a reflection of a "reduced contingency fee", is not only unreasonable and in contravention of the law of West Virginia, it violates ethical rules promulgated by the West Virginia Bar.

**B.      Quantum Meruit and Determination of Quantum Meruit Fee**

As discussed above, the means by which to determine the fee owed to a previously retained, and subsequently discharged attorney, is *quantum meruit,* or in lay terms, "as much as is deserved." Black's Law Dictionary 1243 (6th ed. 1990). There is no question that the theory of *quantum meruit* applies to the issue of determining Mr. Hill's legal fees in the instant case.

As early as 1930, the West Virginia Supreme Court in Clayton v. Martin, 151 S.E. 855 (W.V. 1930) stated, "if the compensation under the contract is contingent on the success of the suit, and the attorney is discharged without fault on his part, the measure of damages is not the contingent fee, but a reasonable compensation for the services actually rendered." Again, in Hardman v. Snyder, 393 S.E. 2d 672 (W.Va. 1990), the West Virginia Supreme Court of Appeals approved the well-established rule first enunciated in Clayton, 151 S.E. at 156-157 :

> if the compensation under the contract is contingent on the success of the suit, and the attorney is discharged without fault on his part, the measure of damages is not the contingent fee, but a reasonable compensation for the services actually rendered.

West Virginia courts have repeatedly held that under circumstances such as those presented in the instant case, where the attorney is discharged by the client, the attorney is entitled to recover only the reasonable value of services rendered under a quantum meruit analysis. See Pritt v. Suzuki Motor Co., Ltd., 513 S.E.2d 161 (W.Va. 1998); Statler v. Dodson, 466 S.E.2d 497 (W.V. 1995); May v. Seibert, 264 S.E.2d 643 (W.V. 1980).

### 1. Burden of Proof in Quantum Meruit Analysis.

Accordingly, as quantum meruit is the **only** recovery available to Mr. Hill and his law firm in the instant case, the issue now becomes, how to determine a fee under the precepts of this doctrine. As discussed above, the theory of quantum meruit is designed to compensate the previous attorney for the reasonable value of the services rendered. The burden of proof in this respect lies solely with the discharged attorney. As clearly stated in Bass v. Rose, 609 S.E.2d 848 (W.V. 2004), "the burden of proof is always upon the attorney to show the reasonablness of the fees charged." See also Committee on Legal Ethics of West Virginia State Bar v. Tatterson, 352 S.E.2d 107 (1986). In fact, in Bass, the court issued a warning to attorneys regarding this burden:

> The same burden to prove reasonableness remains with the attorney under any fee structure. Attorneys who fail to effectively document their efforts on behalf of a client run the risk of being unable to convince a reviewing court, based on their word alone, of the reasonableness of the fee charged, or, in cases where it applies, the full and proper value of fees to be awarded on a quantum meruit basis.

Id. at 853. In Hardman, supra the West Virginia Supreme Court of Appeals went even further stating that, "in the absence of evidence of the reasonable value of the [attorney's] services, no recovery can be had." In Hardman, the Court denied any recovery to the former plaintiff attorney in that case. The Court noted that the attorney failed to provide any specific itemization of *how*

8

his time was actually spent. The Court noted that the attorney failed to provide any evidence as to the specific work performed by him and the time required to complete these tasks. The Court held that a *summary* (as opposed to an itemization) of total hours expended and the rate per hour spent working were insufficient to justify any award to the attorney.

Accordingly, the burden of proof is on Mr. Hill and his law firm to specifically document the work undertaken during the six months his firm represented the Abramson Estate and to prove the reasonable value of those services rendered.

2.  **Reasonable Fee**

The law of West Virginia is very clear as to the standard for determining what a "reasonable fee" is. Under Disciplinary Rule 2-106(B)[2] "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Moreover, if an attorney's fee is grossly disproportionate to the services rendered, then the fee is "clearly excessive" within the meaning of Rule 2-106(A), even if the client has consented to such a fee. The United States Supreme Court, in Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891,900 (1984) required reasonable fees "to be calculated according to the prevailing market rates in the relevant community." Notably, under West Virginia case law, again, the burden of proof is upon the discharged attorney to show the reasonableness and fairness of the attorney's fee. Committee on Legal Ethics of the West Virginia State Bar v. Tatterson, 352 S.E.2d 107 (1986); Committee on Legal Ethics of the West Virginia State Bar v. Gallaher, 376 S.E.2d 346 (W.V. 1988). In the instant case, there is no question that the amount being sought by Mr. Hill under his "charging

---

[2] Note, the West Virginia Supreme Court of Appeals adopted the Model Code of Professional Responsibility in 1970.

lien"[3] is excessive and violates the precepts of West Virginia's disciplinary rules for attorneys. No reasonable attorney would ever consider an hourly fee in excess of $3,000[4] to be

---

[3] West Virginia Code § 30-2-15 (1923) provides the statutory authority for the attorney's charging lien:

> "An attorney shall be entitled for his services as to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he may recover what his services were reasonably worth."

However, the case law of the West Virginia Supreme Court of Appeals suggests that there are actually two types of attorney's charging liens. In Shaffer v. Charleston Area Medical Center, Inc., 485 S.E.2d 12, 21 (W.Va. 1997), the West Virginia Supreme Court of Appeals identified these two types of liens:

> "Our cases reveal that typically an attorney's charging lien will be brought during the underlying civil action and against the client or former client. [under West Virginia Code Section 30-2-15 (1923)]. See Robertson v. Pettery, 114 W.Va. 78, 170 S.E. 901 (1933); Fisher v. Mylius, 62 W.Va. 19, 57 S.E. 276 (1907). However, there are situations where a charging lien is brought against another attorney, who took over the underlying claim. This type of charging lien, against a subsequent attorney, is typically instituted in a separate action against the attorney where there was some type of business relationship between the attorneys prior to the discharge of one. See Kopelman and Associates, L.C. v. Collins, 196 W.Va. 489, 473 S.E.2d 910 (1996).

The Shaffer Court ultimately found that an attorney *may* also bring a charging lien against a successive attorney in the underlying action. The Court reached this decision in part because of the reasoning of other jurisdictions which permit resolution of fee disputes between attorneys, provided that the dispute does "not hold up the distribution of the settlement monies of the litigants."

In Hill's Notice, he asserts that his firm is entitled to an attorney's charging lien under West Virginia Code Section 30-2-15 (1923). This statutory reference and the general references to the actions of its former client throughout the Notice suggest that the Hill firm seeks to enforce the lien *against a judgment/recovery in favor of the Abramson Estate*. Yet, at the same time, in footnotes 3 and 5, Hill asserts the contradictory argument that *"this is not a fee dispute between the Hill firm and the parties to the action"*, but rather it is *"a fee dispute between the Hill firm and Attorneys Mr. Schudmak, Mr. Batt, and Mr. Bailey."* (emphasis in original).  Accordingly, **Hill's Notice is defective as it apparently seeks to enforce two different types of charging liens: a lien against the client and parties to the action *and* a lien against the client's new attorneys.**

Hill can only assert a lien against any judgment/recovery in favor of the Estate, and not Mr. Batt or the firm of Lobman, Carnahan, Batt, Angelle and Nader. Hill's cause of action for a charging lien arises of out of the contractual relationship between his firm and his former client, the Abramson Estate. Hill's assertion that this is a "fee dispute between the Hill firm and Attorneys Mr. Schudmak, Mr. Batt, and Mr. Bailey" lacks merit. In those cases which Hill relies upon, as discussed, infra, wherein an attorney's charging lien is to be enforced against a successive group of attorneys, there is either an express or implied preexisting contractual relationship between the litigating attorneys. Hill does not cite any contractual relationship between his firm and the successive group of attorneys named in his Notice. Accordingly, while Hill arguably could assert a charging lien against the Abramson Estate, he has no cause of action against Mr. Batt, Mr. Bailey or Mr. Schudmak and he should be required to amend the Notice as it currently asserts contradictory claims.

[4] As discussed above in Section A, supra, Mr. Hill was discharged by his client and is accordingly not entitled to the contingency fee outlined in his attorney-client contract. Nonetheless, the fee sought by Mr. Hill under this contract

---

10

"reasonable", particularly in light of the fact that the Hill Firm never filed a complaint, never investigated a survival action or punitive damages and did not conduct a formal mediation.[5] Moreover, typical hourly rates for attorneys in West Virginia range from $100 to $150 an hour. See, e.g. Pritt v. Suzuki Motor Co., Ltd., 513 S.E.2d 161, 170 (W.V. 1998)(lower court rejected $300 hourly rate asked for by attorney, and reduced rate to $140 per hour); Shaffer v. Charleston Area Medical Center, Inc. 485 S.E.2d 12 (W.V. 1997), ftn. 6 (quantum meruit figure calculated at rate of $100 per hour); Statler v. Dodson, 466 S.E.2d 497 (W.V. 1995), ftn. 4 ($110 per hour of attorney work).

Here, where Mr. Hill has demanded an exorbitant fee of $539,000.00 for, at most, a 146.25 hours of work on a case, in which he did not even file a complaint, the fee requested is not only unreasonable, but of questionable ethical propriety. Undersigned counsel is unaware of any jurisdiction in which attorneys receive an hourly rate in excess of $3,000.00. Moreover, Mr. Hill's demand for legal fees is based, by his own admission, on, "a reduced contingency fee of 25% of the total settlement amount of $2,156,000" (Ex. J, Letter of April 12, 2005) despite the fact that the law of West Virginia is very clear that Mr. Hill is only entitled to quantum meruit, and is not entitled to any contingency fee, reduced or not. See Hartman, supra.

3. **How to Determine "Reasonable Fee" under Quantum Meruit Analysis.**

"It is axiomatic that in a suit on quantum meruit for services the value of the services must be shown, and not left to conjecture." Clayton, supra. The West Virginia Supreme Court of

---

also appears excessive as it exceeds what attorneys typically charge in contingency fee contracts, 33 1/3%, and instead charged 40% of the proceeds of the case, whether it proceeded to trial or not.

[5] Although Mr. Hill makes much of the fact that he had a mediation scheduled in this matter prior to being discharged in the case, it is clear, from a strategic legal standpoint that this mediation was premature. When Hill scheduled the mediation, the complaint had not been filed, no discovery had been conducted, and the issue of a survival action and punitive damages, which had the potential to greatly increase the value of the plaintiff's claim, had not even been researched.

11

Appeals first addressed this issue in 1925 in the case of <u>Stafford v. Bishop</u>, 127 S.E. 501 (1925). There, the court noted that the value of services performed by the prior attorney must be specifically demonstrated and not left to conjecture. The court further outlined those factors which may be considered in determining the value of an attorney's services based on quantum meruit. The court may consider, in determining a reasonable fee, evidence of:

1) the attorney's ability, skill, experience, diligence, and standing in his profession,

2) the nature and extent of the services performed,

3) the difficulties encountered,

4) the responsibility assumed,

5) the amount involved,

6) the physical and mental labor expended,

7) the results achieved and their benefit to the client, and;

8) the usual and customary charges for like services in the same vicinity[6].

However, the threshold issue is always the "labor, time and trouble of the attorney in the performance of these services." Consequently, as outlined specifically in <u>Hardman v. Snyder</u>, 393 S.E.2d 672 (W.Va. 1990) where the discharged attorney fails to prove what specific services

---

[6] These factors tract the 1983 ABA Model Rules of Processional Conduct, Rule 1.5 and West Virginia's Rule of Professional Conduct 1.5 governing fees. This rule states:
A (a) a lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3)     the fee customarily charged in the locality for similar legal services;
(4)     the amount involved and results obtained;
(5)     the time limitations imposed by the client or by the circumstances;
(6)     the nature and length of the professional relationship with the client;
(7)     the experience, reputation, and ability of the lawyer performing the services; and
(8)     whether the fee is fixed or contingent.

he rendered and a fair and reasonable value of these services, then no recovery can be had. In Hardman, the court determined that where the attorney testified that his customary hourly rate was $75.00 per hour and that he spent an estimated 250 hours on the case but did not attempt to provide an accounting of how the time was spent and provided no specific evidence as to the work performed or the time needed to complete it, he was not entitled to any award of attorneys fees under a quantum meruit analysis. In Committee on Legal Ethics of the State of West Virginia v. Tatterson, 352 S.E.2d 107, 112 (W.Va. 1986) the court applied these factors when determining whether or not an attorney had violated Disciplinary Rule 2-106(A) governing collection of excessive fees by an attorney. There, the court noted that the attorney, in obtaining and assisting in the processing of the paperwork necessary to obtain the life insurance proceeds of his client and researching the incontestability statutes required only a very few hours and very limited skills. The court also noticed that the work did not appear to have precluded other employment by the attorney, and the attorney had submitted no proof that it had. The court stated that $60,000 was involved in the case, but distinguished the fact that the case involved life insurance, not liability insurance, and therefore there was no possibility of having to negotiate and to apply the pressure of litigation in order to obtain what was due. Further, the court took into consideration the fact that this was the first professional relationship between the attorney and the client and that there was nothing in the record to indicate that the experience, reputation or ability of the attorney was ever considered to be a factor in obtaining recovery of the life insurance proceeds for his client. The court finally noted that the fee was contingent, not fixed.[7] Similarly, in a somewhat analogous case cited with approval in Committee on Legal Ethics of

---

[7] Note, in Tatterson the attorney was not discharged, so the court could consider the reasonableness of the contingency fee. Here, Mr. Hill was discharged, and therefore under Hardman, this factor need not be considered in the instant case as there is no longer any valid contingency fee contract.

the West Virginia State Bar v. Gallaher, 376 S.E.2d 346 (W.V. 1988), an Arizona case held that where the plaintiff was injured in a work-related mishap and the defendant was insured for up to $150,000, and where there was a $100,000 worker's compensation lien, the lawyer's contingent fee[8], which equaled $50,000, was clearly excessive because the attorney prepared and filed no suit, devoted only thirty hours to the case, and participated in nominal settlement negotiations. Matter of Swartz, 686 P.2d 1236 (Az. 1984).

Similarly, here, Mr. Hill is demanding a $539,000 fee for 146.25 hours of work, where no suit was filed and only nominal and unsuccessful settlement negotiations were undertaken. Mr. Hill, who has the burden of proof in this matter, has submitted the following documents to the court in support of his "charging lien". First, he has submitted the attorney-client agreement originally signed by Alfred Abramson as Executor of the Estate of Joseph Abramson. However, as discussed above in detail in section A, this contract is no longer valid or binding on the parties as Mr. Abramson subsequently discharged Mr. Hill and his firm. Mr. Hill has also submitted a demand letter, forwarded to Traveler's Insurance in December of 2003. This three and a half page letter, which was forwarded directly to the insurance company, and briefly outlined the applicable law, failed to cite any jury awards or to contain any quantum analysis, indeed the letter itself failed to put any value on the Abramson's claim, instead, leaving determination of the amount to the defendant insurance company. Third, he has submitted a confirmation of mediation letter dated January 20, 2004 for a scheduled mediation on March 2, 2004. Notably, this mediation was scheduled before the complaint had been filed, before an expert forensic pathologist had been retained, and before any research or discovery with respect to punitive damages had been conducted. The mediation was clearly premature and would have been

---

[8] Again, note that the attorney had not been discharged in this case, and therefore the reasonableness of the contingency fee, and not a quantum meruit fee was at issue.

14

conducted to the detriment of the Abramson Estate. Fourth, Mr. Hill includes the letter from Sam Schudmak discharging him from representation of the Abramson Estate. This letter simply supports undersigned's assertion that Mr. Hill is only entitled to recovery under quantum meruit. The remainder of the exhibits are correspondence relating to termination of representation and a total amount of costs expended. The letters apparently did not include documentation of these costs, which was requested by Sam Schudmak in a February 12, 2004 letter. This is all of the information Mr. Hill has presented to the court in support of his lien. This information is clearly not sufficient under the jurisprudence to establish any quantum meruit award.

Nonetheless, as undersigned counsel is eager to resolve this issue for the benefit of their clients, as stated above, counsel has sought to amicably resolve the matter with Mr. Hill. In correspondence, Mr. Hill submitted an "hourly statement" of the time expended by his firm in representing the Abramson Estate. As discussed above in footnote 1, plaintiffs believe that many of these time entries are inflated. Nonetheless, for the sake of expeditious and amicable resolution of this matter, plaintiffs will concede that Mr. Hill is entitled to quantum meruit for the hours submitted, upon review of the legitimacy of these entries by the Court, and that this hourly statement will satisfy the second prong of the Stafford test, which requires the court to consider, the nature and extent of the services rendered. Accordingly, Mr. Hill has failed to submit any documentation or evidence which would allow this court to consider the remaining factors under the Stafford test. Mr. Hill's bald assertions regarding his own ability, skill, experience, diligence and standing in his profession are certainly not evidence and appear narcissistic. They are consistent with his outrageous demand for compensation at $3685 per hour. Mr. Hill has not related any difficulties he encountered during his short representation of the Abramson Estate, nor has he submitted any proof regarding same. The next factor is the responsibility assumed by

15

the discharged attorney while representing his former client, for purposes of expeditious resolution of this matter, plaintiffs will concede that this factor may be calculated, at least partially, by the monies expended by his firm. Mr. Hill has documented $34,651.70 in costs, which will be reimbursed out of the settlement distribution, with the exception of Mr. Brookshire's fee of $1,950.00.[9] In addition, $4,335.72 of Mr. Hill's cost statement is for "Investigative Expenses" which the bill reflects was to "investigate liability and damages under the direction of [Mr. Hill]" and appears duplicative of the work undertaken by the expert witness, David Stopper, who personally investigated the scene as well. The amount of settlement, which Mr. Batt secured in the instant case, is $2,156,000.00, which notably was obtained after a day long mediation, almost a year and a half after the Abramson Estate discharged Mr. Hill and his Firm. The physical and mental labor expended, by Mr. Hill's estimation is approximately 146.25 hours, or approximately three to four weeks of work, in a six month period of time, during which Mr. Hill was retained as the attorney for the Estate. As to the results achieved, Mr. Hill <u>did not achieve any results</u> prior to his discharge, and in fact, had not even filed a complaint or received a viable settlement offer from the defendant. Accordingly, the results had little benefit to his former client, the Estate. The final prong of the <u>Stafford</u> test, the usual and customary charges for like services in the same vicinity, is discussed in detail above and will not be rehashed here other than to point out that the customary fee in the vicinity appears to be between $100 and $150 per hour as opposed to the $3000.00 plus dollars an hour being sought by Mr. Hill.

The court should also take note that **none** of the case law relied upon by Mr. Hill in his Notice of Charging Lien and subsequent correspondence to undersigned counsel is applicable in the instant case. His cited jurisprudence is simply not germane to the present controversy. Mr.

---

[9]Plaintiffs strenuously object to Mr. Brookshire's fee as he refused to testify on their behalf following the discharge of Mr. Hill, requiring the plaintiffs to obtain an economic expert on an expedited basis to render a report in

16

Hill repeatedly relies on the case of Kopelman and Associates, L.C. v. Collins, 196 W.Va. 489, 473 S.Ed.2d 910 (1996) as determinative in deciding attorney's fees when an attorney has been dismissed without cause by his client. However, Kopleman is obviously distinguishable from the instant case. Kopelman, involved fee disputes between competing attorneys arising **when attorneys leave a firm and take several of the firm's clients with them, or, where there exists some business relationship between the disputing attorneys prior to the fee dispute.** In the instant case there has never been any relationship between Mr. Hill and Mr. Batt, or their respective firms. Despite Mr. Hill's aggrandized view of his importance, Mr. Batt had never heard of, nor even participated in a case with Mr. Hill, prior to his involvement in the above captioned matter. Moreover, the West Virginia Supreme Court of Appeals, in Shaffer v. Charleston Area Medical Center, 485 S.E.2d 12 (W.V. 1997) explicitly noted that the Kopelman factors are limited in their application:

> "While Kopelman dealt with the single theory of quantum meruit, our decision clearly indicated that the factors we developed in that case to help determine quantum meruit are used *"in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided* [.]" Kopelman, 196 W.Va. at 499, 473 S.E.2d at 920." (emphasis added.)

The only other case law cited by Mr. Hill in his Notice of Charging Lien is the case of State ex rel. Bell and Bands, PLC v. Kaufman, 584 S.E.2d 574 (2003) this case too, is inapplicable. There, the court dealt with multiple contingency fees disputes, again, **between an attorney and her former law firm.** Despite Mr. Hill's repeated insistence that this line of case law applies to the instant case, it simply does not. There is no relationship, nor has there ever been any relationship between the firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. and Lobman,

---

compliance with the court's scheduling order.

Carnahan, Batt, Angelle and Nader. To suggest that there is some type of relationship, with absolutely no proof of such, where the respective firms are not even located in the same state, and none of the attorneys at Lobman, Carnahan, Batt, Angelle and Nader have any type of professional relationship with attorneys at the Hill Firm is simply misleading to the court.

### III. CONCLUSION

Despite potential procedural problems with Mr. Hill's "Charging Lien" as discussed above in footnote 2, plaintiffs pretermit a Motion for Summary Judgment and desire to compensate Mr. Hill and his firm for the costs incurred and for the legal services he performed in his six month of representation of the Estate. Despite several attempts to negotiate with Mr. Hill, Mr. Hill steadfastly refuses to enter into any meaningful negotiations regarding his fee. Instead, Mr. Hill has demanded a ridiculous fee which equates to more than $3,000 per hour for the work he invested in the above captioned matter. He insists on this fee despite the fact that he did not file a complaint with the court; did not establish a cause of action for survival or punitive damages; did not participate in a mediation; and, did not secure a settlement offer. In addition, Mr. Hill has continued to repeatedly rely on case law which is inapplicable to the instant case in his absurd "calculation" of his fee. All of these factors have forced the plaintiffs to seek counsel from this Honorable Court to determine the appropriate fee to be awarded Mr. Hill under quantum meruit for the work he undertook on behalf of the Abramson Estate. Plaintiff's respectfully request that a reasonable fee be determined by this court in light of applicable West Virginia law as outlined above.

Respectfully Submitted,

David V. Batt (La. Bar No. 2849)
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130
*phone* (504)586-9292
*fax* (504) 586-1290

Michael S. Bailey (W.Va. Bar No. 8507)
Bailey and Howard, L.L.C
642 Main Street, Suite 201
P.O. Box 347
Barboursville, West Virginia 25504
*phone* (304) 736-0801
*fax* (304)736-0801

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this ___ day of _____, 2005, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid.

DAVID V. BATT