## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA - HUNTINGTON DIVISION

ALFRED ABRAMSON, individually and as      C.A. No.: 3:04-0489
Executor of the Estate of JOSEPH ABRAMSON,
deceased,

         Plaintiffs,

     v.

LANEKO ENGINEERING COMPANY, RBL
LEASING CORPORATION, DAVID BRUCE SMALL,

         Defendants.

### PETITION FOR COURT APPROVAL OF THE SETTLEMENT AND DISTRIBUTION OF PROCEEDS THEREOF

And Now, comes the plaintiff, Your Petitioner, Alfred Abramson, the duly appointed

Executor of the Estate of Joseph Abramson, deceased, and petitions the Court pursuant to West

Virginia Codes §§55-7-6, 55-7-7 for the approval of a proposed settlement of the above-

captioned wrongful death action, and the distribution of the proceeds of the settlement, as

follows:

     1.      This action arises out of the death of the decedent, Joseph Abramson, on July 14,

2003 in a multi-vehicle collision that occurred in the westbound lanes of Interstate 64 near

Barboursville, Cabell County, West Virginia. At the time of the accident the decedent was

operating a vehicle in a westerly direction on Interstate 64, when traffic suddenly came to a stop

or virtual stop, apparently as a result of construction activities in the vicinity. The decedent

brought his vehicle to a stop in the right-hand lane on the bridge structure. Whereupon, the

defendant, David Bruce Small ("Small"), who was an employee of Laneko Engineering

Company ("Laneko"), was proceeding in a tractor-trailer also in the westbound lanes of

Interstate 64, some distance behind the decedent. Small was unable to bring the tractor-trailer to



a stop in a sufficient time to avoid a collision, whereupon the tractor-trailer operated by Small collided with a number of vehicles, including the vehicle occupied by the decedent. The decedent was killed in the accident.

2.     The Plaintiff/Petitioner, Alfred Abramson having been duly qualified as the Executor of the estate of the decedent, initially retained R. Edison Hill, Esquire of the law firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C., of West Virginia to represent him as plaintiff in an action to recover damages for the wrongful death of the decedent. Mr. Hill communicated notice of a claim, but did not file suit. Thereafter, plaintiff/petitioner, Alfred Abramson, discharged Mr. Hill, his law firm, and, subsequently, retained the services of David Batt, Esquire and the law firm of Lobman, Carnahan, Batt, Angelle & Nader. The instant action was filed. Mr. Hill has filed an attorney's charging lien in the instant action.

3.     During the course of this litigation the Plaintiff/Petitioner engaged in extensive discovery, engaged experts relative to liability and damages, including Dr. Jonathan Arden, a medical expert; Dr. Kenneth Boudreaux, an economist; and David Stopper, an accident reconstructionist in motor vehicle safety. Comprehensive reports have been produced by each expert.

4.     Following this discovery and as a result of the evidence developed as hereinabove set forth, the defendants, have admitted liability. Damages are, however, substantially contested.

5.     By agreement of the parties, mediation was conducted on March 18, 2005 at the offices of MAPS, a well known professional mediation firm in New Orleans, Louisiana. A proposed settlement of all claims, demands and causes of actions was reached at mediation. Under the terms of the proposed settlement and the mediation agreement, the defendants by and through their insurer, will pay the total, aggregate, sum of $2.2 million, less a credit for amounts

2

previously advanced for property damage, in no event less than $2,156,000.00, resulting in a present payment of $2,156,000.00 per the mediation agreement which stated, "St. Paul Travelers will pay 2.2 million dollars minus a credit for sums paid for property damages, handling of the decedent's body and other special damages paid to, or for the benefit or the plaintiffs, in no event will the settlement amount be less than $2,156,000.00." Said settlement is made in exchange for a release of all claims, demands and causes of actions arising out of or related in any way to the alleged wrongful death of the decedent.

6.     Your Petitioner, who is an attorney, based upon his own advice and the advice of his counsel as aforesaid, is of the view that the proposed settlement is fair and reasonable, for, *inter alia*, the following reasons:

a.     The amount of compensation is in excess of $2 million, which is substantial;

b.     The decedent, was 56-years old at the time of death, he was unmarried and there is no surviving spouse and/or issue. The sole beneficiaries entitled to recover are:

i.     His brother, Alfred Abramson, who is 63 years-old;

ii.     His sister, Carol Schudmack, who is 57-years old; and

iii.     His father, Aaron Abramson, who is 99-years old.

c.     All beneficiaries are *sui juris* and *compes mentis*, and agreed to the settlement;

d.     None of these beneficiaries were financially dependent upon the decedent;

e.     While liability in the instant matter was stipulated by the defendants, there remains considerable uncertainty as to the extent of damages, particularly,

3

as to any evidence of any conscious pain and suffering endured by the decedent;

f.    The amount of a jury award of damages is highly unpredictable, and might not exceed $2 million;

g.    Continuing litigation of this matter would involve substantial additional expense which would have to be reimbursed out of recovery and, therefore, would reduce any net proceeds available to the beneficiaries;

h.    Continuing this litigation and trial, would be extremely stressful to the beneficiaries;

i.    Continuing with this litigation is not likely to yield any substantially greater recovery, but will result in the accumulation of litigations expenses, which will diminish the net amount of proceeds available to the survivors of the decedent;

j.    The proposed settlement was reached through mediation conducted by an eminently qualified mediator, and Plaintiff/Petitioner believes and avers that the mediator viewed the settlement as fair and reasonable, as do well experienced trial counsel for both plaintiff and defendant, both of whom recommend Court approval; and

k.    Upon advise of qualified counsel, Your Petitioner is advised, believes and avers the settlement amount is well within the reasonable range of settlements in this type of action.

7.    For the foregoing reasons, Your Petitioner believes and avers that the benefits of the proposed settlement are substantial and there are no factors that militate against accepting the

4

proposed settlement. Therefore, Your Petitioner requests that this Court approve the proposed settlement and authorize him to execute a full and final release in this matter.

8.    Apart from the Estate hereinabove identified and the attorney(s) who under took representation on behalf of the Estate of Joseph Abramson, there are no other persons who are or may be entitled to share in the proceeds of the settlement of this matter.

9.    Your Petitioner proposes to distribute the gross proceeds of the settlement as follows:

a.    $ 19,867.94, to reimburse present counsel for costs advanced;

b.    $ 258,720.00, to be paid to present counsel as attorneys' fees based on a contingent fee agreement of 12% of the gross recovery;

c.    An as of yet undetermined amount, if any, based on quantum meriut and for reimbursement of fees to be paid for work undertaken by prior counsel, Edison Hill.

d.    The remainder of the proceeds to go to the Estate of Joseph Abramson.

10.    Your Petitioner believes, avers and represents to the Court that the foregoing distribution of the proceeds of the settlement is reasonable, and should be approved by the Court, since, among other things:

a.    The proposed attorneys' fees to be paid to present counsel based upon 12% of the gross proceeds of the settlement are reasonable and appropriate, given the excellent services of counsel, which led directly to a favorable settlement of the claims;

b.    The amounts to be distributed to each of the surviving beneficiaries of the decedent are substantial given debate as to whether the beneficiaries

5

would have enjoyed any economic benefits and includes an amount to compensate them for non-economic loss, grief, bereavement, and loss of guidance, love and companionship that they suffered by virtue of the death of the decedent;

11. For the foregoing reasons, Your Petitioner requests that the Court approve the settlement and the proposed distribution of proceeds of the settlement as hereinabove set forth.

WHEREFORE, Your Petitioner requests that this Court approve the proposed settlement of the above-captioned matter, authorize him to execute a full, final and complete release of all claims arising out of or related to the death of the decedent, further, approve the distribution of proceeds of the settlement as hereinabove set forth and determine what part of the proceeds, if any, are to be paid over to R. Edison Hill, Esquire for fees and costs advanced.

Respectfully Submitted,

By: _____
Alfred Abramson, as Executor of the
Estate of Joseph Abramson

By: _____
David Batt Esquire
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130

*Counsel for Plaintiff/Petitioner*

6

STATE OF LOUISIANA

PARISH OF ORLEANS

THIS CONTRACT OF EMPLOYMENT made and entered into by and between Alfred Abramson, individually and on behalf of the Estate of Joseph Abramson, Carol Schudmak and Aaron Abramson, referred to as "Clients", and David V. Batt of the law firm of Lobman, Carnahan, Batt, Angelle & Nader, hereinafter referred to as "Attorney".

WITNESSETH:

WHEREAS the said Client has a claim or claims arising out of an injury/death resulting from negligence, which occurred on July 14, 2003, in Cabell County, West Virginia on I-64 near Barboursville.

WHEREAS Clients desire the services of Attorney to represent Clients, in said claim, by conference, negotiation, suit, or otherwise:

NOW THEREFORE, Clients do hereby employ, and retain Attorney, for these purposes, and Attorney hereby binds and obligates himself to render these services required in the premises upon the following terms and conditions:

      1.    The Attorney is to receive as compensation for his services 12 per cent of whatever gross amount is collected.

      2.    Expenses are to be the responsibility of Client, but will be advanced by Attorney for Client's benefit.

      3.    This contract is subject to the additional conditions, to-wit:

Gross amount is defined as the full amount of any and all payments made by any and all parties through tender, settlement or judgment without reduction for the payment of any and all liens, including, but not limited to, any lien for services rendered by any attorney previously enrolled as counsel for the plaintiff(s).

In the event a portion and/or all of any settlement is structured, that is, where settlement funds are to be paid over a period of time, the attorney can, at his option, take his full fee in cash at any time when enough monies are available from settlement funds to satisfy all and/or a portion of his fee. It is hereby understood that the attorney is not required to wait until any/or all structured payments are made to the client before taking a portion and/or all of his fee as described in 1-2 above.

IT IS UNDERSTOOD AND AGREED between the parties that this contract is intended to and does hereby assign, transfer, set over and deliver unto Attorney as his fee for the representation of Client in said claim and/or claims, an interest in the claim and/or claims under the terms and conditions aforesaid, in accordance with the provisions of LA-R.S. 37:218.

IT IS FURTHER UNDERSTOOD AND AGREED between the parties that the claim and/or claims are not to be compromised without the written consent of the Attorney.

Whenever the word "Client" is used, it shall be construed to mean "Clients", and whenever the word "Attorney" is used, it shall be construed to mean "Attorneys".



THUS DONE AND SIGNED at New Orleans, Louisiana, in the presence of the undersigned competent witnesses on this 5 day of March , 2004.

WITNESSES:

_____

_____

Alfred   Abramson,   individually   and   as
executor for the estate of decedent, Joseph
Abramson, CLIENT

Carol Schudmak "CLIENT"

Aaron Abramson, "CLIENT"

DAVID V. BATT, ATTORNEY

# SAMUEL E. SCHUDMAK, III

### ATTORNEY AT LAW
### 1190 E. AIRLINE HWY
### LAPLACE, LA 70068

TEL. (504-259-6066)

FAX (985) 653-5590

Saturday, February 07, 2004

Mr. R. Edison Hill
Attorney at Law
500 Tracy Way
Charleston, West Virginia 25311

> Re: The Estate of Joseph Abramson; Carol
> Abramson Schudmak; Alfred Abramson,
> both individually and as Representatives
> of the Estate of Joseph Abramson and
> Aaron Abramson
>
> Vs.
>
> Travelers Insurance, et als
> Accident date: July 14, 2003

VIA FACSIMILE: 304-345-1519
Via E-mail: REHILL@HPCBD.com
Via: Federal Express

Dear Mr. Hill:

I know that you received my letter yesterday evening, via fax, wherein I informed you of the following:

1. That I was representing the above parties in connection with your firm's representation of them.

2. By that letter you had been discharged as their legal representative, effective immediately.

I was shocked to find out that you called my client directly, without my permission, to talk about this matter knowing full well that I am representing them and that you had been discharged.

I know that you told Alfred that you would rather talk to him than me, but right now, I'm all you've got!

Please address all correspondence to me at the above address.


EXHIBIT
C

Case 3:04-cv-00489 Document 78-1 Filed 05/08/05 Page 10 of 41 PageID #: 599

In addition you may feel free to call me if you have any further questions or need any other information.

Very truly yours,

Sam Schudmak, III

SES/bm
Cc:
Alfred Abramson
Aaron Abramson
Carol Abramson Schudmak

# ITEMIZED PROFESSIONAL SERVICES PROVIDED BY
## LAW FIRM OF HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.
### REGARDING ESTATE OF JOSEPH ABRAMSON

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 08/11/2003 | REH (Attorney R. Edison Hill) telephone call and office conference with Al Abramson and Carol Schudmak re: case, legal representation and evidence; letter to client Al Abramson re: Attorney-Client Agreement | 1.00 |
| 08/12/2003 | REH e-mail to/from Al Abramson re: representation and evidence; review accident report & file material; phone call with Investigator Gene Sigman re: evidence | 1.50 |
| 08/12/2003 | PLB (Legal Assistant Penny L. Bice) telephone call from client re: sent materials for car wreck | 0.25 |
| 08/13/2003 | REH telephone call with Barboursville Chief of Police, chief Meeks re: evidence; conference call with Sgt. Curt Tilley re: evidence & results of investigation; e-mail to Al Abramson re: findings; phone call with attorney Justin Morgan re: evidence and case strategy | 3.00 |
| 08/13/2003 | PLB meeting with R. Edison Hill & Curt Tilley re: reconstruction & photos of wreck | 0.50 |
| 08/13/2003 | DAS (Attorney Douglas A. Spencer) investigation and research of identities of attorneys representing other individual killed in collision | 0.50 |
| 08/14/2003 | REH review accident report; phone conference with Travelers Insurance claims rep; phone call to Travelers property damage claims rep; phone call to USAA claims rep; phone call with client re: status; conference call with attorney Justin Morgan represents Mullins family) re: case strategy; letter to insurance reps | 5.00 |
| 08/14/2003 | PLB meeting with Attorney Morgan, REH & DAS; open file | 0.75 |



EXHIBIT
1

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 08/14/2003 | DAS two telephone calls to Lexis re: treatise on commercial trucking; researched Travelers Insurance Company on Internet to get number for Agent; telephone call to Dave (the author) re: text on commercial trucking litigation; office conference with REH, PLB & Attorney Morgan re: Mullins death case; telephone call to company for DVD & Brochure | 2.25 |
| 08/15/2003 | REH conference with Gene Sigman re: investigation and re: acquiring wreckage (totalled car); phone call with Kitty Marra of Travelers Insurance; phone call with office of David Stopper, Truck Case Expert; e-mail to Justin Morgan, attorney for Mullins family | 3.75 |
| 08/15/2003 | PLB telephone call & fax Medical Examiner's office re: autopsy report | 0.25 |
| 08/16/2003 | REH letter to Traveler's claim reps Larry Hirschorn and Kitty Marra; letter to Attorney Ford Francis re: evidence, insurance coverage; review contract with David Stopper, expert | 2.50 |
| 08/18/2003 | REH telephone call with Barry Hill, attorney re: case; phone call with client re: status; phone call with Attorney Justin Morgan re: evidence; phone call with Gene Sigman re: vehicle recovery; phone call & letter to Chris Hertel, USAA, review TV News video | 4.25 |
| 08/19/2003 | PLB telephone call from Gene Sigman & e-mail to REH re: additional information regarding wreck | 0.25 |
| 08/20/2003 | REH review 590 photographs; letter to David Stopper with contract and retainer fee; e-mail Travelers claim rep re: our expert viewing wrecked tractor & getting black box information | 3.00 |
| 08/21/2003 | REH review David Stopper material re: truck evidence preservation; phone call with Attorney Wayne VanBibber re: his claim | 2.00 |
| 08/24/2003 | PLB prepare letter to Chief Meeks | 0.25 |
| 08/26/2003 | SBH (Attorney Sandra B. Harrah) e-mail to Woody Hill | 0.25 |
| 08/28/2003 | PLB telephone call from Lee Hamilton; e-mail to R. Edison Hill re: same | 0.25 |

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|------|-------------------------------|--------------|
| 09/03/2003 | REH telephone call with office of Attorney Wayne VanBibber | 0.25 |
| 09/04/2003 | REH conference with James Woody Hill; review file; letter to client with 10K from USAA Insurance; letter to David Stopper with more complete accident report; phone call with Gene Sigman re: evidence | 2.25 |
| 09/05/2003 | REH e-mail Al Abramson re: med pay; phone call with Gene Sigman re: evidence; prepare affidavit for Sgt. Tilley re: seatbelt | 0.75 |
| 09/08/2003 | PLB telephone call from Gene Sigman re: info about construction contractor; e-mail to REH re: same | 0.50 |
| 09/09/2003 | PLB e-mail from REH re: getting info on Weavertown & PSI | 0.25 |
| 09/10/2003 | REH letter to Al Abramson re: USAA car compensation proposal; e-mail client re: same; phone call with James W. Hill re: research; conference with Nancy C. Hill re: case strategy | 1.25 |
| 09/11/2003 | PLB telephone call from Gene Sigman re: needing clarification re: orange cones; e-mail to REH re: same; telephone call from David Stopper's office re: tractor inspection; e-mail to REH re: same | 0.25 |
| 09/15/2003 | REH telephone call with Gene Sigman re: WVDOH involvement | 0.25 |
| 09/16/2003 | REH e-mail to Travelers Insurance re: excess coverage | 0.25 |
| 09/17/2003 | REH correspondence with Larry Hirschorn of Travelers Insurance re: excess insurance | 0.25 |
| 09/17/2003 | PLB e-mail from REH re: insurance limits confirmation | 0.25 |
| 09/18/2003 | PLB telephone call from Ray Brooks wanting to inspect vehicle seat belts; telephone call to Gene Sigman re: meeting Brooks; e-mail to REH re: same | 0.25 |
| 09/23/2003 | PLB telephone call from & to David Stopper re: dates to inspect trailer; telephone call to & from Cindy (legal assistant to Attorney Ford Francis); e-mail to REH re: same | 0.25 |
| 09/24/2003 | PLB telephone call from Julie (Stopper) re: scheduling trailer inspection; telephone call to & from Cindy (Francis) re: same; e-mail to REH re: same; fax info to David Stopper | 0.25 |

-3-

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 09/28/2003 | REH telephone call with Gene Sigman re: truck driver not being indicted by Cabell County grand jury; e-mail co-counsel re: same; e-mail client Joe Abramson re: same | 1.00 |
| 09/30/2003 | REH review draft of complaint; e-mail client re: tax returns for decedent | 1.25 |
| 10/01/2003 | PLB review accident report for missing narrative re: truck driver | 0.25 |
| 10/01/2003 | REH telephone call to Mike Brookshire re: evidence; conference with Nancy C. Hill re: complaint and settlement strategy; phone call to Al Abramson re: evidence | 1.25 |
| 10/01/2003 | DAS telephone call to Gene Sigman re: narrative in report | 0.25 |
| 10/02/2003 | REH telephone call with Mike Brookshire and George Barrett re: damage calculations; conference with PLB re: case | 0.75 |
| 10/02/2003 | PLB discussion with REH re: documents from Marshall University to get | 0.25 |
| 10/06/2003 | DAS conference call with PLB and Gene Sigman re: notes & police report | 0.25 |
| 10/06/2003 | PLB conference call with DAS and Gene Sigman re: police officer's narrative | 0.25 |
| 10/07/2003 | PLB telephone call to & from Trish (Stopper's office) re: rescheduling inspection; telephone call from Cindy (Francis) re: same | 0.50 |
| 10/08/2003 | REH telephone call with James Woody Hill and David Stopper re: truck inspection; phone call with office of defense counsel | 0.75 |
| 10/08/2003 | PLB telephone call to Cindy (Francis) re: confirmation of time for inspection; telephone call to Stopper's office re: same; telephone call from Stopper re: inspection restrictions; conference call with REH & Stopper re: same; conference call with REH & Stopper & Cindy (Francis paralegal) re: same; telephone call from & to Woody Hill re: inspection still on; telephone call to Stopper re: insurance company will not lift restrictions; e-mail to Woody Hill re: Stopper hotel accommodations | 0.75 |

-4-

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 10/09/2003 | PLB discussion with REH re: next steps in case | 0.25 |
| 10/13/2003 | REH review evidence | 0.50 |
| 10/14/2003 | CMB (Attorney C. Micheal Bee) telephone call to Sgt. Tilley re: evidence | 0.25 |
| 10/14/2003 | PLB e-mail from REH re: ordering tax returns & employment records | 0.25 |
| 10/14/2003 | REH review file; letter to client re: title; review new case law re: conscious pain & suffering | 0.75 |
| 10/15/2003 | PLB prepare employment records authorization; telephone call to Marshall University re: employment records; Internet research on PSI & Weavertown Environmental Group; telephone call to Ohio SOS re: same companies; discussion with REH re: same | 1.50 |
| 10/15/2003 | SBH telephone call with Sgt. Tilley; e-mail to REH | 0.25 |
| 10/16/2003 | SBH meeting with Sgt. Tilley; review of photos; e-mail to REH | 1.50 |
| 10/21/2003 | PLB e-mail to REH re: employment records authorization; response e-mail from client re: same; requested employment records | 0.25 |
| 10/30/2003 | PLB e-mail to REH re: message from Gene Sigman re: meeting with Vanbibber | 0.25 |
| 10/31/2003 | REH receive & review autopsy report; e-mail client re: same & send autopsy report to him | 0.50 |
| 11/03/2003 | REH two telephone calls to Gene Sigman re: interview with attorney Wayne VanBibber's client re: evidence | 0.50 |
| 11/07/2003 | PLB discussion with REH re: documents to Brookshire for damage calculations | 0.25 |
| 11/10/2003 | PLB discussion with REH re: Brookshire | 0.25 |
| 11/10/2003 | REH review file; letter to USAA with car title | 0.50 |
| 11/11/2003 | PLB prepare Brookshire info guidesheet; reviewing employment records from Marshall University | 1.00 |

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 11/25/2003 | REH review forensic economist report; phone call with David Stopper, trucking expert, re: evidence | 1.00 |
| 12/02/2003 | REH correspond with David Stopper Truck expert re: evidence; correspond with co-counsel; correspond with Al Abramson client | 2.00 |
| 12/09/2003 | REH telephone call with Gene Sigman re: evidence and witness to death of decedent; receive and review opinion letter (preliminary) from expert David Stopper | 1.00 |
| 12/09/2003 | PLB telephone call from Gene Sigman re: found other witness's name--going to interview; email to REH re: same | 0.25 |
| 12/16/2003 | REH review photos of deceased; phone call with Gene Sigman re: witness Robert E. Peters; phone call with Attorney Randall Veneri re: Mr. Peters | 2.00 |
| 12/17/2003 | REH telephone call with attorney Tony Venere re: his client, Robert Peters; phone call to Gene Sigman re: same | 0.50 |
| 12/18/2003 | REH review complaint & revise same | 1.50 |
| 12/19/2003 | REH review & revise demand letter | 1.00 |
| 12/19/2003 | PLB review and revise letter to adjuster | 0.25 |
| 12/22/2003 | REH revise demand letter; e-mail client re: evidence | 1.75 |
| 12/22/2003 | PLB preparation of package for adjuster | 1.50 |
| 12/24/2003 | REH telephone call to Traveler's Insurance | 0.25 |
| 12/29/2003 | REH telephone call with claims rep Larry Hirschom re: settlement and transfer of claim to different adjuster; e-mail co-counsel re: same | 0.50 |
| 01/06/2004 | SBH discussion with REH; instructions to Legal Assistant Leslie M. Koepsel re: Sgt. Tilley and his assignment | 0.25 |
| 01/06/2004 | REH e-mail to claims rep re: deadline; conference with SBH re: evidence & need to contact Sgt. Tilley; e-mail to client re: salvage title | 0.75 |
| 01/13/2004 | SBH telephone call with Sgt. Tilley; discussion with REH re: evidence | 0.50 |

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 01/13/2004 | REH receive & review letter from Travelers Insurance; review file; e-mail Al Abramson for info; conference with SBH re: accident report & need to ask Cabell Co. prosecutor to charge truck driver | 2.00 |
| 01/14/2004 | REH e-mail to Mike Warren, attorney with Travelers, re: mediation and info requested; phone call to Attorney Ford Francis re: mediation; e-mails to him re: same | 1.50 |
| 01/15/2004 | PLB telephone call from and to Tina re: rescheduling conference call with Ford Francis | 0.25 |
| 01/19/2004 | PLB telephone call from Ford Francis' office re: changing mediation date; discussion with REH re: same; emails from REH re: Joe's treating physicians; email from REH re: email to client regarding mediation | 0.25 |
| 01/19/2004 | REH telephone call with defense attorney re: mediation; e-mail client re: same &  re: identity of decedent's primary physician | 0.75 |
| 01/20/2004 | PLB e-mail from and discussion with REH re: pharmacies and primary care physician; email to client re: hotel accommodations for mediation; reviewed file for health insurance information | 0.50 |
| 01/20/2004 | REH telephone call with defense attorney re: mediation date; e-mail to client re: same and evidence needed | 0.50 |
| 01/21/2004 | PLB telephone call to WV PEIA re: primary care physician information; prepared letter to Keith Huffman re: same | 0.50 |
| 01/21/2004 | REH telephone call with Al Abramson re: mediation and issues re: case & value of case; review mediation issue in file & prepare with co-counsel | 1.25 |
| 01/22/2004 | PLB e-mails from REH re: prepare packet for adjuster and running JVR; response email from client re: hotel for mediation | 0.25 |
| 01/22/2004 | REH telephone call with Attorney Lee Hamilton re: Mullins claim for wrongful death and meeting time; review Mullins complaint | 1.50 |
| 01/23/2004 | PLB two e-mails from REH re: his e-mail to Lee Hamilton | 0.25 |
| 01/26/2004 | PLB e-mail from REH re: client found doctor name; request medical records from Dr. Meadows | 0.50 |

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 01/29/2004 | PLB telephone call to Michael Harmon of PEIA re: primary care physician | 0.25 |
| 01/30/2004 | REH legal research re: punitive damages; phone call to Lee Hamilton, attorney, re: evidence | 1.00 |
| 02/02/2004 | PLB telephone call from Lee Hamilton re: upcoming mediation; email from REH re: meeting with Lee Hamilton | 0.25 |
| 02/02/2004 | REH telephone call with Lee Hamilton re: case strategy, evidence and sharing of information of mutual benefit | 3.50 |
| 02/03/2004 | REH legal research re: damages in wrongful death claim | 1.50 |
| 02/05/2004 | PLB telephone call to Dr. Meadows' office re: following up medical records request | 0.25 |
| 02/07/2004 | REH receive & review letter faxed from Attorney Sam Schudmak re: no further contact with Al Abramson; review file; letter faxed to Atorney Schudmak re: termination of attorney-client relationship; letters to David Stopper, Mike Brookshire, Gene Sigman, Mike Warren (Travelers Insurance); Atorney Avrum Levicoff and Abbott's Wrecker service re: this firm no longer representing claim for Estate of Joseph Abramson; receive & read e-mail from Al Abramson | 2.50 |
| 02/12/2004 | PLB review Dr. Meadows' medical records | 0.25 |
| 02/13/2004 | REH telephone call with Attorney Avrum Levicoff re: termination of Attorney-Client Agreement and estate being represented by Attorney Sam Schudmak; letter to Attorney Schudmak with invoices & bills for expenses incurred | 1.00 |
| 02/17/2004 | PLB returned call to Allison Stackpole re: our letter to PEIA | 0.25 |
| 02/26/2004 | REH e-mail & letter to Samuel Schudmak re: expenses owed & fee agreement | 0.25 |
| 03/01/2004 | REH prepare correspondence re: expenses & termination of contract; phone call to Attorney Tom Flaherty re: scheduled mediation | 0.25 |
| 03/02/2004 | REH telephone call with Tom Flaherty re: mediation | 0.25 |

-8-

### ITEMIZED PROFESSIONAL SERVICES PROVIDED BY
### LAW FIRM OF WINTER JOHNSON & HILL PLLC
### REGARDING ESTATE OF JOSEPH ABRAMSON

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 09/02/2003 | JWH (Attorney James W. Hill) perform legal research on highway safety, automobile accidents, vehicle safety; review documents in case file | 6.00 |
| 09/03/2003 | JWH review of case file regarding evidence and pertinent trucking regulations; conference with REH (Attorney R. Edison Hill) | 2.50 |
| 09/04/2003 | JWH conference with REH regarding legal research and applicable statutes and regulations regarding commercial trucking | 4.25 |
| 09/10/2003 | JWH research regarding local defendants; assist in drafting of Complaint | 5.00 |
| 09/16/2003 | JWH reveiw evidence and organize file | 0.50 |
| 09/24/2003 | JWH assist in drafting of Complaint | 2.25 |
| 09/29/2003 | JWH office conference with NCH regarding issues in draft Complaint and revisions regarding the same | 0.25 |
| 09/30/2003 | JWH legal research regarding causes of action and continued drafting of Complaint | 5.75 |
| 09/30/2003 | NCH (Attorney Nancy C. Hill) review of police report, Public Service Commission report, witness statements, correspondence regarding insurance coverage and document request; work on draft Complaint; legal research regarding unfair settlement practices; conference with REH  regarding case strategy | 5.00 |
| 10/01/2003 | JWH review of evidence in file; phone conference with REH regarding case strategy | 1.25 |
| 10/03/2003 | JWH legal research regarding damages available under West Virginia law | 0.75 |
| 10/08/2003 | JWH office conference with REH regarding upcoming meeting with trucking expert, David Stopper; review David Stopper file material | 1.00 |

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|---|---|---|
| 1 0/08/2003 | NCH legal research on federal regulations regarding motor carriers; review correspondence regarding examination of truck cab by expert, David Stopper | 1.00 |
| 1 0/09/2003 | JWH meeting with trucking expert, David Stopper; accompany-ing David Stopper for inspection of tractor, wrecked and damaged in fatal accident | 3.00 |
| 1 0/09/2003 | NCH telephone conference with REH regarding results of inspection conducted by David Stopper | 0.50 |
| 1 0/21/2003 | JWH review of pertinent case law regarding damages applicable to cause of action | 1.25 |
| 1 0/22/2003 | JWH legal research regarding applicable damages | 1.00 |
| 1 1/03/2003 | NCH conference with JWH regarding evidence and case strategy | 0.50 |
| 12/16/2003 | NCH work on drafting Complaint | 2.00 |
| 12/19/2003 | NCH work on draft demand letter; revisions to draft Complaint | 3.00 |
| 02/05/2004 | JWH office conference with attorneys involved in *Mullins* case | 5.75 |
| 02/05/2004 | NCH meeting with attorneys and investigator in *Mullins* case at the office of REH and discuss evidence and case strategy | 2.00 |
|  | TOTAL | 54.50 |

-2-

| DATE | DESCRIPTION OF WORK PERFORMED | HOURS WORKED |
|------|-------------------------------|--------------|
| 04/15/2004 | PLB telephone call from Detective Jim Copley re: phone call from persons from Louisiana wanting photos; discussion and email to REH re: same | 0.25 |
| | TOTAL | 91.75 |

02/FEB. 6. 2004 5:37PM Winter Johnson & Hill PLLC ; #970; Page 2

UNCLE_SAMS_INTEL          NO. 3078   P.P. 2/02

### SAMUEL E. SCHUDMAK, III
Attorney at Law
1190 E. Airline Highway
Laplace, Louisiana 70068

Telephone: 504-259-6066
Fax: 985-653-5590
E-mail:
SamSchudmak@eatel.net

Mr. R. Edison Hill
Attorney at Law
500 Tracy Way
Charleston, West Virginia 25311

Re: The Estate of Joseph Abramson;
Carol Abramson Schudmak; Alfred
Abramson, both individually and as
Representatives of the Estate of
Joseph Abramson and Aaron
Abramson

Vs.

Travelers Insurance, et als
Accident date: July 14, 2003

Via fax: 304-345-1519
Via E-mail: REHILL@HPCBD.com
Via: Federal Express

Dear Mr. Hill:

As you already know, I represent the above parties insofar as you and your firm's representation of them, in all causes of action arising out of Joseph Abramson's death on July 14, 2003.

After speaking with you yesterday evening, it is obvious that we cannot come to terms as to your representation of them in the future.

By this letter I am informing you on behalf of the above parties that you and your firm are discharged from their representation, effective immediately.

Please prepare a statement of your out of pocket costs, plus an itemization of your fees based on "quantum merit". In addition, would you please make the file and other



EXHIBIT
E

information available for the Abramsons or their representative to pick up from your office in the near future.

Carol and Alfred have had nothing but nice things to say about you and your firm since meeting you and appreciate your courtesies.

I tried to schedule a time to come see you in person as it is rather awkward for me to write you a letter like this without ever having met you. However, it seems that it takes nearly a whole day of flying to get there, and another to get home.

I can assure you that your discharge was nothing personal.

I would appreciate it if you would forward my name and phone number to the representatives from Travelers or furnish me with their information.


Very truly yours,

Sam Schuldmak, III


SES/bm
Cc:
Alfred Abramson
Aaron Abramson
Carol Abramson

## LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

A PROFESSIONAL CORPORATION

BURT K. CARNAHAN
DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER
JOSEPH M. MESSINA
TARA L. MASON

BRANT J. CACAMO
BRADLEY S. GROCE
PAMELA K. RICHARD
ERIC B. BERGER

ATTORNEYS AT LAW

400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3245

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

WWW.LCBA-LAW.COM

EDWARD P. LOBMAN (1941-2004)

RACHEL A. MEESE
W. REED SMITH
EDWARD F. RUDIGER, JR.
JAMES J. YOUNG, IV
RUDOLPH F. LEHRER
RYAN G. DAVIS
BRANDIE L. MENDOZA

WRITER'S E-MAIL ADDRESS:
DVB@LCBA-LAW.COM

February 23, 2005

R. Edison Hill
Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261

> RE:   *Alfred Abramson, individually, and on behalf of the*
> *Estate of Joseph Abramson, Carol Schudmak, and*
> *Aaron Abramson*
> Our File # 500.04-8167

Dear Mr. Hill:

We are in receipt of your Notice of Charging Lien regarding payment for legal services rendered prior to our involvement in the above captioned matter. We are hopeful that we can amicably resolve the matter of your lien without the necessity of a court hearing.

Our research indicates that, in West Virgina, you are entitled to quantum meruit as outlined in the cases of *Statler v. Dodson*, 466 S.E.2d 497 (W.Va. 1995) and *Hardman v. Snyder*, 393 S.E. 2d 672 (W.Va. 1990). In *Hardman*, the West Virginia Supreme Court of Appeals cited the well-established rule:

> "Where an attorney has been discharged, <u>without fault on his part</u>, from further services in a suit just begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered; and in the absence of evidence of the reasonable value of such services, no recovery can be had." *Id (emphasis added)..*

EXHIBIT
E

In *Hardman*, the Court denied any recovery to the former-plaintiff attorney in that case. The Court noted that the attorney failed to provide any specific itemization of how his time was actually spent. The Court noted that the attorney failed to provide any evidence as to the specific work performed by him and the time required to complete these tasks. The Court held that a summary of total hours expended and the rate per hour spent working were insufficient to justify any award to the attorney.

To date, the Hill firm has only provided a brief list of expenses incurred for administrative costs and retention of experts. Consequently, we would request that you provide us with a settlement demand and an invoice in compliance with *Hartman* so that we may evaluate the reasonableness of your quantum meruit demand and attempt amicable resolution of this matter. To show our good faith and interest in an expedited resolution, we will pretermit any discussion of whether your discharge was "without fault."

Should you have any questions or comments, please feel free to contact me.

Sincerely,

DAVID V. BATT
RACHEL A. MEESE

DVB/RAM

## LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

BURT K. CARNAHAN
DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER
JOSEPH M. MESSINA
TARA L. MASON

BRANT J. CACAMO
BRADLEY S. GROCE
PAMELA K. RICHARD
ERIC B. BERGER

400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3245

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

WWW.LCBA-LAW.COM

EDWARD P. LOBMAN (1941-2004)

RACHEL A. MEESE
W. REED SMITH
EDWARD F. RUDIGER, JR.
JAMES J. YOUNG, IV
RUDOLPH F. LEHRER
RYAN G. DAVIS
BRANDIE L. MENDOZA

WRITER'S E-MAIL ADDRESS:
DVB@LCBA-LAW.COM

March 14, 2005

R. Edison Hill
Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261
<u>CERTIFIED MAIL #7001 2510 0004 6343 9946</u>
<u>RETURN RECEIPT REQUESTED</u>

RE:    ***Alfred Abramson, individually, and on behalf of the
Estate of Joseph Abramson, Carol Schudmak, and
Aaron Abramson***
Our File # 500.04-8167

Dear Mr. Hill:

We are in receipt of your Notice of Charging Lien regarding payment for legal services rendered prior to our involvement in the above captioned matter. We are hopeful that we can amicably resolve the matter of your lien without the necessity of a court hearing.

Our research indicates that, in West Virgina, you are entitled to quantum meruit as outlined in the cases of *Statler v. Dodson*, 466 S.E.2d 497 (W.Va. 1995) and *Hardman v. Snyder*, 393 S.E. 2d 672 (W.Va. 1990). In *Hardman*, the West Virginia Supreme Court of Appeals cited the well-established rule:

> "Where an attorney has been discharged, <u>without fault on his part</u>, from further services in a suit just begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered;



and in the absence of evidence of the reasonable value of such services, no recovery can be had." *Id* (emphasis added)..

In *Hardman*, the Court denied any recovery to the former-plaintiff attorney in that case. The Court noted that the attorney failed to provide any specific itemization of how his time was actually spent. The Court noted that the attorney failed to provide any evidence as to the specific work performed by him and the time required to complete these tasks. The Court held that a summary of total hours expended and the rate per hour spent working were insufficient to justify any award to the attorney.

To date, the Hill firm has only provided a brief list of expenses incurred for administrative costs and retention of experts. Consequently, we would request that you provide us with a settlement demand and an invoice in compliance with *Hartman* so that we may evaluate the reasonableness of your quantum meriut demand and attempt amicable resolution of this matter. To show our good faith and interest in an expedited resolution, we will pretermit any discussion of whether your discharge was "without fault."

Should you have any questions or comments, please feel free to contact me.

Sincerely,

DAVID V. BATT
RACHEL A. MEESE



The Law Firm of

# HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

R. Edison Hill*
James C. Peterson‡
W. Kent Carper
C. Michael Bee
Harry G. Deitzler
Sandra Brenneman Harrah
Douglas A. Spencer
C. Sue Holvey

NorthGate Business Park ◊
500 Tracy Way
Charleston, WV 25311-1261

(304) 345-5667 ©
Fax (304) 345-1519

**Writer's E-mail Address:**
rehill@hpcbd.com

March 30, 2005

**VIA PRIORITY OVERNIGHT FED EX**
David V. Batt, Esq.
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130-3245

Re:    *ALFRED ABRAMSON, et al. v. BERGEY'S INC., et al.*
Civil Action No. 3:04-CV-00489 (SDWV)

Dear Mr. Batt:

I am writing in response to your letter dated March 14, 2005. (Copy enclosed for your ease of reference.)

Based upon your characterization of the cited Statler and Hardman cases, you appear to be advancing the position that itemization of hours is the sole method in reaching a determination of the "reasonableness of [my firm's] quantum meriut [sic] demand[1]." In response to such position, I have enclosed and request that you review the more recent decision of the Supreme Court of Appeals of West Virginia in the case of Kopelman and Associates, L.C. v. Collins, 196 W. Va. 489, 473 S.E. 2d 910 (1996). As you will see from review of the Kopelman decision, West Virginia's highest Court has expressly *rejected* your position:

---

[1]Your reference to "quantum meriut [sic] demand" (March 14, 2005, letter, p. 2), is actually a misnomer.

As explained by the Court in the case of Kopelman and Associates, L.C. v. Collins, 196 W.Va. 489, 473 S.E. 2d 910 (1996), recovery in *quantum meruit* is recovery of "as much as deserved" under an *"implied contract* to pay compensation as reasonable value of services rendered." See Footnote 11, 196 W.Va. at 497, 473 S.E. 2d at 918 (emphasis added).

My firm's demand for belated reimbursement of expenses, and payment of reasonable attorneys' fees upon resolution of the wrongful death claim, is not based upon "implied contract" – but rather, **is based upon Paragraph VII of the written contract entered into between my law firm and Mr. Alfred Abramson on August 11, 2003**. (See August 11, 2003, contract, copy enclosed for your ease of reference.) However, the terms of the August 11, 2003 contract are certainly consistent with West Virginia law relating to the determination of a *quantum meruit* fee.

*CERTIFIED CIVIL TRIAL
SPECIALIST BY: NATIONAL
BOARD OF TRIAL ADVOCACY

◊ OFFICES ALSO IN MORGANTOWN, WV

‡CERTIFIED CIVIL TRIAL
SPECIALIST BY: NATIONAL
BOARD OF TRIAL ADVOCACY
LICENSED ALSO MINN. & OHIO



EXHIBIT H

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
March 30, 2005
Page 2

Although the method of multiplying the number of hours spent on the case by a billable hourly rate is perhaps the easiest and most clear-cut way to resolve disputes over compensation, it does not necessarily produce a fair and just result to the parties. Indeed, this method could result in either under- or over-compensation to the discharged law firm. Other factors must be considered in conjunction with the amount of hours spent on a case to determine what is the reasonable value of services rendered.

\* \* \* \* \*

In light of *Aetna*[2] and *Stafford*[3], it is clear we have recognized there are a variety of factors beyond the amount of hours spent on a case which should be taken into account when calculating attorney's fees.

196 W. Va. at 497; 498, 473 S.E.2d at 918; 919.

The <u>Kopelman</u> Court further set forth, and discussed in detail, the "variety of factors beyond the amount of hours spent on a case" which should be taken into account:

1) the time and labor required;
2) the novelty and difficulty of the questions;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) the customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation, and ability of the attorney;
10) the undesirability of the case;
11) the nature and length of the professional relationship with the client; and
12) awards in similar cases.

196 W. Va. at 500, 473 S.E.2d at 921.

---

[2]<u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 176 W.Va. 190, 342 S.E. 2d 156 (1986).

[3]<u>Stafford v. Bishop</u>, 98 W.Va. 625, 127 S.E. 501 (1925).

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
March 30, 2005
Page 3

The <u>Kopelman</u> Court specifically addressed the factual circumstance in which an attorney is prematurely discharged by the client *without cause* -- as undeniably occurred here [4] -- stating:

> Under West Virginia law, whether and how to compensate a lawyer when a contingent fee contract is prematurely terminated depends on whether the lawyer was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent.  A lawyer discharged by the client without cause can recover on the contingent fee contract or in *quantum meruit*

196 W.Va. 489, 495 - 96, 473 S.E. 2d 910, 916 - 17 (1996) .

Lastly, the Court in <u>Kopelman</u> explained that in a case, such as the instant case, in which the parties have voluntarily entered into a written contingency fee contract which explicitly "provides for the type of termination involved in the particular case" -- the "best guarantee of reasonableness" is determined by the contract itself:

> Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay which usually is determined by looking at the contract.  To be specific, courts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client. However, recovery on a contract is permitted only when the contract explicitly provides for the type of termination involved in the particular case.

196 W. Va. at 496, 473 S.E.2d at 917, Footnote 7.

Accordingly, based upon <u>Kopelman</u> (and numerous other decisions of the Supreme Court of Appeals of West Virginia which are cited therein), various factors -- including of course the explicit terms of the August 11, 2003, contract itself [5] – must be considered by the Court in determining an

---

[4] The record in this case will clearly demonstrate that my law firm was discharged *without cause*. Accordingly, the statement [set forth in your March 14, 2005, letter, at page 2], "[t]o show our good faith and interest in an expedited resolution, we will pretermit any discussion of whether your discharge was 'without fault'" – actually demonstrates the opposite. I am confident that no *credible evidence* exists, or will ultimately be produced in this matter, which would support a finding that my law firm was discharged other than *without cause*.

[5] The August 11, 2003, contract was negotiated, and executed, by Mr. Alfred Abramson --
(continued...)

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
March 30, 2005
Page 4

award of reasonable attorneys' fees due and owing to my law firm for legal services undeniably provided.

As to the August 11, 2003, contract -- surely you are aware that the contract *explicitly provides* as follows as to the method and measure of payment for both reimbursement of expenses and fair compensation for the substantial legal services provided by my law firm during the period August 11, 2003, to February 2004:

> If the Client discharges the Attorney, (a) the Attorney will be entitled to reimbursement of expenses, regardless of whether the claims covered by this Agreement produce any money[6] , and (b) the Attorney will be entitled to fair compensation for the Attorney's work if there is ultimately a recovery on the claim. Fair compensation is defined as the part of the contingent fee that best represents the contribution made and risk assumed by the Attorney relative to the total of all contributions and risks viewed retrospectively as of the resolution of the claims covered by this Agreement.

(Paragraph VII, August 11, 2003, contract, copy enclosed.)

Lastly, the record of this case clearly demonstrates that my law firm expended considerable effort and expenses in order to fully investigate and prepare this case for mediation or, should mediation fail, litigation -- and the fruits of these efforts and expenses are readily apparent by reviewing the pleadings and discovery ultimately filed in the case. As set forth in the Attorney's Lien filed herein, during the period August 11, 2003, to February 2004, my firm 1) expended $34,651.70 for litigation expenses; 2) retained Mr. H. E. Sigman to conduct a thorough investigation as to liability and damages (who you subsequently disclosed as a fact witness in Plaintiff's "Rule

---

[5](...continued)
himself an attorney.  As the <u>Kopelman</u> Court underscored:  "if the contract is specific as to the method and measure of fee payment, **the contract itself is controlling**."  196 W. Va. at 497, 473 S.E.2d at 918, Footnote 12.

[6]Your failure to timely reimburse litigation expenses in the amount of $34,651.70 is indefensible and particularly egregious for several reasons:  1) the written contract provides for prompt reimbursement of such expenses regardless of the final outcome of the claim; 2) such expenses have been completely documented; 3) the reasonableness and necessity of such expenses has never been disputed; and 4) such expenses primarily include payment of investigative and expert fees which you, as current counsel, have utilized as the basis for the current litigation. See plaintiff's "Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE" on October 12, 2004.

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
March 30, 2005
Page 5

26(a)(1) and 2(a/b) INITIAL DISCLOSURE" on October 12, 2004) ; 3) retained trucking expert David A. Stopper and Stopper & Associates (Mr. Stopper's report, dated December 9, 2003, was filed by you as an attachment to Plaintiff's "Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE" on October 12, 2004);  4) retained economist Michael L. Brookshire, Ph.D. (Mr. Brookshire's report dated November 25, 2003, was also filed as an attachment to Plaintiff's "Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE" on October 12, 2004); 5) obtained an Affidavit of Sergeant Curtis Tilley, West Virginia State Police, dated September 22, 2003 (which was also filed as an attachment to Plaintiff's "Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE" on October 12, 2004); 6) preserved and arranged for inspection by Mr. Stopper of the tractor-trailer operated by defendant David Bruce Small; 7) preserved and arranged for inspection by Mr. Stopper of the vehicle operated by the deceased Joseph Abramson; 8) arranged for the preservation of all records, logs, etc.  in the possession of defendants Laneko Engineering Company relating to the tractor-trailer and the driver thereof; 9) identified all available insurance coverage; 10) identified proper parties defendant as reflected in the draft complaint provided to plaintiff Alfred Abramson and Mr. Schudmak;  10) expended considerable time and effort in obtaining first party insurance proceeds for the benefit of the Estate of Joseph Abramson, without expectation of a fee [$5,000 med pay (funeral expenses) collected from USAA; $25,000 from USAA as a result of submitting an affidavit of Sergeant Tilley who found Mr. Abramson's body in the care and opined that in fact he had been properly restrained; and $9,024.25 from USAA property loss]; and 11) drafted a complaint (several paragraphs of which appear verbatim in the complaint filed in this action, see part or all of the following paragraphs: 6, 7, 8, 12, 13, 14, 15, 16, 18, 23, 24, 26, 27, and 28), and other legal services performed during the period August 11, 2003 to and including February, 2004.

In light of the August 11, 2003, contract coupled with the well settled, West Virginia law outlined for you in this letter (and set forth in the Notice of Charging Lien previously filed in this matter), in order for my firm to submit a "settlement demand" as you have requested in your March 14, 2005, letter **this wrongful death claim must first be resolved.**  Please advise immediately as to the status of the mediation/settlement negotiations which have occurred between the parties; and, if the case has been settled, please advise as to 1) the amount of the total settlement and 2) the amount of attorneys' fee recoverable under the terms of the settlement. In addition, please provide documentation supporting the settlement amount and recoverable attorneys' fee, including but not limited to the attorney-client agreement(s) under which any such fee is claimed.  **Upon receipt of this information and documentation, my firm will promptly extend a demand for settlement as requested.**

As to your request for itemization of time and services performed by my law firm, as noted in the preceding paragraphs, I agree that such itemization by **each attorney/law firm claiming any part of the attorneys' fee in this case** is certainly relevant to **the Court's determination** as to the appropriate and reasonable attorneys' fee to be proportionally awarded to each lawyer/firm (see

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
March 30, 2005
Page 6

Factor #1). Accordingly, should this matter proceed to hearing before Judge Chambers, I would expect that documentation reflecting the respective hours expended by **all attorneys/firms claiming entitlement to any part of the fee in this case** would be exchanged by agreement -- or by Court order if necessitated -- prior to any such hearing. Additional information which should likewise be exchanged/produced prior to any such hearing would include information/evidence relating to the respective attorneys' 1) skill in litigating wrongful death claims and in litigating claims with similar facts and legal issues as the instant claim (see Factor # 3); 2) experience, reputation and ability (see Factor #9); 3) the preclusion of other employment by the attorney due to acceptance of the case (see Factor #4); and such other information as may be deemed by the parties to be relevant to the Court's determination.

Thank you for your attention to this matter, and I look forward to receiving the requested information as soon as practicable.

Very truly yours,

R. Edison Hill

REH/plb
Enclosures
cc: Nancy C. Hill, Esq.

# LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

### A PROFESSIONAL CORPORATION

BURT K. CARNAHAN
DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER
JOSEPH M. MESSINA
TARA L. MASON

BRANT J. CACAMO
BRADLEY S. GROCE
PAMELA K. RICHARD
ERIC B. BERGER

### ATTORNEYS AT LAW

**400 POYDRAS STREET**
**SUITE 2300**
**NEW ORLEANS, LOUISIANA 70130-3245**

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

WWW.LCBA-LAW.COM

EDWARD P. LOBMAN (1941-2004)

RACHEL A. MEESE
W. REED SMITH
EDWARD F. RUDIGER, JR.
JAMES J. YOUNG, IV
RUDOLPH F. LEHRER
RYAN G. DAVIS
BRANDIE L. MENDOZA

WRITER'S E-MAIL ADDRESS:
DVB@LCBA-LAW.COM

April 11, 2005

R. Edison Hill
Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261
CERTIFIED MAIL  NO.  7001 2510 0004 6343 9786
RETURN RECEIPT REQUESTED

*Via Facsimile:  (304) 345-1519*
*and U.S. MAIL*

RE:   ***Alfred Abramson, individually, and on behalf of the***
***Estate of Joseph Abramson, Carol Schudmak, and***
***Aaron Abramson***
Our File # 500.04-8167

Dear Mr. Hill:

I am in receipt of your letter dated March 30, 2005.  I would briefly like to address some issues you brought up in your correspondence and yet again request a settlement demand and complete accounting of the time and monies expended by your firm for the brief time you were representing the Estate of Joseph Abramson.

First, in none of our correspondence did we advance the position that an itemization of hours is the sole method in reaching a determination of a quantum meriut demand.  However, our clients are entitled to an accounting of the hours your firm spent in prosecution of their case prior to your discharge.  Indeed, since your termination, our clients have repeatedly requested such an accounting and itemization, and have not yet, over a year later, received this information.



EXHIBIT
I

Second, I would point you to West Virginia's Rules of Professional Conduct, Rule 1.16 which allows a client to discharge an attorney in a civil case at any time, with, or without cause. In addition, as the Supreme Court of Appeals stated in The Committee on Legal Eithics v. Cometti, 430 S.E.2d 320, 327 (W.V. 1993), "A client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties . . . Moreover, we have held that since the client has the absolute right on public policy grounds to terminate the attorney-client relationship at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered." Accordingly, you are only entitled to quantum meruit.

Second, your repeated reliance on Kopelman and Associates, L.C. v. Collins, 196 W.Va. 489, 473 S.Ed. 2d 910 (1996) in determining the correct manner in which to calculate quantum meriut is misplaced. Kopelman is obviously distinguishable from the instant case. Kopelman, like all of the cited cases in your Notice, involved fee disputes arising **when attorneys leave a firm and take several of the firm's clients with them, or, where there exists some business relationship between the disputing attorneys prior to the fee dispute.** The West Virginia Supreme Court of Appeals, in Shaffer v. Charleston Area Medical Center, 485 S.E.2d 12 (W.V. 1997) explicitly noted that the Kopelman factors are limited in their application:

> "While Kopelman dealt with the single theory of quantum
> meruit, our decision clearly indicated that the factors we
> developed in that case to help determine quantum meruit are
> used *"in a contingency fee case where lawyers employed by
> one firm leave that firm and take a client with them and no
> contract exists governing how the fees are to be divided* [.]"
> Kopelman, 196 W.Va. at 499, 473 S.E.2d at 920." (emphasis
> added.)

As you are aware, there is no relationship, nor has there ever been any relationship between our respective firms. Therefore, the case law relied upon by you is simply not controlling. Rather the proper quantum meruit analysis, as we have stated before, is found in Statler v. Dodson, 466 S.E.2d 497 (W.Va. 1995) and Hardman v. Snyder, 393 S.E. 2d 672 (W.Va. 1990). In Hardman, the West Virginia Supreme Court of Appeals cited the well-established rule:

> "Where an attorney has been discharged, without fault on his
> part . . . his measure of damages is not the contingent fee
> agreed upon, but **the value of his services rendered**; and in
> the absence of evidence of the reasonable value of such
> services, no recovery can be had." *Id.*

In Hardman, the Court denied any recovery to the former-plaintiff attorney in that case. The Court noted that the attorney failed to provide any specific itemization of *how* his time was actually spent. The Court noted that the attorney failed to provide any evidence as to the specific work performed by him and the time required to complete these tasks. The Court held that a summary of total hours expended and the rate per hour spent working were insufficient to justify any award to the attorney.

In those cases where an attorney does actually submit an itemization explaining his legal fees, then this list must evaluated for its "reasonableness" under the test set forth by the West Virginia Supreme Court of Appeals in Statler v. Dodson, 466 S.E.2d 497 (W.Va. 1995).

In the instant matter, your firm has only provided a brief list of expenses incurred for administrative costs and retention of experts. The Hill firm has failed to disclose any itemization of services, despite Sam Schudmak's request in his February 6, 2004 correspondence for such an itemization, and, despite the unambiguous language of Section III of your own attorney-client agreement which emphasizes the client's right to an accounting of the fees due for the firm's services. The limited accounting in your correspondence is really a description of the work undertaken by the experts/consultant retained, and as such, falls more appropriately under expenses to be reimbursed, but even this is incomplete as you have failed to provide invoices or any documentation in support of your alleged expenses. In addition, as the case law indicates, your firm, as the firm asserting the lien, has the burden of proof, not our firm as you suggest. Moreover, as Kopelman clearly does not apply to the instant case, we do not have any obligation, as you suggest in Page 6 of your letter, to provide you with any information regarding our Firm's skill in litigating wrongful death claims; our Firm's experience, reputation and ability; or the preclusion of other employment by the our firm due to acceptance of the case. Nowhere in Statler v. Dodson, 466 S.E.2d 497 (W.Va. 1995) is there a requirement for any accounting by a newly retained attorney with a valid contingency fee agreement with his or her client as you suggest. Nonetheless, in the spirit of cooperation, we have enclosed a copy of our fee agreement as you have requested.

Additionally, it should be noted that the Estate is also arguably entitled to a reduction in the Hill firm fees, because as advertised on your firm's website, the consultation/evaluation of a potential client's case is "free".

In the interest of expeditiously resolving this conflict, we have already informed you of settlement in this case. We have settled the matter, at mediation, for $2.2 million, less a credit for the amount of any payments previously made by USAA for the benefit of Joseph Abramson. This amount is $44,123.25 making total net settlement in the matter $2,156,000.00 (see attached correspondence).

3

In light of the foregoing, *correct* legal analysis, we again ask that you provide an accounting and settlement demand in compliance with <u>Statler</u> and <u>Hardman</u>, <u>supra</u> and in accord with your prior commitments.

Sincerely,

DAVID V. BATT
RACHEL A. MEESE

DVB/RAM
Enclosures
cc: Avrum Levicoff

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To Edison Hill
Street, Apt. No. Peterson Carper Bee + Deitzler P.L.L.C.
Northgate Business Park
City, State, ZIP+4 500 Tracy Way - Charleston, WV 25311-1261

PS Form 3800, January 2001    See Reverse for Instructions

7001 2510 0004 6343 9786

4

The Law Firm of

# HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

NorthGate Business Park ◊
500 Tracy Way
Charleston, WV 25311-1261

(304) 345-5667 ◌
Fax (304) 345-1519

R. Edison Hill*
James C. Peterson‡
W. Kent Carper
C. Michael Bee
Harry G. Deitzler
Sandra Brenneman Harrah
Douglas A. Spencer
C. Sue Holvey

**Writer's E-mail Address:**
rehill@hpcbd.com

April 12, 2005

**VIA PRIORITY OVERNIGHT FEDEX**

David V. Batt, Esq.
LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
400 Poydras Street, Suite 2300
New Orleans, LA  70130-3245

Re:   *ALFRED ABRAMSON, et al. v. BERGEY'S INC., et al.*
      Civil Action No. 3:04-CV-00489 (SDWV)

Dear Mr. Batt:

I am writing in response to your two (2) letters which are identical, other than the letters bear different dates (April 5 and 11, 2005).

Firstly, in response to your statement that "in none of our correspondence did we advance the position that an itemization of hours is the sole method in reaching a determination of a quantum meriut [sic] demand," I have concluded that you and I agree that the various factors identified in my correspondence dated March 30, 2005, are appropriately considered in determining the fee owed to my law firm.[1]

---

[1] As you know, the Court in <u>Kopelman and Associates, L.C. v. Collins</u>, 196 W. Va. 489, 473 S.E.2d 910 (1996) expressly rejected the defendant's contention in that case that itemization of hours was the sole method of determining the fee due Mr. Kopelman:

Although the method of multiplying the number of hours spent on the case by a billable hourly rate is perhaps the easiest and most clear-cut way to resolve disputes over compensation, it does not necessarily produce a fair and just result to the parties. Indeed, this method could result in either under- or over-compensation to the discharged law firm. Other factors must be considered in conjunction with the amount of hours spent on a case to determine what is the reasonable value of services rendered.

* * * * *

In light of *Aetna* and *Stafford*, it is clear we have recognized there are a variety of

(continued...)

*CERTIFIED CIVIL TRIAL
SPECIALIST BY: NATIONAL
BOARD OF TRIAL ADVOCACY*

◊ *OFFICES ALSO IN MORGANTOWN, WV*

‡*CERTIFIED CIVIL TRIAL
SPECIALIST BY: NATIONAL
BOARD OF TRIAL ADVOCACY
LICENSED ALSO MINN. & OHIO*



EXHIBIT

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
April 12, 2005
Page 2

Secondly, your assertion of purported fact that my firm has "failed to provide invoices or any documentation in support of [my firm's] alleged expenses" is false. Mr. Schudmak was not only provided copies of invoices, but he was also provided copies of checks drawn on my firm's bank account in payment of such invoices, under cover letter dated February 13, 2004 (which letter is attached as Exhibit 8 to the Notice of Attorney's Charging Lien" filed in this case on November 24, 2004). Reimbursement of such expenses, totaling $34,651.70, was due and payable IMMEDIATELY under the clear and unambiguous terms of the written contract; yet as of this date, no such reimbursement has been made. You, as a subsequently retained attorney in this case, have obviously

---

[1](...continued)
factors beyond the amount of hours spent on a case which should be taken into account when calculating attorney's fees.

196 W. Va. at 497; 498, 473 S.E.2d at 918; 919.

In addition, the Kopelman Court provided the following non-exhaustive list of factors which should be considered in reaching such determination:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client;
(12) awards in similar cases.

196 W. Va. at 500, 473 S.E.2d at 921.

Regardless of assertion that Kopelman "is distinguishable" and that my reliance upon Kopelman is therefore "misplaced" -- you have apparently conceded that itemization of hours is not the sole method in reaching a determination of the fee owed to my law firm and, therefore, I presume that you further concede that the various factors discussed in Kopelman are indeed the relevant considerations to reaching such a determination.

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
April 12, 2005
Page 3

litigated this case based upon the expenses paid by my law firm; your failure to timely reimburse such expenses is simply indefensible; and I am confident that Judge Chambers will so find.

Thirdly, as to your request for information concerning the considerable numbers of hours spent by my law firm and the law firm of WINTER JOHNSON & HILL PLLC,[2] I am providing such information for the purpose of attempting to resolve this dispute without the need for a hearing. However, by providing such information, I am not waiving my right to petition the Court to require you and your firm to produce relevant information and documents prior to any hearing on the within "Notice of Charging Lien," which information will include, but may not be limited to, the information/documents previously requested in my letter dated March 30, 2005.[3]

Lastly, based upon your representation that the case has been settled for $2,156,000, I am hereby extending a demand for settlement in return for **total payment of FIVE HUNDRED SEVENTY-THREE THOUSAND, SIX HUNDRED FIFTY-ONE DOLLARS AND SEVENTY-CENTS ($573,651.70)**, which amount consists of reimbursement of expenses of $34,651.70

---

[2]As set forth in Footnote 1 of the "Notice of Charging Lien," in addition to Mr. Hill and the law firm of HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C., the plaintiffs Alfred Abramson and Carol Schudmak, on behalf of the Estate of Joseph Abramson, requested Nancy C. Hill, Esq., and the law firm of WINTER JOHNSON & HILL PLLC, to participate as co-counsel in this wrongful death claim. Accordingly, at the client's request and with the client's knowledge and consent, Mr. Hill's firm entered into the August 11, 2003, Attorney-Client Agreement with Mr. Abramson on behalf of the Estate of Joseph Abramson with the understanding that Ms. Hill and WINTER JOHNSON & HILL PLLC would also participate in the representation.

[3]Information requested in my March 30, 2005, to you, which you have failed to provide, includes documentation reflecting the respective hours expended by all attorneys/firms claiming entitlement to any part of the fee in this case as well as information/evidence relating to the respective attorneys' (1) experience in litigating wrongful death claims and in litigating claims with similar facts and legal issues as the instant claim (see Factor # 3); (2) experience, reputation and ability (see Factor #9); (3) the preclusion of other employment by the attorney due to acceptance of the case (see Factor #4); and (4) such other information as may be deemed by the Court or by the parties to be relevant to the Court's determination.

In addition, I will request the Court to require you and Mr. Schudmak to produce information as to all attorneys' services and fees, as well as itemized expenses, recoverable/reimbursable by *all attorneys/firms*, including, but not limited to your firm. (I strongly suspect that the amount of reimbursable expenses by subsequent counsel will be negligible inasmuch as *my firm has obviously financed this lawsuit.*)

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

David V. Batt, Esq.
April 12, 2005
Page 4

(without interest) plus a reduced contingency fee of 25% (of the total settlement amount of $2,156,000).

Thank you for your attention to this matter, and I look forward to receiving your response without delay.

Very truly yours,

R. Edison Hill

REH/plb
Enclosures:    Itemized List of Attorneys' Time and Expenses
               Copy of Letter to Samuel E. Schumak dated 02/13/04 (w/atts. itemizing and
                   documenting expenses)
cc: Nancy C. Hill, Esq.
00196133.wpd