UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON



FILED

[ ] 1 2 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

ALFRED ABRAMSON, individually
and as Executor of the Estate of
JOSEPH ABRAMSON, deceased,
AARON ABRAMSON, and CAROL
SCHUDMAK, individually,

         **Plaintiffs,**

v.

                            **CIVIL ACTION NO. 3:04-CV-00489**
                            **(Judge Chambers)**

BERGEY'S INC., LANEKO ENGINEERING
COMPANY, LANEKO ENGINEERING, INC.,
RBL LEASING CORPORATION,
DAVID BRUCE SMALL, and UNITED
SERVICES AUTOMOBILE ASSOCIATION,

         **Defendants.**

## RESPONSE TO PLAINTIFF'S MOTION TO DETERMINE QUANTUM MERUIT FEES OF R. EDISON HILL AND THE LAW FIRM OF HILL PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

Now comes R. Edison Hill and the law firm of HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C., (hereafter "HPCB&D") and responds as follows to plaintiff's motion:

1.     Plaintiff has acknowledged that the undersigned attorney and the law firm of HPCB&D are entitled to an award of reasonable attorney fees, and reimbursement of expenses, in this matter; thus, the sole issue to be determined by this Court is the amount to be awarded.

2.     Plaintiff's repeated assertion, and lengthy argument (plaintiff's Memorandum, pp. 5-8, 14) that the August 11, 2003, contract entered into between HPCB&D and Mr. Alfred

Abramson "is no longer valid or binding on the parties as Mr. Abramson subsequently discharged Mr. Hill and his firm" is incorrect. Had the provisions of the August 11, 2003, contract been limited to an agreement concerning a contingency fee, and nothing more, plaintiff's argument would have merit. However, as reflected by the document itself, the August 11, 2003, contract contains additional provisions which remain in full force and effect, and the August 11, 2003, contract contains a specific provision which addresses the precise issue now pending before the Court. See **Exhibit A**, attached to this Response, Paragraph VII of August 11, 2003, contract. This paragraph of the attorney-client contract with the undersigned and HPCB&D is as follows:

> If the Client discharges the Attorney, (a) the Attorney will be entitled to reimbursement of expenses, regardless of whether the claims covered by this Agreement produce any money, and (b) the Attorney will be entitled to fair compensation for the Attorney's work if there is ultimately a recovery on the claim. Fair compensation is defined as the part of the contingent fee that best represents the contribution made and risk assumed by the Attorney relative to the total of all contributions and risks viewed retrospectively as of the resolution of the claims covered by this Agreement.

Plaintiff sites and argues the case of Hardman v. Snyder, 183 W. Va. 34, 393 S.E.2d 672 (1990) for the proposition that the only fee to which HPCB&D is entitled is quantum meruit based on some hourly rate that is considered "reasonable." The Hardman case, a Supreme Court of Appeals of West Virginia per curiam opinion, basically says that a discharged attorney is entitled to the "value of his services rendered." It does not say or mandate that the proper way to determine quantum meruit is by hourly computation. Discharged attorneys must put on evidence to show the value of their services, and hours worked is only one factor to consider. The Hardman opinion sites Clayton v. Martin, 108 W. Va. 571, 151 S.E. 855 (1930), that says discharged attorneys are entitled payment for the value of services rendered, not the agreed-upon contingency fee. Likewise, the

-2-

Committee on Legal Ethics of the West Virginia State Bar v. Cometti, 189 W. Va. 262, 430 S.E.2d 320 (1993), makes it clear that the attorney discharged without cause may recover a fee based in quantum meruit, which is the "reasonable value of services rendered." Again, the reasonable value of services rendered is based upon much more than just an hourly rate.

Statler v. Dodson, 195 W. Va. 646, 466 S.E.2d 497 (1995), cited by the plaintiff, also cites the Clayton case, supra, for the proposition that a discharged attorney recover through quantum meruit; but the Supreme Court of Appeals of West Virginia also makes it clear, citing Syl. Pt. 4, Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 195, 342 S.E.2d 156, 161 (1986), that twelve factors be utilized to determine the basis for a reasonable fee.

The case of May v. Seibert, 164 W. Va. 673, 264 S.E.2d 643 (1980), cited by the plaintiff, is inapposite to the issues at hand in that it is a case that involves the establishment of an appropriate fee to award a lawyer who withdrew from representing a plaintiff without good cause, and thereafter sought a portion of a fee from monies ultimately awarded.

Of interest is the case of Morrow v. Stewart,197 Ga.App. 689, 399 S.E.2d 280 (1990), wherein the Court of Appeals of Georgia upheld a 40% contingency fee to a lawyer who had been discharged by the plaintiff after plaintiff received an offer to settle claims for $75,000. The Georgia Court based its decision upon the plain and unambiguous terms of the employment contract, that payment in case of dismissal would be based upon time devoted to the case at an hourly rate of $80 per hour, or applicable percentage of any settlement offers made by the adverse party. Since the case ultimately settled for $80,000, the Court awarded fees of 40% of $75,000 or $30,000 in fees. While the plaintiff argued that the discharged lawyer should only be entitled to receive compensation based upon the reasonable value of his services under the remedy of quantum meruit instead of a

-3-

percentage of the offer of the settlement received prior to the lawyer's dismissal, the Court specifically agreed to the contingency fee based upon the offer of $75,000 because of what the plaintiff and discharged lawyer had expressly agreed to for compensation to be paid in the event of the lawyer's dismissal.

3.      Plaintiff next asserts that the award of an attorney's fee to the undersigned and the firm of HPCB&D should be determined "under a quantum meruit analysis." This statement is likewise incorrect. As explained by the Supreme Court of Appeals of West Virginia in the case of Kopelman and Associates, L.C. v. Collins, 196 W. Va. 489, 473 S.E.2d 910 (1996), recovery in *quantum meruit* is recovery of "as much as deserved" under an "implied contract to pay compensation as reasonable value of services rendered." See Footnote 11, 196 W. Va. at 497, 473 S.E.2d at 918 (emphasis added). HPCB&D's request of this Court for belated reimbursement of expenses, and payment of reasonable attorneys fees upon resolution of the wrongful death claim, is not based upon "implied contract" – but rather, is based upon Paragraph VII of the August 11, 2003, contract. However, the contractual provisions are certainly consistent with West Virginia statutory and case law relating to the determination of a *quantum meruit* fee, and comport with applicable Rules of Professional Conduct concerning the standard to be applied in determining a reasonable fee.

4.      Plaintiff further asserts that the efforts of the undersigned attorney "had little benefit to his former client, the Estate" (Motion, p. 16). This statement is not only inaccurate, but it is clearly disingenuous in light of the undisputed record of this litigation.

Plaintiff cannot credibly deny that the undersigned attorney aggressively investigated the facts of the unfortunate, multi-vehicular collision that tragically ended the life of the plaintiff's decedent, and spent substantial funds for the purpose of expeditiously developing the liability and

-4-

damage evidence in the case. One need look no further than plaintiff's "Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE"[1] to discern that the plaintiff utilized the fruits of the undersign's labor and money as the basis for the claims asserted on plaintiff's behalf (both liability and damages) before this Court. Nor can plaintiff deny that the efforts of the undersigned counsel substantially benefitted the Estate.

As a direct result of the undersigned's substantial legal services and expenditures[2] during the period August 11, 2003, to February 2004, plaintiff's claims and damages were fully and completely investigated, and the claim was ripe for mediation/settlement scheduled for March 2, 2004. Moreover, it is more probable than not that had mediation proceeded as scheduled and had plaintiff been represented during that mediation by competent, experienced plaintiff's counsel the case would

---

[1] See plaintiff's Rule 26(a)(1) and 2(a/b) INITIAL DISCLOSURE, filed on October 12, 2004, **Exhibit B**, attached to this Response. This pleading reflects that plaintiff's current counsel fully utilized in litigation of this case the following witnesses and evidence which had been developed by the undersigned attorney prior to February 2004: (1) Mr. H. E. Sigman, investigator, disclosed as a fact witness; (2) trucking expert David A. Stopper and Stopper & Associates, disclosed as an expert witness along with Mr. Stopper's detailed report dated December 9, 2003; (3) economist Michael L. Brookshire, Ph.D.'s report filed as an attachment; and (4) Sergeant Curtis Tilley, West Virginia State Police, disclosed as a fact witness and Sergeant Tilley's affidavit dated September 22, 2003, filed as an attachment to plaintiff's disclosure.

[2] Plaintiff's failure to timely reimburse litigation expenses in the amount of $34,651.70 is indefensible. The August 11, 2003, contract provides for prompt reimbursement of such expenses regardless of the final outcome of the claim. (See August 11, 2003, Contract, Paragraph VII.) Plaintiff's representations to the contrary notwithstanding, such expenses were completely documented on February 13, 2004, on which date Mr. Schudmak was provided with a detailed accounting of such expenses, including invoices and copies of checks issued in payment of the invoices.

Lastly, it is noteworthy that HPCB&D's outlay of cash far exceeded the amount subsequently advanced by current counsel's (Mr. Batt') firm during the period March 2004 to present, HPCB&D having borne the greater burden of financing this litigation. (See p. 5, Petition for Court approval of Settlement, wherein Mr. Batt represents, and requests reimbursement of, expenses in the amount of $19,687.94).

have settled for the sum of $2.2 million, or perhaps more, at that time. The argument proffered by plaintiff's current counsel (see Motion, footnote 5) that "from a strategic legal standpoint . . . this mediation was premature" because "the complaint had not been filed, no discovery had been conducted . . . the issue of a survival action and punitive damages . . . which had the potential to greatly increase the value of the plaintiff's claim had not even been researched" is simply incorrect. To use current counsel's language, "from a strategic legal standpoint," the filing of the complaint and undertaking discovery in this particular case appears to have added no value to the claim.

Moreover, counsel's assertion that "the issue of survival action and punitive damages" had not been "researched" by the undersigned attorney is not true. See **Exhibit C**, demand letter (without attachments) dated December 22, 2003, attached hereto, containing the following statement:

> Under West Virginia laws, the Estate of Joseph Abramson is entitled to damages, including damages for (1) sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (2) compensation for reasonably expected of income of the decedent (with no offset for consumption), services, protection, care, and assistance provided by the decedent; (3) reasonable funeral expenses; and (4) *damages for pain and suffering of the decedent prior to his death*. *McDavid v. United States*, 584 S.E.2d 226 (W. Va. 2003). "By crafting the damages portion of the Wrongful Death Act so broadly, the Legislature established the principle that juries have almost unfettered discretion in awarding damages for a death caused by the wrongful act, neglect, or default of another. *Id.* at p. 235. In addition to damages awarded under the wrongful death statute, *W. Va. Code* § 55-7-6(c)(2), damages may be recovered by the Estate of Joseph Abramson for the pain and suffering "experienced by a decedent while conscious between the time of injury and his resulting death." *McDavid* at p. 237, citing *Phillips v. Mazda Motor Mfg. (USA) Corp.*, 204 Mich. App. 401, 416, 516 N.W.2d 502, 510 (1994). **The opinion in *McDavid v. United States* is provided herewith as Exhibit D.** [Emphasis added]

As for punitive damages, see draft complaint[3] prepared by the undersigned counsel, which included the following prayer for relief:

> WHEREFORE, plaintiff, individually and on behalf of the Estate of Joseph Abramson, demands judgment against defendants, jointly or severally, for compensatory damages in an amount to be determined by a jury, but in excess of the jurisdictional requisite of this Court; *for punitive damages in an amount to be determined by a jury* , plus pre-judgment and post-judgment interest, costs and attorneys' fees; and for such other and further relief as this Court deems just and proper. [Emphasis added]

> **Exhibit D**, Rough Draft of Complaint as prepared by the undersigned, attached hereto.

5.      Although plaintiff's current counsel represents that he has "repeatedly attempted to resolve this issue amicably with R. Edison Hill, to no avail" (see Motion, p. 1), such is not the case. Plaintiff's counsel has consistently taken the position that a "quantum meruit" calculated upon an hourly fee is appropriate in this case, and based upon such view offered the following in correspondence dated April 14, 2005:

> Based upon the fees we have paid the local West Virginia attorney and the hourly rate typically charged by attorneys in West Virginia, we believe that a generous hourly rate would be $125 per hour. Accordingly, we would be willing to approach our clients with a settlement offer for legal fees of $18,281.25 which equates to $125 for the 146.25 hours you claim your firm worked on this case (contingent upon our review of your costs and fee itemization provided with your correspondence). If you are not interested, I will begin drafting my motion for the judge to allocate fees and expenses. [See **Exhibit E**, April 14, 2005, correspondence from David Batt and Rachel Meese, attached hereto.]

---

[3]Although several paragraphs of the draft complaint appear verbatim in the complaint ultimately filed (see part or all of the following paragraphs: 6, 7, 8, 12, 13, 14, 15, 16, 18, 23, 24, 26, 27, and 28), unlike the complaint filed by current counsel, the draft complaint identified the correct party plaintiff and defendants. The proper parties defendant included in the draft complaint provided to Alfred Abramson and Mr. Schudmak included David Bruce Small, Laneko Manufacturing Company, and RBL Leasing Corporation.

As explained by the Supreme Court of Appeals of West Virginia in the case of <u>Kopelman and Associates, L.C. v. Collins</u>, 196 W. Va. 489, 473 S.E.2d 910 (1996)[4],

> Although the method of multiplying the number of hours spent on the case by a billable hourly rate is perhaps the easiest and most clear-cut way to resolve disputes over compensation, it does not necessarily produce a fair and just result to the parties. Indeed, this method could result in either under- or over-compensation to the discharged law firm. Other factors must be considered in conjunction with the amount of hours spent on a case to determine what is the reasonable value of services rendered.
>
>                 * * * * *
>
> In light of *Aetna*[5] and *Stafford*[6], it is clear we have recognized there are a variety of factors beyond the amount of hours spent on a case which should be taken into account when calculating attorney's fees.

196 W. Va. at 497-98, 473 S.E.2d at 918-19. Although plaintiff gives "lip service" to the various

factors[7] universally recognized as relevant to reaching a determination as to "reasonableness" of an

---

[4]Although <u>Kopelman</u> involved a fee dispute between attorneys who previously practiced together, the factors relevant to determination of fair apportionment of fees applies equally to the case at bar. See e.g., <u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 176 W. Va. 190, 342 S.E.2d 156 (1986), which opinion discusses the same factors in the context of attorney's fees owed to a non-client, third party.

[5]<u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 176 W. Va. 190, 342 S.E.2d 156 (1986).

[6]<u>Stafford v. Bishop</u>, 98 W. Va. 625, 127 S.E. 501 (1925).

[7]The <u>Kopelman</u> Court provided the following non-exhaustive list of factors which should be considered in reaching such determination:

    (1)     the time and labor required;
    (2)     the novelty and difficulty of the questions;
    (3)     the skill requisite to perform the legal service properly;
    (4)     the preclusion of other employment by the attorney due to acceptance of the case;
    (5)     the customary fee;
    (6)     whether the fee is fixed or contingent;
    (7)     time limitations imposed by the client or the circumstances;
    (8)     the amount involved and the results obtained;

                                                (continued...)

attorney's fee, plaintiff's recitation of purported "facts" set forth in plaintiff's Memorandum at pp. 12-15 is a distorted version of the reality of this case. Evidence to be produced at the hearing scheduled for this matter will more than justify the substantial value provided by HPCB&D during their representation of the decedent's estate.

6.     In addition, plaintiff has failed to recognize (also as explained by the Kopelman Court), that in a case, such as the instant case, in which the parties have voluntarily entered into a written contingency fee contract which explicitly "provides for the type of termination involved in the particular case"–the "best guarantee of reasonableness" is determined by the contract itself:

> Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay which usually is determined by looking at the contract.  To be specific, courts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client. However, recovery on a contract is permitted only when the contract explicitly provides for the type of termination involved in the particular case.

196 W. Va. at 496, 473 S.E.2d at 917, Footnote 7.

Accordingly, evidence relevant to numerous factors– including of course the explicit terms of the August 11, 2003, contract itself[8]–must be considered by the Court in reaching its decision as

---

[7](...continued)
(9)     the experience, reputation, and ability of the attorney;
(10)    the undesirability of the case;
(11)    the nature and length of the professional relationship with the client; and
(12)    awards in similar cases.

196 W. Va. at 500, 473 S.E.2d at 921.

[8]The August 11, 2003, contract was negotiated, and executed, by Mr. Alfred Abramson -- himself an attorney and Executor of the Estate of Joseph Abramson.  As the Kopelman Court underscored: "if the contract is specific as to the method and measure of fee payment, **the contract itself is controlling**." 196 W. Va. at 497, 473 S.E.2d at 918, Footnote 12.

to the appropriate and reasonable fee due and owing to the undersigned attorney and HPCB&D. Obviously, based upon the record of this litigation, HPCB&D's investigation and pre-litigation "work up" of this wrongful death case was appropriate in every respect, inasmuch as (1) the complaint filed in this case tracks much of the language of the draft complaint prepared prior to discharge; (2) two out of three expert witnesses disclosed by plaintiff in this case were retained and paid by the undersigned attorney; (3) two out of three expert reports produced by plaintiff in this case were obtained through the efforts of the undersigned attorney; (4) the investigator disclosed as a fact witness by plaintiff (Mr. Sigman) was retained and conducted the investigation as to liability and damages by and under the direction of the undersigned attorney; (5) evidence as to both liability and damages was preserved, collected and presented (as detailed in the December 22, 2003, demand letter) by the undersigned attorney prior to discharge, and (6) the clients (Mr. Alfred Abramson and Ms. Carol Schudmak) had "nothing but nice things to say" about the undersigned attorney and the law firm of HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

7.     Lastly, as will be developed from evidence presented to this Court during the hearing to be held in this matter, the undersigned counsel was discharged by attorney Samuel E. Schudmak, III,[9] on the eve of pre-litigation mediation, scheduled for March 2, 2004. Evidence will disclose that

---

[9]Mr. Schudmak is the husband of Carol Schudmak, the decedent's sister.

The August 11, 2003, contract was negotiated, at arms length, with Carol Schudmak and her brother, Alfred Abramson (both siblings of the decedent).

As previously noted, Mr. Alfred Abramson is also an attorney.

Based upon statements made by Mrs. Schudmak and Mr. Alfred Abramson to the undersigned during the course of negotiating the August 11, 2003, contract, Mrs. Schudmak and Mr. Abramson spent considerable time interviewing attorneys with several personal injury law firms in
(continued...)

-10-

the undersigned was discharged for refusing to accede to Mr. Schudmak's demand for a unilateral reduction of the contingency fee previously agreed upon in the August 11, 2003, contract–which demand was strategically made by Mr. Schudmak *after* the undersigned attorney and the firm of HPCB&D had already performed the lion's share of work on the case, spent substantial funds retaining experts and preparing the case for mediation and, if necessary, trial.

Following discharge of the undersigned attorney without cause, Mr. Schudmak retained Mr. Batt's firm based upon a contingency fee agreement of 12%.[10]  See **Exhibit F**, Batt contingency fee agreement, attached hereto.

As previously demonstrated, Mr. Batt's firm was able to litigate the case based upon the fruits of the undersigned attorney's efforts and financing of the case.

---

[9](...continued)
West Virginia prior to selecting HPCB&D as the best firm to handle representation of the Estate.

Finally, the undersigned maintained close contact with Mr. Alfred Abramson throughout the period August 11, 2003, to February 2004, during the course of the pre-litigation investigation of the Estate's claim.  Mr. Abramson was well aware of, and fully embraced, the undersign's strategy to (1) ensure that all available evidence would be preserved for purposes of future litigation, if necessary; (2) immediately and aggressively investigate liability and damages; and (3) submit a well documented demand package to the insurance carrier for the purpose of placing the burden upon the insurer under West Virginia law to make a reasonable offer of settlement, or face a potential bad faith action for its failure to do so.  (Keep in mind that additional effort undertaken by the undersigned attorney during the period August 11, 2003, to February 2004 was thoroughly investigating all available insurance coverage, which was ultimately determined to be no less than $11,000,000 [eleven million dollars]).

[10]When HPCB&D filed its Notice of Attorney's Charging Lien in November 2004, it was erroneously assumed that a standard contingency fee agreement was entered into between plaintiffs and their new legal counsel, not a contingency fee discounted to 12%.  The statement by the undersigned in Footnote 3 of the Notice of Attorney's Charging Lien that the dispute concerning reimbursement of expenses and awarding of reasonable and appropriate attorney fees was one between HPCB&D and attorneys Mr. Schudmak, Mr. Batt, and Mr. Bailey, rather than the plaintiff in this action, was therefore in error.

## Conclusion

Plaintiff has admitted that he owes the law firm of HPCB&D reimbursement of expenses and reasonable attorneys fees. The undersigned requests reimbursement for expenses in the amount of $34,651.70, and an award of reasonable attorney fees under the various factors enumerated and the terms of the August 11, 2003, contract, to wit, paragraph VII, "[f]air compensation . . . defined as the part of the contingent fee that best represents the contribution made and risk assumed by the Attorney relative to the total of all contributions and risks viewed retrospectively as of the resolution of the claims covered by this Agreement." Based upon the record of this litigation, undersigned counsel and HPCB&D request this Court to award a substantial fee commiserate with the firm's effort and expense contributed to the successful outcome in the case.[11]

Respectfully Submitted,

R. EDISON HILL and the law firm of
HILL PETERSON CARPER BEE &
DEITZLER, P.L.L.C.

_R. Edison Hill_

R. Edison Hill (WVSB #1734)
HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261
304-345-5667

---

[11]As explained in the Notice of Charging Lien, in addition to Mr. Hill and HPCB&D, the plaintiffs Alfred Abramson and Carol Schudmak, on behalf of the Estate of Joseph Abramson, requested Nancy C. Hill and the law firm of WINTER JOHNSON & HILL, PLLC, to participate as co-counsel in this wrongful death claim. Accordingly, at the client's request and with the client's knowledge and consent, Mr. Hill's firm entered into the August 11, 2003, attorney-client agreement with Mr. Abramson on behalf of the Estate of Joseph Abramson, with the understanding that Ms. Hill and WINTER JOHNSON & HILL, PLLC would also participate in the representation and share the fee provided for in said agreement. However, any fee due and owing to Ms. Hill and the law firm of WINTER JOHNSON & HILL, PLLC is derivative to HCB&D's interest.

-12-

## CERTIFICATE OF SERVICE

I, R. Edison Hill, hereby certify that I have served a true and exact copy of the foregoing

**"RESPONSE TO PLAINTIFF'S MOTION TO DETERMINE QUANTUM MERUIT FEES**

**OF R. EDISON HILL AND THE LAW FIRM OF HILL PETERSON, CARPER, BEE &**

**DEITZLER, P.L.L.C.,"** upon counsel of record via U.S. Mail this 12th day of May 2005 as follows:

David V. Batt, Esq.
LOBMAN CARNAHAN BATT ANGELLE & NADER
400 Poydras Street, Suite 2300
New Orleans, LA 70130

and

Michael S. Bailey, Esq.
BAILEY AND HOWARD
P.O. Box 347
Barboursville, WV 25504
*Counsel for Alfred Abramson, as Executor of the
Estate of Joseph Abramson, deceased*

Avrum Levicoff, Esq.
LEVICOFF, SILKO & DEEMER
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA 15222-3911
*Counsel for Laneko Engineering Company, Laneko
Engineering, Inc., RBL Leasing Corporation, and
David Bruce Small*

R. Edison Hill (WVSB #1734)

00197037.wpd

-13-