The Law Firm of
# HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

R. Edison Hill*
James C. Peterson‡
W. Kent Carper
C. Michael Bee
Harry G. Deitzler
Sandra Brenneman Harrah
Susan B. Tucker±
Kelli B. Hill

NorthGate Business Park ◊
500 Tracy Way
Charleston, WV 25311-1261

(304) 345-5667 ©
Fax (304) 345-1519

December 22, 2003

Writer's E-mail Address:
rehill@hpcbd.com

VIA E-MAIL: Larry.J.Hirschorn@travelers.com
AND PRIORITY OVERNIGHT FEDEX

Mr. Larry Hirschorn
Travelers Insurance Company
4350 Haddenfield Road
Pennsauken, NJ  08109

> Re:  Your Insured:  **Laneko Manufacturing Company**
> Your Claim Number:  **AMY1255N-008**
> Date of Wreck:  **July 14, 2003**
> Our Client:  **Alfred Abramson, Executor of the Estate
> of Joe Abramson, deceased**
> Our File Number: 15040.00

Dear Mr. Hirschorn:

I am submitting this demand letter in order to attempt resolution of this insurance claim prior to filing litigation. Based upon our previous correspondence, Eleven Million Dollars ($11,000,000) total coverage is available through Travelers Insurance Company for claims against Laneko Manufacturing Company and its driver, David Bruce Small (hereinafter "your insureds").

The evidence uncovered to date by our investigation of this insurance claim (only a portion of which is described below) establishes a clear case of liability against your insured. Ultimately, if this case goes to trial, we think the jurors will become extremely enraged as they watch their own worst nightmare unfold in the courtroom; and we think the defendant will feel the impact of their anger.

Our trucking industry expert, David Stopper, has examined the evidence in this case and submitted a preliminary report. Mr. Stopper's curriculum vita is attached (Exhibit A), as well as a copy of his report (Exhibit B).  Mr. Stopper has concluded, and th evidence overwhelmingly supports, a finding that your insured driver caused the collision that injured and killed Mr. Abramson due to your insured's failure to operate the truck tractor and semi trailer at an appropriate and lawful speed. Mr. Stopper has further concluded from examination of the physical evidence that your insured driver operated the tractor-trailer truck "recklessly" and "at a seriously excessive speed at the outset of braking" and estimates the speed to be in excess of 80 or 90 miles per hour. Finally, Mr. Stopper has concluded from his review of the evidence that Mr. Abramson was trapped in his

*CERTIFIED CIVIL TRIAL
SPECIALIST BY: NATIONAL
BOARD OF TRIAL ADVOCACY

± LICENSED ALSO IN MINNESOTA
◊ OFFICES ALSO IN MORGANTOWN, WV

‡CERTIFIE
SPECIALIS
BOARD OF
LICENSED


EXHIBIT
C

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

Mr. Larry Hirschorn
December 22, 2003
Page 2

car after being struck and pushed into other vehicles by the tractor-trailer truck operated by your insured driver, and that Mr. Abramson died as a result of the severe fire that ensured after the vehicles came to rest. The autopsy report confirms that Mr. Abramson died a horrible and painful death from the fire, the medical examiners, Dr. Sabet and Dr. Kaplan, having concluded that Mr. Abramson died "as the result of thermal burn injuries" (Exhibit C).

## CAUSATION

Causation is simple and straightforward. Your insured are 100 percent negligent and liable for the injuries suffered by Mr. Abramson and his death by thermal burn injuries while trapped in his vehicle.

## DAMAGES

Under West Virginia laws, the Estate of Joseph Abramson is entitled to damages, including damages for (1) sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (2) compensation for reasonably expected of income of the decedent (with no offset for consumption), services, protection, care, care and assistance provided by the decedent; (3) reasonable funeral expenses; and (4) damages for pain and suffering of the decedent prior to his death. *McDavid v. United States,* 584 S.E.2d 226 (W. Va. 2003). "By crafting the damages portion of the Wrongful Death Act so broadly, the Legislature established the principle that juries have almost unfettered discretion in awarding damages for a death caused by the wrongful act, neglect, or default of another. *Id.* at p. 235. In addition to damages awarded under the wrongful death statute, *W. Va. Code* § 55-7-6(c)(2), damages may be recovered by the Estate of Joseph Abramson for the pain and suffering "experienced by a decedent while conscious between the time of injury and his resulting death." *McDavid* at p. 237, citing *Phillips v. Mazda Motor Mfg. (USA) Corp.,* 204 Mich. App. 401, 416, 516 N.W.2d 502, 510 (1994). The opinion in *McDavid v. United States* is provided herewith as Exhibit D.

Economic loss has been calculated by Michael Brookshire, Ph.D. (forensic economist), in an amount between $844,457 and $1,727,666 (Exhibit E). Dr. Brookshire's curriculum vita is attached as Exhibit F. The funeral bill total $10,568.48 (Exhibit G).

The special damages, however, only tell a small portion of the story. Mr. Abramson, although unmarried, leaves behind a grief-stricken family including his brother, Alfred Abramson; his sister, Carol Schudmak; and his father, Aaron Abramson. This family has suffered, and will continue to suffer, substantial sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent, Joseph Abramson.

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

Mr. Larry Hirschorn
December 22, 2003
Page 3

Lastly, although such damages are substantial, they are indeed overshadowed by the pain and suffering of Mr. Abramson in his last minutes of life. Although evidence of the pain and suffering that Mr. Abramson was forced to suffer during the period that he was trapped in his vehicle, unable to escape the fire, may be very difficult for the jury to digest, should this case proceed to trial, under West Virginia law, the jury will be required to determine a dollar figure on unimaginable pain and suffering. In order to ascertain the enormity of the loss, the jury will see photographs of Mr. Abramson's charred vehicle and charred remains, hear the testimony of the medical examiners, and hear from the witnesses who witnessed those last minutes of terror and excruciating pain. See photographs of the wrecked and burned Abramson vehicle and of the destroyed tractor that belonged to your insured (Exhibit H).

The Abramson family now divides their lives into the "before" and "after" period when they lost Joseph to this senseless tragedy. Before Joseph's life was so violently ended, he was a successful, 56 year old tenured economics professor at Marshall University (Exhibit I). Moreover, Joseph was a successful son, brother, uncle, friend, and employee; and Joseph lived a happy life, at peace with his very close-knit family and his world of friends, colleagues, and students. Following his tragic death, the Abramson family and Joseph's many friends approach life on a day-to-day basis, dealing with their great loss.

The impact on the Abramson family is great, and the Estate must be compensated for its substantial loss. In addition, Joseph suffered horrible pain, suffering, and fright prior to his death, which must also be compensated. Travelers Insurance Company is clearly liable for the substantial damages suffered by the Estate of Joseph Abramson.

The value of this insurance claim must be measured against the jury verdict potential. The Estate of Joseph Abramson has no interest in discounting the value of its insurance claim for a "quick settlement." The family's pain and outrage is real, understandable, and a source of strength. The family does not want its nightmare to be visited upon others.

However, Travelers Insurance Company has a duty to promptly investigate claims at its own expense *and to promptly make fair and reasonable offers to settle such claims*. "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" is a violation of the West Virginia Unfair Trade Practices Act, W. Va. § 33-11-4(9), and Insurance Regulations. "In any case where there is no dispute as to coverage or liability, it shall be the duty of every insurer to offer claimants or their authorized representatives, amounts which are fair and reasonable as shown by the investigation of the claim, providing the amounts so offered are within policy limits and in accordance with the policy provisions" is required by W. Va. C.S.R. § 114-6.2. An insurance company's failure to *promptly* investigate and *promptly*

HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.

Mr. Larry Hirschorn
December 22, 2003
Page 4

extend a fair and reasonable amount to settle such a claim constitutes unfair and unlawful settlement practices under West Virginia law.

The evidence outlined in this letter is obviously the tip of the iceberg in this case. We trust Travelers and Laneko are desirous of resolving this insurance claim so as to concentrate on making Laneko's trucking operation more professional. Mr. Abramson's family hopes that Travelers Insurance Company and Laneko Manufacturing Company have taken a long, hard look at David Bruce Small's actions in this case and, as for Laneko, has put in place new and better procedures to prevent such a situation from ever happening again.

I am, accordingly, writing this letter to request that Travelers Insurance Company make a fair and reasonable offer to compensate Mr. Abramson's Estate for its loss, without further delay. The Estate of Joseph Abramson is willing to settle its insurance claim in return for payment of fair and reasonable compensation for the egregious injuries and death suffered by Mr. Abramson. However, rest assured, should Travelers refuse to make a fair and reasonable offer of settlement as required by West Virginia law, the Estate of Joseph Abramson will immediately proceed with litigation.

If you have any questions regarding this matter or wish to discuss anything in this letter with me, please advise. I look forward to hearing from you within fifteen working days, in accordance with the rules promulgated by the West Virginia Insurance Commissioner.

Very truly yours,

R. Edison Hill

REH/plb
Attachments:  David Stopper Curriculum Vita
                    David Stopper Report
                    Autopsy Report
                    *McDavid v. United States* Opinion
                    Dr. Brookshire Report
                    Dr. Brookshire Curriculum Vita
                    Funeral Bill
                    Photographs of Abramson Vehicle and Tractor Truck (6)
                    Photographs of Joseph Abramson (2)
cc:    Mr. Alfred Abramson (w/atts.)
          Nancy C. Hill, Esq. (w/atts.)
00179338

Rough
DRAFT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

ALFRED ABRAMSON individually and as
executor of the Estate of JOSEPH
ABRAMSON, deceased,

       PLAINTIFF,

v.                                  CIVIL ACTION NO. 3: _____

DAVID BRUCE SMALL; LANEKO
MANUFACTURING COMPANY; RBL LEASING
CORPORATION,

       DEFENDANTS.

## COMPLAINT

For his cause of action against the defendants herein, the plaintiff, Alfred

Abramson as the executor of the Estate of Joseph Abramson, deceased, comes now

by counsel, R. Edison Hill, Nancy Hill, and Woody Hill, and the law firms of HILL,

PETERSON, CARPER BEE & DEITZLER, P.L.L.C. and WINTER, JOHNSON & HILL, P.L.L.C.,

and states and avers as follows:

## Parties

1.     At all relevant times, decedent Joseph Abramson was a resident of Huntington,

Cabell County, West Virginia. The decedent died in Barboursville, Cabell County, West

Virginia.

    2.     Defendant David Bruce Small was a resident of Franconia, PA.

    3.     The defendant  Defendant Laneko Manufacturing Company is a

Pennsylvania corporation with its principle place of business located at 508 North Lewis

1



EXHIBIT
D

Road, Royersford, PA 19466.

4.     Defendant RBL Leasing Corporation is a Pennsylvania corporation, with its principle place of business located at 446 Harleysville Pike, Franconia, PA 18924.

### Facts

5.     The acts which constitute the basis for the plaintiff's' complaint occurred on July 14, 2003, on I 64 in the Westbound traffic lanes, near the 17 Mile Post, at or near Barboursville, Cabell County, West Virginia.

6.     At the above time and place, plaintiff's decedent Joseph Abramson was operating a 1998 Mercury automobile, VIN 2MEFM74W8Wx664125, (hereafter "Mercury automobile") in a safe, non-negligent and lawful manner, at which time he was struck from the rear by a truck tractor, bearing VIN 4V4ND4TJ3YN244752, and semi trailer, owned by defendant RBL Leasing Corporation (hereafter "Tractor Trailer Truck").

7.     At all times herein stated, plaintiff's decedent Joseph Abramson acted reasonably and safely in all manner of his action.

8.     On July 14, 2003, at the time of the incident complained of herein, the Tractor Trailer Truck was operated by defendant David Bruce Small.

9.     On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small was an employee/agent of defendant Laneko Manufacturing Company, and he was acting within the scope of his employment at all relevant times.

10.     On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small was operating the Tractor Trailer Truck, within the scope of Small's employment, under Federal Motor Carrier Safety Administration ("FMCSA")

2

authority USDOT#473902 under the motor carrier defendant Laneko Manufacturing Company.

11.    On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small was operating the Tractor Trailer Truck in an unsafe and negligent manner and failed to maintain proper control of said Tractor Trailer Truck.

12.    On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small lost control of the Tractor Trailer Truck he was operating and  caused it to collide with plaintiff's decedent Joseph Abramson's Mercury automobile.

13.    On July 14, 2003, at the time of the incident complained of herein, the collision caused by defendant David Bruce Small's negligent operation of the Tractor Trailer Truck caused a fire which inflicted fatal injuries to plaintiff's decedent Joseph Abramson.

14.    On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small operated the Tractor Trailer Truck in violation of federal and state laws.

## Negligence of Defendant David Bruce Small's Liability

15.    Defendant David Bruce Small negligently and unlawfully operated the Tractor Trailer Truck on Interstate 64, Cabell County, West Virginia, and collided into the Mercury automobile operated by plaintiff's decedent Joseph Abramson.

16.    The negligent and unlawful actions of defendant David Bruce Small that proximately caused the above-described collision and the death of Joseph Abramson include, but are not limited to: exceeding a safe speed, failing to maintain control of his

3

vehicle, failing to keep a proper lookout, and failing to take appropriate action to avoid the collision complained of.

17.    As a direct and proximate result of the negligence of defendant David Bruce Small, Joseph Abramson suffered severe injuries and death.

### Negligence of Defendants  Laneko Manufacturing Company and RB Leasing

18.    On July 14, 2003, at the time of the incident complained of herein, defendant David Bruce Small was an employee of defendant Laneko Manufacturing Company and defendant David Bruce Small was operating the Tractor Trailer Truck within the scope of Small's employment with defendant Laneko Manufacturing Company.

19.    Upon information and belief, Defendant Laneko Manufacturing Company was responsible for and had the following non-exhaustive list of powers:

        a.    Power of selection and engagement of defendant Small as its agent and employee;

        b.    Responsibility for payment of defendant Small;

        c.    The power to fire or dismiss defendant Small; and

        d.    The power to control, direct, and supervise defendant Small.

20.    At the time of the collision complained of herein, defendant Laneko Manufacturing Company was (and remains) liable for the negligent, reckless, and/or unlawful actions of defendant Small pursuant to the doctrine of *respondeat superior*.

21.    If warranted by the facts discovered in this litigation through interrogatories, depositions, requests for production, request for admissions, or other

sources, the plaintiffs further alleges that defendant RB Leasing is (and remains) liable for the negligent, reckless, and/or unlawful actions of defendant Small pursuant to the doctrine of negligent entrustment of the Tractor Trailer Truck at the time of the incident complained of herein and is (and remains) liable for negligent maintenance of the Tractor Trailer Truck.

22.     The negligent and unlawful actions of defendants Laneko Manufacturing Company and RB Leasing proximately caused the above-described collision and the death of Joseph Abramson include, but are not limited to: exceeding a safe speed, failing to maintain control of his vehicle, failing to keep a proper lookout, and failing to take appropriate action to avoid the collision complained of.

23.     As a direct and proximate result of the negligence of defendant David Bruce Small, Joseph Abramson suffered severe injuries and death.

## Relief Sought

As a direct and proximate result of defendants' negligent, reckless, and unlawful actions, the following has occurred:

a.     Joseph Abramson suffered severe burns over his entire body and endured great pain and suffering prior to his death.

b.     Joseph Abramson was killed.

c.     Plaintiff Alfred Abramson individually and as executor of the Estate of Joseph Abramson, has incurred funeral and burial expenses.

d.     Plaintiff Alfred Abramson and his family have suffered sorrow, mental anguish, and loss of society, companionship, comfort, guidance, kindly offices, and advice of Joseph Abramson, his brother, and other damages.

WHEREFORE, plaintiff, individually and on behalf of the Estate of Joseph Abramson, demands judgment against defendants, jointly or severally, for compensatory damages in an amount to be determined by a jury, but in excess of the jurisdictional requisite of this Court; for punitive damages in an amount to be determined by a jury, plus pre-judgment and post-judgment interest, costs and attorneys' fees; and for such other and further relief as this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

**ALFRED ABRAMSON individually and as executor of the Estate of JOSEPH ABRAMSON, deceased**
**PLAINTIFF,**
**By Counsel**

R. Edison Hill (State Bar No.1734)
Hill Peterson Carper Bee & Deitzler PLLC
500 Tracy Way
Charleston, WV 25311-1555
(304) 345-5667

Nancy C. Hill (State Bar No. 1732)
Woody Hill (State Bar No. 9209)
Winter Johnson & Hill PLLC
P.O. Box 2187
Charleston, WV 25328-2187
(304) 345-7800

6

# LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

### A PROFESSIONAL CORPORATION

EDWARD F. LOBMAN (1941-2004)

BURT K. CARNAHAN
DAVID V. BATT
SIDNEY J. ANGELLE
JAMES F. NADER
JOSEPH M. MESSINA
TARA L. MASON

BRANT J. CACAMO
BRADLEY S. GROCE
PAMELA K. RICHARD
ERIC B. BERGER

### ATTORNEYS AT LAW

**400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3245**

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

WWW.LCBA-LAW.COM

RACHEL A. MEESE
W. REED SMITH
EDWARD F. RUDIGER, JR.
JAMES J. YOUNG, IV
RUDOLPH F. LEHRER
RYAN G. DAVIS
BRANDIE L. MENDOZA

WRITER'S E-MAIL ADDRESS:
DVB@LCBA-LAW.COM

April 14, 2005

R. Edison Hill
Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311-1261
CERTIFIED MAIL NO. 7001 2510 0004 6343 9786
RETURN RECEIPT REQUESTED

*__Via Facsimile:  (304) 345-1519
and U.S. MAIL__*

RE:  ***Alfred Abramson, individually, and on behalf of the
Estate of Joseph Abramson, Carol Schudmak, and
Aaron Abramson***
Our File # 500.04-8167

Dear Mr. Hill:

I am in receipt of your letter dated April 12, 2005 and am confused by several contentions made in your correspondence. First, you have taken one sentence from a three page letter and made a wholly unsupported conclusion and assumption regarding the correct method for determination of a reasonable fee under West Virginia law. In fact, I am at a loss as to how you would arrive at your a conclusions in light of our correspondence which clearly contradicts your continued reliance on the case of Kopelman and Associates, L.C. v. Collins, 196 W.Va. 489, 473 S.Ed. 2d 910 (1996). However, as you apparently read no further than the first line of our previous letter, I shall be happy to refresh your recollection.

First, as I stated previously, West Virginia's Rules of Professional Conduct, Rule 1.16 allows a client to discharge an attorney in a civil case at any time, with, or without cause. In addition, as the Supreme Court of Appeals in The Committee on Legal Ethics



EXHIBIT
E

v. Cometti, 430 S.E.2d 320, 327 (W.V. 1993), clearly opined that <u>the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered.</u>" Accordingly, your settlement demand based on a "discounted" contingency fee, rather than the value of services performed violates West Virginia's Rules of Professional Conduct and defies clearly outlined ethical standards for attorneys in the state.

Second, your repeated reliance on <u>Kopelman and Associates, L.C. v. Collins</u>, 196 W.Va. 489, 473 S.Ed. 2d 910 (1996) in determining the correct manner in which to calculate quantum meriut is simply puzzling. If you would read <u>Kopelman</u> in its entirety, you would realize that it is obviously distinguishable from the instant case. <u>Kopelman,</u> involved fee disputes arising **when attorneys leave a firm and take several of the firm's clients with them, or, where there exists some business relationship between the disputing attorneys prior to the fee dispute.** No matter how much you would like <u>Kopelman</u> to apply to the instant case, the law simply does not support your contentions. In fact, had you further researched the issue, you would realize that the West Virginia Supreme Court of Appeals, in <u>Shaffer v. Charleston Area Medical Center</u>, 485 S.E.2d 12 (W.V. 1997) explicitly noted that the <u>Kopelman</u> factors are limited in their application:

> "While <u>Kopelman</u> dealt with the single theory of quantum meruit, our decision clearly indicated that the factors we developed in that case to help determine quantum meruit are used *"in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided* [.]" <u>Kopelman</u>, 196 W.Va. at 499, 473 S.E.2d at 920." (emphasis added.)

As you are aware, **there is no relationship, nor has there ever been any relationship between our respective firms. Therefore, the case law relied upon by you is simply not controlling.**

Rather the proper quantum meruit analysis, as we have stated before, is found in <u>Statler v. Dodson</u>, 466 S.E.2d 497 (W.Va. 1995) and <u>Hardman v. Snyder</u>, 393 S.E. 2d 672 (W.Va. 1990). In <u>Hardman,</u> the West Virginia Supreme Court of Appeals cited the well-established rule:

> "Where an attorney has been discharged, without fault on his part . . . his measure of damages is not the contingent fee agreed upon, but **the value of his services rendered**; and **in the absence of evidence of the reasonable value of such services, no recovery can be had**." *Id.*

In *Hardman*, the Court denied any recovery to the former-plaintiff attorney in that case. The Court noted that the attorney failed to provide any specific itemization of *how* his time was actually spent. The Court noted that the attorney failed to provide any evidence as to the specific work performed by him and the time required to complete these tasks. The Court held that a *summary* (as opposed to an itemization) of total hours expended and the rate per hour spent working were insufficient to justify any award to the attorney.

In those cases where an attorney does actually submit an itemization explaining his legal fees, then this list must evaluated for its "reasonableness" under the test set forth by the West Virginia Supreme Court of Appeals in *Statler v. Dodson*, 466 S.E.2d 497 (W.Va. 1995). A determination of "reasonableness" may only be made following submission of an itemization of legal fees, including the total hours expended, what specific work was accomplished in those hours, and the rate per hour.

Accordingly, it is quite clear that under no circumstances are you entitled to any portion of a contingency fee as you demand in you letter. The ONLY remuneration you are entitled to is based on quantum meruit. In light of the documentation you provided, your firm expended only 146.25 hours on the Abramson case prior to our involvement in the matter. Accordingly, your current demand of $573,651.79 is clearly unreasonable, and any judge in West Virginia will confirm that the law cannot, and does not, support a quantum meruit award which equates to payment of $3685.47 per hour worked. This is simply put, an *unreasonable* settlement demand. Moreover, your firm clearly failed to undertake work which was essential to the settlement of this matter. Your firm never investigated a survival action, nor did your firm investigate the possibility of punitive damages. In fact, your firm had not even filed a complaint prior to your discharge.

With respect to re-imbursement for your expenses, we have never contended that you are not entitled to be reimbursed for the expenditures your firm made on behalf of our client. However, up until your most recent correspondence, our firm had no accounting or documentation of these costs. Moreover, it is axiomatic that such fees are paid at the conclusion of the case, once settlement has occurred, and the funds have been distributed. Your assessment of "timeliness" is baffling as our firm only received documentation of your expenses on April 12, 2005 and is currently evaluating your documentation. Simply calling something untimely, does not make it so. Moreover, we would strenuously object to the payment of any of Michael Brookshire's consultation fees. Mr. Brookshire, presumably because of a close relationship with you or your firm, refused to issue an expert report in compliance with Rule 26 at our request, and accordingly, we were required to retain our own expert economist on an expedited basis and at a higher rate. Any work Mr. Brookshire did on your behalf did not benefit our clients in any way, shape or form, as he refused to be at witness at trial and refused to issue any report based on his findings. Presuming we will not have success in our negotiations concerning your fee, we plan to challenge your "expenses" at a motion hearing which we will set for the judge's determination of your proper quantum meruit fee. We intend to cross examine you regarding your fee statement and expenses at this hearing. Further, if we are forced

3

to litigate this matter we will call into question your hourly computation of work completed on the file. Even a superficial review of your hourly billing statement has revealed that some of your hours are inflated. For instance, it appears that you have billed 20 hours for the drafting of a standard complaint which you did not complete or file with the court. Moreover, it appears you have double billed for two additional hours of Nancy Hill in drafting this same complaint. In addition, entry #10 is a 5.75 hour meeting with attorneys involved in the Mullins death case, for which billed for the time of two separate attorneys.

Finally, you clearly concede in your letter that you are not entitled to an accounting of the number of hours spent by our firm in determining what a reasonable fee for your firm is under a quantum meriut analysis. Obviously, you understand that we have a valid contingency fee agreement and our fee is based upon this contract, which we have already forwarded to you. In fact, per the West Virginia Rules of Ethics, your previous contract is no longer valid or controlling. Moreover, as Kopelman clearly does not apply to the instant case, we do not have any obligation, as you suggest in footnote 3 of your letter to provide you with any information concerning our litigation experience, the preclusion of other employment by us due to acceptance of the case, or information regarding our Firm's skill in litigating wrongful death claims. Such peripheral information is not probative where there exists a valid contingency fee agreement.

Based upon the information you have provided to us, assuming your costs have been properly documented, we would consider a reasonable settlement demand under the circumstances to be payment for reasonable costs incurred and a reasonable hourly fee consistent with attorneys fees typically charged in West Virginia. Of course, we are currently reviewing your accounting of the time and work undertaken by your firm in order to determine that the time you have allocated for various tasks is reasonable and not inflated. Based upon the fees we have paid the local West Virginia attorney and the hourly rate typically charged by attorneys in West Virginia, we believe that a generous hourly rate would be $125 per hour. Accordingly, we would be willing to approach our clients with a settlement offer for legal fees of $18,281.25 which equates to $125 for the 146.25 hours you claim your firm worked on this case. (contingent upon our review of your costs and fee itemization provided with your correspondence). If you are interested in such a proposal advise as soon as possible. If you are not interested, I will begin drafting my motion for the judge to allocate fees and expenses.

Sincerely,

DAVID V. BATT
RACHEL A. MEESE

DVB/RAM

4

STATE OF LOUISIANA

PARISH OF ORLEANS

THIS CONTRACT OF EMPLOYMENT made and entered into by and between Alfred Abramson, individually and on behalf of the Estate of Joseph Abramson, Carol Schudmak and Aaron Abramson, referred to as "Clients", and David V. Batt of the law firm of Lobman, Carnahan, Batt, Angelle & Nader, hereinafter referred to as "Attorney".

WITNESSETH:

WHEREAS the said Client has a claim or claims arising out of an injury/death resulting from negligence, which occurred on July 14, 2003, in Cabell County, West Virginia on I-64 near Barboursville.

WHEREAS Clients desire the services of Attorney to represent Clients, in said claim, by conference, negotiation, suit, or otherwise:

NOW THEREFORE, Clients do hereby employ, and retain Attorney, for these purposes, and Attorney hereby binds and obligates himself to render these services required in the premises upon the following terms and conditions:

1. The Attorney is to receive as compensation for his services 12 per cent of whatever gross amount is collected.

2. Expenses are to be the responsibility of Client, but will be advanced by Attorney for Client's benefit.

3. This contract is subject to the additional conditions, to-wit:

Gross amount is defined as the full amount of any and all payments made by any and all parties through tender, settlement or judgment without reduction for the payment of any and all liens, including, but not limited to, any lien for services rendered by any attorney previously enrolled as counsel for the plaintiff(s).

In the event a portion and/or all of any settlement is structured, that is, where settlement funds are to be paid over a period of time, the attorney can, at his option, take his full fee in cash at any time when enough monies are available from settlement funds to satisfy all and/or a portion of his fee. It is hereby understood that the attorney is not required to wait until any/or all structured payments are made to the client before taking a portion and/or all of his fee as described in 1-2 above.

IT IS UNDERSTOOD AND AGREED between the parties that this contract is intended to and does hereby assign, transfer, set over and deliver unto Attorney as his fee for the representation of Client in said claim and/or claims, an interest in the claim and/or claims under the terms and conditions aforesaid, in accordance with the provisions of LA.R.S. 37:218.

IT IS FURTHER UNDERSTOOD AND AGREED between the parties that the claim and/or claims are not to be compromised without the written consent of the Attorney.

Whenever the word "Client" is used, it shall be construed to mean "Clients", and whenever the word "Attorney" is used, it shall be construed to mean "Attorneys".



**THUS DONE AND SIGNED** at New Orleans, Louisiana, in the presence of the undersigned competent witnesses on this ⁵ day of March , 2004.

**WITNESSES:**

_____

_____
Alfred   Abramson,   individually   and   as
executor for the estate of decedent, Joseph
Abramson, CLIENT

_____

_____
Carol Schudmak "CLIENT"

_____
Aaron Abramson, "CLIENT"

_____
DAVID V. BATT, ATTORNEY