IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**FILED**

**20 2005**

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

ALFRED ABRAMSON, individually and as
Executor of the Estate of JOSEPH
ABRAMSON, deceased, AARON ABRAMSON
and CAROL SCHUDMAK, individually

      PLAINTIFFS,

v.

                                   CIVIL ACTION NO. : 3:04-0489

DAVID BRUCE SMALL; LANEKO
MANUFACTURING COMPANY;
RBL LEASING CORPORATION,
DAVID BRUCE SMALL,
 UNITED SERVICES AUTOMOBILE ASSOCIATION,

      DEFENDANTS

**PLAINTIFF'S REPLY MEMORANDUM TO RESPONSE TO PLAINTIFF'S MOTION
TO DETERMINE QUANTUM MERUIT FEES OF R. EDISON HILL AND THE LAW
FIRM OF HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.**

      **NOW INTO COURT**, through undersigned counsel, comes plaintiff, Alfred Abramson

as executor of the estate of Joseph Abramson, deceased, who respectfully replies to the Response

to Plaintiff's Motion to Determine Quantum Meruit Fees of R. Edison Hill and The Law Firm of

Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. filed by R. Edison Hill on May 12, 2004, as

follows.

I.     **FACTS**

      As plaintiffs have already outlined, with substantial detail, the facts surrounding this

dispute over attorney's fees, plaintiffs will not reiterate those facts already before the Court.

However, as Mr. R. Edison Hill's Response Memorandum contains numerous factual and legal

errors and misrepresentations, plaintiffs will address those briefly herein.

First, Mr. Hill contends that the contract entered into between the Hill Firm and Mr. Alfred Abramson is not a "contingency fee contract" and is therefore enforceable by the Court. Plaintiff's would respectfully urge the court to study the contract as a whole which is clearly, on it's face, a contingency fee contract, specifically stating, "The client employs the Attorney to represent the client's best interest, and if necessary, to institute and prosecute suit. As compensation for legal services, the client agrees to pay and hereby assigns unto the attorney forty percent (40%) of all monies and things of value recovered in said claim." Moreover, the portion of Mr. Hill's contingency fee contract to which he refers, allows for compensation upon his discharge based upon a "part of the contingent fee". A rose by any other name is still a rose. Here, the portion of the contract referred to by Mr. Hill remains a compensation agreement for a portion of a contingency fee contract and still relies upon a contingency fee in determining his fee upon discharge. Accordingly, the contract, despite Mr. Hill's assertions to the contrary, is still a contract for a contingency fee and was vitiated, under West Virginia law, upon his discharge. Mr. Hill's legal argument on this matter, which is equally misleading, is discussed in detail below.

Second, with respect to Mr. Hill's alleged "aggressive investigation of the facts of the accident" plaintiffs would respectfully dispute several of his allegations. Mr. Hill maintains that current counsel's Rule 26 disclosures listed many of the same witnesses he had retained before his firm's discharge. He argues that this fact lend credence to the value and quality of his services before his discharge. However, his simple act of telephoning well-known experts and retaining them is not supportive of his quantum meruit claims. This Court should recognize that the act of retaining experts is a superficial and facile act which is often accomplished by non-lawyer paralegals. Certainly, Mr. Hill cannot demonstrate unusual acumen or effort was

2

involved in the process. It is disingenuous to suggest otherwise. More importantly Mr. Hill failed to retain certain critical experts necessary to securing a meaningful settlement offer.

Additionally, although Mr. Hill claims that the plaintiff's claims and damages were "fully and completely investigated" and that the claim was "ripe for mediation/settlement scheduled for March 2, 2004," the evidence, even that presented by Mr. Hill himself, shows otherwise. Specifically, although Mr. Hill contends he would have settled the case for $2.2 million at that mediation, or for "perhaps more" in March of 2004, this is nothing more than gross speculation and over-evaluation of his own abilities as an attorney based on the posture of the case at the time. As is demonstrated by the documentation supplied by Mr. Hill, prior to his discharge, he had not received any settlement offer from defendant. Moreover, undersigned counsel received a settlement offer from defendants, in the woefully inadequate amount of $800,000 only on September 14, 2004, Ex. 1, which was six and a half months following Mr. Hill's discharge. The minimal value of the settlement offer suggests that the prior work of the Hill Firm had been substandard and ineffectual. Indeed, the current multi-million dollar settlement was reached only after a years worth of work, including approximately 706 hours of time expended by current counsel, $20,510.98 in expenses, Ex. 2 in globo, and a day long "mini-trial" in which current counsel negotiated a settlement 1.2 million dollars above defendant's previous settlement offer of October 5, 2004. Ex. 3. Moreover, current counsel's vigorous prosecution of the case led to the defendants conceding liability prior to the mediation. Ex. 4. Defendants never conceded liability to Mr. Hill. Furthermore, although Mr. Hill claims he expended substantial time in determining that $11 million dollars in coverage existed covering the accident which led to the death of Joseph Abramson, undersigned counsel is at a loss as to why, or how this could take so long. Counsel for defendants, Avrum Levicoff, volunteered this information upon undersigned

3

counsel's request, and, per the rules of discovery, once suit was filed, defendants were obligated to provide this information amicably and efficiently.

Third, Mr. Hill's contention that he researched a survival action and punitive damages is simply not supported by the record. In an attempt to buttress his "research" he points to a demand letter in which he cites to one West Virginia case in support of recovery for Joseph Abramson's pre-death pain and suffering. (Hill Response Memo, Ex. C). Mr. Hill's demand letter did not contain any analysis of quantum awarded for such damages in similar cases, and as such, was clearly not an effective demand letter. Simply outlining that such damages are available to a plaintiff, does not constitute research on the value of said damages. This is particularly true as Mr. Hill had retained no expert to prove a survival action, that is, to prove that the decedent experienced conscious pain and suffering after experiencing a broken neck. Specifically, current counsel contacted and retained Dr. Jonathan Arden, plaintiff's expert forensic pathologist. Moreover, the demand for punitive damages in the "draft" of the complaint, which was never filed by Mr. Hill, (Hill Response Memo, Ex. D) fails to cite any case law regarding punitive damages. On the other hand, undersigned counsel fully researched these issues and drafted a nine page settlement demand which outlined with specificity damages awarded in similar cases for wrongful death, survival actions and punitive damages. Ex. 5. Additionally, Mr. Hill's demand letter, which he relies on so heavily as evidence of the work he undertook in this case, does not even mention punitive damages, much less present any research or citation to awards for punitive damages in West Virginia. Clearly, based on the evidence presented by Mr. Hill himself, his work on these issues was minimal, and did not, and could not have, contributed to the plaintiff's ultimate recovery in this case.

Further, although Mr. Hill claims that two out of three expert reports produced by plaintiff were obtained through his efforts, again, this is a blatant misrepresentation. First, Mr. Brookshire, an economist, was never used by the plaintiff in that, presumably upon Mr. Hill's direction, he refused to testify on behalf of the plaintiff following Mr. Hill's discharge. Accordingly, current counsel was forced to retain Dr. Kenneth Boudreaux as an expert economist at additional expense to the Estate. Dr. Boudreaux rendered the report which was ultimately exchanged with defense counsel pursuant to Rule 26 expert disclosures. Ex. 6. The only expert utilized by current counsel, initially retained by Mr. Hill, in prosecution of this case, was Mr. David Stopper. Notably, Mr. Stopper only issued a brief preliminary report at the direction of Mr. Hill. Ex. 7. It was not until undersigned counsel represented the plaintiffs that Mr. Stopper was contacted to conduct a complete evaluation of the case and render a full written report in compliance with Federal Rule 26. Ex. 8. Moreover, as Mr. Hill never conducted any discovery in the case, as he failed to file a complaint, Mr. Hill cannot take credit for Mr. Stopper's retention with respect to his supplemental report in which he evaluated the defendant's discovery responses and analyzed this information with particular attention to punitive damages and violations of federal law. This analysis was undertaken only on behalf of and at the request of current counsel. Ex. 9. Moreover, as discussed above, Mr. Sigman was disclosed as a witness under Rule 26(a) only out of an abundance of caution. Undersigned counsel never used Mr. Sigman, contacted him only once, and determined that the work undertaken by Mr. Sigman at the request of Mr. Hill was not only irrelevant to the case at hand, but had no value in prosecuting or settling the plaintiff's claim. The only work undertaken by Mr. Sigman of any value to the case was obtaining photographs from the police department, a task which was easily undertaken by current counsel's paralegal and a telephone call and hardly warranted the expense of a "private

investigator". Why Mr. Hill's firm would retain a private investigator in an accident case so thoroughly exposed in the media and so thoroughly investigated by West Virginia law enforcement is a mystery. Moreover, said photographs could have also easily been obtained via standard discovery procedures and a subpoena duces tecum. Ex. 10.

Next, Mr. Hill disingenuously claims that undersigned counsel has not attempted to resolve the current fee dispute amicably with Mr. Hill. First, undersigned counsel's office initiated several telephone calls to Mr. Hill to discuss this matter, Mr. Hill never returned these calls. Moreover, Mr. Hill did not forward a settlement demand of any kind to either his former clients, or their current counsel, even after such a demand was requested by Mr. Schudmak in correspondence dated February 6, 2004 (Plaintiff's First Memorandum in Support, Ex. E) and by Mr. Batt via correspondence dated February 23, 2005. (Plaintiff's First Memorandum in Support Ex. F). On March 14, 2005, via correspondence, plaintiffs' present attorney, Mr. Batt, again requested a settlement demand and accounting of the costs expended by the Hill Firm and the hours spent in representation. (Plaintiff's First Memorandum in Support, Exhibit G, Letter of March 14.) On March 30, 2005, Mr. Hill corresponded with Mr. Batt and yet again refused to present documentation regarding his representation of the Abramson Estate, and instead, demanded information regarding Mr. Batt's representation of his clients. (Plaintiff's First Memorandum in Support, Ex. H). As is explained in detail below, Mr. Batt responded in a letter of April 11, 2005, that Mr. Hill and his firm are not entitled to such information, as Mr. Batt has a valid contingency fee agreement and his fees are not at issue. In the same correspondence, Mr. Batt explained, once again, the applicable West Virginia law, the concept of quantum meruit, and again requested a settlement demand from Mr. Hill. (Plaintiff's First Memorandum in Support, Exhibit I, Letter of April 11). On April 12, 2005 Mr. Hill finally forwarded documentation of

6

his costs and hours allegedly expended by his firm in representing the Abramson Estate along with a **settlement demand of $573,651.70** for his six month representation of the Estate. (Plaintiff's First Memorandum in Support, Ex. J, Letter of April 12, 2005).   In his correspondence, Mr. Hill unilaterally demanded a "contingency fee" of 25% as quantum meruit for the services he rendered while representing the Estate, this despite the fact that Mr. Hill no longer has any valid contingency fee agreement as West Virginia law clearly establishes that a lawyer's right to a contingency fee is extinguished when the lawyer is discharged. ***Mr. Hill's settlement demand, which is clearly unreasonable under a quantum meruit analysis, as discussed below, equates to a <u>legal fee of $3685.47</u> per hour worked by the Hill Firm.***   Despite undersigned counsel's attempts at negotiating a **<u>reasonable fee</u>** in this matter, Mr. Hill has **<u>never</u>** reduced this initial, outrageous, demand, and refused to further negotiate, instead, filing a Motion for Hearing on his 'charging lien'.   The excerpt of undersigned counsel's correspondence, which attempts to calculate a reasonable fee for legal representation based upon an hourly rate calculation, was propounded to Mr. Hill only after numerous attempts to contact and negotiate with him, and was a valid settlement offer, which, Mr. Hill rejected outright.  Hill did not even forward a counter-offer or attempt further negotiation.  This failure to respond in any reasonable manner to a valid offer to settle the dispute, further demonstrates Mr. Hill's refusal to negotiate any type of reasonable fee in this matter, thus forcing the matter before this Honorable Court.

Finally, Mr. Hill makes several other unsubstantiated claims in his memorandum.  He first claims that plaintiff's recitation of the facts is a "distorted version of reality."  Mr. Hill's dramatic semantics aside, plaintiff's are confident that this Court will determine that a legal fee equating to over $3,000 an hour, as demanded by Mr. Hill, is simply ridiculous.  Moreover, Mr. Hill goes to great lengths to explain why he was discharged in this case. (Hill Memo pg. 11).

7

However, why Mr. Hill was discharged is irrelevant. He was discharged by his client, and accordingly, his contingency fee contract is vitiated under West Virginia Law as discussed below. Nonetheless, as is demonstrated by the attached affidavit of Alfred Abramson, Ex. 11, Mr. Abramson was gravely dissatisfied with Mr. Hill's representation for a variety of reasons including failure to expeditiously file a complaint, failure to properly investigate punitive and survival actions, failure to keep Mr. Abramson and the Estate abreast of issues in the case, and most importantly, prematurely agreeing to enter into a mediation with the tortfeasor's insurer.

## II.    LAW AND ARGUMENT

**This Court must set Mr. Hill's fee on a quantum meruit basis apportioning a reasonable amount to each billable hour documented by Mr. Hill's fee statement.**

At the outset, undersigned counsel wishes to make it clear to the Court that the work undertaken by current counsel, and current counsel's legal fee are simply not in dispute. No party has nullified or vitiated the contract for representation executed by Alfred and Aaron Abramson and Carol Shudmak with David V. Batt and the Firm of Lobman, Carnahan, Batt, Angelle and Nader. Accordingly, current counsel's fee is not at issue, and is not to be considered in determination of the amount of quantum meruit fees to be awarded to Mr. Hill and his firm for work previously undertaken in this case.

Moreover, the quality or quantity of work undertaken by David V. Batt his firm, in representing the Estate of Joseph Abramson is also not in dispute, nor, under applicable case law, is it relevant to the instant dispute. The West Virginia Supreme Court of Appeals first addressed this issue in 1925 in the case of Stafford v. Bishop, 127 S.E. 501 (1925). There, the court outlined those factors which may be considered in determining the value of an attorney's services based on quantum meruit, these factors are discussed in detail in plaintiff's original motion and again below. Notably, **the subsequently retained attorney's work is simply not an issue in**

8

**determining the quantum meruit fee of a previously discharged attorney.** See also Statler v. Dodson, 466. S.E.2d 497, 506 (W.Va. 1995); Hardman v. Snyner, 393 S.E.2d 672 (W.Va. 1990). Nowhere, in any of these cases does the court suggest that the representation of subsequent counsel is to be considered. In fact, the *only* circumstances in which the court is to even look at the work undertaken by a subsequent attorney is where there was some sort of business relationship between the discharged attorney and the subsequently retained attorney, i.e. where the attorneys from one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided, see, e.g., Kopelman and Associates, L.C. v. Collins, 473 S.E.2d 910 (1996), or where subsequent and current counsel once had an office sharing arrangement which was subsequently terminated. See Shaffer v. Charleston Area Medical Center, Inc., 485 S.E.2d 12 (W.Va. 1997). This is simply not the case here. As discussed in detail in plaintiff's original memorandum, Mr. Hill and the Hill Firm have never shared any type of business relationship with David Batt and his firm. Said firms are not even located in the same state. Accordingly, under the applicable case law and ethical rules there should be no inquiry into the work done by Mr. Batt and his firm in the instant case in determining the quantum meruit fee to be awarded to Mr. Hill and the Hill Firm. The fee of current counsel is simply not an issue before this court.

A.    **The Hill Firm does not have a valid or executable contract of any type.**

As discussed in detail in plaintiff's original Memorandum in Support of Motion to Determine Quantum Meruit Fees of R. Edison Hill and the Hill Firm, West Virginia's Rules of Professional Conduct, Rule 1.16(a)(3), specifically allows a client to discharge an attorney in a civil case at any time, **with, or without cause**. See also ABA Rules of Professional Conduct 1.16. The advisory notes to the rule indicate that a client has a right to discharge a lawyer at any

9

time, subject only to liability for payment for the lawyer's services. In fact, Hardman v. Snyder, 393 S.E.2d 672 (W.Va. 1990) specifically addressed the issue and determined that upon discharge of an attorney, the retainer agreement or employment contract is simply vitiated. There, the court state that, "**a client's discharge of his attorney is not a breach of contract** . . . implied by law into [the contract] by reason of the special relationship between the contracting parties, [is that] **the client may terminate the contract at will.**" Notably, nowhere in Hardman, or in any other West Virginia case on the topic, has the court stated that when the client terminates the contract at will, that any portion of the contract remains valid. To the contrary, the client has a right to terminate the **entire** contract at will, at any time. In The Committee on Legal Ethics v. Cometti, 430 S.E.2d 320, 327 (W.V. 1993), the Supreme Court clearly opined that the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered. As stated succinctly by the Supreme Court in this case:

> A client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties . . . Moreover, we have held that since *the client has the absolute right of public policy grounds to terminate the attorney-client relationship at any time without cause,* it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and *the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered.*

Id. at 269 (emphasis added). Notably, the West Virginia Supreme Court refers to a "particularized retainer agreement between the parties" and held that regardless of whether this is a contingency fee agreement or any other type of retainer contract, the attorney discharged can only recover in quantum meruit. Obviously, Mr. Hill's contention that a portion of his "attorney client contract" is somehow valid with respect to payment of fees following his discharge is simply incorrect. The highest court of West Virginia has determined that the client's right to discharge his attorney at anytime is implied into the contract and that this implied term of the

10

contract vitiates the original fee agreement and imposes a limitation on damages via a quantum meruit analysis. Moreover, it is abundantly clear from Mr. Hill's memorandum, that there is absolutely no statutory or jurisprudential law to support his contention that an attorney can "contract out" of a quantum meruit analysis following his discharge. Moreover, careful review of the language of the provision of Mr. Hill's contract demonstrates that his logic is circular and that once again, despite his discharge; he is still seeking his contingency fee, or a portion thereof. The language of the fee agreement cited to states, "Fair compensation is defined as the part of the contingent fee that best represents the contribution made." However, Mr. Hill is simply not entitled to any part of a contingent fee under West Virginia law, but instead, as discussed in detail in plaintiff's original Memorandum, he is entitled only to the "reasonable value of the services rendered" under a quantum meruit analysis. Thus, Mr. Hill's specious argument that the West Virginia Supreme Court's pronouncements in <u>Cometti</u> and <u>Hardman</u> are somehow limited to contingency fee contracts is simply a misstatement of applicable law. Moreover, the West Virginia Bar Association and the ABA both allow for unilateral discharge of an attorney without cause. No matter how much Mr. Hill desires that his contract with the Abramson Estate, or any portion of his contract with the Abramson Estate, control the instant fee dispute, it simply does not under the jurisprudence of the State of West Virginia. Upon his discharge by the Estate, the **entire** contract was vitiated and Mr. Hill's only recourse for compensation for the work allegedly undertaken by him is in quantum meruit.

This conclusion is supported by general contract law of the State of West Virginia which holds that a contract which is against public policy is rendered entirely invalid. Clearly, a contract for a contingency fee by an attorney, which attempts to circumvent the Ethical Rules of the State of West Virginia and jurisprudence governing the fees to be obtained by said attorney

11

upon his discharge[1], is against public policy and invalid on its face. The court in <u>Cometti</u>, cited

above, distinctly noted that public policy governs a client's right to discharge his attorney at any

time. As succinctly stated by the West Virginia Supreme Court in <u>Smith v. Bell</u>, 41 S.E.2d 695

(W. Va. 1947):

> Public policy is difficult, perhaps impossible, to define. It exists and functions
> generally within a State for the protection and the regulation of matters of public
> morals, public health, public safety, public welfare, and similar and related subjects,
> and to condemn that which conflicts with the morals of the time and contravenes any
> established interest of society. It operates as a ban against gambling or wagering
> contracts, contracts involving wrongful acts or omissions, contracts which tend to
> injure the public service, *contracts injuriously affecting the administration of
> justice*, contracts in restraint of trade, and numerous other intolerable practices and
> undertakings of like nature. It tends to produce, and is reflected in, constitutional
> provisions, enactments of statutes, and judicial pronouncements which render illegal
> or unenforceable acts and conduct inimical to the welfare of the public.

(emphasis added). There can be no doubt that giving any import to Mr. Hill's contract, as he has

requested in his Response Memorandum, flies in the face of established jurisprudence and ethical

standards and would injuriously affect the administration of justice and the well-founded

principal that a client may discharge his or her attorney at any time, subject only to payment for

the reasonable value of the attorney's services under a quantum meruit analysis. <u>Statler v.

Dodson</u>, 466 S.E.2d 497 (Court determined that because client terminated attorney's services, he

can not recover based on the contingency fee but can recover only in quantum meruit); <u>Clayton</u>

---

[1] West Virginia's Rules of Professional Conduct, Rule 1.16(a)(3), specifically allows a client to discharge an
attorney in a civil case at any time, with, or without cause. <u>See also</u> ABA Rules of Professional Conduct 1.16. The
advisory notes to the rule indicate that a client has a right to discharge a lawyer at any time, subject only to liability
for payment for the lawyer's services. <u>See</u> Hardman v. Snyder, 393 S.E. 2d 672 (W.Va. 1990)("Where an attorney
has been discharged, without fault on his part, from further services in a suit begun by him under a contract for
payment contingent upon successful prosecution of the suit, his measure of <u>damages is not the contingent fee agreed
upon, but the value of his services rendered.</u>");The Committee on Legal Ethics v. Cometti, 430 S.E.2d 320, 327
(W.V. 1993); Statler v. Dodson, 466 S.E.2d 497 (Court determined that because client terminated attorney's
services, he can not recover based on the contingency fee but can recover only in quantum meruit); Clayton v.
Martin, 151 S.E. 855 (1930)(where attorney discharged without fault from further services begun by him under a
contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the
contingent fee agreed upon, but the value of his services rendered).

v. Martin, 151 S.E. 855 (1930)(where attorney discharged without fault from further services begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered)[2]. From a practical standpoint, the interpretation propounded by Mr. Hill would effectively subject clients who exercise their right to discharge an attorney at will to a "double" contingency fee, an outcome which the Rules of Ethics and jurisprudence obviously seek to avoid. See also May v. Seibert, 264 S.E.2d 156 (W.Va. 1986)("It is clear, as a matter of public policy, that a blameless client should not have to pay two attorneys' fees."). Moreover, it would allow Mr. Hill to subject a subsequent attorney to the terms of a contract which said attorney was not a party to.[3] Accordingly, **the contract, as a whole, is vitiated**, and Mr. Hill's unsubstantiated argument that a portion of his contingency fee contract can remain enforceable is simply unsupported by any jurisprudence or statutory authority. See e.g. Kyriazis v. University of West Virginia, 450 S.E.2d 649 (W.Va. 1994)(Clause in agreement exempting party from tort liability is unenforceable on grounds of public policy); McClung v. Marion County Com'n, 360 S.E.2d 221 (W.Va. 1987)(an agreement by an employee to work for less than the applicable

---

[2] Strangely, Mr. Hill concedes that these cases apply to the instant case, pg. 3, Response Memorandum, yet still attempts to argue that his contract, or a portion thereof is somehow valid. In addition, Mr. Hill also cites to Aetna Cas. & Sur. Vo. v. Pitrolo, 342 S.E.2d 156, 161 (1986), on this same page of his brief in support of a contention that "twelve factors be utilized to determine the basis for a reasonable fee." Pretermitting for the moment the logical inconsistency of Mr. Hill's concession that these cases control the fee dispute while at the same time his invalid employment contract controls the dispute, Pitrolo, and the court's application of 12 factors to determine a fee dispute, deals only with attorney fee disputes with respect to a third party. There, the Court held that an insured was entitled to recover expenses of third party litigation, including cost and reasonable attorney's fees, where insurer refused to defend him without valid justification. Consequently, Hill's reliance on Pitrolo is misplaced. Mr. Hill also states that plaintiffs "reliance" on May v. Seibert, 264 S.E. 2d 643 (1980) in support of a quantum meruit analysis for Hill's fees is misplaced. However, plaintiffs cited to said case in support of other jurisprudence which clearly outlines that a discharged attorney's compensation is only determined by quantum meruit, moreover, had Mr. Hill read the case, he would have noted the discussion in Ftn. 1, which cites to Stafford, and does indeed comment on the proper payment analysis where an attorney has been discharged. Moreover, May is illustrative, as the same standard of quantum meruit is used to determine attorneys fees where an attorney withdraws for cause.

[3] See Hill Contract which states, "fair compensation is defined as the part of the contingent fee that best represents the contribution made and risk assumed by the Attorney relative to the total of all contributions and risks viewed retrospectively as of the resolution of the claims covered by this agreement."

wage rate is against public policy and unenforceable); <u>Pancake Realty Co. v. Harber</u>, 73 S.E.2d

438 (W.Va.1952)(Contract resulting in unreasonable restraint of trade is void at common law as

it is contrary to public policy. also holding that "a contractual restriction in employment contract

which prohibited employee from engaging in any business similar to that of employer for period

of one year from time of termination of contract, without specification of territorial limitation,

was unreasonable and in violation of public policy, and consequently void); <u>Le Masters v. Board</u>

<u>of Education of Grant Dist.</u>, 141 S.E. 515 (W.Va. 1928)(School board's plea that teacher's salary

claim was compromised as consideration for contract employing teacher for following term held

invalid; such agreement being void as against public policy).

Furthermore, it bears mentioning that the only jurisprudence cited by Mr. Hill in support

of his contention that his contingency fee agreement, or the portion thereof dealing with attorney

dismissal, is somehow still enforceable is a Court of Appeals case from Georgia. Pretermitting

the obvious fact that Georgia law simply does not apply in this West Virginia case, and citation

of said case is a clear indication that Mr. Hill is "grasping at straws", the case cited to <u>Morrow v.</u>

<u>Stewart</u>, 399 S.E.2d 280 (Ga. App. 1990) was later distinguished by <u>Sosebee v. McCrimmon</u>,

492 S.E.2d 584 (Ga. App. 1997) and limited to its specific facts. Moreover, <u>Morrow</u> allowed

the contingency fee to be paid after discharge by the plaintiff solely because the contract had

reached an end, i.e. the plaintiff did not discharge his attorney until after he had received and

accepted an offer of settlement. Thus, the contingency contracted for had already come into

fruition. In fact, despite Mr. Hill's assertion to the contrary, the case actually states with

specificity that the "usual rule in cases where the attorney is dismissed . . . under a contingency

fee agreement prior to the happening of the contingency (i.e. settlement or verdict)" is that the

attorney is "only entitled to receive the reasonably value of his services under the remedy of

quantum meruit." Here, Mr. Hill is well aware that he had not managed to obtain any type of settlement offer from the defendant's insurer prior to his discharge much less reached the "contingency contracted for." In addition, should this Court find the need to venture outside of West Virginia jurisprudence in determining the "contractual" issue, one Georgia Court of Appeals case is simply not an accurate survey of other courts' analysis of the issue. In fact, a thorough review of other jurisdictions which have tackled the issue reveals that, consistent with West Virginia law, courts have consistently upheld a client's right to terminate his or her attorney at will, and that such termination vitiates the entire contract for employment or retainer agreement, particularly where said agreement is based upon a contingency fee[4].

The only other support for Mr. Hill's contention that a vitiated contract governs his fee in this matter is his repeated citation to Kopelman and Associates, L.C. v. Collins, 473 S.E.2d 910 (1996), this despite the fact, as undersigned counsel has explained, ad nasuem to Mr. Hill, the

---

[4] Maksym v. Loesch, 937 F.2d 1237 (C.A.7 1991)(client who discharges his lawyer, on any ground or no ground, is liable only for fair value of services lawyer has rendered, and not for contractually specified fees); Ruzicka v. Rothenberg, 83 F.3d 1033 (C.A.8 1996)(Notwithstanding that attorney-client relationship was originally begun by written contract providing for contingent fee, where client discharged lawyer before settlement because when the client discharged the lawyer, the contract was terminated); Batter v. Williams, 316 F.2d 540 (11th Cir. 1963)(attorney may recover for damages for breach of contract for attorney's fees when client discharges him without cause only if there is a definite agreed on fee, and where there is no agreement as to fixed fee, the attorney will only be allowed to recover in quantum meruit for services already rendered.); Sutton v. Subaru of America, Inc., 771 F.Supp. 321 (D.Kan.,1991) citing  Madison v. Goodyear Tire & Rubber Co., 663 P.2d 663 (Kan App. 1983) and In re Phelps, 459 P.2d 172 (Ka. 1969), cert. denied, 397 U.S. 916, 90 S.Ct. 922, 25 L.Ed.2d 97 (1970)(Under Kansas law, when an attorney engaged under contingency fee contract is discharged prior to the designated contingency, the attorney cannot recover on the basis of the contract); Mulholland v. Kerns, 822 F.Supp. 1161, 1167-68 (E.D.Pa.1993) (finding that attorney who was discharged by clients was still entitled to recovery of fees on a quantum meruit basis, even though the parties had agreed to a contingent fee);Fracasse v. Brent, 6 494 P.2d 9 (Ca. 1972)(The right of a client to change lawyers has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well); Salem Realty Co. v. Matera, 426 N.E.2d 1160 (Mass. 1981)("[t]he general rule now recognized in Massachusetts and a majority of States is that a client's discharge of an attorney ends the attorney's right to recover on the contract of employment" citing. C. Wolfram, Modern Legal Ethics § 9.5.2, at 546, (1986)); Elliott Reihner Siedzikowski & Egan, P.C. v. Pennsylvania Employees Benefit Trust Fund,161 F.Supp.2d 413 (E.D. Pa. 2001)(law firm could not recover attorneys fees based on breach of contract, but was limited to recovery on quantum meruit theory); Novinger v. E.I. DuPont de Nemours & Co., Inc., 809 F.2d 212 (Pa.1987)(like other retention agreements, contingent fee agreements are terminable by the client); Heinzman v. Fine, 217 Va. 958, 234 S.E.2d 282 (1977)(The court held that a client's right to discharge his attorney is compromised if he is liable for a contingency fee to both his former and current attorneys).

case, by it's own language, is limited to fee disputes between competing attorneys arising **when attorneys leave a firm and take several of the firm's clients with them, or, where there exists some business relationship between the disputing attorneys prior to the fee dispute.** Mr. Hill is well aware that such is not the case here. Despite this, Mr. Hill relies on the Kopelman case on pages 4, 8, 9 for a variety of propositions. Accordingly, undersigned counsel must once again point out to the Court that Mr. Hill's application of Kopelman in support of his contention that a portion of his contingency fee agreement remains valid and enforceable is misplaced and that said case simply does not determine or have any bearing on the dispute at hand.

In the instant case, Mr. Hill's initial contingency fee contract, signed by Alfred Abramson as the representative of the Estate of Joseph Abramson is, simply put, under the law of West Virginia, null and void, and has no bearing on the instant fee dispute.

### B.     Determination of Quantum Meruit Fee

As discussed above, the means by which to determine the fee owed to a previously retained, and subsequently discharged attorney, is *quantum meruit,* or in lay terms, "as much as is deserved." Black's Law Dictionary 1243 (6th ed. 1990). See Stafford v. Bishop, supra, Statler v. Dodson, supra; Clayton v. Martin, supra.; Pritt v. Suzuki Motor Co., Ltd., 513 S.E.2d 161 (W.Va. 1998); May v. Seibert, 264 S.E.2d 643 (W.V. 1980).    There is no question that the theory of *quantum meruit* applies to the issue of determining Mr. Hill's legal fees in the instant case.    As discussed in detail above, Mr. Hill's contract was vitiated by his client in its entirety upon his dismissal from employment.   His contention that the portion of the contract dealing with dismissal, which is clearly against public policy and seeks to allow the attorney to

determine his own portion of a contingency fee upon dismissal, is somehow valid, is simply unconscionable, as discussed above.

Further, Mr. Hill disingenuously claims to the Court that counsel for plaintiff has argued that he is "entitled to quantum meruit based on some hourly rate that is considered reasonable." A review of plaintiff's original motion clearly shows this assertion to be untrue. Plaintiffs have simply stated, in their previous filing, the well established rule that, "It is axiomatic that in a suit on quantum meruit for services the value of the services must be shown, and not left to conjecture." Clayton, supra. Moreover, despite Mr. Hill's contention that the counsel for plaintiffs have only given "lipservice" to those factors outlined in Stafford v. Bishop, 127 S.E. 501 (1925), which may be considered in determining the value of an attorney's services based on quantum meruit, plaintiff's original Motion and Memorandum in support diligently outlined those factors and applied them to the work undertaken by Mr. Hill in the instant case. Although Mr. Hill clearly does not like the fact that these are the factors to be applied in determining his fee in the instant case, his dislike of applicable law does not change it. As stated in plaintiff's original memorandum, under Stafford the Court is to consider:

  1) the attorney's ability, skill, experience, diligence, and standing in his profession,
  2) the nature and extent of the services performed,
  3) the difficulties encountered,
  4) the responsibility assumed,
  5) the amount involved,
  6) the physical and mental labor expended,
  7) the results achieved and their benefit to the client, and;
  8) the usual and customary charges for like services in the same vicinity.

In applying these factors to Mr. Hill's representation of the Estate, an exercise which Mr. Hill has not undertaken, despite the jurisprudential mandate to do so, plaintiffs urge this court to consider the following analysis.

First, Mr. Hill has failed to present any evidence (other than his own self-serving assertions) as to his ability, skill, experience, diligence, and standing in his profession. Second, Mr. Hill and his firm expended at the most, 146.25 hours in representation of the Estate, and, again, at most, $34,651.70 in expenses.[5] Moreover, Mr. Hill has not related any difficulties he encountered during his short representation of the Abramson Estate, other than the obvious instant dispute with his former clients, nor has he submitted any proof regarding same. The next factor in the <u>Stafford</u> test is the responsibility assumed by the discharged attorney while representing his former client, for purposes of expeditious resolution of this matter, plaintiffs will concede that this factor may be calculated, at least partially, by the monies expended by his firm. Mr. Hill has documented $34,651.70 in costs, which will be reimbursed out of the settlement distribution, with the exception of Mr. Brookshire's fee of $1,950.00. In addition, $4,335.72 of Mr. Hill's cost statement is for "Investigative Expenses" of Mr. Sigman, which the bill reflects was to "investigate liability and damages under the direction of [Mr. Hill]". Said amount appears duplicative of the work undertaken by the expert witness, David Stopper, who personally investigated the scene as well. Moreover, as discussed in the Section I above, the work undertaken by Mr. Sigman was of little to no value to the plaintiff in prosecution of its claim. The settlement, which Mr. Batt secured in the instant case, is $2,156,000.00, which notably was obtained after a day long mediation, almost a year and a half after the Abramson Estate discharged Mr. Hill and his Firm. The physical and mental labor expended, by Mr. Hill's firm is approximately 146.25 hours, or approximately three to four weeks of work, in a six month period of time, during which Mr. Hill was retained as the attorney for the Estate. As to the results

---

[5] Plaintiff's object to the payment of fees for Dr. Brookshire as discussed in their original memorandum. In addition, it should be noted that plaintiffs have never refused to pay said fee, however, the settlement draft, pursuant to the mediation attended by David V. Batt, has been delayed until resolution of this matter. Obviously, once Mr.

achieved, Mr. Hill <u>did not achieve any results</u> prior to his discharge, and in fact, had not even filed a complaint or received a viable settlement offer from the defendant. Accordingly, the results had little benefit to his former client, the Estate. The final prong of the <u>Stafford</u> test, the usual and customary charges for like services in the same vicinity, appears to be between $100 and $150 per hour as opposed to the $3000.00 plus dollars an hour being sought by Mr. Hill.

While plaintiffs understand that the court must consider the aforementioned factors in determining an appropriate fee to award Mr. Hill, undersigned counsel notes, that as a practical matter, in most West Virginia cases, this issue is decided through analysis of the dollar-per-hour value of the discharged attorney's work. Obviously, this is because **the previous attorney is no longer entitled to his contingency fee or any portion thereof**. Accordingly, although the factors outlined above are to be considered in determining the appropriate fee, it is clear that, where no contingency fee is warranted, the only practical way for a court to determine a fee, is to put some value on the time and energy expended by the prior attorney in representing the client. Plaintiffs have never suggested that the court is not to consider those factors outlined in the above cited jurisprudence in determining the appropriate hourly wage. However, plaintiffs have cited to numerous cases in which the court, in determining a quantum meruit fee, ultimately placed an hourly rate on the time expended by the previous attorney. <u>See, e.g.</u> <u>Pritt v. Suzuki Motor Co., Ltd.</u>, 513 S.E.2d 161, 170 (W.Va. 1998)(lower court rejected $300 hourly rate asked for by attorney, and reduced rate to $140 per hour); <u>Shaffer v. Charleston Area Medical Center, Inc.</u> 485 S.E.2d 12 (W.Va. 1997), ftn. 6 (quantum meruit figure calculated at rate of $100 per hour); <u>Statler v. Dodson</u>, 466 S.E.2d 497 (W.V. 1995), ftn. 4 ($110 per hour of attorney work). <u>See also</u> <u>Annand and Green</u>, "Legislative and Judicial Controls of Contingency Fees in Tort

---

Hill's Lien has been resolved and the plaintiffs may freely execute their settlement draft, said expenses will promptly be paid.

Cases", 99 W.Va. L. Rev. 81, Fall 1996, ("It appears that typical hourly rates . . .in West Virginia are in the eighty to one hundred thirty dollar range" based on a 1994 survey of West Virginia Bar Members.). **In fact, plaintiffs can find no West Virginia case in which, as Mr. Hill argues, a portion of a contingency fee was awarded as quantum meruit.**

### III.   CONCLUSION

Here, although notably absent from his Response Memorandum, Mr. Hill is demanding a $539,000 fee for 146.25 hours of work in a case, where he filed no suit and only nominal and unsuccessful settlement negotiations were undertaken. He repeatedly argues that he is entitled to a "substantial fee commiserate with his firm's effort and expense [which] contributed to the successful outcome in the case" but fails to evaluate this supposed effort in any meaningful way under the applicable jurisprudence for determining quantum meruit fees. Mr. Hill's bald assertions regarding the work undertaken by his firm in this matter are certainly not evidence, but are consistent with his outrageous demand for compensation at a rate of $3685 per hour. Plaintiffs are confident that this Honorable Court will see through Mr. Hill's semantic maneuvering, his misunderstanding of the facts of the case, and his continued reliance on inapplicable jurisprudence, and award a reasonable fee to compensate him for the modicum of work he and his firm accomplished on behalf of the plaintiff in the above captioned matter.

Respectfully Submitted,

_Michael S. Bailey_

Michael S. Bailey (W.Va. Bar No. 8507)
Bailey and Howard, L.L.C
642 Main Street, Suite 201
P.O. Box 347
Barboursville, West Virginia 25504
*phone* (304) 736-0801
*fax* (304)736-0801

David V. Batt (La. Bar No. 2849)
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130
*phone* (504)586-9292
*fax* (504) 586-1290

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this ⟨17⟩ day of ⟨May⟩ , 2005, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid.

20

# LEVICOFF, SILKO & DEEMER, P.C.

## ATTORNEYS AT LAW

Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, Pennsylvania 15222-3911
TELEPHONE (412) 434-5200

FACSIMILE (412) 434-5203
www.LSandD.net

PENNSYLVANIA OFFICE

AVRUM LEVICOFF†
ALAN T. SILKO
ELIZABETH F. DEEMER‡
DIANNE S. WAINWRIGHT
RYAN J. KING†
KIRSTEN J. ERICKSON
DAMON R. THOMAS
MELISSA A. WALLS
BRETT C. SHEAR
MEGAN M. DEMAS
JOSHUA N. PERLMAN*

†Admitted in West Virginia
‡Admitted in Ohio
*Admitted in Massachusetts

WEST VIRGINIA OFFICE

BROWN & LEVICOFF, PLLC
Attorneys At Law
201 N. Kanawha Street
Suite 100
Beckley, West Virginia 25801
Telephone (304) 253-3700
Facsimile (304) 253-3797

JAMES M. BROWN
JANE E. HARKINS
COLLEEN C. McCULLOCH†*
HAMILTON D. SKEENS

*Admitted in North Carolina
†Admitted in Texas

September 14, 2004

*ALevicoff@LSandD.net*

David Batt, Esquire
Rachel Meese, Esquire
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130-3245

|  |  |
|---|---|
| RE: | ABRAMSON V. LANEKO ENGINEERING, ET AL |
| C.A. NO.: | 3:04-0489 |
| OUR FILE NO.: | 01575/02 |

Dear Mr. Batt & Ms. Meese:

Please allow this letter to serve as our response to your demand letter of August 17, 2004. We would like to reaffirm the offer in the amount of $800,000. We also renew our offer to coordinate a meeting to discuss settlement. As before, we would be willing to meet at your office, on a mutually convenient date.

That being said, we feel constrained to point out that your $5.6 million demand grossly exaggerates the realistic settlement value of this case. Our $800,000 offer better approximates the value of this claim. We also feel it appropriate to address several other points in your letter. You attribute much to the alleged conscious pain and suffering endured by the decedent between the time of impact and the fire that engulfed his vehicle. As you note, in McDavid v. United States, 584 S.E.2d 226 (W.Va. 2003), the court interpreted §55-7-5 of the West Virginia Code as allowing the recovery of damages for the conscious pain and suffering of a decedent. Id. at 236. However, the Court also stated that "in order for a jury to award damages for pain and suffering…there must be actual evidence of *conscious* pain and suffering of the decedent; conjecture will not suffice." Id. at 237. Where death is instantaneous or where there is no evidence that the decedent consciously perceived pain and suffering no damages are allowed. Id.

In the instant matter, we are presently not aware of any reliable evidence that the decedent consciously perceived pain and suffering prior to his death. Further, although the decedent may have survived the collision, there is no competent evidence that he was alive and conscious when the fire engulfed his vehicle. Even if one assumes that he was, the duration of

EXHIBIT
1

such conscious suffering is total conjecture. As such, the amount that you attribute to that element in your demand is way over exaggerated.

Your demand also includes an enormous amount for non-economic damages for bereavement and loss of consortium by the elderly father, brother and sister of the decedent. Give the respective ages of the parties, and the geographic detachment of the family, your estimate is severely over exaggerated. We would expect a jury to award the some, but cannot imagine the award would be in the range you include in your demand. Frankly, it almost suggests that the family members themselves would be entitled to a windfall due to this tragic accident.

Your letter cites a number of reported cases involving claims for wrongful death. Evidently, you propose to value the instant claim by reference to those cases. We find this approach thoroughly unsatisfactory for many reasons. First, contrary to your assertions these cases do not provide an average "range" for wrongful death damages. As you must be aware, these cases represent just a few of the many death cases that have reached resolution and by no means indicate the high and low end of the spectrum. We can assure you there have been death cases in which the recovery by settlement or judgment has been nominal. Indeed, these particular cases are wholly inapposite to the instant matter. For instance, I am intimately familiar with Wehner v. Weinstein, 444 S.E.2d. 27 (W.Va. 1994). The decedent was a 19-year-old college student, survived by young parents and a younger sister. Further, the decedent was killed as a result of a wanton, intentional act. The economic loss was projected at $1.2 million, which was not contested. The jury awarded $1.8 million, viz. The economic loss plus an additional $600,000 for non-economic items of damages. In our view, the damages in Wehner v. Weinstein far exceed the damages in the instant case.

By stark contrast, the decedent here was a 56-year-old, unmarried man with no dependents, survived by an elderly father and a brother and sister living in a distant city. Frankly, we don't see the comparison. Yet, your demand is three times the jury verdict in Wehner v. Weinstein!

Your demand letter also includes damages in the nature of a survival action. However, West Virginia does not recognize survival claims.

Regarding punitive damages you cite Bond v. City of Huntingdon, 276 S.E.2d. 539 (W.Va. 1981), and Alkire v. First National Bank of Parsons, 475 S.E.2d. 122 (W.Va. 1996). Bond, simply holds in an academic sense that punitive damages may be recovered in a death action. *We do not contest that, if supported by the evidence.* Alkire, bears no resemblance to this case. These are simply no circumstances here that would make out a *prima facie* case for punitive damages. The instant accident was clearly a result of the failure of the driver, David Small, to stop the tractor-trailer before striking several vehicles. There are no cases in West

*David Batt, Esquire*
*Rachel Meese, Esquire*
*September 14, 2004*
*Page 3*

Virginia that entitle a plaintiff to recover punitive damages based solely upon negligent operation of a vehicle.

We feel that settlement can be achieved in this matter. But, you are going to have be considerably more reasonable than your letter would indicate.

Very truly yours,

AVRUM LEVICOFF

AL/eab

# EXHIBIT "2" IN GLOBO

# FEE REPORT OF LCBAN

# EXPENSE REPORT OF LCBAN



That she is official Bookkeeper and Records Custodian for all billing and associated record keeping for the law firm of Lobman, Carnahan, Batt, Angelle & Nader, located at 400 Poydras Street, Suite 2300, New Orleans, Louisiana, 70130 (hereinafter "The Firm").

2.

That attached is the Fee Statement of hourly time expended by attorneys and personnel at the Firm relating to work done in conjunction with file no. 500-048167 in the case captioned, "ALFRED ABRAMSON, individually and as Executor of the Estate of JOSEPH ABRAMSON, deceased, AARON ABRAMSON and CAROL SCHUDMAK, individually PLAINTIFFS v. DAVID BRUCE SMALL; LANEKO MANUFACTURING COMPANY; RBL LEASING CORPORATION, DAVID BRUCE SMALL, UNITED SERVICES AUTOMOBILE ASSOCIATION, DEFENDANTS, pending IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON,   CIVIL ACTION NO.: 3:04-0489." Said statement outlines all hours expended in working on said case by members, associates and employees of The Firm between the period of March 4, 2004 and May 18, 2005, during the pendency of the above captioned litigation.

3.

Said record was prepared by me personally, during the regular course of business based on the contemporaneous records of hours I keep and record on a daily basis for The Firm.

4.

I hereby certify that said record is true and accurate to the best of my knowledge in my capacity as Bookkeeper and Financial Records Custodian for The Firm.

KATHERINE K. TRAINOR

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _19_ DAY
OF _May_____, 2005.

NOTARY PUBLIC

**Brandie L. Mendoza**
**Bar #29344**

1

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
400 Poydras Street, Suite 2300
New Orleans, LA 70130
Telephone: (504) 586-9292

IN RE ALFRED ABRAMSON
400 POYDRAS STREET
SUITE 2300
NEW ORLEANS LA 70130

Page: 1
05/18/2005
Account No: 500-048167
Statement No: 17386

DRAFT

Fees

| | | | Hours |
|---|---|---|---|
| 03/04/2004 | | | |
| | TLM | Conference with ptr re initial outline of defense strategies for trial/mediation; research requests | 1.00 |
| 03/05/2004 | | | |
| | TLM | Conference with ptr re supplemental outline of defense strategies for trial/mediation | 0.60 |
| | DVB | Attendance at extensive meeting with "prospective" clients and legal and factual research preparatory to same; | 4.00 |
| 03/08/2004 | | | |
| | DVB | Telephone conference with s.schudmak | 0.20 |
| | TLM | Legal research re: initial search for federal cases pertaining to West Virginia damage awards for fatal accidents, punitive damages, and identification of expert witness | 0.80 |
| 03/11/2004 | | | |
| | TLM | Correspondence to counselors re notice of representation and postponement of mediation | 0.40 |
| | TLM | Receipt and initial file review in preparation for discovery and mediation | 1.60 |
| 03/12/2004 | | | |
| | TLM | Investigation/Research re file review; identification of litigation status and outline of defense stategies | 4.00 |
| 03/17/2004 | | | |
| | DVB | Receipt and review of correspondence regarding mediation. | 0.20 |
| | DVB | Telephone conference with counsel. | 0.20 |
| | DVB | Receipt and review of Abbott's Wrecker Service Invoice. | 0.20 |
| 03/18/2004 | | | |
| | TLM | Legal research re: jurisprudential authority governing punitive damages burden of proof standard in West Virginia | 1.50 |
| 03/19/2004 | | | |
| | TLM | Legal research re: West Virginia statutory and case law requirements governing punitive damages; standard of proof in wrongful death actions; proper party plaintiffs and defendants in wrongful death action; compensatory damages in wrongful death action and itemization of | |

|  |  |  | Hours |
|---|---|---|---|
|  |  | general special damages | 4.90 |

**03/22/2004**

| TLM | Correspondence to expert witnesses and claims representation re notice of representation; change in counsel; request forward all correspondence and invoices | 0.70 |
|---|---|---|

**03/26/2004**

| DVB | Receipt and review of correspondence from John Perry regarding their file closure. | 0.20 |
|---|---|---|
| TLM | Legal research re: West Virginia's jurisprudential authority governing survival actions and awarded damages for punitive damages | 2.50 |
| TLM | Report to client re summary and analysis of research findings regarding awarded damages for wrongful death axn, survival axn, and punitive damages | 1.50 |

**03/29/2004**

| DVB | Receipt and review of correspondence regarding mediation/settlement meeting in New Orleans. | 0.20 |
|---|---|---|
| TLM | Correspondence from def counsel re request additional information on mediating service | 0.10 |
| TLM | Correspondence to def counsel re prod. of mediating service information per request | 0.20 |
| TLM | Conference with lead counsel re additional legal research to be performed in preparation for mediation and trial | 0.40 |

**03/30/2004**

| TLM | Legal research re: jurisprudential authority governing recoverable punitive damages in West Virginia; identification of local counsel for introduction to the court | 2.00 |
|---|---|---|

**03/31/2004**

| TLM | Telephone conference with local counsel of West Virginia bar re possible retention for introduction into federal court | 0.40 |
|---|---|---|
| TLM | Correspondence to local counsel of West Virginia bar re production of records per request for determination of any conflict of interest prior to any retention for introduction into federal court | 0.40 |
| DVB | Receipt and review of CV and standard fee agreement of Stopper & Associates. | 0.20 |

**04/01/2004**

| DVB | Receipt and review of correspondence from United Services Automobile Association. | 0.20 |
|---|---|---|
| TLM | Legal research re: jurisprudential authority cited within unpublished opinions from West Virginia circuit courts regarding recoverable damages for wrongful death, survival, and punitive damage claims | 5.00 |

**04/02/2004**

| TLM | Legal research re: unpublished jury verdicts, settlement, and aribtration dispositions in West Virginia governing awards for wrongful death, punitive damages, and survival action damages | 2.20 |
|---|---|---|
| TLM | Report to client re supplemental analysis of research findings on unpublished jury verdicts, settlement, and aribtration dispositions in West Virginia governing awards for wrongful death, punitive damages, and survival action damages in preparation for mediation and trial | 1.00 |
| TLM | Telephone call from W. Va. local counsel re notice of conflict; alternate | |

Case 3:04-cv-00489 Document 84 Filed 05/20/05 Page 28 of 119 PageID #: 754

Page: 3
05/18/2005
IN RE ALFRED ABRAMSON

Account No:          500-048167
Statement No:                17386

|  |  | Hours |
|---|---|---|
|  | counsel available | 0.20 |
| TLM | Telephone call to alternate local W. Va. counsel re notice of representation; request introduction into court | 0.30 |
| TLM | Correspondence to alternate local W. Va. counsel re prod. of initial discovery documents and notice of potential named defendants for determination of conflict of interest | 0.30 |
| LDZ | Receipt and review of entire file and related conferences w/DVBB re obtaining quantum study; get name from Tara mason re atty who will sponsor DVB for pro hac vice; and review file for succession information; | 3.70 |
| RAM | Conference with DVB/re: second chair responsibility for case/tasks to be acomplished next week, quantum letter, experts, west virginia lawyers | 1.00 |
| RAM | Correspondence to Tulane, re: West Virginia Alums | 0.10 |
| LDZ | Correspondence to Sam Shudmak re obtaining copy of court order appointing Alfred Abramson as executor of Joseph Abramson's estate; | 1.00 |

**04/03/2004**

| DVB | Receipt and review of memorandum/letter re quantum[from partner] ,additional research, and discussions with partner re same | 2.30 |

**04/05/2004**

| LDZ | Receipt and review of e-mail fr/DVB re obtaining appointment of executor of estate and reply; | 0.10 |
| DVB | Receipt and review of Letters of Appointment as Executor of Joseph Abramson's estate. | 0.20 |
| RAM | Legal research re: quantum evaluation west virginia law and cases | 5.40 |
| LDZ | Conference with DVB re executor papers; copy and make labeled file; and in re local counsel, and call to Mike Bailey @ (304) 736-0801; review requirements, demographics, memo to DVB, file; filing organization; WESTLAW research on forensic pathologists; attempts to reach Dr. Francis Field of Fairfax Va. and Dr. Isadore Mihalakis of Bethlehem, PA; indepth interview w/Dr. Irvin Sopher, chief medical examiner for West Virginia; attempts to reach Jack Frost, also retired, now living in Morganstown; related memo to DVB; with State Medical Board of W. Virginia; w/ | 5.10 |
| TLM | Telephone conference with alternate local counsel re fee arrangement for introduction into court and resourse on quantum study | 0.30 |
| RAM | Legal research re: adult sibling wrongful death actions | 1.00 |

**04/06/2004**

| RAM | Legal research re: quantum memorandum wrongful death siblings | 1.00 |
| RAM | Legal research re: quantum memorandum as per DVB's instructions | 2.50 |
| RAM | Legal research re: sorting through research for applicable case law, discussion with dvb/re how to break up facts for quantum evaluation | 0.50 |
| RAM | Legal research re: quantum evaluation reading of law review articles and search for less similar sibling accidents | 1.00 |
| TLM | Telephone call from alternate local counsel re confirm no conflict of interest; ability to introduce to federal court; fee arrangement | 0.20 |

**04/07/2004**

| RAM | Memo to file re: statutory provisions on wrongful death as per DVB's instructions | 1.00 |
| RAM | Legal research re: statutory provisions of W.V. law regarding wrongful death and survival actions | 1.00 |
| RAM | Legal research re: wrongful death quantum | 2.00 |

|  |  | Hours |
|---|---|---|
| **04/08/2004** | | |
| LDZ | Review of research databases and efforts to locate and speak to another forensic pathologist as "Jack Frost" has not returned our calls; | 1.00 |
| RAM | Conference with dvb/re: quantum memorandum and issues to be covered therein, letter to client and deadline for forwarding to as per DVB's instructions | 0.60 |
| RAM | Legal research re: quantum memorandum | 0.50 |
| LDZ | Telephone call from and to forensic pathologist James "Jack" Frost; | 0.30 |
| RAM | Legal research re: quantum for survival action | 0.80 |
| **04/09/2004** | | |
| RAM | Legal research re: quantum memorandum, puntive damages and cases regarding same/wrongful death in other states, statutory survey | 8.10 |
| **04/10/2004** | | |
| DVB | Telephone conference with multiple parties ;and discussions with potential forensic experts | 0.50 |
| RAM | Legal research re: quantum memorandum, drafting and compiling research | 5.20 |
| DVB | Legal research re: quantum issues ;punitive damages;research re capable quantum witnesses | 3.70 |
| **04/11/2004** | | |
| RAM | Correspondence to clients, quantum memorandum, finishing and editing of same and transmittal to dvb | 2.50 |
| **04/12/2004** | | |
| LDZ | Conference with atty RAM re retention of Robert Massie as local counsel and retainer fee; | 0.10 |
| RAM | Drafting of Statement of Visiting Attorney | 0.60 |
| RAM | Drafting of correspondence to local attorney outlining fee arangement and billing procedures | 0.40 |
| RAM | Telephone call to Michael Bailey re: representation | 0.20 |
| RAM | Correspondence to local district court via email, re: formal introduction to court in order to practice | 0.30 |
| RAM | Legal research re: local rules of court regarding introduction of visiting attorney and compliance therewith | 0.30 |
| RAM | Other registering for Pacer as per DVB's instructions | 0.20 |
| RAM | Drafting of petition as per DVB's instructions | 0.50 |
| RAM | Drafting of complaint and allegations contained therein for filing of suit | 1.00 |
| LDZ | Conference with atty Batt re our search for a forensic pathologist, Dr. Frost's return of our call, and instructions to seek out further candidates; review of various file materials including MVA report, coroner's materials, etc.; | 1.90 |
| RAM | Conference with dvb/re letter to client quantum | 0.50 |
| RAM | Editing of quantum memorandum/letter as per DVB's instructions and transmittal of same to clients via email/facsimile and us mails | 1.10 |
| **04/13/2004** | | |
| LDZ | Telephone conference with Dr. Jack Frost last night, outlining case and exactly what we need in a forensic pathologist; he appears amongst the best of the 5 candidates and advised he would spend two hours looking at it for $500; | 0.70 |
| LDZ | Memo to file on Dr. Jack Frost and our other forensic pathologist candidates; label file; | 1.00 |
| RAM | Telephone call from dvb/re: email of quantum letter edited | 0.10 |

IN RE ALFRED ABRAMSON

Account No:    500-048167
Statement No:    17386

|  |  |  | Hours |
|---|---|---|---|
| RAM | Conference with LDZ re: expert in forensic pathology, discussion with Dr. Frost | | 0.20 |
| LDZ | Editing of memo re our conferences with Dr. Frost and the other forensic pathologists; make folder; | | 1.00 |
| LDZ | Filing of recent file materials; file organization; | | 0.30 |
| RAM | Telephone call from dvb/re: changes to quantum letter and discussions with opposing counsel | | 0.20 |
| RAM | Editing of letter to clients as per DVB's instructions | | 0.10 |
| RAM | Correspondence to clients with explanation of edits in quantum letter | | 0.20 |
| LDZ | Review of videotape of aerial shots of newscast of accident, identifying important segments for still photo blow-up as part of scene photos for forensic pathologist to show Joseph Abramson was trapped in his car; | | 0.30 |
| RAM | Legal research re: punitive damages as per DVB's instructions due to claim by other counsel only applicable in drunk driving cases, no case law or statutes found to assert this position | | 1.20 |
| DVB | Preparation for initial settlement discussions with opposing counsel | | 0.60 |
| DVB | telephone conference with opposing counsel re potential settlement | | 0.70 |
| DVB | telephone conference with various local w.va.counsel | | 0.40 |
| RAM | Telephone call from dvb/re: lien agreement regarding settlement of case | | 0.10 |
| DVB | Correspondence to a.levicoff | | 0.40 |
| DVB | Correspondence to clients | | 0.30 |
| LDZ | Telephone conference with atty Batt re retention of forensic pathologist and obtaining photographs; | | 0.20 |
| LDZ | Review of file materials pertinent to obtaining photographs of dead body; and noting file does not contain complete copy of police report but is missing every other page; interview with forensic pathologist Dr. Joseph Arden of Virginia, who will e-mail us his resume and rate sheet; | | 1.80 |

**04/14/2004**

|  |  |  |  |
|---|---|---|---|
| LDZ | Telephone conference with eyewitness Robert Eppage re accident; | | 0.70 |
| LDZ | Telephone conference with Robert Eppard re accident in which he called us back a second time advising he took scene photos of the burning vehicles and we advised we would make arrangements to secure same from his safety manager; | | 0.60 |
| LDZ | Telephone conference with mother of eyewitness James Smith who tried to save the man in the little red truck from burning to death; | | 0.40 |
| LDZ | Telephone call to eyewitness Robert Peters leaving detailed voicemail regarding our representation and desire to speak to him; | | 0.10 |
| LDZ | Review of and make several actual size copies work copies of the MVA illustration/schematic; | | 0.20 |
| LDZ | Telephone conference with Rhonda and others of Dr. Sabet's staff in the medical examiner's office who outlined what we need (signature of father Aaron Abramson) for release of photographs; | | 0.30 |
| RAM | Conference with LDZ re: witness interviews and accident reconstructionist | | 0.20 |
| RAM | Memo to LDZre: contact info for w.v. court re; visiting counsel | | 0.20 |
| RAM | Telephone call to district court, re: personal appearance to be introduced into court not necessary | | 0.20 |
| LDZ | Memo to file and atty Batt re our telcons w/eyewitnesses, pages of police report missing, obtaining all needed photos not part of file to date; | | 0.70 |
| LDZ | Telephone call to US District Court for the Southern District of W VA @ Huntington, get number, name and addresses of clerk and forward same in memo in responses to hers requesting same; | | 0.20 |
| LDZ | Receipt and review of curriculum vitae of Dr. Arden and related conference w/DVB re eyewitnesses and determining final pathologist candidate; | | 0.60 |
| LDZ | Conference with atty Batt & RAM re prioritizing tasks, instructions to write letter to clients as to what we are doing, etc; | | 0.30 |

IN RE ALFRED ABRAMSON

Account No:  500-048167
Statement No:  17386

| | | Hours |
|---|---|---|
| RAM | Conference with dvb/ldz re: status of case, tasks to be completed | 0.20 |
| LDZ | Correspondence to pathologist Arden asking him to cite cases in which he has appeared and about the extent of his experience qualifying in any federal courts; | 0.20 |
| LDZ | Telephone call to Barboursville Police Department for # and address, have desk sgt. advise that I should speak to Detective Copley, that sets of photos are $300.00, review of our binder of photos, distinguish police photos from Sigman private investigator photos, and determine that only two of 600 police photos show Abramson car; | 1.50 |
| RAM | Instruction to LDZ re: expert witnesses and coroner photos | 0.20 |
| LDZ | Correspondence to client with report on actions taken so far; edit letters section of file correcting all "Aaron Schudmak" letters to "Aaron Abramson" letters; Affidavit for coroner's photos; | 2.20 |

**04/15/2004**

| | | |
|---|---|---|
| LDZ | Telephone conference with Detective Jim Copley of Barboursville Police Department, who stated that there are no witnesses to whether Joseph Abramson was dead or alive at time of fire; | 0.60 |
| LDZ | Memo to file and DVB re our lengthy conference today with Detective Jim Copley of the Barboursville Police Department and editing same; | 1.00 |
| RAM | Conference with LDZ re: grand jury inquiry of truck driver | 0.20 |
| RAM | Receipt and review of pacer registration information | 0.10 |
| RAM | Memo to dvb/re: pacer information | 0.10 |
| LDZ | Correspondence to clients in re investigation of police investigation, police photos, confect affidavit releases for Barboursville Police Department; secondary conference w/Detective Jim Copley; review of police photos; includes briefing w/RAM re developments; | 1.60 |

**04/16/2004**

| | | |
|---|---|---|
| RAM | Correspondence to all clients regarding negoitated fee for storage of Joseph's vehicle and need to store due to spoiliation | 0.30 |
| RAM | Correspondence to wrecker service confirming free for vehicle storage | 0.20 |
| LDZ | Conference with atty Batt re latest report regarding eyewitnesses and police interview w/Det. Copley; editing of letter to clients re same; mailings; | 1.00 |

**04/19/2004**

| | | |
|---|---|---|
| DVB | Editing of and re-drafting of complaint | 0.60 |
| LDZ | Filing of recent correspondence and other materials; | 0.10 |
| RAM | Editing of letter to counsel as per DVB's instructions | 0.20 |
| RAM | Drafting of check request to retain local counsel | 0.20 |
| RAM | Editing - redrafting of motion to admit pro hac vice as per DVB's instructions | 0.40 |
| RAM | Editing of complaint as per DVB's instructions | 0.60 |
| RAM | Editing of Motion to enrol Pro Hac Vice, as per DVB's instructions | 0.20 |
| RAM | Legal research re: service of petition, federal courts | 0.30 |
| LDZ | Conference with DVB (obtaining coroner and police photos of corpse and determining forensic pathologist) and RAM (federal procedure re fioling and serving complaint); | 0.30 |
| RAM | Conference with dvb/ldz re: status of filing of complaint, service, strategy for moving case forward | 0.50 |
| LDZ | Conferences with attys Batt and RAM re eyewitness testimony in police report and elsewhere re tractor-trailer's mechanical brake failure; | 1.30 |
| RAM | Legal research re: review of documents on Pacer filed in Mullins case, and downloading of pertinant information including dismissal of leasing co. | 0.60 |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---:|
| **04/20/2004** |  |  |
| RAM | Review of file and expert accident reconstructionist report, as per DVB's instructions, regarding contacting attorney representing other deceased with respect to issues in case and preparation of notes for same | 1.40 |
| RAM | Conference with dvb/re: expert witness report and information to exchange with other attorney, reveiw and editing of final draft of complaint | 0.40 |
| DVB | Receipt and review of Affidavits of Alfred Abramson and Aaron Abramson. | 0.20 |
| RAM | Legal research re: locating phone number for non-local attorney, O. Lee Hamilton in Mullins case | 0.30 |
| RAM | Telephone call to James Bicknam, local counsel in Mullins case | 0.10 |
| RAM | Telephone call to Michael Bailey | 0.10 |
| RAM | Correspondence to Local attorney Mike Bailey, re: filing of suit | 0.30 |
| RAM | Calendar prescription in order to add truck manufacturer as defendant if necessary | 0.10 |
| LDZ | Conference with atty Batt re forensic pathologists and securing a plaintiff advocate expert we can be confident will give us a favorable opinion before he sees any of the evidence; instructions to call Drs. Frost and Arden again and to question them very closely on the issues surrounding their potential testimony on consciousness before death; | 0.30 |
| **04/21/2004** |  |  |
| RAM | Telephone call to counsel in Mullins case/widow's case, left message | 0.10 |
| RAM | Editing of complaint as per DVB's instructions | 0.20 |
| RAM | Editing of letter to local counsel with instructions on filing complaint | 0.20 |
| RAM | Correspondence to attorneys for widow, re: discussing case as per DVB's instructions | 0.30 |
| LDZ | Receipt and review of and copy of 50 -page plus curriculum vitae of forensic pathologist Dr. James Frost; compare and contrast to CV of Dr. Johnathan Arden; label file folder; memo to DVB re same; | 1.10 |
| RAM | Telephone call to Lee Hamilton in Alabama re: representation in widow's case | 0.10 |
| RAM | Review of previous correspondence as per DVB's instructions regarding preservation of vehicle/truck involved in accident | 0.30 |
| RAM | Correspondence to counsel for Laneko re: storage of truck | 0.20 |
| RAM | Memo to file issues to discuss with attorney for Mullins | 0.20 |
| RAM | Telephone call from counsel for Mullins case (widow) | 0.20 |
| RAM | Correspondence to client re: discussion with plaintiff's counsel | 0.30 |
| RAM | Correspondence to client re: conversation with counsel for Mullins | 0.20 |
| LDZ | Conference with DVB re Bourboursville Police affidavits returned by Alfred Abramson which do not include coroner's photos releases; search file for same; calendar;l to Alfred Abramson who advised that he thinks he threw them out by mistake and requested that we send him duplicate copies; | 0.50 |
| LDZ | Correspondence to Alfred Abramson with duplicate releases for Coroner's photographs; by Federal Express; | 1.40 |
| **04/22/2004** |  |  |
| LDZ | Telephone call to Barboursville Police Department for address and priority mail w/internet tracking letter to Detective Copley asking for photos of corpse; notarize affidavits; | 0.70 |
| LDZ | Drafting of questions for further interviews of Drs. Frost and Arden; further review of police report; | 1.70 |
| **04/23/2004** |  |  |
| RAM | Conference with dvb/ldz re: retaining forensic pathologist prior to any mediation | 0.30 |
| LDZ | Telephone calls to Drs. Frost and Arden w/follow-up questions on whether |  |

IN RE ALFRED ABRAMSON

| | | | Hours |
|---|---|---|---|
| | | they have made determinations of consciousness before death and related questions; related conferences w/DVB and RAM; | 2.00 |

**04/26/2004**

| | | | |
|---|---|---|---|
| | LDZ | Memo to request $600 check for two hours consultation w/Dr. Johnathan Arden, forensic pathologist; | 0.20 |
| | LDZ | Telephone call from Detective Jim Copley of the Barboursville Police Department saying Chief Meek wants $350.00 for a set of the photos because he doesn't want Detective Copley to take the time to select out just the photos we want of the corpse, which initially we were told had been isolated (but perhaps they have to match them to negatives), and related memo and check request; | 0.80 |
| | RAM | Telephone call from dvb/re: call to Levicoff re: policy limits | 0.10 |
| | RAM | Telephone call to Travelers insurance attorney, levicoff, re: mediation | 0.10 |
| | RAM | Review of file to determine what information we still need from levicoff as per DVB's instructions | 0.10 |
| | RAM | Correspondence to Levicoff re: information needed via fax | 0.30 |

**04/27/2004**

| | | | |
|---|---|---|---|
| | RAM | Telephone call from dvb/re: um coverage on Joseph Abramson | 0.10 |
| | RAM | Review of file materials for um coverage as per DVB's instructions | 0.20 |
| | RAM | Correspondence to clients with UM coverage declarations sheet and explanation of same as per DVB's instructions | 0.30 |
| | RAM | Correspondence to client confirming meeting and updating on settlement negotiations | 0.20 |
| | RAM | Telephone call from Justin Morgan re: representation of widow's case and information on WV courts | 0.30 |
| | RAM | Memo to file/dvb re: conversation with Morgan, re: issues with case | 0.30 |
| | LDZ | Legal research re: forensic pathologists, and pull and review reported cases in which Dr. John Arden has testified as a forensic pathologist; and related conferences w/DVB re same; | 2.50 |
| | LDZ | Correspondence to Barboursville PD w/check for all photos; by FedEx; and make reverse FedEx label for their dispatching of same; | 0.90 |

**04/28/2004**

| | | | |
|---|---|---|---|
| | RAM | Telephone call to local attorney re: filing of complaint | 0.10 |
| | LDZ | Legal research re: pathologists who have testified to conscious pain and suffering before death; review of 15 cases, most of which do not specifically | 0.40 |
| | RAM | Correspondence to USAA re: excess or umbrella coverage | 0.20 |

**04/29/2004**

| | | | |
|---|---|---|---|
| | RAM | Editing of complaint to add claim against underinsured motorist carrier usaa | 1.00 |
| | RAM | Legal research re: principal place of business for USAA for use in drafting petition | 0.20 |
| | RAM | Conference with dvb/re: amended petition and inspection of truck | 0.20 |
| | RAM | Correspondence to Attorney bailey with instructions for filing edited complaint | 0.20 |
| | RAM | Memo to dvb/re: storage of truck | 0.10 |
| | RAM | Legal research re: statute of limitations in WV for products liability as per DVB's instructions | 0.20 |
| | RAM | Calendar reminder for statute of limitations to bring in truck manufacturer as per DVB's instructions | 0.10 |
| | RAM | Memo regarding statute of limitations as per DVB's instructions | 0.10 |
| | DVB | Receipt and review of Avrum Levicoff's correspondence regarding | |

IN RE ALFRED ABRAMSON

Account No:   500-048167
Statement No:   17386

|  |  |  | Hours |
|---|---|---|---|
|  |  | settlement discussions. | 0.20 |
|  | RAM | Correspondence to cousel for bergey's/rbl re storage of vehicle | 0.20 |
|  | RAM | Correspondence to counsel for Traveler's insurance re: storage of truck | 0.20 |
|  | LDZ | Telephone conference with Alfred Abramson, who advised he sent our second dispatch of coroner's photo releases back to us, and related conferences w/DVB; | 0.30 |
| **05/02/2004** |  |  |  |
|  | RAM | Memo from dvb/re followup on filing of petition | 0.10 |
| **05/03/2004** |  |  |  |
|  | LDZ | Conference with DVB and assembling materials requested for meeting with clients tomorrow; | 1.00 |
|  | LDZ | Correspondence to coroner via FedEx requesting cost for autopsy photos; includes receipt and review of affidavits; copies; | 0.90 |
| **05/04/2004** |  |  |  |
|  | LDZ | Preparation for meeting w/clients; provide copy of CV of forensic pathologist and other materials; | 0.20 |
|  | DVB | Conference with 3 clients for discussion of status and possible settlement discussions ;and preparation for said meetings | 2.70 |
| **05/05/2004** |  |  |  |
|  | RAM | Receipt and review of correspondence from WV counsel, re retainer letter and confirming instructions re; filing of suit | 0.20 |
| **05/10/2004** |  |  |  |
|  | DVB | Receipt and review of correspondence from Chris Hertel, USAA Casualty Claims Examiner regarding UM coverage. | 0.20 |
| **05/11/2004** |  |  |  |
|  | RAM | Telephone call to Mike Bailey to check status of filing of suit as per DVB's instructions | 0.10 |
|  | RAM | Memo to dvb/re: status of filing of suit | 0.10 |
| **05/12/2004** |  |  |  |
|  | RAM | Telephone call from Mike Bailey, re: filing of suit, message | 0.10 |
|  | RAM | Telephone conference with paralegal, Natalie, in Mike Bailey's office regarding technical changes to pleadings before filing. | 0.10 |
|  | RAM | Receipt and review of changes on petition to be filed, per WV attorney | 0.20 |
|  | RAM | Telephone call to Natalie at Mike Bailey's office re: filing of complaint and address for service on Bergey's | 0.10 |
|  | RAM | Editing of complaint and motion to enroll pro hac vice | 0.40 |
|  | RAM | Correspondence to Mike Bailey re: filing of complaint, corrections and address for service of Bergeys' | 0.20 |
|  | RAM | Telephone conference with dvb/re: status of filing | 0.10 |
|  | LDZ | Receipt of photos from Barboursville Police Department; will review tomorrow; | 0.10 |
|  | RAM | Telephone call to counsel in WV re: federal Express fee ex of changed complaint and additions | 0.10 |
| **05/13/2004** |  |  |  |
|  | LDZ | Conference with atty Batt re receipt of all police photos; | 0.10 |
| **05/14/2004** |  |  |  |
|  | LDZ | Review of 600 photographs from Barboursville Police including |  |

IN RE ALFRED ABRAMSON

Account No:          500-048167
Statement No:            17386

|  |  |  | Hours |
|---|---|---|---|
|  |  | unpackaging and sorting, related conference w/DVB, isolate photos of mortal remains from others; also segregate photos showing position of key vehicles as per travel and subsequent impacts after initial impact; | 2.40 |
| **05/15/2004** |  |  |  |
|  | DVB | Telephone conference with usaa representative re coverage under um policy | 0.30 |
| **05/17/2004** |  |  |  |
|  | LDZ | Review of and sorting of Barboursville Police Department photographs; | 0.60 |
|  | RAM | Legal research re: address for service of process and waiver for Bergey's re: secretary of state website and pacer research re same | 0.40 |
|  | RAM | Telephone call to Mike Bailey, re: filing of lawsuit and issuance of service | 0.20 |
|  | RAM | Memo to DVB/re: update on lawsuit filing | 0.20 |
|  | RAM | Correspondence to USAA re: certified copy of policy of insurance | 0.20 |
|  | RAM | Review of correspondence from USAA regarding coverage and umbrella policy | 0.20 |
|  | LDZ | Correspondence to coroner w/check and make special FedEx labels for photos w/detailed instructions; includes receipt and review of correspondence from coroner w/cost of photos; filing; | 0.70 |
| **05/18/2004** |  |  |  |
|  | LDZ | Review of Barboursville PD and further narrowing of photos for forensic pathologist; and w/Choice Copy re laser scan reproductions of photos so as to have original photo quality & better than photocopy; | 1.00 |
| **05/20/2004** |  |  |  |
|  | LDZ | Telephone call to office of coroner re photos; receipt and review of fax w/price and instructions for photos; check request; letter to coroner w/check and instructions for certification; double FedEx labels; receipt and review of settlement offer from Levicoff and related conference w/DVB; and receipt and review of hard copy of executorship original from Alfred Abramson; | 1.50 |
|  | RAM | Receipt and review of autopsy photographs for forensic pathologist | 0.20 |
|  | RAM | Conference with ldz/re: photographs of deceased and retention of forensic pathology expert discussion of which photos needed to have expert opinion | 0.20 |
|  | LDZ | Receipt and review of coroner's photos; conferences w/RAM; and obtaining laser-scan quality copies, slightly enlarged, for our forensic pathologist Dr. Arden, opposing counsel, and file; travel to and from ChoiceCopy; | 1.10 |
|  | DVB | Receipt and review of Avrum Levicoff's correspondence regarding coverage. | 0.20 |
| **05/21/2004** |  |  |  |
|  | LDZ | Conference with atty Batt re exactly what materials we now have to be sent to forensic pathologist; | 0.40 |
|  | LDZ | Preparation for assembly and assembly of all materials (copying etc.) to send forensic pathologist, and letter to forensic pathologist; | 2.60 |
| **05/24/2004** |  |  |  |
|  | RAM | Receipt and review of correspondence and date stamped filing of petition and motion to enroll Pro Hac Vice from WV counsel | 0.20 |
|  | RAM | Memo to dvb/re: filing of petition and motion to enroll pro hac vice and service on defendants listed in petition, update on status | 0.20 |

IN RE ALFRED ABRAMSON

Account No:  500-048167
Statement No:  17386

| | | | Hours |
|---|---|---|---|
| **05/28/2004** | | | |
| | DVB | Receipt and review of Abbott's Wrecker Service invoice. | 0.20 |
| **05/29/2004** | | | |
| | DVB | Receipt and review of Order for Admission Pro Hac Vice, dated May 26, 2004. | 0.20 |
| **06/01/2004** | | | |
| | DVB | Receipt and review of Laneko Engineering Company's insurance policy (Travelers Property Casualty). | 0.20 |
| **06/03/2004** | | | |
| | RAM | Telephone call from dvb/re: prescription and service of defendants | 0.10 |
| | RAM | Legal research re: statute of limitations in WV for personal injury suit | 0.20 |
| | RAM | Correspondence to counsel in WV re: waiver and service of defendants | 0.20 |
| | DVB | Receipt and review of Abramson's automobile policy and umbrella policy in force with USAA at the time of the accident. | 0.20 |
| **06/07/2004** | | | |
| | LDZ | Telephone call from Dr. Johnathan Arden, whom we spoke to in absence of DVB and subsequent conference w/DVB re our memo in progress for our conversation; and calendar DVB for telephone conference w/Dr. Arden late Friday afternoon; in-depth memo; | 2.20 |
| **06/08/2004** | | | |
| | RAM | Receipt and review of correspondence from local counsel | 0.10 |
| | RAM | Memo from LDZ/re: forensic pathologist interview | 0.20 |
| | LDZ | Editing of memo re Dr. Arden, send to DVB and RAM; confer w/RAM re same; | 1.00 |
| **06/09/2004** | | | |
| | LDZ | Conference with BCG re invoices continuing to come from Abbott's Wrecker Service; | 0.10 |
| **06/10/2004** | | | |
| | RAM | Receipt and review of signed motion to admit pro hac vice from wv counsel and corresponding correspondence | 0.20 |
| | DVB | Receipt and review of correspondence enclosing executed Order for Admission Pro Hac Vice, signed by District Court Judge Robert Chambers. | 0.20 |
| **06/11/2004** | | | |
| | RAM | Correspondence to Wrecking service re: itemized bill for storage of vehicle | 0.20 |
| | LDZ | Conference with DVB re findings of Dr. Johnathan Arden, eyewitnesses, and other key elements of case; | 0.30 |
| | LDZ | Telephone call to Dr. Arden and setting up telcon w/DVB; and review of all photos and selection of those to express to Dr. Arden including correspondence; further conferences w/DVB re Arden's opinions and our photos selections; | 0.10 |
| **06/14/2004** | | | |
| | LDZ | Filing of photographs, correspondence, and file organization; color copies by Choice; | 1.70 |
| | RAM | Conference with dvb/re: status of case, tasks to be completed, correspondence to clients and strategies for products liability and research of same | 0.30 |

IN RE ALFRED ABRAMSON

Page: 12
05/18/2005

Account No:    500-048167
Statement No:    17386

|  |  |  | Hours |
|---|---|---|---|
| **06/16/2004** | | | |
| | RAM | Correspondence to clients updating them on status of case | 0.70 |
| | RAM | Legal research re: statute of limitiations in products liability suit in west virginia as per DVB's instructions | 0.50 |
| | RAM | Review of file in conjunction with drafting of update letter to client confirming applicable coverages and UM coverages as well as information on statute of limitations and product liability suit | 0.40 |
| **06/17/2004** | | | |
| | RAM | Conference with dvb/re: letter to clients and defendant adjuster editing of same | 0.10 |
| | RAM | Correspondence to USAA request for copy of umbrella policy again as per DVB's instructions | 0.20 |
| **06/21/2004** | | | |
| | RAM | Receipt and review of correspondence from abbott's wrecker service, re: charges for storage of vehicle | 0.20 |
| | LDZ | Telephone conference with Dr. Arden who advised he will send report tomorrow; includes related conference w/DVB; | 0.30 |
| | RAM | Review of file to pull all documents requested by Levicoff and review of same before forwarding to him as per DVB's instructions | 0.60 |
| | RAM | Correspondence to Levicoff with enclosed requested documentation and explanation of no medicals due to good health | 0.30 |
| | RAM | Telephone call from Mike Bailey, re: addresses for service of process, and update of status of waivers | 0.10 |
| | RAM | Instruction to LDZ to research all proper addresses for service re: pacer and widow's case to expedite service process if no waiver | 0.10 |
| | RAM | Conference with dvb/re: update on status of case and latest correspondence to Levicoff with information requested and request for waiver of service | 0.10 |
| | RAM | Conference with LDZ re: addresses for service of process in response to call from WV attorney | 0.20 |
| | RAM | Conference with dvb/re: possible other defendants to add to suit prior to date of prescription and calendaring of same | 0.10 |
| | RAM | Review of file for letter to all parties, re: retention of vehicle as per DVB's instructions | 0.20 |
| | LDZ | Review of all material assuring correct service addresses for all indispensable defendants and related conferences w/DVB and RAM; | 4.00 |
| | RAM | Memo from LDZ / re: service of process and waiver | 0.20 |
| **06/22/2004** | | | |
| | DVB | Receipt and review of Dr. Johnathan L. Arden's draft report on Abramson. | 0.20 |
| | DVB | Telephone conference with experts and review of emails re same | 0.60 |
| | DVB | Receipt and review of expert report and conducting research re viability of same | 1.70 |
| | DVB | Correspondence to clients | 0.20 |
| | RAM | Review of file to compile contact list of all parties and possible attorneys to notice regarding vehicle storage as per DVB's instructions | 0.50 |
| | RAM | Correspondence to all parties/attorneys re: storage of vehicle | 0.40 |
| | RAM | Correspondence to USAA demand letter for policy limits as per DVB's instructions | 0.40 |
| **06/23/2004** | | | |
| | LDZ | Filing of various file materials; file organization and maintenance; | 0.50 |

IN RE ALFRED ABRAMSON

Account No:                  500-048167
Statement No:                     17386

| | | | Hours |
|---|---|---|---|
| **06/25/2004** | | | |
| | RAM | Conference with dvb/re: status of service and calendar to check same and all defendants whehter or not solidary liable make sure service effected and prescription interupted | 0.10 |
| **06/26/2004** | | | |
| | DVB | Receipt and review of Dr. Johnathan Arden's original report. | 0.20 |
| **06/28/2004** | | | |
| | RAM | Editing of letter to USAA and addendum of reconstructionist report and police report as per DVB's instructions | 0.30 |
| | RAM | Transmittal of correspondence to USAA via fax, as per DVB's instructions | 0.10 |
| **06/29/2004** | | | |
| | DVB | Receipt and review of USAA Umbrella Policy Packet. | 0.20 |
| **06/30/2004** | | | |
| | RAM | Receipt and review of umbrella policy for joseph abrahmson from usaa | 0.30 |
| | RAM | Memo to dvb/file re: umbrella coverage | 0.20 |
| **07/05/2004** | | | |
| | RAM | Memo from dvb/re: letter to client and prescriptive period for brake manufacturer | 0.10 |
| | RAM | Memo to dvb/with attached letter per his inquiry and statute of limitations on product liability | 0.10 |
| | RAM | Memo to dvb/re: questions regarding status of case | 0.10 |
| | RAM | Memo from dvb/re: status of case | 0.10 |
| **07/06/2004** | | | |
| | RAM | Telephone call to W.V. counsel Mike Bailey, re: service, call docket, address for driver and other issues as per DVB's instructions | 0.20 |
| | RAM | Correspondence to Mike Bailey, re: address for service of driver and additional information for service and /or waiver per discussion | 0.30 |
| | RAM | Correspondence to Levicoff, re: waiver and forensic pathologist report | 0.30 |
| | RAM | Legal research re: statute of limitations, product liability/manufacturer and wrongful death, double check as per DVB's instructions | 0.40 |
| | RAM | Memo to dvb/re: statutes of limitations | 0.20 |
| | RAM | Legal research re: review of pacer, status of case of widow, possible settlement | 0.30 |
| | DVB | Receipt and review of Avrum Levicoff's letter regarding the Complaint filed on behalf of the Abramsons. | 0.20 |
| **07/07/2004** | | | |
| | LDZ | Filing of recent file materials; file organization and maintenance; | 0.20 |
| | RAM | Receipt and review of correspondence from levicoff, re: suit | 0.10 |
| | RAM | Conference with dvb/re: call to levicoff and waiver of service | 0.10 |
| | RAM | Telephone call to Levicoff, left message, on vacation | 0.10 |
| **07/09/2004** | | | |
| | RAM | Telephone call from Avrum Levicoff, returning call, left message, re: filing of suit | 0.10 |
| **07/10/2004** | | | |
| | DVB | Receipt and review of Avrum Levicoff's letter regarding waiver of service. | 0.20 |

Page: 14
05/18/2005

Account No:        500-048167
Statement No:           17386

| | | | Hours |
|---|---|---|---|
| **07/12/2004** | | | |
| | RAM | Receipt and review of correspondence regarding waiver from Levicoff | 0.10 |
| | RAM | Telephone call to Mike Bailey's office, re: service and waivers | 0.10 |
| | RAM | Correspondence to Mike Bailey, re: Levicoff Address for waiver | 0.20 |
| **07/13/2004** | | | |
| | RAM | Telephone call from Bob Kent, attorney, re: waiver | 0.10 |
| | RAM | Telephone call to Bob Kent, returning his call, left message re: waiver of service | 0.10 |
| | RAM | Telephone call from attorney for USAA re: waiver and representation | 0.20 |
| | DVB | Receipt and review of Motion to Dismiss Bergey's, Inc. and Memorandum In Support of Motion to Dismiss. | 0.20 |
| | DVB | Receipt and review of Townhomes At Park Lane Condominium Association, Inc. and American Equity Insurance Company's Memorandum in Opposition to Plaintiff's Motion to Compel and for Sanctions. | 0.20 |
| | LDZ | Filing of recent file materials; file handling, organization,. and maintenance; | 1.00 |
| | RAM | Receipt and review of motion to dismiss Bergey's inc as per DVB's instructions | 0.30 |
| | RAM | Memo to file re: convo with Bob Kent, attorney for USAA re: waiver of service and contact information | 0.10 |
| **07/15/2004** | | | |
| | LDZ | Filing of recent file materials; filing and file organization; | 0.20 |
| **07/19/2004** | | | |
| | RAM | Receipt and review, processing of PACER invoice | 0.20 |
| | RAM | Legal research re: Pacer information regarding mullins case, slow due to technical problems | 0.40 |
| | RAM | Review of file for number for Levicoff and latest correspondence | 0.20 |
| | RAM | Memo to dvb/re: call to levicoff and settlement and dismissal of mullins case | 0.20 |
| | RAM | Telephone call to widow attorney re: settlement | 0.10 |
| | RAM | Correspondence to local counsel re: waiver and service | 0.20 |
| | RAM | Receipt and review of unclaimed letter re: storage of car from driver of truck david bruce small | 0.10 |
| | RAM | Telephone call from Avrum Levicoff returning my call | 0.20 |
| | RAM | Memo to dvb/re: dismissal and settlment, discussion with Levicoff | 0.20 |
| **07/20/2004** | | | |
| | RAM | Telephone call from Mike Bailey re: service and waivers | 0.10 |
| | RAM | Telephone call to Mike bailey re: service and waiver, scheduling order and other issues | 0.20 |
| | RAM | Memo to dvb/re: status of case/conversation with Bailey | 0.20 |
| | RAM | Telephone call from fax receipient faxed to wrong number, no area code | 0.10 |
| | RAM | Receipt and review of scheduling order and notice from court and calendaring of dates on same. | 0.20 |
| | DVB | Receipt and review of Order and Notice outlining deadline dates. | 0.20 |
| **07/21/2004** | | | |
| | RAM | Receipt and review of correspondence and attachments/waivers and scheduling order from Mike Bailey, local counsel | 0.30 |
| **07/24/2004** | | | |
| | DVB | Receipt and review of information re settlement of the widow's case and the impact on our lawsuit; legal research re same; | 0.80 |

IN RE ALFRED ABRAMSON

Account No:     500-048167
Statement No:     17386

|  |  |  | Hours |
|---|---|---|---|
| **07/26/2004** | | | |
| | DVB | Receipt and review of correspondence with attached Motion to Transfer Case for filing with the court. | 0.20 |
| | DVB | Receipt and review of Abbott's Wrecker Service invoiced for the months of May and June 2004. | 0.20 |
| | RAM | Receipt and review of correspondence from counsel in WV re: waivers and scheduling order | 0.20 |
| **07/28/2004** | | | |
| | RAM | Conference with dvb/re: settlement in Mullins case, strategy re confidentiality agreement, tasks to be completed, demand letter, motion to transfer and other related issues to be accomplished in case | 0.30 |
| **07/29/2004** | | | |
| | RAM | Correspondence to Levicoff re: settlement, retention of car for inspection and motion to transfer as per DVB's instructions | 0.30 |
| | RAM | Telephone call to clerk of court, re: conflict with scheduling date, motion to continue | 0.10 |
| | RAM | Drafting of Motion to continue scheduling status conference due to conflict | 0.40 |
| | RAM | Legal research re: local rules and telephonic status conferences and continuances | 0.20 |
| | RAM | Correspondence to local counsel with instructions regarding motion to continue status | 0.20 |
| **07/30/2004** | | | |
| | DVB | Receipt and review of Answer of Bergey's Inc. and RBL Leasing Corporation. | 0.20 |
| **08/02/2004** | | | |
| | RAM | Review of file in conjunction with drafting settlement demand letter, in order to quote expert testimony and give full outline of facts, as per DVB's instructions | 0.60 |
| | RAM | Drafting of settlement demand letter, partial completion, as per DVB's instructions | 1.80 |
| | RAM | Correspondence to all parties re: storage of vehicle second notice | 0.30 |
| **08/03/2004** | | | |
| | RAM | Drafting of demand / settlement letter as per DVB's instructions partial completion | 2.00 |
| **08/04/2004** | | | |
| | RAM | final Drafting of settlement demand letter to Travelers'/Levicoff, as per DVB's instructions | 1.90 |
| | RAM | Correspondence to clients, re: settlement demand letter and other updating information on case | 0.30 |
| | RAM | Correspondence to counsel for widow, re: followup on call and exchange of discovery materials and settlement | 0.30 |
| **08/05/2004** | | | |
| | LDZ | Filing of recent file materials; | 0.30 |
| | LDZ | Filing of report of forensic pathologist; | 0.10 |
| **08/09/2004** | | | |
| | DVB | Receipt and review of Avrum Levicoff's letter enclosing a proposed Agreed Order transferring the case to Judge Staker. Levicoff further requests a | |

Account No: 500-048167
Statement No: 17386

|  |  | Hours |
|---|---|---|
|  | settlement demand, suggesting a settlement meeting. | 0.20 |
| **08/13/2004** | | |
| DVB | Receipt and review of Motion to Continue Scheduling Status Conference. | 0.20 |
| **08/17/2004** | | |
| DVB | review of and extensive editing of our settlement demand lettter and legal research re same | 1.90 |
| LDZ | Review and proofreading of demand letter and determining selective exhibits; | 0.90 |
| **08/18/2004** | | |
| LDZ | Organization of exhibits for quantum demand letter; copying b&W; and to and from Choice Copy for colorpix; and w/TPB on revisions to letter; resecuring file materials; | 0.50 |
| **08/22/2004** | | |
| DVB | Telephone conference with sshudmak | 0.40 |
| **08/23/2004** | | |
| DVB | Receipt and review of Avrum Levicoff's Notice of Change of Firesearch memo Name and Address. | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter directed to Judge Robert Chambers regarding Motion to Transfer. | 0.20 |
| DVB | Telephone conference with our local counsel in w.va and review of file re said discussions | 0.30 |
| **08/25/2004** | | |
| LDZ | Conference with RAM re Rule 26 discovery protocol and status of discovery; | 0.10 |
| RAM | Conference with dvb/re: status of case tasks to be completed, check on answer by all defendants and confidentialtiy agreement as well as local rules for moving case forward and exchange of information | 0.30 |
| RAM | Memo to LDZ, re: update on Abrahmson activities in preparation for calls to attorneys, as per DVB's instructions | 0.20 |
| DVB | Telephone conference with counsel for the widow re settlement issues | 0.40 |
| DVB | Telephone conference with counsel for the owner of the trucking co. | 0.20 |
| DVB | review of pleadings and research | 0.30 |
| **08/26/2004** | | |
| RAM | Review of recent filings and motions in pacer and download of current docket | 1.10 |
| RAM | Conference with dvb/re: motion to dismiss strategies | 0.20 |
| RAM | Telephone call to Levicoff, re: motion to dismiss and rule 26 disclosures | 0.10 |
| RAM | Telephone call to Mullins attorney of record | 0.10 |
| RAM | Telephone call to clerk of court re: ability to opt out of rule 26 disclosures | 0.10 |
| RAM | Legal research re: disclosures needed under federal rule 26 as required by scheduling order | 0.50 |
| LDZ | Assignment to (from RAM) determine status of continuance of scheduling conference, Rule 26F disclosures being mandatory or opt in/out/ all answers filed by defendants, Levicoff phone number and number of atty representing widow Stacey Mullins; review of PACER website for USDC S.D. VA; | 1.00 |
| RAM | Memo to LDZ re: Motion to Dismiss and research of same in Mullins case | 0.10 |
| DVB | Receipt and review of Answer on Behalf of United Services Automobile Association. | 0.20 |

IN RE ALFRED ABRAMSON

|  |  |  | Hours |
|---|---|---|---|
| | DVB | Receipt and review of Avrum Levicoff's change of address. | 0.20 |
| | DVB | Receipt and review of Motion of Laneko Engineering Company and David Bruce Small to Dismiss. | 0.20 |
| | LDZ | Review of pleadings filed in Mullins case, especially for any motion to dismiss Bergey's and opposition thereto; | 0.60 |

**08/27/2004**

|  |  |  |  |
|---|---|---|---|
| | RAM | Telephone call from Mike Bailey re: bergey's motion to dismiss | 0.10 |
| | RAM | Telephone call to Mike Bailey, left message | 0.10 |
| | RAM | Review of Motion to Dismiss filed by Bergey's | 0.20 |
| | RAM | Memo to dvb/re: urgency of any opposition to Motion to Dismiss Bergey's | 0.20 |
| | RAM | Telephone call to dvb/re: Motioin to Dismiss Bergey's | 0.10 |
| | RAM | Instruction to LDZ, assignment re: follow up on calls and obtaining previously taken depositions | 0.20 |
| | LDZ | Review of Mullins case documents, dismissal of Bergey's, no dismissal filed by Laneko, discussion of same w/RAM, assignment to call atty Justin Morgan's office to make arrangements to have copies made and shipped to us of all depositions taken in the case; | 0.90 |
| | DVB | Receipt and review of Order denying defendants' Motion to Transfer current action to Judge Staker. | 0.20 |
| | RAM | Conference with dvb/re: motion to dismiss bergey's answer of rbl leasing, and review of motion to dismiss Laneko and David Bruce Small | 0.30 |
| | RAM | Telephone conference with Mike Bailey re: opposition to Motion to Dismiss Bergey's unneeded with instruction to file motion acquiecing to dismisal with reservation of rights against all other parties | 0.20 |
| | RAM | Telephone conference with attorney Levicoff re: rule 26(f) memo | 0.20 |
| | DVB | Legal research re: our position in attempting to oppose bergey's motion to dismiss | 0.70 |
| | DVB | Review of pleadings and iniitial Legal research re: laneko and small's motion to dismiss on multiple grounds | 1.00 |

**08/30/2004**

|  |  |  |  |
|---|---|---|---|
| | DVB | Receipt and review of letter from plaintiff's counsel  Re:  Waiver of Service of Summons & Order | 0.20 |

**08/31/2004**

|  |  |  |  |
|---|---|---|---|
| | RAM | Receipt and review of correspondence from Mike bailey and attached denial of Motion to Transfer and waiver of service of certain defendants | 0.20 |
| | RAM | Telephone call from Abbott's wrecker service, re: retention of vehicle | 0.10 |
| | RAM | Telephone call to Pam at Abbott's wrecking, returning her call, out of office | 0.10 |
| | RAM | Conference with dvb/re: opposition to Motion to Dismiss, Rule 26(F) deadlines, scheduling order, motion to continue and other pending matters with case | 0.40 |

**09/01/2004**

|  |  |  |  |
|---|---|---|---|
| | RAM | Telephone conference with abbot's re: disposal of vehicle | 0.20 |
| | RAM | Correspondence to Abbott's re: disposal of vehicle | 0.20 |
| | RAM | Correspondence to Levicoff confirming Rule 26 meeting report and request for overnight delivery of depositions | 0.30 |
| | RAM | Correspondence to all counsel of record, re: rule 26(f) meeting | 0.20 |
| | DVB | Telephone conference with counsel for USAA and Federal Court Clerk | 0.30 |

**09/02/2004**

|  |  |  |  |
|---|---|---|---|
| | DVB | Receipt and review of letter from plaintiff's counsel RE: Response of Motion to Dismiss | 0.20 |

IN RE ALFRED ABRAMSON

Account No: 500-048167
Statement No: 17386

|  |  |  | Hours |
|---|---|---|---|
| **09/03/2004** | | | |
| | DVB | Receipt and review of Order from USDC - Southern District of West Virginia - RE: Motion to Dismiss | 0.20 |
| | LDZ | Organization of file materials; | 0.50 |
| **09/04/2004** | | | |
| | LDZ | Review of and comprehensive summary memo of four of the six depositions taken of eyewitness/crash victims in the related Mullins fatality case; includes original assignment and related conferences w/DVB and RAM; | 1.60 |
| | LDZ | Review of and comprehensive summary of three eyewitness/crash victim depositions in related Mullins fatality injury case; editing and printout, save to file; | 0.80 |
| **09/07/2004** | | | |
| | LDZ | Filing of recent file materials; file organization; | 0.30 |
| | RAM | Telephone call from Mike Bailey's office re: rule 26(f)conference | 0.10 |
| | RAM | Correspondence to Bailey's office, re: 26(f) meeting and letter regarding same | 0.20 |
| | RAM | Conference with dvb/re: rule 16 disclosures, conversation with Levicoff, filing of scheduling order and other matters in the case | 0.50 |
| | LDZ | Assignment to summarize the deposition of David Bruce Small; | 0.10 |
| | RAM | Receipt and review of fax re: pre trial report objections from counsel for RBL | 0.20 |
| | RAM | Telephone conference with Avrum Levicoff re: settlement and remaining coverages available and pre trial order etc. | 0.30 |
| | RAM | Conference with dvb/re: conversation with levicoff, figures left for settlement and any other outstanding claims | 0.20 |
| | DVB | Receipt and review of Walter M. Jones, III's letter regarding Bergey's dismissal as well as the proposed Rule 26(f) Planning Meeting Report. | 0.20 |
| **09/08/2004** | | | |
| | RAM | Telephone conference with dvb/re: punitive damages | 0.10 |
| | RAM | Legal research re: confirmation of applicability of punitive damages in westvirginia and applicable case law for letter to opposing counsel | 0.40 |
| | RAM | Drafting of correspondence to levicoff outlining issues discussed with dvb/re: punitive damages, remaining coverages, rule 26(f) disclosures, possible mediation and defense for RBL leasing | 0.80 |
| | DVB | Legal research re: RESPONSE TO SMALL ET.AL.MOTION TO DISMISS ON MULTIPLE GROUNDS | 2.80 |
| | DVB | Conference with associates re motion to dismiss of small et.al, | 0.70 |
| | RAM | Telephone call to clerk of court re: filing deadline | 0.10 |
| | RAM | Telephone call to local counsel re: filing deadline for opposition to motion to dismiss | 0.20 |
| | RAM | Telephone call to Levicoff, re: extension of time to respond to Motion to Dismiss | 0.20 |
| | RAM | Drafting of proposed joint order granting extension of 14 days to respond to motion to dismiss | 0.40 |
| | RAM | Correspondence to local counsel with proposed order for extension of time | 0.20 |
| | RAM | Telephone call to clerk of court, west virginia, re: bond to be posted for executorship in order to sustain wrongful death action | 0.20 |
| | RAM | Telephone call to local counsel re: bond issue | 0.10 |
| | RAM | Telephone call from local counsel re: joint motion of extension of time to respond to motion to dismiss and bond issue for executorship in wrongful death action | 0.30 |
| | RAM | Drafting of opposition to motion to dismiss, partial completion | 2.60 |

|  |  | Hours |
|------|-------------------------------------------------|------|
| RAM | Legal research re: notice pleading and motion to dismiss for opposition to motion to dismiss drafting | 1.40 |
| RAM | Telephone call from local counsel, re: granting of extension of time to file and filing due date of tomorrow as opposed to misinformation of date of today | 0.10 |
| LDZ | Review of deposition of David Bruce Small in Mullins case pending summary; | 1.90 |
| BSG | Review of Motion to Dismiss for purposes of researching and drafting opposition to Motion to Dismiss | 0.40 |
| BSG | Legal research re: issues of the proper procedure under the West Virginia UM statute for maintaining a claim against plaintiff's UM insurer, given that West Virginia does not allow direct action suits against UM insurer's, and researching the statute of limitations for maintaining a UM claim, and when a UM claim becomes "ripe" under West Virginia law | 2.80 |
| BSG | Drafting of memo to RAM with recommendations for agreement to a dismissal of the UM claim and for language to incorporate into such dismissal, but preserving the UM claim when it becomes available under West Virginia law | 0.30 |
| BSG | Drafting of opposition to plaintiff's Motion to Dismiss | 0.80 |

**09/09/2004**

|  |  |  |
|------|-------------------------------------------------|------|
| RAM | Telephone call to judge's chambers to check on agreed order | 0.10 |
| RAM | Telephone call to local counsel for follow up on bond and agreed order for extension of time | 0.10 |
| RAM | Legal research re: punitive damages in west virginia for inclusion in opposition to Motion to dismiss | 1.90 |
| RAM | Legal research re: punitive damages, law review articles and journals | 1.00 |
| RAM | Drafting of opposition to Motion to Dismiss, partial completion, insertion of law regarding notice pleading and allegations of same in petition | 1.80 |
| RAM | Correspondence to Levicoff re: planning meeting report, representation of RBL Leasing and coverage responses | 0.30 |

**09/10/2004**

|  |  |  |
|------|-------------------------------------------------|------|
| RAM | Telephone conference with dvb/re meeting with Mullins attorney and info request | 0.10 |
| RAM | Memo to dvb/re: Mullins attorney info for meeting as per DVB's instructions | 0.20 |

**09/11/2004**

|  |  |  |
|------|-------------------------------------------------|------|
| LDZ | Summarizing and editing deposition of David Brice Small; | 1.00 |

**09/12/2004**

|  |  |  |
|------|-------------------------------------------------|------|
| LDZ | Filing of recent file materials; filing and file organization; | 0.20 |

**09/13/2004**

|  |  |  |
|------|-------------------------------------------------|------|
| DVB | Telephone conference with counsel for second defendant | 0.30 |
| RAM | Telephone call from local counsel re: meeting report | 0.10 |
| RAM | Telephone call to local counsel re: meeting report | 0.10 |
| RAM | Telephone call to clerk of court, re: whether levicoff filed meeting report | 0.10 |
| RAM | Telephone call to Levicoff, re: meeting report | 0.10 |
| RAM | Drafting of rule 26(f) planning meeting report, based on Levicoff draft to comply with court filing deadline | 0.60 |
| RAM | Drafting of correspondence to Levicoff re: filing of report as not yet filed, and agreement as to same | 0.30 |
| RAM | Telephone call to local counsel re: receipt of meeting report via email and filing of same with court on todays date | 0.20 |
| RAM | Telephone call from dvb/re: planning meeting report due | 0.10 |

IN RE ALFRED ABRAMSON

| | | | Hours |
|---|---|---|---|
| DVB | Receipt and review of Agreed Order for Extension of Time for Plaintiff to File Opposition to Defendants', Laneko and David Bruce Small, Motion to Dismissed, signed by U.S. District Judge, Robert C. Chambers, on September 9, 2004. | | 0.20 |
| RAM | Telephone call from Mike Bailey's office, re: filing of Rule 26(f) meeting report | | 0.20 |
| RAM | Receipt and review of letter from Levicoff in response to our letter regarding settlement and motion to dismiss and punitive damages | | 0.30 |
| RAM | Receipt and review of letter authorizing Levicoff to defend RBL Leasing and motion for same | | 0.20 |
| RAM | Receipt and review of correspondence and filing of Report of Rule 26(f) planning meeting report per Court's scheduling order | | 0.20 |
| RAM | Correspondence to local counsel with orginial signed scheduling order | | 0.20 |
| RAM | Editing of rule meeting report to forward signed orginial to levicoff and bailey per filing instructions of bailey, local attorney | | 0.20 |

**09/17/2004**

| | | | |
|---|---|---|---|
| DVB | Receipt and review of Avrum Levicoff's letter in response to our September 13, 2004 correspondence regarding the planning meeting report attached therewith. | | 0.20 |
| DVB | Receipt and review of USDC - Southern District of West Virginia Scheduling Order. | | 0.20 |
| DVB | Receipt and review of proposed Agreed Order transferring the representation of RBL Leasing Corporation from Walter M. Jones, III, Esq. to Avrum Levicoff, Esq. | | 0.20 |
| DVB | Receipt and review of Michael J. Schessler's letter wherein he advised of his representation of United Services Automobile Services Association ("USAA") and his approval of the Rule 25 (f) planning meeting submitted by Avrum Levicoff for approval. | | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's response to our settlement demand of August 17, 2004. | | 0.20 |
| DVB | Review of depositions from the widow's case, i.e., the Mullins case. | | 1.50 |
| DVB | Drafting of letter to defendant's counsel. | | 0.50 |

**09/19/2004**

| | | | |
|---|---|---|---|
| RAM | Legal research re: punitive damage cases, negligent hiring, over loading of trucks and other theories of liability alleged in complaint in conjunction with drafting of Opposition to Motion to Dismiss filed by defendants laneko | | 6.00 |
| RAM | Drafting of Memorandum in Support of Opposition to Motion to Dismiss, partial completion | | 2.00 |

**09/20/2004**

| | | | |
|---|---|---|---|
| LDZ | Conference with RAM confirming 10/11 deadline for Rule 26 disclosure and October 1 self-imposed deadline and calendaring; | | 0.10 |
| RAM | Drafting of Motion in Opposition to Defendant's Motion to dismiss and completion of drafting of Memorandum in Support of Opposition to Motion to dismiss | | 4.60 |
| DVB | Telephone conference with counsel for U/M carrier regarding potential for dismissal. | | 0.40 |
| DVB | Review of Scheduling Order, calling court to cancel conference on September 27; entering various dates, etc. | | 0.40 |
| DVB | Receipt and review of signed Agreed Order. | | 0.20 |

**09/21/2004**

| | | | |
|---|---|---|---|
| RAM | Conference with as per DVB's instructions/re changes and research to opposition to Motion to Dismiss | | 0.20 |

IN RE ALFRED ABRAMSON

| | | Hours |
|---|---|---|
| RAM | Telephone call to local counsel re: filing of opposition | 0.10 |
| RAM | Legal research re: motion to dismiss pleadings standard for federal court law to support right to investigate and conduct further discovery | 2.20 |
| DVB | Editing of our opposition to motion to dismiss and related research | 1.40 |

**09/22/2004**

| | | |
|---|---|---|
| RAM | Editing of opposition to Motion to Dismiss and memorandum in support as per DVB's instructions | 2.50 |
| RAM | Transmittal of motion and opposition memorandum to local counsel via email | 0.10 |
| RAM | Telephone call to local counsel confirming receipt of opposition to motion to dismiss and memorandum in support | 0.10 |
| RAM | Correspondence to Levicoff with copy of opposition and memorandum | 0.20 |
| RAM | Calendar of all dates and cutoffs pursuant to Federal Court Scheduling order | 0.20 |
| RAM | Telephone call to USAA attorney, re: acquiece to motion to dismiss under WV law | 0.20 |
| RAM | Correspondence to clients updating them on recent events in case | 0.40 |
| RAM | Telephone call to local counsel, re: oral argument allowed on motion to dismiss | 0.10 |
| RAM | Review of documents provided by defendants in rule 23(f) disclosures | 0.50 |
| RAM | Telephone call to Natalie re: oral argument and confirmation of filing of opposition to motion to dismiss | 0.10 |
| RAM | Correspondence to USAA re; confirmation of dismissal convo as per DVB's instructions | 0.20 |

**09/24/2004**

| | | |
|---|---|---|
| RAM | Receipt and review of correspondence from Levicoff, re: policy limits for settlement | 0.20 |
| DVB | Receipt and review of with careful analysis of SCHEDULING ORDER | 0.30 |
| DVB | Correspondence to all clients | 0.20 |

**09/27/2004**

| | | |
|---|---|---|
| RAM | Receipt and review of correspondence and motion to dismiss filed by USAA | 0.40 |
| RAM | Receipt and review of correspondence from local counsel and hard copy of conformed opposition to motion to dismiss | 0.30 |
| RAM | Telephone call to attorney for USAA re dismissal as per DVB's instructions | 0.10 |
| DVB | Telephone conference with a.abramson | 0.70 |

**09/28/2004**

| | | |
|---|---|---|
| DVB | review of and editing of letter to clients | 0.20 |
| DVB | Telephone conference with s.schudmak re various issues | 0.30 |
| RAM | Telephone call to USAA attorney re: motion to dismiss and opposition to same | 0.10 |
| RAM | Editing of letter to clients as per DVB's instructions | 0.20 |

**09/29/2004**

| | | |
|---|---|---|
| RAM | Telephone call to Levicoff's office, re: copy of last letter regarding policy limits | 0.10 |
| RAM | Telephone call from Erin at Levicoff's office, re: last letter | 0.10 |

**10/01/2004**

| | | |
|---|---|---|
| RAM | Telephone call to USAA attorney, spoke with secretary regarding dismissal and need to file opposition | 0.20 |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---|
| **10/04/2004** | | |
| RAM | Legal research re: um laws regarding naming insurer and how to proceed under west virginia law in light of motion to dismiss filed by USAA | 2.10 |
| RAM | Correspondence to attorney for USAA re: Motion to Dismiss and opposition to same | 0.40 |
| RAM | Receipt and review of correspondence from USAA re; dismissal | 0.20 |
| RAM | Correspondence to USAA attorney with draft of stipulation of dismissal | 0.20 |
| RAM | Drafting of stipulation of dismissal and order as per DVB's instructions | 0.40 |
| **10/05/2004** | | |
| RAM | Receipt and review of email with changes to stipulation of dismissall from USAA | 0.20 |
| RAM | Editing of stipulation of dismissal of USAA | 0.20 |
| RAM | Correspondence to USAA re: filing of stipulation and changes thereto | 0.20 |
| RAM | Receipt and review of email from USAA attorney re: filing of stipulation of dismissal | 0.20 |
| RAM | Receipt and review of correspondence from USAA re: changes to stipulation and agreement to file | 0.10 |
| RAM | Correspondence to local counsel, re: filing of stipulation of dismissal and suggested order | 0.20 |
| RAM | Telephone call to local counsel re: stipulation of dismissal and filing of same | 0.10 |
| RAM | Correspondence to all counsel with copy of stipulation of dismissal | 0.20 |
| RAM | Editing of stipulation of dismissal signature line for filing with court | 0.10 |
| RAM | Telephone call from Mike Bailey re: filing of stipulation | 0.10 |
| RAM | Correspondence from Ussa attorney confirming filing of stipulation | 0.10 |
| RAM | Correspondence to usaa attorney thanking him for stipulation agreement and filing of same | 0.10 |
| RAM | Editing of correspondence to client with updated insurance limits from Levicoff as per DVB's instructions | 0.20 |
| RAM | Correspondence from USAA attorney confirming filing of stipulation | 0.10 |
| RAM | Correspondence to usaa counsel in response to his email regarding confirmation of same | 0.10 |
| RAM | Conference with LDZ, re: rule 24 F disclosure deadlines and complying with same | 0.20 |
| RAM | Receipt and review of correspondence from local counsel confirming filing of stipulation of dismissal | 0.10 |
| **10/08/2004** | | |
| LDZ | Drafting of Rule 26(a)(1) Initial Disclosure mandatory discovery pleading, preparation to sending out to all counsel and to our local co-counsel for filing w/court; related conferences w/RAM; includes review of FRCP; related correspondence; | 3.60 |
| **10/09/2004** | | |
| LDZ | Filing of file materials; file handling, organization and maintenance; | 0.50 |
| **10/11/2004** | | |
| DVB | Receipt and review of Avrum Levicoff's correspondence in response to my letter of September 29, 2004. | 0.20 |
| DVB | Receipt and review of Reply Memorandum in Support of Defendants' Motion to Dismiss. | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter regarding discovery. | 0.20 |
| DVB | Receipt and review of Order of Dismissal of United Services Automobile Association. | 0.20 |
| RAM | Telephone call from Mike Bailey, re: rule 26(f) disclosures and filing of |  |

|  |  | Hours |
|---|---|---|
|  | same | 0.10 |

**10/12/2004**

| DVB | Receipt and review of Avrum Levicoff's letter enclosing copies of Reply Memorandum in Support of Defendant's Motion to Dismiss. | 0.20 |
|---|---|---|

**10/18/2004**

| DVB | Receipt and review of Order of October 15, 2004 denying Defendant United Services Automobile Association's Motion to Dismiss based on Order of Dismissal of October 6, 2004. | 0.20 |
|---|---|---|
| DVB | Receipt and review of Michael S. Bailey's letter of October 13, 2004 attaching his invoice for services rendered and expenses incurred. | 0.20 |
| DVB | Receipt and review of Michael S. Bailey's letter of October 12, 2004 enclosing Rule 26(a)(10 and 2(a/b) Initial Disclosure which has been filed with the Clerk's office. | 0.20 |

**10/19/2004**

| LDZ | Filing of recent correspondence; file organization; | 0.20 |
|---|---|---|

**10/21/2004**

| DVB | Receipt and review of Carey L. Cummings letter requesting dates to facilitate scheduling the depositions of Alfred and Aaron Abramson and Carol and Samuel Shudmak; experts, Dr. Jonathon Arden, Michael Brookshire and David Stopper. | 0.20 |
|---|---|---|

**11/01/2004**

| DVB | Receipt and review of Avrum Levicoff's letter of October 25, 2004 agreeing to Bob Jenks as Mediator to conduct mediation on December 3, 2004. | 0.20 |
|---|---|---|
| DVB | Receipt and review of Avrum Levicoff's letter of October 29, 2004 advising that he has pased our roposal to Mike Warren at Travelers. | 0.20 |

**11/05/2004**

| LDZ | Conference w/DVB re exhibits needed for mediation; | 0.10 |
|---|---|---|
| DVB | Receipt and review of Authorization for release of Joseph Abramson's personnel and employment records from Marshall University. | 0.20 |

**11/08/2004**

| DVB | Receipt and review of Avrum Levicoff's letter confirming January 21, 2005 mediation. | 0.20 |
|---|---|---|
| DVB | Receipt and review of Certificate of Service for the Defendants' Interrogatories Directed to Plaintiffs' Alfred Abramson, et al. | 0.20 |

**11/10/2004**

| RAM | Legal research re: status of motion to dismiss | 0.20 |
|---|---|---|
| DVB | Receipt and review of Joseph Abramson's personnel file from Marshall University. | 0.20 |

**11/12/2004**

| RAM | Telephone call to Alfred Abramson re: deposition scheduling | 0.10 |
|---|---|---|
| RAM | Telephone call to SamSchudmak re: deposition scheduling | 0.10 |
| RAM | Telephone call to Carol Schudmak re: deposition scheduling | 0.10 |
| RAM | Telephone call to Dr. Arden Re; depo scheduling | 0.10 |
| RAM | Telephone call to David Stopper re: deposition scheduling | 0.10 |
| RAM | Telephone call to Avrum Levicoff, re: scheduling of depositions | 0.20 |
| RAM | Correspondence to Stopper re: deposition | 0.20 |
| RAM | Correspondence to Arden re: deposition | 0.20 |

IN RE ALFRED ABRAMSON

|  |  |  | Hours |
|--|--|--|------:|
| | RAM | Correspondence to Alfred Abramson, re: deposition scheduling | 0.20 |
| | RAM | Correspondence to Carol and Sam Schudmak re: deposition scheduling | 0.20 |
| | RAM | Correspondence to Aaron Abramson re: scheduling of deposition | 0.20 |
| | DVB | Receipt and review of Avrum Levicoff's letter attaching Notices of Depositions. | 0.20 |
| | DVB | Receipt and review of Notice of Depositions scheduling the depositions of Jonathan Arden and David A. Stopper on December 14, 2004. | 0.20 |
| | DVB | Receipt and review of Notice of Depositions scheduling the depositions of Aaron Abramson, Alfred Abramson and Carol Schudmak on December 16, 2004. | 0.20 |
| | RAM | Legal research re: interrogatories and requests for admission in case as per DVB's instructions | 1.00 |
| | RAM | Telephone call from Alfred Abramson, re: scheduled depositions | 0.10 |
| | RAM | Memo to Toni B., re: clearing calendar for depositions | 0.10 |
| **11/15/2004** | | | |
| | RAM | Telephone call from Carol Shudmak confirming deposition date | 0.10 |
| | RAM | Telephone call from Julie Stopper, re: deposition date | 0.10 |
| | RAM | Telephone conference with Julie Stopper re: retention as expert, final report and deposition testimony | 0.20 |
| | RAM | Review of calendar in order to provide expert with deadlines in case, per request | 0.10 |
| | RAM | Review of file and scheduling order per request of expert regarding dates for reports and depositions | 0.20 |
| | RAM | Correspondence to Stopper re: cut off dates, reports, retention as expert | 0.30 |
| | RAM | Receipt and review of contract and letter from Stopper, accident expert | 0.30 |
| | RAM | Memo to dvb/re: expert deposition and retainer fee | 0.20 |
| | RAM | Correspondence to clients re: scheduling of depositions and depo prep meetings | 0.30 |
| | RAM | Correspondence to Levicoff re: scheduling of depositions, expert depositions and change in notice of deposition for P to occur here | 0.30 |
| | RAM | Conference with dvb/re: discovery, depositions, experts and outstanding discovery | 0.40 |
| | RAM | Review of file for correspondence from Levicoff re: liability and punitive damages for use for requests for admission | 0.30 |
| | RAM | Telephone call to Stopper, accident expert, re: retainer fee. | 0.20 |
| | RAM | Drafting of Requests for Admissions as per DVB's instructions | 0.40 |
| | RAM | Telephone call to David Stopper re: expert testimony | 0.30 |
| | RAM | Correspondence to Stopper, re: expert fee limit and retention as expert and expert report | 0.20 |
| | DVB | Receipt and review of Defendant's Request for Production of Documents Directed to Plaintiffs. | 0.20 |
| | DVB | Receipt and review of Avrum Levicoff's letter regarding the depositions of plaintiffs and plaintiffs' expert. | 0.20 |
| **11/16/2004** | | | |
| | RAM | Conference with LDZ, re: scheduling of depositions and discussions with Levicoff and two expert witnesses regarding scheduling of depositions and possible discovery avenues | 0.20 |
| | LDZ | Telephone conference with experts Arden, Stopper, and atty Levicoff in efforts to compromise time and place of depositions; | 5.50 |
| | RAM | Correspondence to Levicoff with requests for admission and deposition scheduling problems | 0.30 |
| | LDZ | Correspondence to expert Dave Stopper w/$2,500.00 check and copy of deposition of David Bruce Small; calls to Juli Stopper re possible deposition dates; conferences w/RAM and DVB re deposition dates; | 1.00 |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---|
| LDZ | Telephone conferences with Elena of Dr. Krenrich's office re discovery cutoff dates and sending them a copy of Dwayne Alexander's deposition after it is taken later this week; | 0.30 |
| RAM | Legal research re: requests for admissions and costs and attorney's fees, federal rule | 0.20 |
| RAM | Editing of letter to Levicoff re: attorney's fees and costs with respect to failure to admit to requests for admission | 0.20 |

**11/17/2004**

|  |  |  |
|---|---|---|
| RAM | Legal research re: interrogatories and discovery to be propounded and w.v. law regarding attorney lien | 1.10 |
| RAM | Telephone call to local counsel re: attorney lien and motion to dismiss as per DVB's instructions | 0.10 |
| RAM | Review of memo regarding attorney fees, as per DVB's instructions, further legal research for applicable case law suggested in discussion with Mullins attorney and forwarding of applicable case law via email | 0.50 |
| RAM | Report to dvb/re: fee for previous attorney and status of motion to dismiss | 0.20 |
| RAM | Telephone call from local attorney, re: motion to dismiss | 0.10 |
| RAM | Telephone call from local attorney re: status of invoice | 0.10 |
| RAM | Telephone call from Alfred Abramson, re: depo prep | 0.10 |
| RAM | Memo to dvb/re: call from alfred Abramson re: depo prep times | 0.10 |
| RAM | Legal research re: attorney fee arrangement with contract/quatum meriut regarding monies owed previous attorney as per DVB's instructions | 0.60 |
| RAM | Receipt and review of invoice from local counsel for costs associated with case, forwarding same to betty and katherine | 0.20 |
| LDZ | Legal research re: pattern discovery for trucking accident questions; | 1.60 |
| LDZ | Telephone call from Julie Stopper re deposition dates (she proposed Dec. 22); | 0.10 |

**11/18/2004**

|  |  |  |
|---|---|---|
| RAM | Receipt and review of pacer invoice and forwarding of same to bookkeeping | 0.10 |
| LDZ | Legal research re: pattern discovery trucking accidents at U.S. Fifth Circuit Library; copies; | 2.00 |
| DVB | Receipt and review of Avrum Levicoff's letter with attached Amended Notice of Depositions of plaintiffs. | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter regarding mediation fees and location. | 0.20 |

**11/19/2004**

|  |  |  |
|---|---|---|
| DVB | Receipt and review of Michael S. Bailey's letter with attached statement for services performed and expenses incurred up to and including October 12, 2004. | 0.20 |
| DVB | Receipt and review of Juli R. Stopper's fax, offering December 22, 2004 at a possible deposition date for Mr. Stopper, Stopper & Associates, to be held in Richmond, Virginia. Fees are billed at the rate of full day rate including estimated travel expenses, and payment is required in advance. | 0.20 |

**11/22/2004**

|  |  |  |
|---|---|---|
| RAM | Telephone call from Stopper, re: signed contract | 0.10 |
| RAM | Transmittal of contract to expert via fax, per phone call | 0.10 |
| RAM | Telephone call from Levicoff, re: expert depositions | 0.10 |
| RAM | Telephone call to Levicoff, converstation re: requests for admissions and expert witness depositions | 0.20 |
| RAM | Memo to LDZ/DVB re: telecon with Avrum Levicoff and scheduling of depositions | 0.20 |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---|
| RAM | Review of file and latest correspondence by DVB/in conjuction with telecon with Levicoff re: admissions and expert depositions | 0.20 |
| LDZ | Scheduling of depositions of David Stopper and Johnathan Arden; | 0.30 |
| LDZ | Review of correspondence section for letter relating to admission of liability obviating the need to depose Stopper if punitive damages are not involved; | 0.30 |
| LDZ | Telephone call to court clerk re filing requirements for discovery; notes on local rules for discovery; review pattern discovery; | 0.20 |

**11/23/2004**

|  |  |  |
|---|---|---|
| RAM | Answer to long set of Interrogatories propounded by defendant | 3.10 |
| RAM | Conference with LDZ, re: scheduling depositions prior to mediation and drafting of discovery to propound on defendants | 0.30 |
| LDZ | Telephone conference with Trish of Stopper & Associates advising that Dave Stopper can give depo in Richmond 1/6/05 but not before 11 a.m.; conference w/RAM; call to Dr. Arden; call to Levicoff's office; review of correspondence section; calendaring; call to Levicoff; wait time holding for Levicoff's paralegal; related conferences w/RAM; call back to Trish w/Stopper; more calendaring; begin work on drafting pattern discovery; with Levicoff's office; with Stopper; with Arden; calendar; w/RAM re her pattern discovery on punitives from Westlaw; | 3.00 |
| RAM | Response to Request for Production propounded by defendants, organization of documents and preparation of response and review of file in conjunction with same | 1.70 |
| RAM | Correspondence to clients, re: documentation regarding support of Aaron by joseph in light of discovery request | 0.20 |
| RAM | Correspondence to Levicoff, re: discovery responses | 0.20 |
| RAM | Conference with dvb/re: status of discovery, depositions and expert reports | 0.10 |
| RAM | Correspondence to expert re: report by due date as per DVB's instructions | 0.20 |

**11/24/2004**

|  |  |  |
|---|---|---|
| LDZ | Review of RAM-drafted discovery responses and confect certificate of service; call to clerk of court in Huntington for Clarification on discovery needing to be signed by all attorneys; revise RAM's discovery pleadings; FedEx to Bailey w/letter of instructions; call to atty Mike Bailey; conference w/DVB requesting e-mail letter to Rachel re having Bailey dropped as local counsel w/.court Costs to atty Batt; and enlarge font size on certificates of service for Bailey to sign; | 3.00 |

**11/29/2004**

|  |  |  |
|---|---|---|
| LDZ | Interrogatories to defendants; call to Aaron Abramson re support and he advised that he was not provided for by Joseph financially, in order to amend discovery answers; memo to RAM; | 2.00 |
| DVB | Receipt and review of original Certificate of Service for the defendant's Amended Notice of Depositions scheduling the depositions of Johnathan Arden at 12:00 p.m. and David A. Stopper at 1:00 p.m. on January 6, 2005. | 0.20 |

**11/30/2004**

|  |  |  |
|---|---|---|
| RAM | Calendar depositions of expert witnesses | 0.10 |
| LDZ | Drafting of discovery to defendants; | 2.20 |
| LDZ | Conferences with DVB and RAM re discovery to be propounded, eliminating Mike Bailey as local atty so that Abramsons do not have to come in previous day; calendaring and call to alfred Abramson; | 0.80 |
| DVB | Receipt and review of Notice of Attorney's Charging Lien filed by R. Edison Hill of the law firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. | 0.20 |
| RAM | Conference with LDZ re: discovery to be propounded and drafting of same | |

Case 3:04-cv-00489   Document 84   Filed 05/20/05   Page 52 of 119 PageID #: 778

IN RE ALFRED ABRAMSON

Page: 27
05/18/2005

Account No:       500-048167
Statement No:         17386

| | | | Hours |
|---|---|---|---|
| | | for review | 0.20 |
| RAM | | Legal research re: local rules of court, signing of pleadings as per DVB's instructions | 1.10 |
| RAM | | Memo to DVB/re: local attorney rule per discussions dvb/and clerk of court | 0.40 |
| RAM | | Correspondence to Stopper with notice of deposition | 0.20 |
| RAM | | Correspondence to Arden with notice of deposition | 0.20 |

**12/01/2004**

| | | | |
|---|---|---|---|
| RAM | | Receipt and review of correspondence from Levicoff re: depositions of experts | 0.20 |
| LDZ | | Drafting of Interrogatories to all Defendants; calls to Dr. Arden confirming depo and prep in Richmond January 6; calls to Mary Judiice at Stopper and Associates confirming deposition for 1 p.m. EST Jan. 6, 2005 in Richmond also at location TBA; calendaring; letter from Levicoff requesting confirmiation of January 6 depo dates; conferences re airline arrangements; airline research; | 7.80 |
| RAM | | drafting and Editing of interrogatories and requests for production of documents as per DVB's instructions | 0.90 |
| RAM | | Legal research re: Federal Motor Safety Regulations in conjunction with drafting of discovery | 0.40 |

**12/02/2004**

| | | | |
|---|---|---|---|
| LDZ | | Drafting of discovery (interrogatories) to Laneko defendants; | 5.00 |
| RAM | | Editing of requests for production of documents prepared by LDZ | 0.30 |
| RAM | | Conference with dvb/re: discovery to be propounded, editing of same and requests for admission and liability | 0.20 |

**12/03/2004**

| | | | |
|---|---|---|---|
| LDZ | | Telephone call to client Alfred Abramson explaining why we cannnot have depo prep the same day as depos and must do it the day before due to time constraints; | 0.30 |
| LDZ | | Telephone call from Juli Stopper re alleging missing Page 15 of police report; we explained some back pages were blank but would check and call back and/or fax; file check; return call to Juli Stopper; and extensively w/Dave Stopper; filing and file organization; | 1.50 |
| LDZ | | Telephone call from Mike Bailey who pointed out numerous errors in responses to discovery (interrogatories and request for production) which we corrected and dispatched the same to him. | 1.00 |

**12/06/2004**

| | | | |
|---|---|---|---|
| DVB | | Receipt and review of Avrum Levicoff's letter agreeing to pay costs of mediation. | 0.20 |

**12/08/2004**

| | | | |
|---|---|---|---|
| RAM | | Drafting of and editing of discovery to be propounded to defendants as per DVB's instructions | 2.50 |
| RAM | | Correspondence to expert witness re: report | 0.20 |
| RAM | | Receipt and review of correspondence from local counsel with conformed copies of documents filed with court | 0.20 |
| RAM | | Telephone call from expert confirming completion of report by exchange date | 0.10 |

**12/10/2004**

| | | | |
|---|---|---|---|
| RAM | | Correspondence to opposing counsel re: fee for deposition of expert witness | 0.20 |
| RAM | | Correspondence to Local counsel re: filing of motion to excuse sponsoring | |

Case 3:04-cv-00489   Document 84   Filed 05/20/05   Page 53 of 119 PageID #: 779

Page: 28
05/18/2005
IN RE ALFRED ABRAMSON

Account No:        500-048167
Statement No:             17386

|  |  | Hours |
|---|---|---|
|  | attorney | 0.20 |
| RAM | Receipt and review of correspondence from Levicoff and editing of our correspondence to accomodate change in deposition time | 0.20 |

**12/13/2004**

| RAM | Correspondence to defense counsel with enclosed discovery | 0.20 |
|---|---|---|
| RAM | Correspondence to local counsel with INT/RPD for signing and filing with court | 0.20 |
| RAM | Editing of INT/RPD as per DVB's instructions | 0.30 |
| RAM | Receipt and review of correspondence from expert witness re: fees and prepayment | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter regarding discovery responses. | 0.20 |
| DVB | Receipt and review of Samuel E. Schudmak, III's fax regarding "Notice of Attorney's Charging Lien". | 0.20 |
| DVB | Telephone conference with clients | 0.40 |
| DVB | Legal research re: wrongful death cases in w.virginia[research conducted at federal court of appeals library] | 4.60 |

**12/14/2004**

| LDZ | Telephone call from clent Alfred Abramson confirming appointment for pre-deposition preparation the previous day; | 0.20 |
|---|---|---|
| DVB | Receipt and review of RBL's Report and Rule 26 disclosure documents. | 0.20 |
| RAM | Receipt and review of final report and rule 26 disclosures from accident reconstructionist | 0.40 |
| DVB | Legal research re: punitive damage claims in wrongful death cases in w.virginia and other jurisdictions[research conducted at federal court of appeals library] | 3.90 |
| DVB | Legal research re: "survival" action claims in w.virginia and other jurisdictions [research conducted at federal court of appeals library] | 3.80 |

**12/15/2004**

| DVB | preparation for _and_ conferencing  with 3 clients re : preparation for each respective deposition;valuation of case ; review of legal analysis and review of evidence gathered to date; | 5.40 |
|---|---|---|
| RAM | Review of file to pull all expert reports, fee agreements, and resumes for disclosure pursuant to rule 26(b) | 0.40 |
| RAM | Telephone call to Dr. Arden, re: list of depos and trials per disclosures | 0.10 |
| RAM | Telephone call to Dr. Brookshire re: economist report | 0.10 |
| RAM | Telephone call from Dr. Brookshire, re: refusal to testify | 0.10 |
| RAM | Telephone call to dvb/re: economist problem and initial disclosures | 0.10 |
| RAM | Memo to all attorneys re: expert witness | 0.10 |
| RAM | Telephone call to boudreaux, re: retention as expert | 0.10 |
| RAM | Review of file to pull all economic and tax return/earnings documentation for new expert | 0.20 |
| RAM | Telephone call to Levicoff, re: extension of exchange date for experts | 0.10 |
| RAM | Telephone call to Bourgeous Bennett re: expert economist report | 0.20 |
| RAM | Drafting of motion to continue expert disclosure date | 0.30 |
| RAM | Telephone call from Ken Boudreaux, re: economist report | 0.10 |
| RAM | Organization of all documents needed by expert Ken Boudreaux and filling out information form needed to render expert opinion | 0.30 |
| RAM | Correspondence to Ken Boudreaux outilining facts of case and retention as expert as per DVB's instructions | 0.30 |
| RAM | Telephone call to Dr. Arden, re: letter regarding fee for expert testimony | 0.10 |
| DVB | Receipt and review of David Stopper's report regarding materials presented for review. | 0.20 |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---|
| RAM | Correspondence to Levicoff with Rule 26 disclosures | 0.20 |
| RAM | Correspondence to Bailey with Rule 26 disclosures | 0.20 |
| LDZ | Telephone conferences with Schudmaks/Abramsons regarding delaying preparatory session today for one hour from 1 to 2 p.m; | 0.50 |
| LDZ | Meeting with Dr. Ken Boudreaux regarding retention, hand delivery of package to his office, wait for his return, and document file; | 1.50 |
| RAM | Review of file to retreive letter to clients re: remaining coverages dvb | 0.10 |
| RAM | Telephone call from Buddy Long, re: Ken Boudreaux, economist | 0.10 |
| RAM | Telephone call from Dan Cliffe, re: economist report | 0.10 |
| RAM | Telephone call from Levicoff re: extension | 0.10 |
| RAM | Telephone call to Levicoff, re: rescheduling depositions | 0.20 |
| RAM | Telephone call from Levicoff, re: rescheduling depositions | 0.10 |
| RAM | Correspondence to Mike Bailey, re: filing of continuance with Federal Court | 0.30 |
| RAM | Instruction to TB/re: federal Express of Motion to Continue | 0.10 |
| RAM | Correspondence to Levicoff confirming extension of disclosure dates | 0.20 |
| RAM | Memo to file and LDZ re: additional witnesses to add to all witness lists and disclosures | 0.20 |
| RAM | Correspondence from Ken boudreaux, re: impending economist report and W.V. law on lost wages | 0.20 |
| RAM | Correspondence to Boudreaux re: economist report and WV law | 0.10 |

**12/16/2004**

| RAM | Telephone conference with local counsel re: filing of disclosures and motion to continue deadline | 0.20 |
|---|---|---|
| RAM | Conference with LDZ re: updating initial disclosures with additional witnesses | 0.10 |
| RAM | Receipt and review of expert economist report by Dr. Boudreaux | 0.30 |
| RAM | Receipt and review of correspondence, fee agreement and trial testimony history from Dr. Arden | 0.20 |
| RAM | Organization of all materials needed for rule 26(b) expert disclosures | 0.20 |
| LDZ | Telephone conference with Carol Schudmak re witnesses Doris and dallas Brozik, obtaining addresses & number, learning they created the "Day in the Life CD Rom", making list of things to add to initial disclosure discovery, requesting us she provide the Texas address of colleague Craig Hollingshead, and related conferences w/RAM; | 1.00 |
| LDZ | Review of Travelocity, Expedia, and Orbitz for travel arrangements for atty Batt to arrive Richmond VA Wednesday night January 5 and depart following evening Thursday; | 1.70 |

**12/17/2004**

| DVB | Receipt and review of Kenneth J. Boudreaux's invoice in the amount of $1,583.00. | 0.20 |
|---|---|---|
| DVB | Receipt and review of Stopper & Associates invoices in the amount of $3,375.71. | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter of December 14, 2004 regarding deposition fee of David Stopper. | 0.20 |
| LDZ | Drafting of supplemental Rule 26 discovery disclosures; | 2.40 |

**12/20/2004**

| LDZ | Review of possible Richmond travel arrangements for DVB Jan 5-6, 2005; | 2.10 |
|---|---|---|
| LDZ | Preparation for Richmond trip - travel arrangements for DVB; | 3.00 |
| LDZ | Conference with DVB re materials and p[photos and other demonstrative evidence needed for mediation; | 1.20 |

**12/21/2004**

| DVB | Receipt and review of Stopper & Associates reminder regarding |  |
|---|---|---|

|  |  | Hours |
|---|---|---|
|  | prepayment of deposition fees prior to December 30, 2004. | 0.20 |
| LDZ | Telephone conference with Amex re home address for credit card for air tickets for Richmond and final travel arrangements; | 1.00 |
| LDZ | Preparation for travel plans revamped; cancel Richmond and hotel reservations; speak w/DVB and Levicoff; | 4.00 |
| DVB | Receipt and review of Johnathan L. Arden's letter of December 15, 2004 with attached Testimony Log. | 0.20 |
| DVB | Receipt and review of Certificates of Service for recent Discovery Requests, Rule 16(b) Expert Disclosures and the Unopposed Motion to Continue Rule 26(b) Expert Witness Report Disclosure Deadline. | 0.20 |

**12/27/2004**

| | | |
|---|---|---|
| DVB | Receipt and review of defendants' Reply to Unopposed Motion to Continue Rule 26(b) Expert Witness Report Disclosure Deadline. | 0.20 |
| DVB | Receipt and review of defendants' Response to Requests for Admissions. | 0.20 |
| DVB | Receipt and review of Carey L. Cummings letter of December 22, 2004 requesting our supplemental discovery responses. | 0.20 |
| DVB | Receipt and review of defendants' Second Amended Notice of Depositions scheduling the depositions of Johnathan Arden and David A. Stopper on January 6, 2005 in Washington, D.C. | 0.20 |

**12/29/2004**

| | | |
|---|---|---|
| JPN | Meeting with attorney and analysis of fee issues | 0.30 |
| RFL | Meeting with JPN (re: analysis of fee issues research) | 0.30 |

**12/30/2004**

| | | |
|---|---|---|
| DVB | Receipt and review of extensive photos and dvd re the decedent's past [to be used to create a presentation for upcoming mediation and potentially for trial | 0.70 |
| DVB | Telephone conference with mediator re our possible submission of a written evaluation of a claim | 0.30 |
| DVB | Obtain travel arrangements to wash.d.c. and coordinating meetings with expert{s} re same | 0.50 |
| RFL | Initial Legal research re: La RS 37:218 | 1.30 |
| RFL | Initial Legal research re: enforcement of 37:218 outside of Louisiana | 1.60 |

**01/02/2005**

| | | |
|---|---|---|
| RFL | Legal research re applicability of La RS 37:218 | 2.40 |

**01/03/2005**

| | | |
|---|---|---|
| RAM | Telephone call from Stopper re: deposition fee | 0.10 |
| RAM | Telephone call to Julie Stopper re: deposition fee and holding date | 0.10 |
| RAM | Telephone call to Levicoff re: deposition fee and payment of hourly rate | 0.20 |
| RAM | Correspondence to Levicoff re: deposition fee | 0.20 |
| RAM | Telephone call from dvb/re: strategy and research re: depo fees | 0.10 |
| DVB | Preparation of exhibits for mediation --including review of extensive family photos,business photos , testimonial data re decedent and conversations with family members/colleagues; | 1.40 |
| RAM | Legal research re: expert witness fees as per DVB's instructions | 1.40 |
| RAM | Meeting with DVB/re: depositions of expert, expert fee problems, | 0.20 |
| RAM | Correspondence to opposing counsel re: expert witness fees and issues | 0.30 |
| RAM | Telephone call to Levicoff re: expert fee | 0.10 |
| RAM | Telephone call to expert, re: subpoena for deposition | 0.10 |
| RAM | Receipt and review of requests for admission, and corresponding to our requests, D admitting liablity | 0.20 |
| RAM | Editing of letter to Levicoff as per DVB's instructions | 0.10 |

IN RE ALFRED ABRAMSON

Account No: 500-048167
Statement No: 17386

| | | Hours |
|---|---|---|
| RAM | Legal research re: status of motion to dismiss and other pending motions via pacer | 0.20 |
| RFL | Legal research re: general obligations under Louisiana caselaw re: attorneys' fees | 2.20 |

**01/04/2005**

| | | |
|---|---|---|
| RAM | Telephone call from Stopper re deposition | 0.10 |
| RAM | Telephone call to Julie Stopper | 0.10 |
| RAM | Telephone call from Stopper re: deposition | 0.10 |
| RAM | Drafting of Motion to Continue discovery cut-offs and trial date as per DVB's instructions | 0.50 |
| LDZ | Preparation for mediation photo exhibits incl conferences w/DVB; and includes time from 12/27 through 12/31 for travel plans to Washington D.C. depos; | 5.00 |
| RAM | Conference with DVB/re: motion to continue discovery cut-offs | 0.10 |
| RAM | Editing of Motion to Continue Discovery Cut-offs, as per DVB's instructions | 0.20 |
| DVB | Investigation of relationship of claimants with decedent | 0.60 |
| DVB | Preparation of exhibits for use at mediation /trial | 0.70 |
| DVB | Preparation for depositions of experts-stopper and arden,including related legal research | 0.80 |
| LDZ | Preparation for As per DVB's instructions folder for Washington depositions; | 1.90 |
| DVB | Receipt and review of MAPS notice confirming Avrum Levicoff will pay Mediation fees. | 0.20 |

**01/05/2005**

| | | |
|---|---|---|
| RAM | Receipt and review of correspondence from Levicoff re: exclusion of expert testimony | 0.20 |
| RAM | Telephone call to dvb/re: correspondence from Levicoff | 0.10 |
| DVB | Legal research re: dispute over expert fee for mr stopper | 0.60 |
| DVB | Preparation for and attendance at depositions in washington ,d.c. | 10.00 |
| RAM | Legal research re: discovery and obligation to produce witness and set witness fees | 2.80 |
| RAM | Telephone call dvb/re: discovery issues and expert witness fees | 0.10 |
| RAM | Transmittal of documents via fax to dvb/per his request | 0.10 |

**01/06/2005**

| | | |
|---|---|---|
| RAM | Telephone call from Stopper, re: cancellation of deposition | 0.10 |
| RAM | Drafting of supplemental responses to requests for production | 0.30 |
| RAM | Drafting of supplemental answers to interrogatories | 1.10 |
| RAM | Drafting of certificate of service required for filing with court re: supplemental responses to Interrogatories | 0.20 |
| RAM | Drafting of cerftificate of service for supplemental responses to requests for production for filing with court | 0.20 |
| RAM | Correspondence to Levicoff re: supplemental discovery responses | 0.20 |
| RAM | Correspondence to Bailey re: filing of certificates of service for supplemental discovery | 0.20 |
| DVB | Attendance at depositions in WASHINGTON D.C. | 11.00 |
| DVB | Legal research re: defendant's threat to strike dr stopper's testimony due to his non-appearance at deposition in washington.d.c. | 0.70 |
| RFL | Meeting with RAM re: files from Hill firm and Notice of Charging Lien | 0.20 |
| RFL | Review / Analysis of Notice of Charging Lien; attached correspondence b/t Estate and Hill firm | 2.20 |
| RFL | Legal research re: West Va. lien law / types of enforceable charging liens | 2.10 |

IN RE ALFRED ABRAMSON

|  |  |  | Hours |
|---|---|---|---|
| **01/07/2005** | | | |
| | RAM | Conference with dvb/re: strategy for case and editing of Motion to continue | 0.40 |
| | RAM | Telephone call from Dr. Arden re: invoicing and questions re: depositions | 0.10 |
| | RAM | Telephone conference with Dr. Arden re: invoicing, trial date, future preparation and deposition | 0.30 |
| | RAM | Editing of Motion to Continue per telecon with dvb | 0.30 |
| | RAM | Correspondence to Levicoff with Motion to continue | 0.20 |
| | RAM | Telephone call to Carey Cummings re: motion to continue | 0.10 |
| | DVB | Receipt and review of John W. Perry's letter with attached invoice for services dated March 24, 2004. | 0.20 |
| | RFL | Legal research re: quantum meruit analysis as employed under W.VA. law | 1.50 |
| | RFL | Legal research re: std of proof of Quantum Meruit in W.Va. caselaw | 1.00 |
| | RFL | Legal research re: assessments of liens in Federal courts within Federal 4th Cir | 3.80 |
| **01/09/2005** | | | |
| | RFL | Drafting of report re: Atty liens under 37:218; W.VA. Code; analysis of notice of charging lien | 4.90 |
| **01/10/2005** | | | |
| | RAM | Receipt and review of Motion for continuance and correspondence from Levicoff | 0.20 |
| | RAM | Telephone call to Levicoff associate re: continuance and extension of time | 0.20 |
| | DVB | Receipt and review of Jonathan Arden's invoice in the amount of $300.00 for depo preparation. | 0.20 |
| | DVB | Receipt and review of Jonathan Arden's invoice in the amount of $750.00, directed to Avrum Levicoff, for deposition testimony on January 6, 2005. | 0.20 |
| | RAM | Telephone call to Levicoff, re: motion and extension | 0.10 |
| | RAM | Editing of Motion to Continue to make joint motion per convo with levicoff associate | 0.30 |
| | RAM | Correspondence to defendants, re: joint motion to continue | 0.20 |
| | RAM | Receipt and review of correspondence from Levicoff re: expert deposition | 0.10 |
| | RFL | Legal research re: La RS 9:5001 for report on atty liens research | 2.30 |
| | RFL | Legal research re: W.Va. law recognizes "lost opportunity" damages for discharge of atty, and if so under what std for report on atty liens | 1.30 |
| | RFL | Editing of report on atty liens to include research on damages issue | 1.40 |
| **01/11/2005** | | | |
| | JPN | Conference with attorney re: Research | 0.50 |
| **01/12/2005** | | | |
| | LDZ | Review of poems referencing the death of a sibling as per DVB's instructions; | 3.00 |
| **01/13/2005** | | | |
| | LDZ | Preparation for mediation; design of photo poster board exhibit; | 1.50 |
| | LDZ | Correspondence to atty Levicoff w/CD-ROM "Remembering Joe Abramson"; calls to Carol Schudmak re captions; | 0.40 |
| | LDZ | Telephone conference with Carol Schudmak regarding selected photos from CD-ROM and need for captions, and cover letter and fax, and related efforts; | 0.60 |
| | RAM | Receipt and review of correspondence from defensse counsel | 0.20 |
| **01/14/2005** | | | |
| | LDZ | Preparation for mediation via exhibits, poetry/prose quotes re death of siblings/grief; | 4.10 |

IN RE ALFRED ABRAMSON

Account No: 500-048167
Statement No: 17386

| | | | Hours |
|---|---|---|---|
| **01/17/2005** | | | |
| | RAM | Conference with dvb/re: abramson mediation exhibits | 0.20 |
| | DVB | Preparation for mediation including separated discussions with carol and alfred ;t/c with assistance for opposing counsel and with mediatior's secretary | 1.30 |
| | | | |
| **01/18/2005** | | | |
| | RAM | Telephone call from Levicoff's office, re: mediation | 0.10 |
| | RAM | Telephone call to dvb/re: change in mediation time | 0.10 |
| | RAM | Telephone call to levicoff, re: mediation | 0.10 |
| | RAM | Telephone call from as per DVB's instructions re: mediation time | 0.10 |
| | RAM | Telephone call to maps confirming 10 am mediation time | 0.10 |
| | RAM | Review of deposition of Dr. Arden in preparation for developing mediation exhibit as per DVB's instructions | 0.50 |
| | RAM | Drafting of mediation exhibit of deposition exerpts of Dr. Arden | 0.60 |
| | RAM | Review of file in order to pull quantum evaluation and policy limits and remains as per DVB's instructions in prep of mediation | 0.40 |
| | RAM | Review of memorandum re: research and analysis of attorney's liens in Abramson as per DVB's instructions | 0.60 |
| | RAM | Memo to dvb/re: summary of attorney lien information and research by Rudy | 0.30 |
| | RAM | Telephone call to Levicoff, re: settlement offer | 0.10 |
| | RAM | Review of file in order to find settlement offer letter, as per DVB's instructions | 0.30 |
| | RAM | Memo to dvb/re: remaining funds and estimate of Mullins settlement as per DVB's instructions | 0.20 |
| | DVB | Receipt and review of Stopper & Associates invoice in the amount of $1,173.47 dated January 14, 2005. | 0.20 |
| | DVB | Telephone conference with al abramson | 0.60 |
| | RAM | Review of Stopper invoice as per DVB's instructions | 0.10 |
| | LDZ | Conference with DVB and including arrangement of exhibits for poster board; call to Carol Schudmak; conference w/RAM re her trial exhibits; make prep folder for DVB; | 3.70 |
| | | | |
| **01/19/2005** | | | |
| | RAM | Telephone call from Levicoff's office re: rescheduling mediation and depositions | 0.20 |
| | LDZ | Preparation for mediation; preparation of mediation exhibits and w/Choice Copy; and conference w/Carol Schudmak; | 2.80 |
| | DVB | Telephone conference with defense counsel's staff re cancellation of mediation; t/c with mediators re same;t/c with clients re cancellation and various issues in file | 0.60 |
| | RAM | Telephone call from Alfred abramson re: dates for depos | 0.10 |
| | RAM | Memo to dvb/rb re: dates for depos mediation | 0.10 |
| | JPN | Legal research re: Evaluation of attorney fee issues | 1.00 |
| | RFL | Review of prior research on lien issues for JPN | 1.50 |
| | | | |
| **01/20/2005** | | | |
| | RAM | Review of mediation exhibits with ldz | 0.10 |
| | LDZ | Telephone conference with Mike of Choice Copy and meeting with him to review proof of Abramson mediation exhibit; | 2.20 |
| | LDZ | Conferences with DVB and Mike of Choice Copy re exhibits for mediation and related matters; | 2.00 |
| | DVB | Receipt and review of defendant's Motion in Limine to Preclude the Expert Testimony of David A. Stopper. | 0.20 |

IN RE ALFRED ABRAMSON

Account No:    500-048167
Statement No:    17386

| | | | Hours |
|---|---|---|---|
| | DVB | Receipt and review of Notice of Cancellation of mediation scheduled on January 21, 2005. | 0.20 |
| **01/21/2005** | | | |
| | RAM | Receipt and review of Motion in Limine to exclude expert witness | 0.40 |
| | RAM | Legal research re: check pacer for updates on filings and ruling on Motion to Dismiss | 0.20 |
| | LDZ | Conference with Mike of Choice Copy, DVB, BSG, RAM, TPB; arrangements to get small size copies, diskette, and photographic transparency; | 1.00 |
| **01/24/2005** | | | |
| | RAM | Legal research re: opposition to Motion in Limine to exclude expert witness and seek sanctions as per DVB's instructions | 4.20 |
| | RAM | Legal research re: opposition to motion in limine, further case law based on initial research and checking cites and whether cases are still good law for citation in opposition memorandum | 1.90 |
| | DVB | Receipt and review of Jonathan Arden's letter regarding the errata sheet of his deposition which he signed and returned. | 0.20 |
| **01/25/2005** | | | |
| | LDZ | Organization of exhibits for mediation; | 0.20 |
| | RAM | Drafting of facts portion of opposition, including review of file for all correspondence regarding expert depositions and inclusion of same in opposition | 1.40 |
| | RAM | Drafting of Motion in opposition to Motion in Limine, partial completion of argument and law in support section | 0.90 |
| **01/26/2005** | | | |
| | RAM | Instruction to LDZ/re: letters from Levicoff, re: depo of stopper in prep for opp to motion in limine | 0.10 |
| | RAM | Legal research re: deadlines for filing of motion in opposition to Motion in Limine, re: local rules and federal rules re: service | 0.20 |
| | BSG | Legal research re: computation of time to respond to defendant's Motion to Strike expert in compliance with the federal rules, as well as all local rules of court | 0.80 |
| | BSG | Legal research re: defendant's requirement to pay the fees of our expert for any deposition testimony and the application of the rule in the Federal Court's of West Virginia and the Fourth Circuit for responding to plaintiff's Motion to Strike our expert | 1.50 |
| | BSG | Legal research re: Daubert issues for responding to defendant's Motion to Strike our expert | 1.50 |
| | BSG | Legal research re: the legitimacy of defendant's Motion to Strike, as it is not based on law, and whether Rule 11 sanctions are available | 0.70 |
| **01/27/2005** | | | |
| | RAM | Drafting of opposition to Motion in Limine, partial completion | 0.60 |
| | RAM | Drafting of opposition to motion in limine, partial completion | 2.00 |
| | RAM | Legal research re: Motions to compel and to set expert witness fees, legal citation for opposition to motion in limine and notice of rule 11 sanctions | 1.60 |
| | RAM | Drafting of opposition to motion in limine | 0.50 |
| | LDZ | Preparation for mediation by preparation and editing of exhibits; | 1.00 |
| **01/28/2005** | | | |
| | RAM | Correspondence to Levicoff, re: outstanding interrogatories and requests for production of documents | 0.30 |

Case 3:04-cv-00489   Document 84   Filed 05/20/05   Page 60 of 119 PageID #: 786

Page: 35
05/18/2005
IN RE ALFRED ABRAMSON
Account No:          500-048167
Statement No:        17386

|  |  | Hours |
|---|---|---|
| RAM | Telephone call to Stopper re: Daubert materials | 0.10 |
| RAM | Legal research re: reasonableness of fees and daubert challenges to accident reconstructionist and rule 11 sanctions in conjunction with drafting of opposition to motion in limine | 1.90 |
| RAM | Drafting of Notice of Rule 11 sanctions in conjunction with Opposition to Motion in Limine | 0.90 |
| RAM | Drafting of Opposition to Motion in Limine, completion of draft for review by dvb | 4.10 |

**01/31/2005**

|  |  |  |
|---|---|---|
| RAM | Receipt and review of correspondenc from Mike Bailey, re: conformed copy of motion to continue and cert of service filed with court | 0.20 |
| RAM | Telephone call from Levicoff re: rescheduling mediation and depositions | 0.10 |
| RAM | Telephone conference with TB/re: discussion re: calendar and dates for rescheduling mediation and depositions and contact with dvb/clients re: new dates | 0.10 |
| RAM | Receipt and review of memo/re: mediation and client dates and instruction to tb/re: rescheduling of mediation with Levicoff's office | 0.20 |
| DVB | Receipt and review of Order regarding Laneko Engineering Company and David Bruce Small's Motion to Dismiss, entry dated January 27, 2005. | 0.20 |
| DVB | Receipt and review of decision on motion to dismiss and review of file related thereto | 0.50 |

**02/01/2005**

|  |  |  |
|---|---|---|
| RAM | Telephone conference with DVB/re: rescheduling depositions, letter to client, win on Motion to dismiss | 0.20 |
| RAM | Telephone call to Levicoff, re: left message regarding mediator selection | 0.10 |
| RAM | Receipt and review of correspondence from counsel, re: outstanding discovery | 0.20 |
| RAM | Correspondence to counsel regarding amicable extension of discovery | 0.20 |
| LDZ | Review of Abramson correspondence for all between Levicoff and us as to Mr. Stopper's deposition; | 0.50 |
| RAM | Instruction to LDZ/re: organization of exhibits for Motion in Limine | 0.10 |
| RAM | Correspondence to clients with update on scheduling order and ruling on Motion to Dismiss | 0.30 |
| RAM | Drafting of Motion for Oral Argument on Motion in Limine | 0.40 |
| RAM | Calendar all new dates pursuant to court's scheduling order | 0.20 |
| RAM | Receipt and review of opinion rendered on Daubert challenge in favor of Stopper as expert, per my conversation with Stopper in light of Motion in Limine | 0.30 |
| RAM | Telephone conference with Local counsel's office re: filing of Motion in court by Thursday | 0.10 |
| RAM | Memo to dvb/re: Motion in Limine opposition | 0.10 |
| DVB | review of,editing of, and legal research in connection with our motion in opposition re stopper's deposition | 0.90 |
| LDZ | Preparation for filing of Motion in Opposition to Defendant's Motion in Limine; proofreading; culling and copying all exhibits; | 6.90 |
| LDZ | Preparation for | |

**02/02/2005**

|  |  |  |
|---|---|---|
| LDZ | Review of correspondence sections for pleadings filed therein, particularly defendant's Response to Request for Admissions; | 1.10 |
| RAM | Telephone conference with Mike Bailey re: filing date for motion in opposition to motion inlimine | 0.20 |
| RAM | Editing of opposition to motion in limine as per DVB's instructions | 2.00 |
| RAM | Review of file materials for answers to requests for admission, missing | |

Case 3:04-cv-00489   Document 84   Filed 05/20/05   Page 61 of 119 PageID #: 787

IN RE ALFRED ABRAMSON

Page: 36
05/18/2005
Account No:          500-048167
Statement No:               17386

| | | Hours |
|---|---|---|
| | from file | |
| RAM | Telephone call from Levicoff re: mediation and deposition dates | 0.50 |
| RAM | Telephone call to Erin re: requests for admission | 0.10 |
| RAM | Telephone call from Bailey re: requewsts for admission | 0.10 |
| RAM | Memo to dvb/re: problems with requests for admission | 0.10 |
| LDZ | (Re)Filing of pleadings, correspondence, expert reports, CVs, and other materials; file maintenance and organization; | 0.20 |
| | | 1.10 |

**02/03/2005**

| | | |
|---|---|---|
| LDZ | Meeting with Choice Copy re exhibits and small versions and ontaining same for clients; (poster board to be used at mediation); | 0.90 |
| LDZ | Telephone conference with DVB re Response to Request for Admissions and exhibits needed for mediation; | 0.20 |
| LDZ | Conference with DVBB re exhibits needed for mediation; | 1.00 |

**02/04/2005**

| | | |
|---|---|---|
| RAM | Telephone call from dvb/re: requests for admissions | 0.10 |
| RAM | Memo from dvb/re: punitive damages | 0.10 |
| LDZ | Preparation for mediation by devising and confecting graphics; | 4.00 |

**02/07/2005**

| | | |
|---|---|---|
| LDZ | Preparation for mediation by making designing blowup posters; | 4.30 |
| DVB | Receipt and review of John W. Perry's letter, with attached invoice, regarding payment of outstanding invoice. | 0.20 |
| DVB | Receipt and review of monthly statement of Suburban Reporting Service. | 0.20 |

**02/09/2005**

| | | |
|---|---|---|
| DVB | Receipt and review of Federal Court Ruling on Daubert challenge in the case of Librado v. M.S. Carriers. | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter confirming the March 17, 2005 depositions of plaintiffs and the March 18, 2005 Mediation in this matter. | 0.20 |

**02/10/2005**

| | | |
|---|---|---|
| RAM | Correspondence to Levicoff re: confirmation of deposition and mediation dates | 0.20 |
| RAM | Receipt and review of correspondence from Levicoff re: depositions and mediation | 0.20 |
| RAM | Receipt and review of interrogatory and rpd responses from David Bruce Small | 0.30 |
| RAM | Correspondence to Levicoff seeking supplemental discovery responses | 0.30 |
| LDZ | Preparation for mediation via design and manufacture of exhibits; conversation w/investigator "Sig" Sigman to see if he will e-mail a copy of Sigman 531 if in digital version for our blow-up; look through all 600 police photos for identical or similar photo w/out label; related conferences w/RAM; and w/Choice Copy; | 3.00 |

**02/11/2005**

| | | |
|---|---|---|
| LDZ | Preparation for mediation; exhibits; | 1.30 |
| LDZ | Filing of various file materials; file organization, maintenance; | 2.30 |

**02/14/2005**

| | | |
|---|---|---|
| DVB | Receipt and review of email from defense lawyer, review of file and responding to same | 0.20 |
| LDZ | Preparation for mediation by design and production of exhibits; check economist Boudreaux report, make copies; | 0.90 |

Case 3:04-cv-00489 Document 84 Filed 05/20/05 Page 62 of 119 PageID #: 788

IN RE ALFRED ABRAMSON

Page: 37
05/18/2005

Account No: 500-048167
Statement No: 17386

| | | | Hours |
|---|---|---|---|
| RAM | Memo to dvb/with lien memo summary as per DVB's instructions | | 0.10 |
| RAM | Receipt and review of reply memorandum to plaintiffs motion in opposition to motion in limine to exclude expert testimony | | 0.30 |
| LDZ | Filing of recen pleadings and correspondence; filing and file orgaization; | | 0.10 |

**02/15/2005**

| | | | |
|---|---|---|---|
| RAM | Legal research re: reply memorandum in response to defenses reply memorandum | | 1.20 |
| RAM | Drafting of reply memorandum to defendant's reply memorandum on Motion in Limine to exclude Stopper as witness | | 6.80 |
| RAM | Correspondence to clients re: scheduled depositions | | 0.20 |
| RAM | Telephone call to Edison Hill, re: negotiation of quantum merit fee | | 0.10 |
| DVB | Receipt and review of email from counsel, review of file and responding to same | | 0.30 |

**02/16/2005**

| | | | |
|---|---|---|---|
| RAM | Correspondence to Edison Hill re: attorney fees, as per DVB's instructions | | 0.30 |
| RAM | Legal research re: raising new issue in reply memorandum in motion in limine | | 0.50 |
| RAM | Legal research re: expert testimony and reliance on witness statements and other expert reports as per DVB's instructions for reply memorandum, motion in limine | | 0.70 |
| RAM | Editing of reply memorandum motion in limine, as per DVB's instructions include law regarding basis for expert opinion | | 0.30 |

**02/17/2005**

| | | | |
|---|---|---|---|
| RAM | Organization of exhibits for reply memorandum to motion in limine and editing and changes to motion as per DVB's instructions | | 1.40 |
| DVB | Review of and editing of multiple memoranda re stopper's testimony including motions and briefs re same | | 0.70 |
| RAM | Legal research re: punitive damage cases with expert witnesses as per DVB's instructions for reply memorandum | | 0.50 |
| RAM | Editing of reply memorandum, motion in limine, as per DVB's instructions | | 0.50 |
| RAM | Correspondence to Mike Bailey, re: filing of Reply Memorandum | | 0.20 |
| RAM | Correspondence to Levicoff with enclosed reply memorandum to their reply to MOtion in limine | | 0.20 |

**02/18/2005**

| | | | |
|---|---|---|---|
| DVB | Receipt and review of Laneko Engineering Company d/b/a Laneko Engineering, Inc., and RBL Leasing Corporation's Answers to Plaintiff's First Interrogatories. | | 0.20 |
| DVB | Receipt and review of Laneko Engineering Company d/b/a Laneko Engineering, Inc., and RBL Leasing Corporation's Answers to Plaintiff's First Request for Production of Documents. | | 0.20 |

**02/21/2005**

| | | | |
|---|---|---|---|
| RAM | Receipt and review of answer filed on behalf of Laneko and David Bruce Small | | 0.20 |

**02/22/2005**

| | | | |
|---|---|---|---|
| DVB | Telephone conference with various counsel and clients and review of file re same; | | 0.50 |
| RAM | Memo from dvb/re: mediation prep | | 0.10 |
| RAM | Memo to dvb/re: mediation prep | | 0.10 |
| RAM | Telephone call from dvb/re; mediation prep | | 0.10 |
| RAM | Receipt and review of Interrogatory Responses Laneko | | 0.40 |

Account No:                500-048167
Statement No:                   17386

| | | Hours |
|---|---|---|
| RAM | Correspondence to Levicoff, re: inadequate interrogatory answers | 0.30 |
| DVB | Receipt and review of Order dated February 17, 2005 granting plaintiff's request for oral argument in opposition to defendant's Motion to Exclude the expert testimony of David Stopper. | 0.20 |

**02/23/2005**

| | | |
|---|---|---|
| DVB | Receipt and review of defendants' Motion to Continue Hearing on plaintiff's opposition to defendant's Motion to Exclude the expert testimony of David Stopper | 0.20 |
| DVB | Receipt and review of various pleadings and documents including motion to continue hearing | 0.30 |
| DVB | Telephone conference with judge's staff re defendants request for a continuance of the motion hearing | 0.30 |
| RAM | Editing of correspondence to Hill as per DVB's instructions | 0.10 |

**02/24/2005**

| | | |
|---|---|---|
| RAM | Legal research re: update research on any punitive damage issues in West Viriginia in anticipation of mediation display and position paper | 0.80 |
| RAM | Review of all documents forwarded to us via cd rom in response to requests for production of documents and review of defendants responses to same | 1.90 |
| RAM | Telephone call to David Stopper, re: review or RPD responses | 0.10 |
| RAM | Telephone call to Stopper cell phone, re: review of rpd provided by defendant | 0.10 |
| RAM | Correspondence to stopper with enclosed responses to requests for production of documents and request to render additional opinion | 0.20 |
| RAM | Correspondence to levicoff re: supplementation of rpd and clarification of responses and addressing issue of expert witness conflict as per DVB's instructions | 0.40 |
| LDZ | Preparation for mediation; poster boards and damage quantum exhibit; | 1.00 |

**02/25/2005**

| | | |
|---|---|---|
| RAM | Telephone call from Julie Stopper re: review of rpd | 0.10 |
| RAM | Telephone call to Julie Stopper, re: forwarding of documents to Stopper for analysis | 0.10 |
| RAM | Legal research re: driving logs and FMSCA, for the defense articles as per DVB's instructions | 1.10 |
| RAM | Drafting of position paper for mediator as per DVB's instructions | 1.40 |
| RAM | Memo to dvb/re: position paper and possible additions pending stopper analysis | 0.10 |
| DVB | Telephone conference with client | 0.20 |
| RAM | Telephone call from dvb/re: calendaring of continuance for following mediation | 0.10 |
| RAM | Receipt and review of correspondence from Levicoff, original of motion to continue hearing | 0.20 |
| DVB | review of and redrafting of position paper for mediator | 0.70 |
| DVB | Telephone conference with mediator re needed position paper | 0.30 |

**02/28/2005**

| | | |
|---|---|---|
| DVB | Receipt and review of Order dated February 23, 2005 which directs the parties to contact the court by March 22, 2005 with reference to rescheduling hearing on Motion previously scheduled on February 28, 2005. | 0.20 |
| RAM | Receipt and review of correspondence from Mike Bailey | 0.20 |
| RAM | Editing of position letter to mediator as per DVB's instructions including review and quoting of testimony of Dr. Arden | 0.50 |

Account No:          500-048167
Statement No:              17386

|  |  | Hours |
|---|---|---|
| RAM | Editing of mediation position paper as per DVB's instructions | 0.20 |
| LDZ | Filing of miscellanea; | 0.10 |

**03/01/2005**

| RAM | Receipt and review of supplemental report by David Stopper | 0.30 |
|---|---|---|
| RAM | Telephone call to Stopper, re: supplemental report and changes to same | 0.20 |

**03/02/2005**

| RAM | Receipt and review of corrected expert report | 0.20 |
|---|---|---|
| RAM | Receipt and review of email correspondence from expert, David Stopper | 0.20 |
| RAM | Editing of mediation position paper as per DVB's instructions | 0.30 |
| RAM | Telephone call from Levicoff's office re: deposition time | 0.10 |
| RAM | Memo to dvb/re: change in deposition time | 0.10 |
| RAM | Correspondence to Levicoff with supplemental expert report | 0.20 |

**03/04/2005**

| RAM | Receipt and review of correspondence supplementing Small's discovery | 0.20 |
|---|---|---|
| RAM | Correspondence to Levicoff, re: discovery | 0.20 |
| RAM | Receipt and review of correspondence from Levicoff re: change in depo times to 1:00 | 0.20 |

**03/07/2005**

| RAM | Receipt and review of correspondence from Levicoff re: discovery responses of David Small | 0.20 |
|---|---|---|
| RAM | Receipt and review of correspondence from David Stopper, expert | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter regarding the time change of plaintiffs depositions. | 0.20 |

**03/08/2005**

| LDZ | Review of family & death references in Oxford Dictionary of quotations for use in presentation at mediation; also complete review of 600 police photos to get better copy than Stopper blowup for further poster blowup; | 4.20 |
|---|---|---|
| RAM | Review of Expert reports re: evidence of reckless conduct for creation of punitive damages award exhibit | 0.40 |
| RAM | Drafting of punitive damages exhibit as per DVB's instructions | 0.50 |
| RAM | Memo to dvb/re: punitives exhibit | 0.10 |

**03/09/2005**

| RAM | Receipt and review of correspondence from Levicoff supplementing discovery responses | 0.30 |
|---|---|---|

**03/10/2005**

| RAM | Telephone call from Erin at Levicoff's office, re: Stopper supplemental report | 0.10 |
|---|---|---|
| RAM | Telephone call to Erin, re: fax of supplemental report | 0.10 |
| RAM | Memo from dvb/re: scheduling oral argument on motion in limine | 0.10 |
| RAM | Telephone call from Erin in Levicoff's office | 0.10 |
| RAM | Correspondence to Erin, re: expert report | 0.20 |
| RAM | Conference with dvb/re: hearing and oral argument and motion for sanctions | 0.10 |

**03/11/2005**

| RAM | Telephone call to Katherine, re: run bill for exibit in Rule 11 motion | 0.10 |
|---|---|---|
| RAM | Review of bill and highlighting of portions spent on Motion in Limine for inclusion with Motion for Rule 11 sanctions | 0.50 |
| RAM | Legal research re: Motion for Sanctions | 1.00 |

IN RE ALFRED ABRAMSON

Account No:          500-048167
Statement No:          17386

|  |  | Hours |
|---|---|---|
| RAM | Drafting of factual portion of Motion for Sanctions | 1.10 |
| RAM | Drafting of Motion for Sanctions | 2.80 |

**03/14/2005**

| RAM | Telephone call from dvb/re: mediation materials | 0.10 |
|---|---|---|
| RAM | Preparation for mediation, re print of exhibit per dvb | 0.10 |
| RAM | Telephone call from dvb/re: certified letter to prior attorney | 0.10 |
| RAM | Conference with LDZ/DVB re; mediation materials prep | 0.10 |
| RAM | Editing of and finish drafting Motion for Sanctions | 0.50 |
| RAM | Memo to dvb/re: motion for sanctions | 0.20 |
| DVB | review of file re: preparation of exhibits for mediation; | 0.70 |
| LDZ | Preparation for mediation; exhibits, posters, expert reports, related conferences w/DVB & RAM; extra copies of Life and Loves" poster in miniature from Choice Copy; punitive damages poster editing, production; | 4.60 |
| RAM | review of file and Memo to dvb/with elements of damages in WV wrongful death as per DVB's instructions | 0.20 |
| LDZ | Preparation for mediation assisting DVB; copying expert reports, making file; | 1.10 |
| DVB | Receipt and review of defendant's position paper regarding mediation. | 0.20 |
| DVB | Receipt and review of defendant's Supplemental Motion in Liminie to Preclude the Supplemental Expert Report of David A. Stopper. | 0.20 |
| DVB | Receipt and review of defendant's position paper re upcoming mediation | 0.40 |
| RAM | Receipt and review of supplemental motion in limine and memorandum in support | 0.40 |
| RAM | Legal research re: punitive damage statue, as per DVB's instructions | 0.20 |
| RAM | Memo to dvb/re: punitives research and statute on violation of WV statutes | 0.10 |

**03/15/2005**

| RAM | Telephone conference with dvb/re: mediation issues | 0.10 |
|---|---|---|
| RAM | Legal research re: judicial interest in W.V. as per DVB's instructions | 0.60 |
| RAM | Receipt and review of email from dvb/re: remainder of Traveler's policy | 0.10 |
| RAM | Review of file to find document requested by DVB | 0.20 |
| RAM | Memo to dvb/re: remainder of traveler's policy | 0.10 |
| LDZ | Review of literary quotations attempting to find suitable ones for use in mediation; | 2.00 |
| RAM | Memo to as per DVB's instructions re: judicial interest | 0.70 |
| RAM | Review of Expert report re: Abramson lost wages for judicial interest calculations and calculation of same as per DVB's instructions | 0.30 |
| DVB | Review of case law and research re judicial interest [for use in mediation] and research re punitive damages and survival action damages | 1.30 |
| RAM | Conference with DVB/re: motions in limine, daubert challenge and research re previous attorney fees | 0.20 |

**03/16/2005**

| RAM | Legal research re: opposition to motion in limine to exclude supplemental report of stopper | 2.10 |
|---|---|---|
| RAM | Drafting of opposition to supplemental motion in limine, stopper report, partial completion | 1.10 |
| LDZ | Review of and editing quantum demand sheet; pull last settlement offer; conferences w/ DVB & RAM re quantum figures, settlement demands; | 0.40 |
| RAM | completion of Drafting of opposition to supplemental motion in limine and notice of rule 11 sanctions | 1.80 |

**03/17/2005**

| RAM | Legal research re: lost wages and CFR regulations cited in punitives poster as per DVB's instructions | 1.40 |
|---|---|---|

| | | Hours |
|---|---|---|
| RAM | Memo to dvb/re: law in W.V. on lost wages/wrongful death | 0.20 |
| RAM | Legal research re: punitive damages cases automobile accidents to give to Levicoff, as per DVB's instructions | 1.10 |
| RAM | Drafting of punitive damage case summary for Levicoff, as per DVB's instructions | 0.40 |
| RAM | Legal research re: reply memorandum, impropriety of bringing up daubert in reply memorandum in conjunction with drafting of motion for sanctions | 1.60 |
| RAM | Editing of Motion for Sanctions and Opposition to Motion in Limine to exclude supplemental report of stopper | 1.20 |
| RAM | Review of police report and conference with LDZ re: additional materials or supplemental or narrative police reports, re: punitive damages as per DVB's instructions | 0.40 |
| RAM | Memo to dvb/re: police report and punitive damages review of motions and analysis of success of Levicoff's motions | 0.20 |
| LDZ | Review of police report re possibility of supplemental narrative report and related conference w/RAM re prep for mediation tomorrow; locating labeling and filing Affidavit of reconstructionist State Trooper Curtis Tilley, related conference w/RAM; label, file, and organize other critical elements of file; call to Barboursville Police Detective Jim Copley re supplemental report who advised there is none or a narrative; call to state police, determine they wrote no report; scrutinize Barboursville P.D. for any indications of liability assignment especially wanton and reckless behavior; look up PACER for latest scheduling order; | 4.30 |
| DVB | Preparation for conferences with clients and depositions | 1.30 |
| DVB | Attendance at conferences with clients ;depositions ;and post-deposition discussions with adverse counsel | 8.00 |

**03/18/2005**

| | | |
|---|---|---|
| RAM | Calculate hours spent in reply memorandum Levicoff for motion for sanctions | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter of March 14, 2005 with attached Memorandum in Support of Defendant's Supplemental Motion in Limine to Preclude the Supplemental Expert Report of David A. Stopper. | 0.20 |
| DVB | Receipt and review of defendant's Supplemental Motion in Limine to Preclude the Supplemental Expert Report of David A. Stopper. | 0.20 |
| DVB | Receipt and review of Joint Motion for Expedited Ruling on Defendant's Motion to Dismiss and to Continue Discovery Deadlines and Trial Date. | 0.20 |
| DVB | Preparation for presentations at mediation ; review of file ;and culling of exhibits etc | 4.40 |
| DVB | Attendance at mediation | 5.70 |
| DVB | Conference with s.shudmack and claimant c.shudmack on 3/19/05 for post-mediation discussions | 1.00 |

**03/21/2005**

| | | |
|---|---|---|
| LDZ | Conference with DVB re mediation; settlement and aftermath debriefing and copying and securing documents for file including settlement and mediation materials; | 1.30 |
| DVB | Receipt and review of invoice of Stopper & Associates in the amount of $1,173.47. | 0.20 |
| DVB | Telephone conference with sam schudmak re resolution of case and need to dispose of lien | 0.40 |
| DVB | review of file in light of issues raised in telephone call with s.schudmak | 0.30 |
| DVB | review of research related to attorney's liens in west virginia | 0.40 |
| DVB | Conference with associate re attorney lien issue and bringing this issue before the court | 0.20 |

IN RE ALFRED ABRAMSON

|  |  |  | Hours |
|---|---|---|---|
| **03/22/2005** |  |  |  |
| RAM | Memo from dvb/re; settlement and lien | | 0.10 |
| RAM | Receipt and review of Stopper bill and Q from DVB | | 0.10 |
| RAM | Conference with dvb/re: quantum meriut motion with court re; previous attorney lien | | 0.30 |
| **03/28/2005** |  |  |  |
| RAM | Correspondence to Hill re: attorney's lien | | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter confirming settlement. | | 0.20 |
| RAM | Receipt and review of letter from Levicoff, re: attorney lien and settlement proceeds | | 0.20 |
| RAM | Conference with DVB/re: motion to determine lien of previous attorney, research to be done and correspondence in response to Levicoff letter | | 0.20 |
| RAM | Telephone call from Mike Bailey, re: settlement of Abramson case and final bill | | 0.10 |
| **03/30/2005** |  |  |  |
| RAM | Telephone call from dvb/re: lien from Hill and motion | | 0.20 |
| RAM | Correspondence to levicoff re; lien and accounting of expenses | | 0.20 |
| RAM | Legal research re: charginglien, motion to quash lien, and applicable case law as per DVB's instructions | | 3.40 |
| RAM | Drafting of letter to levicoff re: lien | | 0.20 |
| **03/31/2005** |  |  |  |
| DVB | Receipt and review of R. Edison Hill's letter regarding fee distribution. | | 0.20 |
| RAM | Receipt and review of correspondence from Attorney Hill | | 0.30 |
| RAM | Drafting of response to Hill Firm letter | | 1.20 |
| RAM | Telephone call to Judge Chambers law clerk, re; charging lien | | 0.10 |
| RAM | Memo to file re: issues to discuss with law clerk re: charging lien | | 0.20 |
| RAM | Telephone call from Mona in Judge Chamber's office | | 0.10 |
| RAM | Conference with as per DVB's instructions, re: lien and other issues to be resolved | | 0.20 |
| RAM | Conference with dvb/re: attorney lien letter and motion to court | | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's letter dated March 28, 2005 regarding payment of property damage in the amount of $44,123.25. | | 0.20 |
| DVB | Receipt and review of Avrum Levicoff's enclosing a copy of USAA's letter regarding UIM statute. | | 0.20 |
| DVB | Receipt and review of lettters and email from prior plaintiff's counsel | | 0.50 |
| DVB | Review of legal research re sharing of recovery with prior counsel | | 0.90 |
| DVB | Editing of detailed letter with legal analysis for prior plaintiff's counsel | | 0.60 |
| RAM | Legal research re: ethical considerations contigency fee contract as per DVB's instructions | | 1.00 |
| **04/01/2005** |  |  |  |
| RAM | Legal research re: attorney lien re: letter and motion if necessary | | 2.00 |
| **04/05/2005** |  |  |  |
| RAM | Editing of letter to Edison Hill, re: demand for accounting as per DVB's instructions | | 1.00 |
| RAM | Correspondence to Levicoff re: lien | | 0.20 |
| RAM | Telephone call to Judge's clerk, Mona, re: charging lien and determination of fees | | 0.20 |
| RAM | Telephone call from Mona in Judge Chamber's office, re: motion to be filed for determination of fees | | 0.20 |
| RAM | Conference with dvb/re: letter to Hill and letter from USAA and call to Avrum re: same, communications with court and judge's clerk, re: prior | | |

IN RE ALFRED ABRAMSON

|  |  | Hours |
|---|---|---|
|  | attoreny's lien | 0.20 |
| DVB | Receipt and review of Michael J. Schessler's letter regarding United Services Automobile Association's request for the nature, terms and conditions of settlement, including the amount of the settlement in relation to the co-defendants policy limits, and its affect on the UIM claim. | 0.20 |
| RAM | Telephone call to Levicoff, re: settlement and UM carrier, left message | 0.10 |
| RAM | Correspondence to Mike Schessler, re: request for settlement information | 0.20 |
| RAM | Telephone call from avrum levicoff, re: usaa and remainder of policy and outstanding claims | 0.20 |
| RAM | Receipt and review of proposed settlement petition from Levicoff | 0.30 |
| DVB | Receipt and review of R. Edison Hill's letter requesting information regarding settlement. | 0.20 |

**04/06/2005**

|  |  |  |
|---|---|---|
| DVB | Receipt and review of correspondence from prior claimant's counsel re fee issue;review of file to obtain materials requested in said correspondence | 0.30 |
| RAM | Review of letter from Edison Hill, re: demand | 0.20 |

**04/07/2005**

|  |  |  |
|---|---|---|
| DVB | Receipt and review of and editing of proposed motion from defense counsel re distribution of fees | 0.50 |
| RAM | Conference with dvb/re: lien issues, letter and motion | 0.30 |

**04/11/2005**

|  |  |  |
|---|---|---|
| RAM | Memo from dvb/re: edits to Levicoff Motion | 0.10 |
| RAM | Memo to dvb/re: edits to Levicoff motion, reply to his inquiry | 0.10 |
| RAM | Telephone call to Katherine, re: accounting of costs for addition to Motion for approval of settlement | 0.10 |
| RAM | Editing of Motion for Approval of Settlement as per DVB's instructions | 0.50 |
| LDZ | Telephone call from India at Choice Copy re bill for "Life and Loves" Poster Board; | 0.30 |
| RAM | Conference with dvb/re: changes to Levicoff motion and filing of motion to disperse settlement proceeds | 0.20 |
| RAM | Calendar reminder to file motion for contradictory hearin gon attorney's fees as per DVB's instructions | 0.10 |
| DVB | Telephone conference with alfred abramson | 0.30 |
| DVB | face -to -face conference with c.schudmak re status of payment of claim | 0.30 |
| DVB | Receipt and review of R. Edison Hill's letter requesting the amount of settlement; the amount of attorney's fees recoverable under the terms of settlement; and documentation evidencing the settlement amount and recoverable attorney fees. | 0.20 |
| RAM | Editing of Petition for Approval of Settlement as per DVB's instructions | 0.30 |
| RAM | Correspondence to Levicoff with changes to Petition for APproval of Settlement | 0.20 |

**04/12/2005**

|  |  |  |
|---|---|---|
| RAM | Correspondence to Hill, re response to letter of April 5 as per DVB's instructions | 0.30 |
| RAM | Telephone call from Erin at levicoff's office, re; settlement | 0.10 |
| RAM | Correspondence from Carey at Levicoff's office, re: changes to settlement agreement | 0.20 |

**04/13/2005**

|  |  |  |
|---|---|---|
| DVB | Receipt and review of R. Edison Hill's letter with attached Itemized list of attorney's time and expenses and copy of letter to Samuel E. Schumak dated 2/13/04. | 0.20 |

Account No: 500-048167
Statement No: 17386

| | | | Hours |
|---|---|---|---|
| | RAM | Memo from dvb/re: costs and figure in Motion for Approval of settlement | 0.10 |
| | RAM | Editing of Motion for approval of settlement as per DVB's instructions | 0.10 |
| | RAM | Correspondence to levicoff, re: motion for approval of settlement | 0.20 |
| | RAM | Drafting of motion to determine legal fees, completion of lengthly facts section and contigency fee section | 3.70 |
| | RAM | Drafting of motion to determine attorney fees and legal research in conjunction with same | 2.40 |
| **04/20/2005** | | | |
| | RAM | Legal research re: cases cited by Hill in charging lien and letter in conjunction with drafting of Motion | 0.80 |
| | RAM | Drafting of 20 pg Motion to Determine R. Edison Hill Legal Fees, completion of first draft | 6.90 |
| | RAM | Editing of first draft of Motion to Determine Legal Fees and insertion of exhibit numbers in document | 0.90 |
| | RAM | Drafting of Motion to Request Oral Argument on Motion to Determine Legal fees | 0.30 |
| **04/21/2005** | | | |
| | RAM | Editing of motion for attorney's fees, finishing final editing for TB | 0.40 |
| | LDZ | Filing of post-mediation and case workup materials and disposal of unnecessary duplicative material; confirming no costs are due to experts; | 1.00 |
| | RAM | Legal research re: determiniation of legal fees and ethics cases and rules in W.Va as per DVB's instructions | 1.60 |
| | RAM | Editing of motion for determination of fees to include ethical considerations as per DVB's instructions | 0.40 |
| **04/22/2005** | | | |
| | RAM | Editing of motion for determination of fees, final draft inclusion of additional aba ethical rules and case law | 2.00 |
| | DVB | Receipt and review of R. Edison Hill's letter rejecting offer of payment of attorney's fees in the amount of $18,281.25. | 0.20 |
| | DVB | review of and editing of PLAINTIFF'S MOTION ...TO DETERMINE QUANTUM MERUIT FEES.... | 0.80 |
| | DVB | Correspondence to clients | 0.20 |
| **04/25/2005** | | | |
| | RAM | Correspondence from Levicoff, re: petition for approval of settlement | 0.20 |
| | RAM | Correspondence to Levicoff, responding to inquiry and updating on Hill lien | 0.20 |
| | RAM | Legal research re: question by dvb/memorandum in support of motion | 0.30 |
| | RAM | Editing of Mottion to Determine Legal Fees as per DVB's instructions | 1.50 |
| | RAM | Receipt and review of fax from Edison Hill rejecting settlement offer | 0.20 |
| | RAM | Telephone call from dvb/re: edits to motion on fees | 0.10 |
| | RAM | Telephone call from Al Abramson, re: Hill demand and motioin | 0.10 |
| | RAM | Editing of Motion to determine fees per conversation with dvb | 0.20 |
| | RAM | Correspondence to Edison Hill with enclosed Motion | 0.20 |
| | RAM | Correspondence to Mike Bailey, with enclosed motion | 0.20 |
| | RAM | Review of file in order to pull all exhibits for motion, multiple correspondence over period of time and labeling of same for inclusion with motion | 1.10 |
| | DVB | Receipt and review of R. Edison Hill's letter of April 22, 2005 regarding Motion Requesting Hearing on Notice of Attorney's Charging Lien". | 0.20 |
| | DVB | Receipt and review of Motion Requesting Hearing Regarding Notice of Attorney's Charging Lien. | 0.20 |

IN RE ALFRED ABRAMSON

Account No:   500-048167
Statement No:   17386

|  |  | Hours |
|---|---|---|
| **04/27/2005** | | |
| RAM | Telephone call to Mona in Chambers office, re; scheduling of hearing | 0.10 |
| RAM | Memo to dvb/re: scheduling of hearing on attorney lien | 0.20 |
| **04/28/2005** | | |
| RAM | Telephone call from dvb/re: settlement petition | 0.10 |
| RAM | Memo to dvb/re: settlement petition | 0.10 |
| DVB | Telephone conference with court clerk | 0.20 |
| DVB | Legal research re: latest position of prior counsel re his entitlement to a fee/costs | 0.40 |
| **04/29/2005** | | |
| DVB | Receipt and review of Avrum Levicoff's letter addressed to Judge Robert Chambers regarding the Petition for Court Approval of the Settlement and Distribution of Proceeds Thereof. | 0.20 |
| DVB | Receipt and review of letter addressed to USDC Clerk,Teresa Deppner, requesting that the clerk incorporate the Petition for Court Approval of Settlement and Distribution of Proceeds Therefor into the record. | 0.20 |
| **05/02/2005** | | |
| RAM | Review of file for stopper invoices as per DVB's instructions to double check costs incurred by clients and memo on bill regarding each entry and costs incurred | 0.50 |
| DVB | review of our costs advanced figures for transmission to clients | 0.30 |
| **05/09/2005** | | |
| DVB | Receipt and review of Avrum Levicoff's letter with regard to hearing on attorney's fees scheduled on May 23, 2005, at 2:30 p.m. | 0.20 |
| RAM | Legal research re: pacer and hearing on attorney's fees | 0.20 |
| **05/10/2005** | | |
| DVB | Receipt and review of Notice scheduling hearing on Attorney's Charging Lien scheduled on May 23, 2005 at 2:30 P.M. | 0.20 |
| **05/16/2005** | | |
| RAM | Conference with dvb/re: prep for hearing on MOtion to determine attorney fees | 0.30 |
| DVB | Receipt and review of R. Edison Hill's letter regarding Motion to Determine quantum Meruit Fees. | 0.20 |
| DVB | Receipt and review of Response to Plaintiff's Motion to Determine quantum Meruit Fees of R. Edison Hill & the Law Firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. | 0.20 |
| RAM | Receipt and review of response to plaintiff's motion to determine quantum meruit fees of R. Edison Hill and attached exhibits, notations on same in preparation for drafting of reply memorandum as per DVB's instructions | 1.40 |
| RAM | Conference with dvb/re: reply memorandum | 0.20 |
| LDZ | Review of file for all work and invoices relating to atty Hill's investigator Sig Sigman and related conferences w/RAM; | 0.50 |
| RAM | Drafting of reply memorandum to response memorandum of Edison Hill, re: attorney fees as per DVB's instructions | 3.20 |
| RAM | Review of file, re: work conducted by investigator hired by Hill, re: refute claims in reply memoranudm | 0.40 |
| RAM | Legal research re: Georgia case cited in Hill memorandum, as per DVB's instructions and w.v. contract law vitiating entire contract as per DVB's instructions for inclusion in reply memorandum in opposition to hill response | 1.80 |

Case 3:04-cv-00489 Document 84 Filed 05/20/05 Page 71 of 119 PageID #: 797

IN RE ALFRED ABRAMSON

Page: 47
05/18/2005

Account No: 500-048167
Statement No: 17386

| | | | Hours |
|---|---|---|---|
| **05/17/2005** | | | |
| | RAM | Telephone call from client re: hearing | 0.10 |
| | RAM | Conference with dvb/re: reply memorandum and reasearch and possible admission of evidence | 0.20 |
| | RAM | Telephone call to clerk of judge re: evidence at hearing and admission of testimony | 0.10 |
| | RAM | Telephone call to judges' clerk, re: deadline for reply memoranda | 0.10 |
| | RAM | Memo to dvb/re: evidence at hearing and deadline for reply memoranda | 0.20 |
| | RAM | Legal research re: federal rules of civ pro and local rules regarding reply memo and deadline with hearing | 0.30 |
| | RAM | Legal research re: contract issues and portion of contingency fee contract enforceable as per DVB's instructions | 4.60 |
| | RAM | Legal research re: general contract law, per as per DVB's instructions | 2.20 |
| | RAM | Conference with dvb/re: issues in reply memorandum, affidavits and preparation for oral argument | 0.40 |
| | DVB | review of file re creating a response to hill's brief re fee dispute, and conferencing with partner re same | 1.50 |
| | RAM | Drafting of reply memorandum, attorney fees, as per DVB's instructions partial completion | 2.40 |
| **05/18/2005** | | | |
| | RAM | Drafting of affidavit for Alfred Abramson as per DVB's instructions on language to include | 0.80 |
| | RAM | Telephone call to al abramson, re: signing of affidavit | 0.10 |
| | RAM | Telephone call from Al abramson, re: affidavit | 0.10 |
| | | For Current Services Rendered | 776.30 |

| | | | | | 0.00 |

### Recapitulation

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| David V. Batt | Senior Partner | 148.00 | $0.00 | $0.00 |
| James P. Nader | Senior Partner | 1.80 | 0.00 | 0.00 |
| Tara L. Mason | Partner | 32.50 | 0.00 | 0.00 |
| Lawrence D. Zeilinger | Paralegal | 224.50 | 0.00 | 0.00 |
| Bradley S. Groce | Associate | 8.80 | 0.00 | 0.00 |
| Rachel A. Meese | Associate | 330.70 | 0.00 | 0.00 |
| Rudy F. Lehrer | Associate | 30.00 | 0.00 | 0.00 |

Balance Due                                                                 $0.00

That she is official Bookkeeper and Records Custodian for all billing and associated record keeping for the law firm of Lobman, Carnahan, Batt, Angelle & Nader, located at 400 Poydras Street, Suite 2300, New Orleans, Louisiana, 70130 (hereinafter "The Firm").

2.

That attached is the Expense Statement relating to file no. 500-048167 in the case captioned, "ALFRED ABRAMSON, individually and as Executor of the Estate of JOSEPH ABRAMSON, deceased, AARON ABRAMSON and CAROL SCHUDMAK, individually PLAINTIFFS v. DAVID BRUCE SMALL; LANEKO MANUFACTURING COMPANY; RBL LEASING CORPORATION, DAVID BRUCE SMALL, UNITED SERVICES AUTOMOBILE ASSOCIATION, DEFENDANTS, pending IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON, CIVIL ACTION NO.: 3:04-0489." Said statement outlines all expenses outlaid by The Firm between the period of April 2, 2004 and May 13, 2005, during the pendency of the above captioned litigation.

3.

Said record was prepared by me personally, during the regular course of business based on the contemporaneous records of expenses I keep and record on a daily basis for The Firm.

4.

I hereby certify that said record is true and accurate to the best of my knowledge in my capacity as Bookkeeper and Financial Records Custodian for The Firm.

**KATHERINE K. TRAINOR**

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _19_ DAY
OF _May_____, 2005.

_____
**NOTARY PUBLIC**

**Brandie L. Mendoza**
**Bar #29344**

1

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
400 Poydras Street, Suite 2300
New Orleans, LA 70130
Telephone: (504) 586-9292


|  |  | Page: 1 |
| --- | --- | --- |
| IN RE ALFRED ABRAMSON |  | 05/18/2005 |
| 400 POYDRAS STREET | Account No: | 500-048167 |
| SUITE 2300 | Statement No: | 17386 |
| NEW ORLEANS LA 70130 |  |  |


DRAFT


### Expenses

| Date | Description | Amount |
| --- | --- | --- |
| 04/02/2004 | ABBOTT'S WRECKER SERVICE | 170.00 |
| 04/13/2004 | Long Distance Charge | 3.70 |
| 04/15/2004 | Long Distance Charge | 6.80 |
| 04/15/2004 | Photocopies | 7.00 |
| 04/15/2004 | Special Postage Cost | 1.85 |
| 04/16/2004 | Photocopies | 3.50 |
| 04/16/2004 | Special Postage Cost | 2.57 |
| 04/19/2004 | BAILEY AND HOWARD, LLC RETAINER FEE | 500.00 |
| 04/27/2004 | JOHNATHAN L. ARDEN, M.D. REVIEW OF MATERIALS | 600.00 |
| 04/27/2004 | JOHNSON PHOTO | 350.00 |
| 05/04/2004 | Federal Express fee | 44.26 |
| 05/06/2004 | Long Distance Charge - 4/04 | 60.88 |
| 05/17/2004 | Federal Express fee - 4/22/04 | 14.71 |
| 05/17/2004 | Federal Express fee - 4/28/04 | 8.07 |
| 05/17/2004 | OFFICE OF THE MEDICAL EXAMINER - AUTOPSY PHOTOS | 2.00 |
| 05/18/2004 | Westlaw Research | 20.00 |
| 05/18/2004 | Westlaw Research | 264.66 |
| 05/18/2004 | Westlaw Research | 274.74 |
| 05/28/2004 | SERVICES - CHOICE COPY SERVICE 5/20/04 | 78.48 |
| 06/07/2004 | Federal Express fee - 5/10/04 | 15.23 |
| 06/07/2004 | Federal Express fee - 5/12/04 | 16.33 |
| 06/17/2004 | Federal Express fee - 5/21/04 | 16.57 |
| 06/17/2004 | Federal Express fee - 5/17/04 | 52.74 |
| 06/23/2004 | ABBOTT'S WRECKER SERVICE - STORAGE FOR MARCH AND APRIL 2004 | 610.00 |
| 07/08/2004 | COPIES OF RECORDS JONATHAN L. ARDEN, M.D. | 600.00 |
| 07/12/2004 | Long Distance Charge - 6/04 | 7.07 |
| 07/12/2004 | Federal Express fee - 6/14/04 | 18.08 |
| 07/20/2004 | Westlaw Research - 6/16/04 | 156.17 |
| 07/20/2004 | Westlaw Research - 6/8/04 | 41.06 |
| 07/21/2004 | PACER SERVICE CENTER | 20.30 |
| 08/03/2004 | ABBOTT'S WRECKER SERVICE - STORAGE FEE MAY & JUNE 2004 | 610.00 |
| 08/10/2004 | Long Distance Charge - 7/04 | 3.58 |
| 08/10/2004 | Long Distance Charge | 7.18 |
| 08/16/2004 | Westlaw Research - 7/04 | 20.72 |
| 08/16/2004 | Westlaw Research - 7/6/04 | 81.64 |
| 08/24/2004 | SERVICES - CHOICE COPY SERVICE | 13.08 |
| 09/17/2004 | SERVICES - ABBOTT'S WRECKER SERVICE (JULY AND AUGUST 2004 STORAGE) | 620.00 |
| 10/08/2004 | Federal Express fee | 45.72 |
| 10/08/2004 | Federal Express fee | 22.62 |

IN RE ALFRED ABRAMSON

| | | |
|---|---|---|
| | Page: 2 | |
| | 05/18/2005 | |
| Account No: | 500-048167 | |
| Statement No: | 17386 | |

| | | |
|---|---|---:|
| 11/08/2004 | Long Distance Charge - 10/04 | 1.10 |
| 11/16/2004 | DAVID STOPPER AND JULIE STOPPER, EXPERT FEE | 2,500.00 |
| 11/18/2004 | Photocopies at US Court of Appeal 5th Cir. | 3.10 |
| 11/22/2004 | SERVICES - PACER SERVICE CENTER | 15.33 |
| 11/24/2004 | SERVICES - BAILEY & HOWARD, PLLC (LOCAL COUNSEL) | 2,846.44 |
| 12/15/2004 | Mileage/Parking Cost | 3.70 |
| 12/15/2004 | Mileage/Parking Cost | 3.70 |
| 12/20/2004 | SERVICES - KENNETH J. BOUDREAUX, PH.D. CONSULTING ECONOMIST | 1,583.00 |
| 12/21/2004 | SERVICES - STOPPER & ASSOCIATES | 3,375.71 |
| 01/06/2005 | SERVICES - CHOICE COPY SERVICE | 341.44 |
| 01/10/2005 | DAVID V. BATT TRAVEL TO WASHINGTON, D.C. FOR DEPOS | 945.15 |
| 01/13/2005 | JOHNATHAN L. ARDEN, M.D. - PRE DEPO-CONFERENCE 1/6/05 | 300.00 |
| 01/19/2005 | Federal Express fee - 12/10/04 | 17.41 |
| 01/19/2005 | Federal Express fee - 12/15/04 | 17.41 |
| 01/19/2005 | Federal Express fee - 12/16/04 | 30.57 |
| 01/19/2005 | Federal Express fee - 12/16/04 #2 | 30.57 |
| 01/19/2005 | SERVICES - STOPPER & ASSOCIATES | 1,173.47 |
| 01/20/2005 | DEPOSITION FEE - SUBURBAN REPORTING SERVICE | 220.05 |
| 02/02/2005 | Federal Express fee | 30.80 |
| 02/09/2005 | Long Distance Charge - 1/05 | 17.19 |
| 02/14/2005 | Westlaw Research | 4.76 |
| 03/08/2005 | Long Distance Charge - 2/05 | 5.38 |
| 03/15/2005 | Federal Express fee - 2/17/05 | 30.38 |
| 03/15/2005 | Federal Express fee - 2/25/05 | 34.38 |
| 03/31/2005 | SERVICES - STOPPER & ASSOCIATES | 1,043.96 |
| 04/07/2005 | Long Distance Charge - 3/05 | 10.61 |
| 04/18/2005 | SERVICES - CHOICE COPY SERVICE | 98.10 |
| 04/18/2005 | SERVICES - CHOICE COPY SERVICE | 483.96 |
| 05/09/2005 | Long Distance Charge - 4/05 | 7.30 |
| 05/13/2005 | SERVICES - CHOICE COPY SERVICE | 53.68 |
| | Total Expenses | 20,619.96 |
| | | |
| 01/10/2005 | Long Distance Charge - 12/04 | -40.43 |
| | Total Credits for Expenses | -40.43 |
| | | |
| | Total Current Work | 20,579.53 |

Payments

| | | |
|---|---|---:|
| 03/24/2005 | OTHER PAYMENT (REFUND) FROM SUBURBAN REPORTING SERVICE | -68.55 |
| | | |
| | Balance Due | $20,510.98 |

PLEASE INDICATE OUR FILE NUMBER ON YOUR DRAFT OR CHECK.
IRS ID NO. 72-0949371

· PENNSYLVANIA OFFICE

AVRUM LEVICOFF†
ALAN T. SILKO
ELIZABETH P. DEEMER‡
DIANNE S. WAINWRIGHT
RYAN J. KING†
KIRSTEN J. ERICKSON
DAMON R. THOMAS
MELISSA A. WALLS
BRETT C. SHEAR
MEGAN M. DEMAS
JOSHUA N. PERLMAN*

†Admitted in West Virginia
‡Admitted in Ohio
*Admitted in Massachusetts

# LEVICOFF, SILKO & DEEMER, P.C.

ATTORNEYS AT LAW

Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, Pennsylvania 15222-3911
TELEPHONE (412) 434-5200

FACSIMILE (412) 434-5203

www.LSandD.net

WEST VIRGINIA OFFICE

BROWN & LEVICOFF, PLLC
Attorneys At Law
201 N. Kanawha Street
Suite 100
Beckley, West Virginia 25801
Telephone (304) 253-3700
Facsimile (304) 253-3797

JAMES H. BROWN
JANE E. HARKINS
COLLEEN C. McCULLOCH†*+
HAMILTON D. SKEENS

*Admitted in North Carolina
+Admitted in Texas

October 5, 2004

*ALevicoff@LSandD.net*

David Batt, Esquire
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA 70130-3245

> RE: ABRAMSON v. LANEKO ENGINEERING, ET AL
> C.A. NO.: 3:04-0489
> OUR FILE NO.: 01575/02

Dear Mr. Batt:

I have now consulted with Mike Warren at Travelers regarding the content of your September 29, 2004 letter. We are very interested in scheduling either a settlement meeting or a formal mediation within the immediate future. We, too, feel that a face to face session should produce a settlement of the case. We are willing to travel to New Orleans for that purpose. If you prefer mediation, we would also be willing to entertain your suggestions for a qualified mediator, if you would be kind enough to favor us with several proposals.

We do not feel that a formal "high-low" agreement is necessary. Instead, we feel that the pre-meeting offer and demand are sufficient to establish parameters.

We do regard your letter as conveying a settlement demand in the amount of $4.1 million. We feel that our existing offer of $800,000 is fair and reasonable, and definitely constitutes a sufficient show of good faith in advance of a settlement meeting or mediation. However, if it will move the matter forward we are prepared at this point to increase our offer to $1 million. We hope that the increase in the offer is a sufficient, additional inducement for you to take time out of your busy schedule to meet with us to attempt to effectuate a settlement. However, we want to be very clear that if we are going to meet or mediate to resolve the case we are not going to improve on the offer any further prior thereto.

If we are not going to schedule a settlement meeting or mediation at this time we may as well go ahead and work on the scheduling of depositions. Of course, since you will be traveling to West Virginia from a greater distance, we will make every effort to suit your convenience.

EXHIBIT
3

*David Batt, Esquire*
*October 5, 2004*
*Page 2*

However, we will need some dates during the last week of October, and mid to late November when, your clients and your experts would be available to participate in discovery.

We look forward to hearing from you.

Very truly yours,

AVRUM LEVICOFF

AL/eab
cc:    Michael Warren, Esquire

PENNSYLVANIA OFFICE

AVRUM LEVICOFF†
ALAN T. SILKO
ELIZABETH D. DEEMER‡
DIANNE S. WAINWRIGHT
RYAN J. KING†
KIRSTEN J. ERICKSON
DAMON R. THOMAS
MELISSA A. WALLS
BRETT C. SHEAR

†Admitted in West Virginia
‡Admitted in Ohio

# LEVICOFF, SILKO & DEEMER, P.C.
## ATTORNEYS AT LAW
Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, Pennsylvania 15222-3911
TELEPHONE (412) 434-5200

FACSIMILE (412) 434-5203
www.LsandD.net

WEST VIRGINIA OFFICE

BROWN & LEVICOFF, PLLC
Attorneys At Law
201 N. Kanawha Street
Suite 100
Beckley, West Virginia 25801
Telephone (304) 253-3700
Facsimile (304) 253-3797

JAMES M. BROWN
JANE E. HARKINS
COLLEEN C. McCULLOCH†*
HAMILTON D. SKEENS

*Admitted in North Carolina
+Admitted in Texas

September 1, 2004

*ALevicoff@LSandD.net*

meet RAM

Rachel Meese, Esquire
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 2300
New Orleans, LA  70130-3245

RE:       ABRAMSON V. LANEKO ENGINEERING, ET AL
C.A. NO.:  3:04-0489
OUR FILE NO.:  01575/02

Dear Ms. Meese

I am enclosing herewith a copy of our voluntary disclosures in connection with this matter.

I want to take this opportunity to extend a proposal that may save all of us a lot of time, trouble and effort in connection with the case. I propose that the defendants, David Small and Laneko Engineering will not contest David Small's negligent operation of the vehicle, that such negligent operation was a proximate cause of the fatality, and that Laneko is vicariously liable under principles of respondeat superior for the negligence of Small. In exchange, the plaintiffs will drop all of the other theories of liability alleged in the Complaint, and, of course, the claim for punitive damages. I feel that there is much to recommend this approach. Among other things, it will avoid the necessity of litigating over the issues outlined in our Motion to Dismiss. It will avoid the necessity of litigating liability all together, and will limit the case to an issue of compensatory damages. Please give this some thought and let me know as soon as possible.

Very truly yours,

AVRUM LEVICOFF

AL/eab
Enclosure

see RAM / re :

1) must know

EXHIBIT
4

2) must respond
punitive

**FILE COPY**

# LOBMAN, CARNAHAN, BATT, ANGELLE & NADER

### A PROFESSIONAL CORPORATION

BURT K. CARNAHAN
DAVID V. BATT
SIDNEY J. ANGELLE
JAMES P. NADER
JOSEPH M. MESSINA
TARA L. MASON

BRANT J. CACAMO
BRADLEY S. GROCE
PAMELA K. RICHARD

### ATTORNEYS AT LAW

**400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LOUISIANA 70130-3245**

TELEPHONE (504) 586-9292
FACSIMILE (504) 586-1290

WWW.LCBA-LAW.COM

EDWARD P. LOBMAN (1941-2004)

ERIC B. BERGER
RACHEL A. MEESE
W. REED SMITH
EDWARD F. RUDIGER, JR.
ADAM M. WEEMS
JEROME G. SMITH, III
MITCHELL A. PALMER
JAMES J. YOUNG, IV

WRITER'S E-MAIL ADDRESS:
DVB@LCBA-LAW.COM

August 17, 2004

Avrum Levicoff
707 Grant Street – Suite 600
Pittsburgh, PA  15219

*Via Facsimile*
*412-434-5203*
*and U.S. Mail*

      Re:    Alfred Abramson, Individually, and on
             Behalf of the Estate of Joseph Abramson,
             Carol Schudmak, and Aaron Abramson
             Our File No. 500.04-8167

Dear Mr. Levicoff:

Pursuant to your request, I am taking this opportunity to present the following demand in connection with the above referenced matter on behalf of my clients, Aaron Abramson, Alfred Abramson, and Carol Schudmak.

## **Plaintiffs**

Aaron Abramson is the elderly father of the deceased, Joseph Abramson.  He and his son had an exquisitely close relationship, and his son helped to support the elderly Aaron, both financially and emotionally.  Alfred Abramson and Carol Schudmak are the surviving siblings of Joseph.  Both Alfred and Carol also enjoyed a close relationship with Joseph prior to his untimely death.  The family reunited each summer for fishing and family trips and was an exceptionally close-knit and supportive family.  This family has suffered, and will continue to suffer, substantial sorrow, mental anguish, and solace, including the loss of society, companionship, comfort, guidance and kindly offices and advice of decedent, Joseph Abramson.

EXHIBIT
5

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re: Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 2 of 9

Joe, prior to his untimely death, was a successful 56-year-old "tenured" economics professor at Marshall University. He lived a healthy and happy life and was close to his family, friends, colleagues and students.

## Facts

The accident that gave rise to this litigation occurred on July 14, 2003, on highway I-64 in the westbound traffic lanes, near Barboursville, Cabell County, West Virginia. Plaintiffs' decedent, Joe Abramson, was driving in a safe and normal manner on the freeway when traffic began to slow. Suddenly, without warning, his vehicle was struck from the rear by a tractor-trailer truck, being driven by defendant David Bruce Small an employee of defendant, Laneko Engineering, Inc. (hereinafter "your insureds"). Mr. Small was acting within the scope and course of his employment.

According to our expert Accident-Reconstructionist, David Stopper, the primary cause of the accident was the "failure of the operator of the truck tractor and semi trailer. . . to operate an appropriate and lawful speed." According to Mr. Stopper, the driver, David B. Smal, would have had at least ¼ mile of clear visibility of the slowing traffic with more than ample time and distance to reduce his speed and to avoid a collision had he not been traveling "at or above 90 mph" at the time of the accident. The speed the tractor trailer truck was traveling at prior to the impact was at least 20 miles per hour over the posted speed limit of 70 mph. Mr. Stopper also examined the scene, police reports, and photographs and interviewed the West Virginia State Police who responded to the accident. In Mr. Stopper's opinion, Joe was trapped in his vehicle after being struck by the tractor-trailer. His vehicle was pushed into other vehicles by the truck-tractor and semi-trailer and, in Mr. Stopper's opinion, Joe survived the initial crash but was unable to exit his vehicle as it was engulfed by flames from the accident. (See Ex. #1, photographs of scene). Additionally, our forensic pathologist expert, Jonathan L. Arden, M.D., has opined that Joe survived the initial impact and was conscious, alive, and suffering severely for several minutes prior to vehicle being consumed by flames. In fact, the autopsy report and photographs show that the heat of the fire was so intense that parts of Joe's extremities were literally melted away. (See Ex. #2, Autopsy reports and photographs).

## Liability

## I.    Liability of David Bruce Small and Laneko (your insureds)

Defendant, David Bruce Small, was in the course and scope of his employment with defendant, Laneko Engineering Co. at the time of the accident that gave rise to this

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re:  Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 3 of 9

litigation.  Thus, Laneko Engineering Co. is responsible for the negligent acts of David Bruce Small under the theory of respondeat superior.

David Bruce Small was operating his tractor-trailer truck in an unsafe, indeed, in a reckless manner, when he caused the accident which killed Joe Abramson.  The primary cause of the collision was Mr. Small's failure to operate the truck tractor and semi-trailer at an appropriate and lawful speed.  Mr. Small's speed at the time of the accident was well in excess of 80 mph and most likely at or above 90 mph.  The Federal Motor Carrier Safety Regulations defines reckless driving as operating at speeds in excess of 15 mph over the posted speed limit as categorizes such driving as a "Serious Traffic Violation." Indeed, here, the violation was so serious it caused the horrifically painful death of Joe Abramson.  In addition, according to the official public records of the Federal Motor Carrier Safety Administration, Laneko Manufacturing Company had been found to be "Deficient" in its Federal Driver Safety Evaluations *prior* to the accident of July 14, 2003. (See Ex. 3, Report of David A. Stopper).

Based on the physical evidence, eyewitness reports and expert testimony, liability cannot legitimately be contested.  Moreover, under West Virginia law, violation of a statute is prima facie evidence of negligence.  Shaffer v. Acme Limestone Co., Inc., 524 S.E.2d 688 (W.Va. 1999).  Here, David Bruce Small flagrantly violated safety and speed laws while operating an 18-wheel truck and tractor-trailer, and the negligent operation of the vehicle was the direct cause of death of Joseph Abramson.

## II.      Liability for Wrongful Death of Joseph Abramson

W.Va. Code § 55-7-6 allows damages in a wrongful death case to include: (A) sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

## III.     Liability for Pre-Death Pain and Suffering/Survival Action

Although the West Virginia Legislature has not specifically outlined the viability of a survival action in conjunction with the wrongful death statute, the West Virginia Supreme Court of Appeals, in McDavid v. United States, 584 S.E.2d 226 (W.Va. 2003) responded to a certified question from the United States District Court for the Southern District of West Virginia.  In response, the Court determined that under West Virginia's

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re:  Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 4 of 9

wrongful death act, a jury's verdict may include damages for the decedent's pain and suffering endured between the time of injury and the time of death. The court also held that there must be evidence of conscious pain and suffering of the decedent prior to death for there to be survival damages awarded. Moreover, the court stated that "the existence of a decedent's conscious pain and suffering may be inferred from other evidence that does not explicitly establish the fact." citing to Bryne v. Schneider's Iron & Metal, Inc., 475 N.W.2d 854 (Mich. App. 1991). In addition, the court noted, in dicta, that evidence of the decedent's pain and suffering prior to his or her death from the injuries received as a result of the wrongful act may also be admissible to show the mental anguish of the decedent's beneficiaries.

### III.    Liability for Punitive Damages

In Bond v. City of Huntington, 276 S.E. 2d 539 (W.Va. 1981) the West Virginia Supreme Court held that punitive damages are available in a wrongful death action, even though they are not specifically mentioned in the statute. The court in, Alkire v. First Nat. Bank of Parsons, 475 S.E.2d 122 (W.Va. 1996) outlined the burden of proof and standard required for the imposition of punitive damages indicating that punitive damages are appropriate where the defendant acted "wantonly, willfully, recklessly, or with criminal indifference to civil obligations." Clearly, here, where your insured blatantly disregarded speed and traffic regulations while operating a large and dangerous 18 wheel tractor-trailer truck and caused the needless suffering and untimely death of Joe Abramson, punitive damages are not only appropriate, but necessary.

### Injuries

The autopsy report demonstrates that Joe Abramson incurred multiple blunt impact injuries in the crash as well as extensive subsequent thermal burns from the ensuing fire. Specifically, he had fractures of multiple ribs on both sides, bruising of the front of both lungs, lacerations of the liver with associated bleeding and fractures of the fourth cervical and second and third lumbar vertebrae. He also suffered blunt impact to the head, which was manifested as hemorrhage (bleeding).

The other type of injury suffered by Joe was severe thermal burning affecting the head/face, much of the front of the torso and areas on the extremities. Lesser degrees of thermal damage also involved other areas of the body surface as well as some of the internal organs. Joe's penis, eyes, and ears were incinerated.

Dr. Jonathan Arden, M.D. an expert in forensic pathology, has indicated that the presence of bleeding from the injuries, especially where there is a significant amount or

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re: Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 5 of 9

accumulation of blood, indicates survival after the impact and that here, the presence of approximately 200 ml of blood in the abdomen from the liver lacerations and a "large" subdural hemorrhage are consistent <u>with several minutes of survival</u> after the crash.

Dr. Arden also has opined that although the impact injuries to Joe's torso were potentially fatal by themselves, they would not have rendered him unconscious until there had been sufficient bleeding from the injuries to cause severe shock. Similarly, the thermal burns could be fatal per se, but would cause death by destruction of tissues directly involved by flames and by the indirect effects of heat, in essence cooking Joe's brain. This, too, would not cause immediate unconsciousness and Joe would have been conscious for several minutes during this process.

Accordingly, Dr. Arden is of the opinion that the autopsy findings and police investigation indicate that Joe died painfully and slowly from burning and heating in the fire and that he consciously survived for several minutes before he succumbed to his injuries and died.

### **Special Damages**

An itemization of special damages follows:

| | | |
|---|---|---|
| Bultman Funeral Home Services for Joseph Abramson | $ | 10,568.48 |
| Economic Loss (See Ex. #4, Report of Michael Brookshire, Ph.D) | $ | <u>844,457.00</u> |
| TOTAL | $ | 855,025.48 |

### **General Damages**

### I.    **Wrongful Death**

### A.    **Quantum in West Virginia Wrongful Death Cases**

**$1,832,757.99** in "compensatory" damages awarded to the father of an adult son killed in a pedestrian/vehicle accident in <u>Cleaver v. Big Arm Bar & Grill, Inc.</u>, 502 S.E.2d 438 (W.Va. 1998).

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re: Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 6 of 9

**$3,200,000.00** settlement reached in connection with wrongful death action filed against various medical providers for their failure to timely diagnose and treat the deceased for a skull fracture. The decision does not break down the settlement agreement, though the beneficiaries of the deceased were <u>all adults</u>, including a surviving mother, son and wife. <u>Estate of Postlewait ex rel. Postlewait v. Ohio Valley Medical Center, Inc.</u> 591 S.E.2d 226 (W.Va. 2003), See also <u>Joslin v. Mitchell</u>, 584 S.E.2d 913 (W.Va. 2003) where the deceased were sitting in their vehicle stopped in traffic when a fully loaded tractor-trailer driven by the defendant struck their vehicle killing both occupants, who at the time were 44 and 53 years old respectively. Although this case deals with a different issue, i.e. whether or not UM stacking is permitted, it does note that the couple was survived by Mary's three children from a prior marriage and Albert's mother. The parties stipulated that the losses were at least $1.3 million in excess of the amounts the appellees had already collected from the underlying insurance, such amount was not specified in the opinion.

**$2,500,000.00** was awarded by the jury to the beneficiaries of the deceased in a medical malpractice action under the wrongful death statute in <u>State ex Rel. Medical Assurance of West Virginia, Inc. v. Rect.</u>, 583 S.E.2d 80 (W.Va. 2003).

**$6,175,000.00** awarded by the jury to surviving wife in a wrongful death action after her husband was killed while working for the defendant. <u>Pasquale v. Ohio Power Co.</u>, 418 S.E.2d 738 (W.Va. 1992),

**$1,978,623.00** in damages awarded to decedent's parents in a wrongful death suit where the decedent, a college student, was killed when she was struck on a public sidewalk by a runaway pizza delivery car. <u>Wehner v. Weinstein</u>, 444 S.E.2d 27 (W.Va. 1994).

Clearly, the cases suggest widely divergent amounts have been awarded in West Virginia for wrongful death cases. Nonetheless, it appears that the range for "general damage" awards (excluding survival damages and specials) in West Virginia is between $2.5 million and $6 million. A review of wrongful death cases in other jurisdictions is also valuable in properly assessing the quantum in the instant case.

## B. Quantum in Other Jurisdictions

Cases in other jurisdictions are illustrative in determining an accurate quantum evaluation.

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re:  Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 7 of 9

**$2,009,375.00** judge award to surviving parents and adult siblings of the deceased, an adult female, who died when the single-engine Cessna 152 airplane she was piloting crashed during an attempted landing at DuPage Airport where the negligence of Federal Aviation Administration ("FAA") air traffic control personnel at DuPage Airport caused her death. <u>Reiser v. United States</u>, 786 F.Supp 1334 (N.D. Ill. 1992).

**$2,500,000.00**, $1.25 million in general damages awarded by jury to each parent of a van driver who was killed in rear-end collision with tractor-trailer truck that was stopped in a traffic delay on a freeway caused by the defendant cable television company's closure of road to make repairs sued the cable company, truck driver, and truck owner.  In addition, the jury awarded the decedent's estate $ 2,000.00 for funeral expenses and $1,000,000.00 for "pre-impact fright."  )  <u>Beynon v. Montgomery Cablevision Ltd. Partnership,</u> 718 A.2d 1161, 351 Md. 460 (Md.1998).

## II.    Damages for Survival Action

The following cases provide a general range for "survival" actions similar to Joe's. The values fluctuate dramatically depending on the duration and severity of the conscious suffering. Thus, a median figure would likely be between $300,000.00 and $400,000.00.

**$1,500,000 and $1,000,000** awarded by jury for pre-death mental anguish and pain and suffering to the representatives of the estates of the passenger and driver of a vehicle which was struck by the operator of another vehicle who was being pursued in a high speed chase by police officers. There was evidence by an eye-witness that the driver was still alive after she was thrown out of car and that she appeared to be in "a lot of pain," and that the passenger was moaning and in pain. <u>Evidence suggested that one of the victims' experienced conscious pain and suffering for only two to five minutes and that the other would have suffered consciously for only a few seconds, or "less than a minute."</u> District of Columbia v. Hawkins, 782 A.2d 293 (D.C. 2001)

**$900,000.00** awarded by the jury for the decedent's pain and suffering, where the expert medical witness who testified that, while the decedent had died from third-degree burns over his entire body, he would not have been conscious for <u>more than several seconds.</u> Teamann v. Zafris, 811 A.2d 52 (Pa.Cmwlth. 2002).

## III.   Punitive Damages

In West Virginia punitive damages are awarded where the defendant *acted "maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations."* Here, David Bruce Small willfully and recklessly disobeyed speed

Avrum Levicoff - *Via Facsimile 412-434-5203*
Re: Alfred Abramson, Individually, and on
Behalf of the Estate of Joseph Abramson,
Carol Schudmak, and Aaron Abramson
Our File No. 500.04-8167
August 17, 2004
Page 9 of 9

In addition, the needless death of a beloved college professor who supported his aging father and had an enduring relationship with his siblings can only further increase the value of the claims of Aaron Abramson, Alfred Abramson and Carol Schudmak. Accordingly, based upon the foregoing, the plaintiffs demand the following itemized amounts in settlement of all claims arising out of the accident that gave rise to this litigation.

| | | | |
|---|---|---|---|
| 1. | Special Damages | $ | 855,025 |
| 2. | General Damages | | |
| | a.  Wrongful Death | $ | 2,800,000 |
| | b.  Survival Action | $ | 900,000 |
| | c.  Punitive Damages | $ | 1,044,975 |
| | TOTAL | $ | 5,600,000 |

The total amount which plaintiffs individually, and on behalf of the estate of their deceased son/sibling are willing to accept at this time for the complete and final settlement of all claims is $5.6 million dollars.

It would facilitate settlement if you would share with me the amounts of insurance coverage remaining in light of your settlement of other pending claims.  I am willing to sign any confidentiality provisions required by you or plaintiffs counsel. (I do believe I will be permitted to access this information in the discovery process as release of this information will promote amicable resolution of this litigation.)

I also still believe that a high-low mediation offers the best opportunity for settlement of this matter.

Looking forward to your timely response, I am

Sincerely,

DAVID V. BATT
RACHEL A. MEESE

DVB/RAM/tpb
Enclosures

KENNETH J. BOUDREAUX, Ph.D.

CONSULTING ECONOMIST

1424 BORDEAUX STREET
NEW ORLEANS, LOUISIANA 70115
TELEPHONE: 504-895-8741
FACSIMILE: 504-895-0047
EMAIL: ken@kennethboudreaux.com

A. B. FREEMAN
SCHOOL OF BUSINESS
TULANE UNIVERSITY

December 15, 2004


Ms. Rachel A. Meese
Lobman, Carnahan, Batt, Angelle & Nader
Suite 2300
400 Poydras Street
New Orleans, LA 70130-3249


Re: (Joseph) Abramson vs. David Bruce Small, et al.

Dear Ms. Meese:

I have performed the analysis you requested in the above matter. This report comprises first a discussion of relevant data, assumptions and opinions, followed by a detailed summary of my findings. **You may wish to turn directly to the summary pages at the end of this report if you are already familiar with my analyses.** The parameters I have used are portrayed in that summary, but without the detailed discussion that follows immediately below. This report should be considered preliminary in that new or revised data may cause me to undertake revisions, or that you may ask me to perform additional analyses. Though this report is generally phrased in the first person, the listed authors jointly share its opinions.


You have asked that I produce an estimate of the past and future earnings that Professor Abramson would likely have produced across his remaining worklife.


## WORKLIFE

The potential loss period is the worklife expectancy of Professor Abramson. For the purposes of estimating worklife I have used the most recent figures released by the U.S. Department of Labor's Bureau of Labor Statistics (Bulletin 2254, February 1986), as updated in Ciecka, Donley and Goldman, *JLE*, Vols. 9, No. 1 (Winter 1999-2000) and 10, No. 3 (Winter 2000-01). Worklife is the average number of years that individuals of Professor Abramson's age, race, gender and education level would be expected to be in the labor force (which includes those unemployed but looking for work). Using these tables implies an assumption that all years of Professor Abramson's remaining lifetime labor force non-participation (interim separations from the labor force) would occur at the end of his worklife, which assumption may produce



EXHIBIT
6

(Joseph) Abramson vs. David Bruce Small, et al.

Ms. Meese
December 15, 2004
Page 3

## FRINGE BENEFITS

Periodic fringe benefit surveys of the U.S. Bureau of Labor Statistics report that most jobs in which an individual works both full time and steadily provide the fringe benefits of greatest economic importance (such as medical insurance). The full range of typical fringe benefits (comprising medical and other insurances and pension) costs employers approximately 12% over and above wages (see Table 626, U.S. Statistical Abstract, 2001). I produce results below based on this percentage.

## CHANGES IN FUTURE INCOME

I present results below based upon Professor Abramson's income changing annually at *real* (inflation adjusted) rates of either -1.00% or 1.00% per annum. These rates are, in my opinion, the boundaries of a reasonable range of equivalent annual changes in Professor Abramson's real earned income for the remainder of his worklife, considering all relevant economic influences upon that income. Those influences include the effects of productivity, Professor Abramson's age, the expectations of demand for the economic activity in which Professor Abramson would be involved, and the uncertainties that reside in the income streams of individuals across time. These rates of change in real earnings are consistent with the long-term history of such increases in the United States.

Some of the above influences would serve to cause Professor Abramson's income to increase at higher and some at lower rates (even to the extent of causing reductions) over time. The range of increase rates shown is my best opinion of the likely upper and lower limits of the income changes that could reasonably be expected for Professor Abramson over the loss period.

## DISCOUNTING TO PRESENT VALUE

Present value of future loss is the amount of money that the recipient of an award can now invest such that the future proceeds of the investment (interest and principal) will reproduce the amounts lost, at the times they are expected to be lost. This requires that I estimate discount rates (interest rates on invested amounts).

I base the results below upon a range of *real* (inflation-adjusted) discount rates from 0.27% to 1.24%, before any adjustment for taxes. I derive these discount rates from the returns currently available in risk-free investments (U.S. Treasury "Inflation Indexed Bonds") that can readily duplicate the lost amounts across time. The U.S. Treasury regularly adjusts the yields (effective interest rates) and principal amounts of these securities to reflect the effect of inflation, such that the quoted discount rates are *over and above the actual rates of inflation experienced during the life of the bonds.* Bondholders are therefore insured that their purchasing power will be maintained regardless of inflation rates experienced in the United States. These investments are generally regarded as the lowest cash flow risk available, if held to maturity. (The "liquidity" of such investments will be greater than the liquidity that would have existed in Professor

(Joseph) Abramson vs. David Bruce Small, et al.

Ms. Meese
December 15, 2004
Page 4

Abramson's income stream; the low-risk characteristic of these investments may overcompensate Professor Abramson relative to the riskiness of his earned income stream.)

These U.S. Treasury securities can be purchased in any bank and registered with the U.S. Treasury for automatic deposit of payments, or purchased directly from the U.S. Treasury. The commission costs of such securities are negligible. Because principal increases are taxable to holders of these bonds at grant date as opposed to realization date, I have reduced the reported yields by twenty-five basis points, effectively compensating for this effect with increased present values. Should Professor Abramson wish to have the specific maturities and amounts of securities to purchase, I would be pleased to provide those.

## TAXES

The results below ignore taxes, based on the assumption that jurisdiction in which this litigation is proceeding requires that approach.

## PRESENTATION OF RESULTS

The results below appear as a range of reasonable outcomes, reflecting the uncertainties that are inherent in estimates of this type. The "Lower Limit of Reasonable Range" figures are consistent with a set of economic conditions that could reasonably occur, and which would produce the present value loss figures shown. These represent experience of the type that would produce relatively low loss amounts. One or more of the following conditions would occur: relatively low increments in nominal income (for all of the general economic or individual reasons which could cause such an effect) or income interruptions (through unemployment, illness, etc.) and/or relatively high real interest rates. Similarly, the "Upper Limit of Reasonable Range" figures are consistent with opposite experience in the conditions listed.

The range of results makes no assumption about major episodic income changes of the type implied by promotions, demotions or changes in occupation independent of the accident. Similarly, I have assumed in neither the upper or lower limit that all economic conditions will be such as to produce either low or high losses. (For example, the lower figures do not assume that Professor Abramson would have simultaneously or continuously experienced layoffs, illness, skill obsolescence, or any of the other factors that can cause relatively low increments to income.)

Though the range of results presented below is the most accurate reflection of my opinion in this matter, should a *single* number be preferred as a presentation of results, the midpoints of ranges can be taken as the best such estimates.

I hope this analysis is of use to you. Should you have questions, please do not hesitate to contact me. Please list Dan M. Cliffe and myself, either of whom stand ready to testify, depending upon teaching schedules. **Should additional information be required for filing this report (e.g. a CV, case listing, testimony histories, fees, etc.) it is available at www.kennethboudreaux.com.** Please keep me informed of progress toward trial.

(Joseph) Abramson vs. David Bruce Small, et al.

Ms. Meese
December 15, 2004
Page 5


Sincerely,

Kenneth J. Boudreaux, Ph.D.
Dan M. Cliffe, CPA


KJB/del

Attachment

(Joseph) Abramson vs. David Bruce Small, et al.

Ms. Meese
December 15, 2004
Page 6

## SUMMARY DATA

### Professor Abramson

## FOR REGULAR WORKLIFE

BIRTH DATE ........................................................................December 12, 1946

ACCIDENT DATE ..........................................................................July 14, 2003

REFERENCE DATE .......................................................................June 1, 2005

AGE AT ACCIDENT DATE.............................................................56.59 Years

WORKLIFE AT ACCIDENT DATE ...................................................9.27 Years

ACCIDENT DATE TO REFERENCE DATE ....................................1.88 Years

AGE AT REFERENCE DATE..........................................................58.47 Years

WORKLIFE AT REFERENCE DATE ................................................7.39 Years

RACE ...........................................................................................................White

SEX ............................................................................................................. Male

EDUCATION....................................................Graduate or Professional Degree

(Joseph) Abramson vs. David Bruce Small, et al.

Ms. Meese
December 15, 2004
Page 7

## ANNUAL PRETAX INCOME BASE
$85,942.65

## PRETAX INCOME AND REGULAR WORKLIFE RESULTS

## PAST LOST EARNINGS

| | |
|---|---|
| Wages | $161,619.93 |
| Fringes | $19,394.39 |

## FUTURE LOST EARNINGS

| Lower Limit of Reasonable Range | | Upper Limit of Reasonable Range |
|---|---|---|
| -1.00% | Real Annual Increase Rates | 1.00% |
| 0.27% To 1.24% | Real Discount Rates | 0.27% To 1.24% |
| | Wages Midpoint | |
| $592,804.22 | $614,453.96 | $636,103.69 |
| | Fringes Midpoint | |
| $71,136.51 | $73,734.47 | $76,332.44 |

## Total Past and Future Wages and Fringes
### Midpoint

| | | |
|---|---|---|
| $844,955.05 | $869,202.75 | $893,450.45 |



**MOTOR CARRIER SAFETY * HIGHWAY COLLISION RESEARCH**

**WASHINGTON, D.C.**

*STOPPER*

*& ASSOCIATES*

December 09, 2003

RECEIVED

DEC ⌐ ⌐ 2003

INITIAL

R. Edison Hill
Hill Peterson Law Firm
500 Tracy Way
Charleston, WV 25311
304-345-5667    Fax 304-345-1519

Re: Fatality – Multi Vehicle Collision
I-64 Westbound, 17 mile marker, Cabell County, WV
Estate of Joseph Abramson

Dear Mr. Hill:

At your request, the following represents an update since our last meeting and my findings to date for the referenced traffic fatality.  These opinions are very preliminary as investigation and discovery is continuing but is offered within a reasonable degree of professional and scientific certainty.

- The primary cause of this collision was failure of the operator of a truck tractor and semi trailer, David B. Small, to operate at an appropriate and lawful speed while driving westbound on I-64.
- This truck tractor and semi trailer was found to owned by RBL Leasing Corp. of Franconia, PA
- This truck tractor and semi trailer was operated under Federal Motor Carrier Safety Administration (FMCSA) interstate operating authority USDOT#473902 under the motor carrier Laneko Manufacturing Company, Royersford, PA. 19468.
- According to official public records of the FMCSA, this motor carrier is found to be listed as "Deficient" in Driver Safety Evaluation Area primarily as a result of drivers declared "out of service" for driver hours of service violations.
- Examination of the scene and interview with WV State Police reveal traffic was slowing and/or stopped due to a lane closure ahead on I-64.
- Examination of the scene revealed the operator of a truck tractor and semi trailer would have at least ¼ mile of clear visibility of the slowing traffic with more than ample time and distance to reduce his speed to avoid a collision.

**EXHIBIT**

7

Re: Fatality – Multi Vehicle Collision
I-64 Westbound, 17 mile marker, Cabell County, WV
Estate of Joseph Abramson
December 9, 2003
Page 2 of 2

- The physical evidence indicates the truck tractor and semi trailer was being operated recklessly and at a seriously excessive speed at the onset of braking. Initial speed estimates at the onset of braking place the speed of the truck tractor and semi trailer operated by Mr. Small for Laneko Manufacturing Company well in excess of 80 mph and most likely at or above 90 mph.
- The Federal Motor Carrier Safety Regulations (FMCSR) defines reckless driving and operating at speeds in excess of 15 mph over the speed limit as "Serious Traffic Violation".
- Examination of the semi trailer revealed defects in the brake system which would have the effect of increasing impact speed after the onset of braking.
- Examination of the scene, review of police reports, police photographs and interview with WV State Police reveal Mr. Abramson was trapped in his 1998 Mercury after being struck and pushed into other vehicles by the RBL / Laneko Manufacturing Company truck tractor and semi trailer.
- Examination of the 1998 Mercury, review of police reports, police photographs interview with WV State Police and medical examiner's reports indicate Mr. Abramson survived the initial crash but was trapped in the vehicle and died as a result of the severe fire after the vehicles had come to rest.
- At this time, I have found no causative or contributing factors by the other vehicles which were struck as the RBL / Laneko Manufacturing Company crashed through the traffic.

Again, I must emphasize these opinions are preliminary. I expect to add to as well as may be offering additional opinions as the investigation and discovery reveals more information.

Sincerely,

David A. Stopper
Director

MOTOR CARRIER SAFETY • HIGHWAY COLLISION RESEARCH

6200 EVERGREEN MOUNTAIN ROAD, BROAD RUN, VA 20137

# STOPPER & ASSOCIATES

MOTOR CARRIER SAFETY * HIGHWAY COLLISION RESEARCH

WASHINGTON, D.C.

December 13, 2004


David V. Batt &
Rachel A. Meese
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street, Suite 4300
New Orleans, LA   70130-3245
504-586-9292 FAX 504-586-1290

Re:  Alfred Abramson, Individually, and on Behalf
Of the Estate of Joseph Abramson, Carol Schudmak,
v. Laneko Engineering Company & David Small, et al

Dear Sir and Madam

As you requested, I have reviewed the following materials pursuant to my analysis of the
instant case:

- West Virginia Uniform Traffic Crash Report and diagram of accident scene
- West Virginia PSC Driver/Vehicle Inspection Report dated 7/14/03; Laneko
  Manufacturing Company truck tractor & semi-trailer
- Deposition of David Small
- U. S. DOT Federal Motor Carrier Safety Administration Carrier Snapshot for
  Laneko Manufacturing Company
- Federal Motor Carrier Safety Administration's (FMCSA) Safe-Stat Carrier Detail
  for Laneko Manufacturing Company
- Federal Motor Carrier Safety Administration's (FMCSA) Licensing & Insurance
  System Motor Carrier Details for Laneko Manufacturing Company
- Federal Motor Carrier Safety Administration's (FMCSA) Carrier Profile for
  Laneko Manufacturing Company
- U. S. DOT Federal Motor Carrier Safety Administration Carrier Snapshot for
  Quality Carriers, Inc.
- Federal Motor Carrier Safety Administration's (FMCSA) Safe-Stat Carrier Detail
  for Quality Carriers, Inc.
- Federal Motor Carrier Safety Administration's (FMCSA) Licensing & Insurance
  System Motor Carrier Details for Quality Carriers, Inc.



EXHIBIT

8

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 2

- U.S. DOT Federal Motor Carrier Safety Administration's MCMIS Carrier Profile for Quality Carriers, Inc.
- U. S. DOT Federal Motor Carrier Safety Administration Carrier Snapshot for Intertrans Carrier Company, Inc.
- Federal Motor Carrier Safety Administration's (FMCSA) Safe-Stat Carrier Detail for Intertrans Carrier Company, Inc.
- Federal Motor Carrier Safety Administration's (FMCSA) Licensing & Insurance System Motor Carrier Details for Intertrans Carrier Company, Inc.
- National Climatic Data Center Local Climatological Data for Area of Collision Scene
- SunTimes© for Windows, Zephyr Services, Pittsburgh, PA
- Astrocalc Astronomical Data Software
- U.S. DOT National Highway Traffic & Safety Administration Recall Data
- "Making the Grade in West Virginia: An Analysis of the Ability of West Virginia's Transportation System to Meet the State's Need for Safe and Efficient Mobility," The Road Information Program, Washington, DC November 2004.
- American Association of State Highway Transportation Officials (AASHTO) "Green Book"
- Manual on Uniform Traffic Control Devices
- Positive Guidance (Driver Expectancy in Highway Design and Traffic Operations)
- Decision Sight Distance for Highway Design and Traffic Control Requirements; FHWA 02/78; PB-288 748
- The Subcommittee on Highways and Transit; Hearing on Highway Work Zone Safety, http://www.house.gov/transportation/highway/07-24-02/07-24-01memo.html
- "Construction Zones, a Driver Education Program," guide and videotape by NCI Transportation Services, 1988
- "Road Work!", Extreme Seven-Minute Solutions, 365-VT, J.J. Keller & Associates, Inc., Neenah, WI.
- "Seeing Hazards", Seven-Minute Solutions 315-VT, J.J. Keller & Associates, Inc., Neenah, WI.
- CCJ Preventable or Not, 4th Revised Edition, 1999 Commercial Carrier Journal, Radnor, PA
- VINassist® Version 1.20© by NICB 1991
- Diesel Truck Index, February 2000 and February 2001 editions
- Federal Motor Carrier Safety Regulations (49 CFR, Parts 382, 387, 390-399, 40)
- Interpretations – Federal Motor Carrier Safety Regulations (49 CFR, Parts 382, 387, 390-399, 40) – J.J. Keller & Associates
- Commercial Drivers License Standards, 49 CFR Part 383
- State of West Virginia Motor Carrier Compliance Manual
- Pennsylvania Commercial Drivers License Manual

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 3

- Abramson Autopsy Report
- Stopper & Associates Inspection of RBL's leased 2000 Volvo truck tractor VNL64T660, October 9-10, 2003
- Stopper & Associates Inspection of Great Dane semi-trailer #105, 9/25/03
- Stopper & Associates Inspection of Abramson Mercury Grand Marquis
- Video Footage of 13 Car Pile-up on I-64, 5:30 p.m.-11:00 p.m., 7/14/03, WOWK, WCHS, WSAZ
- Video Footage and still photos produced on I-64, 17 Milemarker, 8/25/03; Stopper & Associates Drive-Through of Accident Scene
- Examination of accident scene with WV State Police investigator
- US DOT Federal Highway Safety Administration; 1997 Study: "Commercial Motor Vehicle Fatigue and Alertness Study"
- US Department of Commerce, National Technical Information Service, 10/78 Study on "Effects of Hours of Service Regularity on Truck and Bus Driver Fatigue" prepared for National Highway Traffic Safety Administration, Washington, DC
- US Department of Commerce, National Technical Information Service, 11/72 Study: "The Relationships Among Fatigue, Hours of Service, and Safety of Operations of Truck and Bus Drivers", Final Report - Phases I and II
- "Get Paid for Sleeping, Fatigue Researchers Need Drivers for Study," *Overdrive*, 12/94
- "Driver Fatigue Tops Safety List," *Transport Topics*, 3/95
- "The 'Dateline' Show - Part II," *Transport Topics*, 5/95
- US Department of Transportation, 1/13/96, "Commercial Driver Fatigue Target of Program Announced by FHWA Administrator Slater"
- "Progress Cited in Effort to Understand Science of Driver Fatigue," *Transport Topics*, 11/93
- "Driver Fatigue Issues Critical for Builders," *Transport Topics*, 12/94
- "A Report on the Determination and Evaluation of the Role of Fatigue in Heavy Truck Accidents" prepared for AAA Foundation for Traffic Safety in cooperation with The Commercial Vehicle Safety Alliance by Transportation Research and Marketing, 10/85
- July 1982 NHTSA Technical Report, "Large-Truck Accident Causation"
- US Department of Commerce 10/78 Study, "Effects of Hours of Service, Regularity of Schedules, and Cargo Loading on Truck and Bus Driver Fatigue"
- US DOT Final Report, 3/87, "Heavy Truck Safety Study, Prepared in Response to: Section 216: P.L. 98-554", October 30, 1984
- "Commercial Motor Vehicle Driver Fatigue and Alertness Study," FHWA report number: FHWA-MC-97-002, TC report number: TP 12875E
- U.S. Department of Transportation, FHWA, Commercial Vehicle Preventable Accident Manual, July 1991

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 4

- National Transportation Safety Board, Safety Study, February 5, 1990, "Fatigue, Alcohol, Other Drugs and Medical Factors in Fatal-To-The-Driver Heavy Truck Crashes," Volumes 1 & 2
- Keller-Soft™ for DOT Safety, Version 7 – ISBN 1-57943-893-8
- National Transportation Safety Board (NTSB) - Heavy Vehicle Airbrake Performance, NTSB/SS-92/01, PB92-917003
- Traffic Accident Reconstruction, Volume 2 of the Traffic Accident Investigation Manual by Lynn B. Fricke, Northwestern University Traffic Institute
- National Highway Traffic Safety Administration (NHTSA) Heavy Duty Vehicle Brake Research Program – Report 5:  Pneumatic Timing
- The Air Brake Book, 6th Revised Edition by *Commercial Carrier Journal*
- Bendix Airbrake Handbook
- "Improved Brake Systems for Commercial Motor Vehicles", USDOT, National Highway Traffic Safety Administration;  DOT HS 807 706; April, 1991
- Commercial Motor Vehicle testing of anti lock braked truck tractor with conventional air braked semi trailer, September 18, 2004.
- "Performance Based Brake Tests (PBBT) -Considering Air Brake Adjustment Analysis, Weight & Push Rod Stroke Relative to Predicting Brake Force in Collision Reconstruction"; David A. Stopper, I.A.A.R.S Conf., Olathe, KS July 2003
- Federal Motor Vehicle Safety Standards 49 CFR Part 571
- Driver Performance Data Book, June 1987; USDOT/NHTSA; DOT HS 807 126; PB 87-223947
- Traffic Accident Reconstruction, Volume 2 of the Traffic Accident Investigation Manual by Lynn B. Fricke, Northwestern University Traffic Institute

After review of the items and documents listed above, I offer the following opinions within a reasonable degree of scientific certainty in the field of accident reconstruction, commercial motor vehicle regulations and motor carrier safety standards.

## Collision

This 13 vehicle chain reaction collision occurred on Monday, July 14, 2003, at approximately 4:18 p.m.  The West Virginia Uniform Crash Report, as well as our examination of the scene, identified the location of the collision as I-64, ½ mile east of Milemarker #17, on westbound Bridge #2102.3 over the Guyandotte River in the town of Barboursville, Cabell County, West Virginia.   The collision occurred within a construction zone with warning signs reportedly posted ¾ to ½ mile prior to the bridge.

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 5

The highway is straight with a slight downhill grade for approximately 1/4 mile before
the Guyandotte River bridge span in this rural location. The entire collision area, from
point of impact to rest position of all vehicles, occurred on the westbound span of the
highway bridge across the river at this location just west of the Merrits Creek exit. The
bridge road surface is concrete and the westbound span has two lanes bordered by narrow
shoulders, approximately 3' wide, with adjacent concrete bridge rails. As no visual
obstructions were found and weather conditions were clear and dry, the operator of a
truck tractor and semi-trailer combination would have at least ¼ mile of clear visibility of
slowing traffic ahead. The posted speed limit is 70 mph along this interstate highway. .

A review of witness statements reveals that westbound traffic was bumper to bumper in
both lanes and slowing to 0-10 mph for construction on I-64 ahead. Automobile drivers
were able to see the slowing, braking and stopping traffic ahead and reduced their speed
or stopped without incident. As traffic slowed, the driver in the last vehicle in the right
lane observed in her rear view mirror the high speed approach of the truck tractor and
semi trailer behind her, rapidly overtaking the slowing and stopped vehicles. She
watched as the truck tractor impacted and rode along the bridge wall toward her vehicle,
the green Chevrolet S-10 pickup truck stopped in the right lane.

The truck struck her and Vehicle #3, the Mercury Grand Marquis operated by Mr.
Abramson. The impact pushed the Mercury along the bridge wall and propelled her
pickup truck (#2) into the vehicle ahead of her, a red Jeep Cherokee (#4), which missed
hitting an Isuzu (#5) ahead of it. Her pickup truck (S-10) struck the Saturn (#6), followed
by the GMC S-15 (#7) operated by David Mullins, which was in front of the Saturn (#6).
Vehicle #7 rotated clockwise in front of the truck tractor, semi-trailer (#1), striking the
left rear door area of Vehicle #3, occupied by Mr. Abramson. The S-10 was propelled
away from the truck tractor into several other vehicles but Vehicle #3 remained engaged
to the right front of the truck tractor and up against the bridge wall.

Mr. David Small, the driver of the striking truck tractor and semi trailer testified to seeing
the vehicles on the roadway ahead but not seeing brake lights and said he thought the
traffic was moving. When he realized the traffic was slowing or nearly stopped, he
thought it was too late to stop his vehicle. Mr. Small testified to traveling at a speed of 70
mph before braking and states that he doesn't believe his speed was contributory to this
collision. Braking, he struck the right cement bridge rail and plowed into the stopped
vehicles as described above. Mr. Abramson, operator of Vehicle #3, the Mercury
Marquis and Mr. David Mullins, operator of Vehicle #7, died as a result of the ensuing
fire which engulfed their vehicles, despite the efforts of passers by to extricate them from
their crushed vehicles.

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 6


### Vehicles, Drivers

**Vehicle #1:** The West Virginia Uniform Traffic Crash Report notes Vehicle #1 was a 1999 Volvo conventional truck tractor and semi-trailer operated by David Bruce Small of Colmar, PA (VIN interpretation identifies this vehicle was actually a 2000 Volvo GM Truck Corp. Model VNL conventional truck tractor). This truck tractor was equipped with anti-lock brakes. All air braked truck tractors manufactured after March 1, 1997 are required to be equipped with anti-lock brake systems (ABS).

Mr. Small held a Pennsylvania Class A CDL and was operating under the authority of Laneko Manufacturing Company of Royersford, PA. Mr. Small was hauling a load of automobile parts weighing approximately 48,000 pounds in his 48-foot van type semi-trailer. This would place the load at the maximum allowable 80,000 pound gross vehicle weight.

Small stated he had been driving for about 5 ½ hours from Hagerstown, Maryland prior to the collision. This driver states he typically drove this stretch of the road where the accident occurred twice weekly on his runs for the motor carrier. The round trip mileage for this route was about 1200 miles. Mr. Small was traveling in the right lane at the time of impact.

**Vehicle #2:** Abby Lynn Jarrell was operating a green 1996 Chevrolet S-10 pickup truck, owned by Alma Johnson, westbound, the last vehicle in the stopped line of traffic occupying the right lane on the highway bridge. She had left two car lengths between her and the next vehicle ahead of her when she came to a stop before she was struck in the rear by the truck tractor and semi-trailer (Vehicle #1).

**Vehicle #3:** This 1998 4-door Mercury Grand Marquis sedan was operated by Joseph Abramson of Huntington, West Virginia. Mr. Abramson was the owner of this vehicle which was slowing or stopped in the right lane prior to the collision. Crush damage and induced was overall but indicates the primary impact was centered on the rear of the vehicle. The driver's seat position had been left with sufficient space for the occupant who likely would have survived, but for the engulfing fire. The right side of the vehicle scraped along the bridge wall as it was pushed forward by the truck tractor operated by David Small, and the left side of Vehicle #3 was impacted by both Vehicle #7 and Vehicle #10.

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 7

Mr. Abramson was trapped in his 1998 Mercury as it was damaged and pushed into other vehicles by the truck tractor and semi-trailer. Mr. Abramson is believed to have survived the initial crash but was trapped in his vehicle and died as a result of the severe fire.

**Vehicle #4:**  A 1999 Jeep Grand Cherokee, owned and operated by Kelly Edward Melvin of Princeton, West Virginia was stopped in the left lane due to the construction taking place ahead. He observed the initial impact between the truck tractor and the green pickup truck in the right lane behind him and observed that Vehicle #1 continued down the road pushing the pickup truck toward his vehicle at a fast rate of speed. The pickup truck (Vehicle #2) struck his vehicle on the right side, pushing it into the rear of an Isuzu (Vehicle #5). Vehicle #4 was occupied by the driver and a passenger seated in the right front seat.

**Vehicle #5:**  Lenora K. Tucker of Ewing, Kentucky was operating the green 1999 Isuzu Rodeo SUV which was struck in the rear by Vehicle #4. Besides the driver, there were two other occupants of this vehicle. After impact with Vehicle 4, this unit was pushed into Vehicle 6 as described below.

**Vehicle #6:**  A 2002 Saturn SL2 4-door sedan, silver in color, owned and operated by Virginia Lee Morris of Marietta, Georgia, was stopped in the left lane behind traffic when she was struck in the right rear by Vehicle #2 (green pickup

**Vehicle #7:**  A 1988 GMC S-15 pickup truck, red in color, was operated by David Alan Mullins of Martha, Kentucky. His wife, Betty Mullins, was noted as the owner of this vehicle. Mr. Mullins vehicle was impacted and crushed by the left front of Vehicle #1, the Volvo truck tractor and semi-trailer operated by David Small. This vehicle and driver who was trapped and conscious inside the vehicle as it was consumed by the fire which followed the impact.

**Vehicle #8:**  A 1998 Chevrolet Venture Van, blue in color, was operated by Joseph Seibel of Cranberry Township, Pennsylvania; owners are shown as Charles & Susan Seibel. This full size van was struck in the right rear by Vehicle #2, the green S-10 pickup truck after its separation from the front of the truck tractor.

**Vehicle #9:**  This vehicle, a green 2000 Dodge Intrepid 4-door sedan, was owned and operated by Joyce Ann Halstead of West Virginia. This unit was struck by the Chevrolet Ventura van (Vehicle #8)

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 8

**Vehicle #10:** A brown or black 1987 Chevrolet C10 full size pickup truck was operated in the right lane by James Arley Smith, Sr., of Salt Rock, WV. This unit was struck in the rear by Vehicle #9 and into Vehicle #3 (the Mercury) occupied by Mr. Abramson and became involved in the fire which engulfed Mr. Abramson's unit. All of the 3 occupants of this unit were able to exit the vehicle. This operator was administered a PBT(?) test and found to have a BAC of .06.

**Vehicle #11:** Robert Wayne Eppard was the operator of this white 2001 Kenworth T-800 truck tractor and van-type semi-trailer for Intertrans Carriers Company of Gordonsville, VA. This vehicle was coming to a stop in the right lane when he was struck in the rear by struck in the rear. His vehicle was pushed into the rear of a tanker trailer of Vehicle #12. Once the vehicles came to a stop, he and the driver of Vehicle #12 pulled ahead so as to prevent his vehicle being engulfed in the fire.

This driver also heard the driver of Vehicle #1 (Mr. Small) say he didn't have time to slow down from his speed of 70 mph before crash. Mr. Eppard was found by the investigating officer not to have contributed to this crash. A review of U.S. DOT FMCSA records reveals Intertrans Carriers Company held a 'Satisfactory' safety rating, with no deficient safety evaluation areas. This finding indicates the company had proper safety management controls in place to monitor drivers and vehicles for accident prevention.

**Vehicle #12:** Another commercial vehicle, this white 1995 Mack CH613 truck tractor and tanker trailer was operated by Robert Eugene Peters, Virginia CDL, under the authority of the motor carrier Quality Carriers, domiciled in Summit, IL. This vehicle's tanker trailer was struck in the rear by Vehicle #11. Mr. Peters' statement to police reveals he noted construction advisory signs about ½ to ¾ miles back on the interstate. When he saw brake lights ahead, he slowed before arriving at the bridge and saw that traffic was stopped when he felt the rear end impact. The investigating office did not find this driver's actions to have contributed to this collision. A review of U.S. DOT's FMCSA records reveals this motor carrier also had a 'Satisfactory' safety rating and no deficient safety evaluation areas, as above, an indication the company had adequate safety management controls in place.

**Vehicle #13:** The last vehicle in this chain of collisions was this red 1997 Chevrolet 2500 pickup truck owned by Protection Services, Inc. and operated by Gary Wayne Hudnall of Charleston, WV. Mr. Hudnall was struck in the rear.

David Batt, Rachel Meese
Re: Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 9

### The Motor Carrier

A review of materials presented reveals that the motor carrier under whose authority the striking vehicle was operated was **Laneko Manufacturing Company**, U.S. DOT No. 473902, MC-273118, domiciled at 508 North Lewis Road in Royersford, PA 19468. U.S. DOT records retrieved August 26, 2003 reveal Laneko operated 3 power units and one driver. RBL Leasing, Inc. was listed on the police report as owner of the truck tractor (Vehicle #1) operated by David Small. In deposition testimony, David Small stated that Laneko leased these trucks from RBL Leasing, Inc. who also provided maintenance under a lease agreement with Laneko Manufacturing Company.

Laneko Manufacturing Company is both an authorized for-hire and a private motor carrier whose primary business interest is in the metal stamping and tooling industry serving automotive and aerospace customers such as General Motors, Lear Corporation and Dana Corporation. The motor carrier portion of the business, hauling metal components to these and other customers, is ancillary to Laneko Manufacturing Company's metal stamping and tooling enterprise, but both the motor carrier and its drivers are subject to the Federal Motor Carrier Safety Regulations, Commercial Drivers License regulations and Federal Safety Fitness Procedures.

Though not safety rated by U.S. DOT, a review of the U.S. DOT's Federal Motor Carrier Safety Administration's (FMCSA) Safersys Carrier Snapshot for Laneko Manufacturing Company reveals that for DOT inspections that were conducted over 24 months prior to 8/9/03, this motor carrier had an out of service rate for drivers that was above the national average. This is primarily due to drivers deemed "out of service" for driver hours of service violations.

Further scrutiny of the data obtained from U.S. DOT's SafeStat Online database, confirms this company to have a deficient safety evaluation in this critical driver area. This type of deficiency is often indicative of poor or inadequate safety management controls for monitoring the operation of its drivers. Testimony by defendant driver David Small confirms the company did not even have a systematic program in place to ensure driver licensing requirements were up to date, instead depending on the driver in this regard.

David Batt, Rachel Meese
Re:  Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 10

Mr. Small was found to have had an expired medical card for some time prior to this collision, which shows the inadequacy of this strategy.  Mr. Small also testified that the company's overall philosophy was more crisis management than preventative, and company officials never counseled him post-accident on measures to prevent similar accidents.  He was also never admonished or received any remedial training for any speed violations he received.

## Analysis

Based on a review of the materials listed above, it is my opinion that this collision was preventable on the part of Mr. David Small and the motor carrier Laneko Manufacturing Company for failing to monitor and control its driver.  As a motor carrier, Laneko Manufacturing Company's commercial motor vehicles and drivers are subject to both state laws and the Federal Motor Carrier Safety Regulations and the Commercial Drivers License standards.

Interstate 64, as described above, is straight with a slight downgrade with no visual obstructions for a truck driver who sits in an elevated position allowing a clear vista of the roadway ahead.   Had Mr. Small been "Seeing" and "Managing Space" while operating his Commercial Motor Vehicle (CMV) in accordance with the required knowledge and skills pursuant to 49 CFR Parts 383.111, 383.113, 383.131 and Appendix G to Part 383 as well as the Pennsylvania Commercial Drivers License Manual, the collision would have been avoided.

Mr. Small should have been keeping a lookout for potential hazards ahead for the distance he would travel in 12 to 15 seconds.  The slowing and stopped traffic on the bridge would have been clearly visible to Mr. Small in those 12 to 15 seconds, ¼ of a mile ahead, allowing time for him to slow his speed in time to avoid or mitigate the collision had he been operating at a reduced speed in conformance with construction advisory signs posted ½ to ¾ of a mile prior to the bridge.

At 70 mph a vehicle will travel 102.62 feet per second and cover 1231 to 1539 feet in 12 to 15 seconds.

MPH x 1.466 = Feet Per Second

70 mph × 1.466 = 102.62 Feet Per Second

A fully loaded air braked combination vehicle, such as driven by Mr. Small, equipped with brakes that conform to the *minimum* Federal Motor Vehicle Safety Standard would be capable of a deceleration rate equal to or greater than 9 mph (0.41% of brake force relative to vehicle weight) of speed loss for each second the brakes are applied on dry pavement of the friction value as found at the scene.  Years of actual testing reveals most

David Batt, Rachel Meese
Re:  Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 11

air braked CMVs equipped with Antilock Brake Systems well exceed that rate of
deceleration.

Considering this relationship of deceleration relative to time, the truck tractor and semi
trailer with brakes conforming to the *minimum* safety standards, should have been
capable of reducing speed from 70 mph to a stop in approximately 7.77 seconds of brake
application in 398 feet while remaining in a 12 foot wide lane.  This deceleration rate
would not have required the wheels to have locked and would allow for a controlled
deceleration.

$$\text{MPH} \div \text{rate of deceleration} = \text{Time in seconds}$$

$$(f \times 32.2) \div 1.466 = \text{Rate in mph / second}$$

$$(0.41 \times 32.2) \div 1.466 = 9.00 \text{ mph / second}$$

$$70 \text{ mph} \div 9 \text{ mph/s} = 7.77 \text{ seconds}$$

Even allowing 2 additional seconds for perception, reaction and air brake lag time, the
Lenko truck tractor and semi trailer would travel an additional 205 feet.  More than
enough time and distance was available for a normal and alert CMV driver to avoid this
preventable fatal collision.

One brake on the semi trailer was found beyond the allowable adjustment limits, however
this level of under adjustment would not have rendered the brake inoperative and Small
should have easily been able to reduce and control his speed had he been alert and
operating at an appropriate and lawful speed.

The police diagram & measurements indicate a minimum braking distance of 388 feet by
Small's truck tractor and semi trailer.  This calculates to a **minimum** speed at the
beginning of braking at 76 mph.  This does not account for significant additional energy
losses as a result of the multiple impacts and scrapping along the bridge wall.  It is most
probable the speed of the truck tractor and semi trailer operated by Small was operating
in excess of 80 mph at the beginning of skidding and through the multiple impacts.

With a line of sight of over ¼ mile east of the collision scene, Small clearly had adequate
time and distance to reduce his speed and/or change lanes prior to impact with the
stopped or slow moving vehicles, had he been rested, alert and keeping a proper lookout.

Other drivers operating on the highway that morning were able to perceive and react to
the hazard presented by the slowing traffic.  Mr. Small, seated in an elevated position in
his higher truck cab had even more time to perceive and react to the hazard presented and
should similarly have reacted to avoid the potential collision with the slower moving
traffic.  Based on the foregoing, therefore, it is my opinion this rear-end collision was

David Batt, Rachel Meese
Re:  Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 12

fully preventable on the part of Mr. Small as indicated in The Commercial Carrier
Journal book, Preventable Or Not:

> "*Rear-ending another vehicle is preventable 99.99% of the time, regardless of
> an abrupt stop by a vehicle in front*".

A Preventable Accident is defined as:

> *49 CFR §385.3:*
>
> *Preventable accident on the part of a motor carrier means an accident (1) that
> involved a commercial motor vehicle, and (2) that could have been averted but
> for an act, or failure to act, by the motor carrier or the driver.*

As mentioned above, another commercial driver struck in the rear as a result of this
collision noted there was construction warning signs posted approximately ½ to ¾ of a
mile before the bridge.

Mr. Small should have been alert for slowing traffic, lane closures, etc. after seeing these
signs, but he apparently did not notice these signs or, worse, deliberately chose to ignore
them.  Drivers are admonished in the commercial driver's licensing manual to "*anticipate
trouble and leave yourself a place to go if a hazard appears suddenly.  A hazard is
anyone or anything that can cause an unsafe condition.  The best drivers are defensive
and prepared for hazards.*  Having been forewarned by the construction signs, Mr. Small
was put on notice that such a hazard might be ahead.  Mr. Small failed to follow these
guidelines, showing reckless disregard for other motorists which whom he was sharing
the highway.

A driver's failure to notice and/or adhere to construction warning signs can also indicate
a drowsy or fatigued driver, which based on the record contained in U.S. DOT's database
for Laneko Manufacturing Company and his own testimony that he sometimes ran over
hours is one possible factor in this driver's contribution to the cause of this collision.  The
motor carrier would be contributory to the collision in its failure to properly monitor
drivers' hours, resulting in the unsafe operation of its commercial motor vehicles by a
fatigued driver.  Statistics show that fatigued drivers are a major cause of motor vehicle
collisions.

David Batt, Rachel Meese
Re:  Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 13


It was also found that despite Mr. Small's claims to the contrary and based on
photographs and evidence found at the scene, Mr. Small was traveling well above the 70
mph posted speed limit in violation of state law and the Federal Motor Carrier Safety
Regulations.  In fact, physical evidence indicates his truck tractor and semi-trailer was
traveling at a speed between 80 and 90 mph before the onset of braking, a speed deemed
by state law as reckless driving and defined by the Federal Motor Carrier Safety
Regulations (FMCSR) as a "Serious Traffic Violation" as it was in excess of 15 mph over
the speed limit.

Mr. Small's deposition testimony revealed he had 5 or more other moving violations for
which he received citations while driving for Laneko prior to this accident; two were for
running a red light and the others were for speeding.  Mr. Small also acknowledged
involvement in four other traffic collisions since 1986.

Without a proper driver's qualification file, the record does not reflect the motor carrier
full filled its duty to be aware of Mr. Small's driving record.  It is my opinion the motor
carrier had a duty to maintain a driver qualification file, annual reviews and be aware
thereof and this driver's record pursuant to 49 CFR §391.
Small should have received remedial training and been closely monitored to prevent
accidents and violations.   It is the lack of this type of safety management controls that
makes a carrier more vulnerable to preventable accidents.

I find no causative or contributory factors for any of the other drivers involved in this
chain reaction collision.

This was a preventable accident which would not have occurred but for the reckless
actions of Mr. David Small, driver for Laneko Manufacturing Company, and the motor
carrier for failing to act in monitoring and supervising this driver.

I reserve the right to supplement, edit or amend these opinions in the event additional
relevant information is brought forth for my review.


Sincerely,

David A. Stopper
Director

David Batt, Rachel Mees
Re:  Alfred Abramson, et al v. Laneko Engineering Company & David Small, et al
December 13, 2004
Page 14


**EXPERT RULE 26 DISCLOSURE:**

I am compensated at a rate of $200 per hour up to a maximum of 8 hours a day, plus expenses.

A copy of my current Curriculum Vitae, testimony at trial or deposition and publications is attached.


Sincerely,

David A. Stopper

Director

MOTOR CARRIER SAFETY * HIGHWAY COLLISION RESEARCH

**STOPPER**

WASHINGTON, D.C.

**& ASSOCIATES**

Tuesday, March 01, 2005

Rachel A. Meese
Lobman, Carnahan, Batt, Angelle & Nader
400 Poydras Street
Suite 2300
New Orleans, LA 70130-3245
504-586-9292    Fax 504-586-1290

Re: Abramson, et al v Laneko Engineering Company, RBL Leasing, et al
C.A. No.: 3:04-04889

Dear Ms. Meese:

At your request, I have reviewed "Laneko Engineering Company D/B/A Laneko
Engineering, Inc. and RBL Leasing Corporations answers to Plaintiff's First Request For
Production of Documents" hereafter referred to as Laneko.

After review of these documents I have found Laneko & RBL Leasing failed to have the
most basic safety management controls in place to insure safety compliance and safe
operation of a Commercial Motor Vehicle (CMV) under their control, as identified in the
Federal Motor Carrier Safety Fitness Standards, 49 CFR §385, Commercial Driver's
License (CDL) Standards 49 CFR §383 and Federal Motor Carrier Safety Regulations
(FMCSR) 49 CFR §390 – §399.

**49 CFR §385.3:**

> *"Safety management controls means systems, policies, programs, practices and
> procedures used by a motor carrier to ensure compliance applicable safety and
> hazardous materials regulations which ensure the safe movement of products
> and passengers through the transportation system, and reduce the risk of
> highway accidents and hazardous materials incidents resulting in fatalities,
> injuries and property damage."*

**EXHIBIT**

9

Rachel A. Meese
Re: Abramson, et al v Laneko Engineering Company, RBL Leasing, et al
C.A. No.: 3:04-04889
March 1, 2005
Page 2

Records produced indicate Mr. David Bruce Small was never qualified, as required by 49 CFR §391 and he only held the minimum documents (CDL & Medical Card) which would be expected to be produced in the event Mr. Small was asked to produce those documents by a law enforcement officer on the highway. Laneko & RBL Leasing failed to conduct required character and background checks, initial or annual review of the Mr. Small's driving record. The medical qualification further indicated Mr. Small was not tested for controlled substances as required pursuant to 49 CFR §382.

They further failed to have safety management controls in place to insure Mr. Small was allowed adequate rest periods and did not exceed the allowable hours of service limits for CMV operators pursuant to 49 CFR §395. In fact, the time cards produced indicate Small routinely exceeded allowable hours of service limits working as much as 22 ½ hours in a 24 hour period. In addition, Mr. Small's time records reveal he worked and was compensated for as much as 81 ½ hours in a five (5) day period. The last two pay periods produced prior to this fatal collision showed Mr. Small's time cards indicate he worked 80 hours in one five day period and 80 ½ hours in the following five day period. Driver's of CMV's may not drive after being On-Duty for 70 hours in eight (8) consecutive days. Based on this information, Laneko & RBL Leasing permitted, encouraged and allowed Small to regularly operate a CMV after being on duty for extended periods of time.

In this fatal collision, it is apparent Mr. Small failed to respond to obvious traffic slowing down ahead, driving into a large group of vehicles at a high rate of speed while they were clearly visible ahead, and only initiating braking at or after first impact with the vehicles in his lane of travel. An alert, qualified CMV driver utilizing the knowledge and skills expected of CDL operators (49 CFR §383.111, §383.113, Appendix G to Part 383 and published in every states CDL manual as required by §383.131) should be looking 12 – 15 seconds ahead and would have had more than enough time to respond to this traffic situation and reduce his speed.

Operators of commercial motor vehicles in the United States are instructed in the Commercial Driver's License Manual on *Seeing* and advises drivers that "*to be a safe driver you need to know what's going on all around your vehicle. Not looking properly is a major cause of accidents*" and "*All drivers look ahead; but many don't look far enough ahead.*" The CDL manual also instructs drivers to look the distance they travel in 12-15 seconds.

Rachel A. Meese
Re: Abramson, et al v Laneko Engineering Company, RBL Leasing, et al
C.A. No.: 3:04-04889
March 1, 2005
Page 4

This rear-end accident was fully preventable on the part of Mr. Small as indicated in The
Commercial Carrier Journal book, **Preventable Or Not**:

> "Rear-ending another vehicle is preventable 99.99% of the time, regardless of an
> abrupt stop by a vehicle in front".

A Preventable Accident is defined as:

### 49 CFR §385.3:

*Preventable accident on the part of a motor carrier means an accident (1) that
involved a commercial motor vehicle, and (2) that could have been averted but
for an act, or failure to act, by the motor carrier or the driver*

### USDOT OFFICIAL INTERPRETATIONS OF THE FEDERAL MOTOR
### CARRIER SAFETY REGULATIONS:

*Question 7: What is the liability of a motor carrier for hours of service
violations?*

*Guidance: The carrier is liable for violations of the hours of service regulations if
it had or should have had the means by which to detect the violations. Liability
under the FMCSRs does not depend upon actual knowledge of the violations.*

*Question 8: Are carriers liable for the actions of their employees even though the
carrier contends that it did not require or permit the violations to occur?*

*Guidance: Yes. Carriers are liable for the actions of their employees. Neither
intent to commit, nor actual knowledge of, a violation is a necessary element of
that liability. Carriers "permit" violations of the hours of service regulations by
their employees if they fail to have in place management systems that effectively
prevent such violations.*

*Question 21: What is the carrier's liability when its drivers falsify records of duty
status?*

*Guidance: A carrier is liable both for the actions of its drivers in submitting false
documents and for its own actions in accepting false documents. Motor carriers
have a duty to require drivers to observe the FMCSRs.*

Rachel A. Meese
Re: Abramson, et al v Laneko Engineering Company, RBL Leasing, et al
C.A. No.: 3:04-04889
March 1, 2005
Page 5

Operation of CMVs is defined as a "Safety Sensitive Function" placing additional
responsibilities and duties on the drivers and motor carriers that assign drivers to operate
CMVs in interstate and intrastate commerce. The Federal Highway Administration,
Office of Motor Carrier Standards published in the February 8, 1991 Interpretations of 49
CFR Part 383 which stated:

> *"Because of the greater potential for loss of life, serious injury, and significant
> property damage in accident involving CMV's, the FHWA's regulations (in 49
> CFR Part 383) hold drivers of these vehicles to a higher standard of conduct than
> other highway users."*

It is highly evident Mr. Small's failure to react is consistent with a drowsy, fatigued
driver. It is further evident that it is reasonably foreseeable on the part of Laneko / RBL
Leasing that a driver that is routinely working as much as 22 hours a day and 80 hours
every five days is likely to be fatigued and that can lead to serious injury or death in the
event a motor vehicle collision occurs.

It was further foreseeable that the total lack of safety management controls on the part of
Laneko / RBL permitted and allowed the unsafe operation of a CMV subject to their
control that was likely to lead to serious injury or death in the event a motor vehicle
collision occurs.

It is my understanding that discovery in this matter is ongoing and in the event additional
information is brought forth for my review, I reserve the right to edit, supplement or
amend these opinions.


Sincerely,

David A. Stopper
Director

# SIGMAN & THOMPSON

PRIVATE INVESTIGATIONS

**H. E. "GENE" SIGMAN**
**CAM THOMPSON**

Administrative Assistant
**AMY CASTLE**

P.O. Box 8253
South Charleston, WV 25303

(Main) 304-768-9846
(Fax) 304-768-9848
1-800-339-0325

## REPORT OF INVESTIGATION

ATTENTION:    HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C
R. EDISON HILL, ESQUIRE

REFERENCE:    ABRAMSON CASE

DATE:    AUGUST 21, 2003

### DATE(S) INDICATED/SERVICES RENDERED
### H. E. "GENE" SIGMAN/CAM THOMPSON

08/18/03    1130 Hours    CT    Departed the office en route to Barboursville.

CT arrived at Barboursville Police Department,
obtained a copy of the WV Uniform Traffic Crash
Report and ordered copies of photographs of the
crash scene.

Chief Meed advised the gasoline tank had been
removed from the Abramson vehicle and was in
possession of the WV State Fire Marshall's Office.

CT drove to Al Towing and met Greg, Abbott's
Wrecker Service.



EXHIBIT
10

CT videoed the vehicle listed below being loaded onto a flatbed wrecker. The vehicle was then transported to Abbott's Wrecker Service, Nitro, WV.

CT videoed the vehicle being unloaded and placed into a garage bay.

CT returned to South Charleston office.

CT was contacted by the Barboursville Police Department and was advised the photographs were at the Police Department.

CT drove to the Barboursville Police Department and obtained photographs.

|  |  |  |  |
|---|---|---|---|
|  | 1715 Hours |  | CT returned to the office. |
| 08/21/03 | 1500 Hours | CT | En route to Barboursville Police Department. |
|  |  |  | CT arrived on location and obtained Two (2) additional sets of photographs. |
|  | 1630 Hours | CT | Returned to the South Charleston office. |

# DRIVER / VEHICLE INSPECTION REPORT

| | |
|---|---|
| **West Virginia Public Service Commission** | **Report Number:** WV3152000000 |
| P.O. Box 813 | **Inspection Date:** 7/14/2003  **Certification Date:** |
| (201 Brooks Street) | **Time Started:** 20:07  **Time Ended:** 21:30 |
| Charleston, WV 25323 | **Inspection Level:** 1 - Full Inspection  No HM Insp. |
| Phone #: (304)340-0329  Fax #: (304)340-0325 | |

| | | |
|---|---|---|
| **LANKXO MANUFACTURING COMPANY** | **Driver:** SMALL, DAVID B | |
| 509 NORTH LEWIS ROAD | **License #:** 19828200  **State:** PA | |
| ROYERSFORD, PA 19468 | **Date of Birth:** 01/08/1954 | |
| Phone #: (215)848-6150  Fax #: (215)848-8194 | | |
| DOT #: 00473902  MC/MX #: 273115 | | |
| State #: | | |
| **Location:** BARBOURSVILLE  **MilePost:** 17 | **Bill of Lading:** 19905 | |
| **Highway:** I 64 W  **Origin:** FORT WASHINGTON,, PA | | |
| **County:** CABELL  **Destination:** SPRINGFIELD,KY | **Cargo:** AUTOMOTIVE PARTS | |
| **Shipper:** CARRIER | | |

## VEHICLE IDENTIFICATION:

| Unit | Type | Make | Year | State | License # | Company # | Unit VIN | GVWR | CVSA # | DOS# |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | TT | VOLV | 2000 | PA | AB60682 | 70883 | 4V4ND4TJ3YN244782 | 0 | | |
| 2 | ST | GDAN | 1997 | PA | XW68977 | 105 | 1GRAA9625WS006001 | 0 | | |

## BRAKE ADJUSTMENTS:

| Axle # | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| Right | 0 | 1-1/4 | 1-1/4 | 1-3/8 | 2-1/4 |
| Left | 0 | 1-3/8 | 1-1/4 | 1-1/2 | 1-3/8 |
| Chamber | C-20 | C-30 | C-30 | C-30 | C-30 |

## VIOLATIONS :

| Section Code | St | Unit | DOS | Citation Number | Verify* | Violations Discovered |
|---|---|---|---|---|---|---|
| 396.3(a)(1) | | 2 | N | | N | Inspection/repair and maint parts & accesories ONE BRAKE AT .95 INCHES BEYOND ADJUSTMENT LIMIT. SEE BRAKE CHART |
| 396.3(a)(1) | | 2 | N | | N | Inspection/repair and maint parts & accesories 6 AXLE RT REAR PIN MISSING IN SLACK ADJUSTER |
| 396.3(a)(1) | | 2 | N | | N | Inspection/repair and maint parts & accesories 4 OF 4 FASTENERS LOOSE ON 5 AXLE AIR RESERVOIR |
| 396.3(a)(1) | | 2 | N | | N | Inspection/repair and maint parts & accesories 2 OF 4 FASTENERS LOOSE ON 4 AXLE RT AIR RESERVOIR |
| 391.45(b) | | D | N | | N | Expired medical examiner's certificate EXPIRED 03-19-03 |

* N - Non-DOS or Driver DOS Violation

| | | |
|---|---|---|
| **HazMat:**  No HM transported. | **Placard:** NA  **Cargo Tank:** | |

**Special Checks:**

| [ ] Alcohol/Controlled Substance Check | [ ] Traffic Enforcement | |
|---|---|---|
| [ ] Conducted by Local Jurisdiction | [ ] Drug Interdiction Search  **Arrests:** | |
| [ ] Size and Weight Enforcement | [X] Post Crash Inspection | |

| | |
|---|---|
| **Requested by:** BARBOURSVILLE POLI  No. of fatalities: 2 | No. of Injuries: 3 |
| Was there a towaway (yes / no): YES | Endorsement(s): NO |
| Driver Lic. Exp. Date: 08/04/2005  Class: A | Medical Card (yes or no): YES |
| Exp. Date: 03/19/2003  Restitution: NO | Owner's City: DOLMAR |
| State: PA  Driver's Address: 129 BETHELHEM PIK | Owner's Name: RBL LEASING |
| Owner's Address: 449 HARLEYSVILLE I  Zip Code: 19016 | Owner's State: PA |
| Owner's Zip Code: 18924  Owner's City: FRANCONIA | Number of vehicles involved: 13 |
| St: Y  Owner's Phone Number: 2157213426 | |

| | |
|---|---|
| **Report Prepared By:**  Dyer, Charles | **Badge #:** WV0007 |
| | |
| X | |

| | |
|---|---|
| **Copy Received By:**  SMALL, DAVID B | |
| | |
| X | |

Page 1 of 1

### DRIVER / VEHICLE INSPECTION REPORT

West Virginia Public Service Commission
P.O. Box 812
(201 Brooks Street)
Charleston, WV 25323
Phone #: (304)340-0328     Fax #: (304)340-0325

| Report Number: | WV3152000360 | |
|---|---|---|
| Inspection Date: | 7/14/2003 | Certification Date: |
| Time Started: | 20:07 | Time Ended: | 21:30 |
| Inspection Level: | 1 - Full Inspection | No HM Insp. |

LANSKO MANUFACTURING COMPANY
509 NORTH LEWIS ROAD
ROYERSFORD, PA 19468
Phone #:   (215)948-9180      Fax #:   (215)948-9186
DOT #:     00473802           MC/MX #:  273118
State #:
Location:   BARBOURSVILLE
Highway:    I 64 W
County:     CABELL
Shipper:    CARRIER

Mile Post:   17
Origin:      FORT WASHINGTON,, PA
Destination: SPRINGFIELD, KY

Driver:       SMALL, DAVID B
License #:    19529200          State: PA
Date of Birth: 01/08/1964

Bill of Lading:  16905
Cargo:          AUTOMOTIVE PARTS

*** CARRIER CERTIFICATION: "ALL INSPECTION REPORTS CONTAINING VIOLATIONS MUST BE SIGNED AND RETURNED WITHIN 15 DAYS"
ALSO "WE REQUEST ALL NON-VIOLATION INSPECTION REPORTS TO BE SIGNED AND RETURNED". "THERE MUST BE A COPY OF ALL
INSPECTIONS KEPT IN YOUR FILES FOR 1 YEAR". The undersigned certifies that all violations noted on this report have been corrected and action has
been taken to assure compliance with the Federal Motor Carrier Safety and Hazardous Material Regulations, insofar as they are applicable to motor carriers and
drivers. This certification MUST BE SIGNED by the Motor Carrier and RETURNED WITHIN 15 DAYS.

Signature of Carrier Official:     X _____          Date: _____

*** NOTICE TO DRIVER
|__| Vehicle "out of service"   |__| Driver / CoDriver (drug and/or alcohol) "out-of-service"   |__| Driver / CoDriver (hrs of service) "out-of-service"   |__|
Driver / CoDriver (none/invalid CDL) "out-of-service"   |__| Driver / CoDriver (other) "out-of-service"

IF YOU VIOLATE THE OUT-OF-SERVICE NOTICE BY EITHER OPERATING THE VEHICLE BEFORE PROPER REPAIRS ARE MADE OR IF YOU
DRIVE ANY COMMERCIAL VEHICLE BEFORE YOUR PENALTY TIME IS FULFILLED, YOU ARE SUBJECT TO THE FOLLOWING: UP TO $1,000.00
FINE (first offense) AND A SERIOUS OFFENSE WILL BE RECORDED ON YOUR CDL. THIS COMBINED WITH ANY OTHER SERIOUS OFFENSE WILL
MEAN A 6 MONTH SUSPENSION.
I have read and I understand the above statement.

(DRIVER SIGNATURE) _____          (CoDRIVER SIGNATURE) _____

Signature of Repairer:     X _____     Facility: _____     Date: _____

Report Prepared By:          Badge #:               Copy Received By:
Dyer, Charles               WV0007                 SMALL, DAVID B

X _____                          X _____
                                                   Page 2 of 3

# H.E GENE SIGMAN
# PRIVATE INVESTIGATOR

P.O. Box 8253
South Charleston, West Virginia 25303

Office 304-768-9846
1-800-339-0325

## FACSIMILE COVER SHEET

Attention: _Ed Hill_

Reference: _ABRAMSON mVA_

Date: _09-02-03_

The following facsimile transmittal contains _2_ pages including this cover sheet. If you do not receive this complete transmittal please contact us at 768-9846 *THANK YOU*

COMMENTS: _Ed I'd previously spoken to Benny Savilla regarding these requests as soon as I recieve them I'll get it to you ASAP._

_Gene_

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the message in not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above via the U.S. Postal Service. Thank you.



**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION**

# Division of Highways

**Legal Division**
**1900 Kanawha Boulevard East • Building Five • Room 519**
**Charleston, West Virginia 25305-0430 • 304/558-2821**

**Bob Wise**
**Governor**

**Fred VanKirk, P. E.**
**Secretary/Commissioner**

August 29, 2003

**Anthony G. Halkias**
**Director, Legal Division**

H. Gene Sigman
Private Investigator
Post Office Box 8253
South Charleston, West Virginia 25303

RE:   FOIA Request

Dear Mr. Sigman:

The Legal Division is in receipt of your FOIA request dated August 28, 2003.   I have assigned Ben Savilla of our Claims Section to assemble this information for you.  As soon as this is completed I will forward it on to you.

If I can be of further assistance or if you have any question, please do not hesitate to contact me.

Very truly yours,

Melissa J. White /kh

Melissa J. White
Attorney, Legal Division

MJW:kh

who, being duly sworn, deposed as follows:

1.

That he is the Executor for the Estate of Joseph Abramson, said Estate is currently represented by David V. Batt of the law firm of Lobman, Carnahan, Batt, Angelle & Nader, located at 400 Poydras Street, Suite 2300, New Orleans, Louisiana, 70130.

2.

That on February 6, 2003 I, in my capacity as Executor for the Estate of Joseph Abramson, discharged the attorney R. Edison Hill of the Law Firm of Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C, (herinafter the Hill Firm) who had previously represented the Estate in the matter of the wrongful death of Joseph Abramson.

3.

Mr. Hill and Hill Firm were discharged from representation of the Estate for the following reasons:

1.   That I, in my capacity as executor of the Estate, believed that Mr. Hill had prematurely scheduled a mediation with Traveler's Insurance Company and was willing to enter into settlement negotiations too hastily;

2.   That, during six months of representation of the Estate Mr. Hill had not yet filed a complaint in the matter;

3.   That Mr. Hill had failed to properly investigate a cause of action for survival damages, specifically, Mr. Hill had failed to consult with or retain a forensic pathology expert;

4.   That Mr. Hill had failed to properly investigate the value of a punitive damages claim; and



Aaron Abramson and Carol Abramson and myself as Joseph Abrams's survivors were deeply dissatisfied with Mr. Hill's representation of the Estate.

_____
**ALFRED ABRAMSON**

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 19 DAY
OF _____May_____, 2005.

_____
**NOTARY PUBLIC**

**Brandie L. Mendoza**
**Bar #29344**

2